**KRAMER LEVIN NAFTALIS & FRANKEL** LLP

BARRY H. BERKE
PARTNER
PHONE 212-715-7560
FAX 212-715-7660
BBERKE@KRAMERLEVIN.COM

April 2, 2013

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5-3-13

BY E-MAIL TO JUDGE SULLIVAN
AND HAND DELIVERY TO CHIEF JUDGE PRESKA

Hon. Richard J. Sullivan
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

Hon. Loretta A. Preska
Chief United States District Judge
Assignment Committee for the
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

Re:   *United States v. Michael Steinberg*, No. 12 Cr. 121 (RJS)

Dear Judge Sullivan and Chief Judge Preska:

       We represent Michael Steinberg, the defendant in the above-captioned matter. We write to provide further authority regarding our concern, raised during Mr. Steinberg's initial appearance on March 29, 2013, that the government has improperly manipulated the Southern District of New York's case assignment system by proceeding against Mr. Steinberg by superseding indictment. We also are sending this letter to the Assignment Committee for the Southern District of New York (the "Assignment Committee"), which we understand is the proper protocol under Rule 2 of the Rules for the Division of Business Among District Judges ("Rules for the Division of Business"). *See id.* ("The assignment committee shall supervise and rule upon all issues relating to assignments under this system . . . ."). As we stated on Friday, we respectfully request that Mr. Steinberg's case be submitted for random assignment from the criminal wheel.

       The government's decision to proceed against Mr. Steinberg by superseding indictment after all the defendants in the underlying case have pled guilty or been convicted after trial – so there is no possibility of a joint trial – violates both the letter and spirit of this District's

KRAMER LEVIN NAFTALIS & FRANKEL LLP
April 2, 2013
Page 2

rules governing the assignment of cases. The government's actions allowed it alone to determine the judge assigned to the case. The government had an obvious and significant reason for doing so: it caused the case to be before the only judge in the Southern District to have ruled in favor of the government's legal position regarding a key element of proof in insider trading cases that is critical in this case, whereas other judges have ruled against the government's position as described further below. We respectfully submit that the government's actions here violate the District's rules, are contrary to basic principles of fairness, implicate significant due process issues, and cast the proceedings under an unseemly shadow of judge-shopping.

1. Background

The government initially charged three cooperating witnesses by separate informations assigned to three separate judges. Specifically, the government first charged Spyridon ("Sam") Adondakis by information on April 25, 2011 (No. 11 Cr. 360, before Judge Keenan). The government then charged his alleged co-conspirator Jesse Tortora in a distinct criminal case on May 18, 2011 (No. 11 Cr. 430, before Judge Pauley). Next, on November 3, 2011, the government charged a third alleged co-conspirator, Sandeep ("Sandy") Goyal, in yet another criminal case (No. 11 Cr. 935, before Judge Forrest). Each case was resolved by a guilty plea on January 18, 2012. Rather than proceeding by superseding indictment, the government filed *another* distinct criminal case against Todd Newman, Anthony Chiasson, Jon Horvath, and Danny Kuo on January 17, 2012. Their criminal case, No. 12 Cr. 121, was assigned to Judge Sullivan following the filing of the indictment on February 7, 2012.[1] Mr. Kuo pled guilty on April 13, 2012. Mr. Horvath pled guilty on September 28, 2012. Messrs. Newman and Chiasson subsequently proceeded to trial (the "*Newman* trial") and were both found guilty of securities fraud and conspiracy to commit securities fraud on December 17, 2012, which fully resolved the charges against all the defendants in case No. 12 Cr. 121 but for sentencing.

During the *Newman* trial, the defendants asked Judge Sullivan to charge the jury that the government had to prove the defendants knew that the original tipper was receiving a personal benefit in return for providing material nonpublic information. Although Judge Rakoff, in *United States v. Whitman*, __ F. Supp. 2d __, 2012 WL 5505080, at *6 (S.D.N.Y. Nov. 14, 2012), *as corrected*, (Nov. 19, 2012), and Judge Holwell, in *United States v. Rajaratnam*, 802 F. Supp. 2d 491, 498-99 (S.D.N.Y. 2011), had recently held that the tippee's knowledge of the tipper's benefit was a required element and so charged the juries in those cases,[2] Judge Sullivan declined to provide a similar instruction in the *Newman* trial. *See* Trial Tr. 3594-3605, 4026-

---

[1] The government later charged Hyung Lim by information in the same case on September 4, 2012; Mr. Lim pled guilty that same day.

[2] *See also United States v. Santoro*, 647 F. Supp. 153, 170-71 (E.D.N.Y. 1986) ("For the tippee to know of the tipper's breach, therefore, the tippee must know that the tipper has transferred information, that that information is material and nonpublic, and that the tipper has done so for personal benefit."), *rev'd on other grounds sub nom. United States v. Davidoff*, 845 F.2d 1151 (2d Cir. 1988).

KRAMER LEVIN NAFTALIS & FRANKEL LLP
April 2, 2013
Page 3

4032, *United States v. Newman*, No. 12 Cr. 121 (attached as Exhibit A). This question of proof is a critical issue in Mr. Steinberg's case because even under the government's allegations, Mr. Steinberg is at least four steps removed from the alleged tippers in the two stocks specifically charged in the indictment, Dell and Nvidia. For example, with respect to allegations involving Dell, it is alleged that the purported tipper gave inside information to Sandeep Goyal, who passed the information to Jesse Tortora, who passed the information to Jon Horvath, who then allegedly passed the information to Mr. Steinberg. As a result, the issue of whether the government must prove that Mr. Steinberg knew that the Dell insider disclosed the inside information to obtain a personal benefit for himself is a particularly important one.

On March 29, 2013, the government unsealed an indictment against Mr. Steinberg alone (obtained the prior day) that it styled as a superseding indictment, charging only him with one count of conspiracy to commit securities fraud and four counts of securities fraud. The charges from the previous indictment against Messrs. Newman and Chiasson related to trades they executed on the same technology stocks based on information allegedly obtained from the same original source and some of the same intermediary sources as those alleged in the indictment against Mr. Steinberg. However, there are significant differences between the cases, including that Messrs. Newman and Chiasson had no affiliation with Sigma Capital Management, LLC ("Sigma Capital") where Mr. Steinberg was a portfolio manager, and the government's sole cooperating witness who had contact with Mr. Steinberg, Mr. Horvath, did not testify at the *Newman* trial.

      2.      The Government's Conduct Violates the Letter and Spirit of the District's Rules, Due Process and Basic Fairness, and Creates the Appearance of Impropriety

At Mr. Steinberg's initial appearance, the government suggested that proceeding by superseding indictment was the "obvious thing to do" because Judge Sullivan was presiding over the case of Mr. Horvath, who has pled guilty and will testify for the government against Mr. Steinberg, and because Judge Sullivan presided over the *Newman* trial, which the government asserts had overlapping evidence and witnesses with Mr. Steinberg's expected trial. *See* Arraignment Tr. 16-17, *United States v. Steinberg*, No. 12 Cr. 121 (attached as Exhibit B). The government's proffered reasons are unpersuasive.

As an initial matter, the government's argument is nothing more than the claim that Mr. Steinberg's case is related to the government's prior and now-resolved cases against Messrs. Horvath, Kuo, Newman, and Chiasson. But under Rule 13(b) of the Rules for the Division of Business, **"[c]riminal cases are not treated as related to each other unless a motion is granted for a joint trial."** (emphasis added). Whether the government proceeded here by a superseding indictment or otherwise, there is no question that there is no possibility of a "joint trial," because the prior cases have been resolved.

Additionally, within the last two years this District struck the part of Rule 13(b) that had allowed certain criminal and SEC enforcement actions to be assigned to the judge to whom the case was first assigned, evidencing a preference for the random assignment of new

**KRAMER LEVIN NAFTALIS & FRANKEL** LLP
April 2, 2013
Page 4

cases even when it requires multiple judges to preside over similar cases. *See* Order M10-468, *In re Rule 13(b) of the Rules for the Division of Business Among Judges*, No. 11 Mc. 438 (S.D.N.Y. Dec. 20, 2011) (preserving general rule that "[c]riminal cases are not treated as related to civil cases or vice versa" and striking former exception that had permitted relation of "criminal cases and SEC enforcement actions arising from the same alleged fraud").

      Mr. Steinberg's case is thus properly governed by Rule 6(b), which provides for the random assignment of all criminal cases. While Rule 6(e) carves out a limited exception to permit assignment to the same judge when the government proceeds by superseding indictment or information, that exception flows from the common-sense recognition that superseding indictments carry the implicit potential for a "joint trial," which both Rule 13(b) and Rule 6(e) recognize as sufficient justification for a common judge in spite of the District's rejection of a related case rule for criminal cases. But Rule 6(e) should not be abused to circumvent the operation of Rule 13(b). Where, as here, the indictment charging Mr. Steinberg is "superseding" only in the sense that the government styled it in that manner,[3] there is no possibility of a joint trial, and the government has a significant incentive to proceed before a specific judge, the government's new charges should properly be subject to Rule 6(b)'s random assignment procedure.

      The government's attempt to evade the random assignment system is apparent from the act of proceeding by superseding indictment in a case in which all defendants have already been convicted after trial or plea. There are only two reasons for the government to proceed by superseding indictment: (1) to obtain an improper advantage or (2) because the cases are related by an overlap of evidence and witnesses such that a joint trial would be advantageous.

      As to the first reason, it is clear that the government will gain an extraordinarily important advantage if this case is not randomly assigned since the government would thereby avoid the risk that the randomly assigned judge would follow the other judges who had previously ruled against the government's position on a key legal issue. Even ignoring the government's motivations for proceeding in a way that produces this tremendous advantage, there is no question that it was the government's unilateral actions that secured the advantage,

---

[3] While the government has called the instrument charging Mr. Steinberg alone a "superseding indictment," it is that in name only. The indictment does not "supersede" anything; Mr. Steinberg had not previously been charged, and the charges against the defendants named in the prior indictment are entirely unchanged. To "supersede" is to "annul, make void, or repeal by taking the place of." *See* Black's Law Dictionary 1576 (9th ed. 2009). Following this definition, an indictment is properly classified as "superseding" when it "supplants a valid, pending indictment." *United States v. Garcia*, 268 F.3d 407, 410 n.1 (6th Cir. 2001) (noting that an indictment filed after reversal of an earlier indictment and conviction is not a "superseding" indictment), *overruled on other grounds by United States v. Leachman*, 309 F.3d 377 (6th Cir. 2002). Unlike a superseding indictment which supersedes a pre-existing indictment to become the operative instrument on which the defendants in the case are tried, the indictment filed against Mr. Steinberg is entirely supplemental and does not replace any earlier indictment.

KRAMER LEVIN NAFTALIS & FRANKEL LLP
April 2, 2013
Page 5

creating, at minimum, a significant appearance of judge-shopping.[4] As to the government's intent here, since the government often proceeds in similar circumstances by separate indictment as discussed more fully below, there is a substantial basis to conclude that the government proceeded by superseding indictment for the sole purpose of selecting the judge before whom this case will be tried. That is improper.

As to the second reason – that the two cases have evidentiary overlap – that is also not proper because there is no possibility of a joint trial and the cases are not relatable under Rule 13(b). In addition, permitting the government to proceed in this fashion in a case such as here, where the advantage to the government is concrete and indisputable, would allow the government to self-select judges to obtain material advantages whenever the government deemed it helpful to assert evidentiary overlap – even when the cases could not qualify as "related" under Rule 13(b). This District's random assignment rules are designed specifically to foreclose such gamesmanship.

As the Second Circuit has recognized, "a criminal justice system in which the prosecutor alone is able to select the judge of his choice to preside at trial, even in limited types of cases, raises serious concerns about the appearance of partiality, irrespective of the motives of the prosecutor in selecting a given judge." *Francolino v. Kuhlman*, 365 F.3d 137, 141 (2d Cir. 2004). Random assignment serves to promote real and perceived impartiality in the administration of justice. *See Sherfey v. Johnson & Johnson*, No. 12-4162, 2012 WL 3550037, at *2 (E.D. Pa. Aug. 17, 2012) ("[T]he policies underpinning the system of random assignment encourage transparency, fairness, and avoiding the appearance of arbitrariness."); *Grutter v. Bollinger*, 16 F. Supp. 2d 797, 802 (E.D. Mich. 1998) ("A system of random assignment is purely objective and is not open to the criticism that business is being assigned to particular judges in accordance with any particular agenda. The subjective method employed in the present case was anything but random, and at a minimum the appearance of impropriety is manifest."); *see also Wheat v. United States*, 486 U.S. 153, 160 (1988) ("Federal courts have an independent interest in ensuring that . . . legal proceedings appear fair to all who observe them."); *United States v. Montecalvo*, 533 F.2d 1110, 1112 (9th Cir.) ("The appearance of fairness is as important

---

[4] In *United States v. Bailey*, No. S2 97 CR. 269(DLC), 1998 WL 748308 (S.D.N.Y. Oct. 20, 1998), a case involving allegations of kidnapping and murder, the Assignment Committee advised the court to retain the case of a sole defendant charged in the first instance by superseding indictment after the original defendant pled guilty, and the judge declined to recuse herself where the defendant was unable to identify any prejudice. *Id.* at *1 (noting that there was no prejudice to having the former Chief of the Criminal Division of the U.S. Attorney's Office for the Southern District of New York during an unrelated time period preside over the case). Here, in contrast, there is clear and significant prejudice, as described above.

**KRAMER LEVIN NAFTALIS & FRANKEL** LLP
April 2, 2013
Page 6

as fairness-in-fact in maintaining confidence in the administration of justice in the minds of the public and of the accused."), *vacated on other grounds*, 545 F.2d 684 (9th Cir. 1976).[5]

Judges in this and other districts have similarly disapproved of any attempts by the government to manipulate the assignment process and engage in judge-shopping. *See, e.g., United States v. Carrasco*, 968 F. Supp. 948, 951 (S.D.N.Y. 1997) (Scheindlin, J.) ("The Government's conduct in indicting defendant separately and then re-indicting him for the same conduct in a separate indictment does not emit a pleasant odor. While there may be no discernible improper motive for this conduct, it is not hard to imagine a case where such would create real forum-shopping problems. . . . It is not appropriate for the Government to use the grand jury as a tool for making strategic decisions at the expense of defendant's rights . . . ."); *Cruz v. Abbate*, 812 F.2d 571, 574 (9th Cir. 1987) ("While a defendant has no right to any particular procedure for the selection of the judge – that being a matter of judicial administration committed to the sound discretion of the court – he is entitled to have that decision made in a manner free from bias or the desire to influence the outcome of the proceedings."); *United States v. Phillips*, 59 F. Supp. 2d 1178, 1180 (D. Utah 1999) ("[A]ttempts to manipulate the random case assignment process are subject to universal condemnation.").

We respectfully submit that the government's actions in this case also implicate due process issues. *See United States v. Pearson*, 203 F.3d 1243, 1257 (10th Cir. 2000) ("In our view, if the assignment of a case to an individual judge should not be based on the desire to influence the outcome of the proceedings, then allowing a prosecutor to perform that task raises substantial due process concerns." (internal quotation marks omitted)). If the government is successful in manipulating the assignment process so that this case is before the only judge to rule in its favor on the most critical legal issue in the case – particularly where two other judges have ruled against the government on this very issue – the prejudice to Mr. Steinberg is self-evident. The Second Circuit has suggested that judge-shopping that prejudices the defendant may constitute a due process violation. *See Francolino*, 365 F.3d at 141 (holding in habeas context that "the occurrence of judge-shopping alone without any showing of actual prejudice" did not warrant a new trial); *see also Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242-43 (1980) ("The Due Process Clause . . . preserves both the appearance and reality of fairness . . . . [J]ustice must satisfy the appearance of justice, and this stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties." (internal quotation marks and citations omitted)).

---

[5] *See also United States v. Gerard*, Crim. No. 87-00177, 1987 WL 18400, at *2 (E.D. Pa. Oct. 7, 1987) ("This court [in a district that, like the Southern District of New York, has rejected a 'related case' rule for criminal cases], as a matter of policy, has for many years not had a 'related case' rule in regard to criminal cases. . . . The court has considered that policy in criminal cases and has expressly and unanimously rejected that policy in criminal cases in order to prevent the temptation of judge-shopping or the manipulation of our random selection process to bring about a preferred assignment regarding certain individuals who are charged from time to time with a variety of crimes.").

**KRAMER LEVIN NAFTALIS & FRANKEL** LLP
April 2, 2013
Page 7

    3.    <u>The Government's Proffered Justification is Belied By the Fact That It Regularly Proceeds By Separate Indictments in Analogous Circumstances</u>

While the government sought to justify its charging decision at the initial appearance by claiming its actions were the "obvious thing to do," in fact, the government often proceeds by separate indictments in analogous circumstances, including in this very case.

As described above, the government's three key witnesses against Messrs. Newman and Chiasson were all charged in separate informations and randomly assigned to separate judges. With no possibility of a joint trial in any of those cases, the government then brought a separate indictment against Messrs. Newman and Chiasson, despite the fact that the cooperators from the previously filed cases would be called to testify at the *Newman* trial.[6]

Similarly, in many other white-collar cases where alleged co-conspirator defendants have been charged at separate times, the government has proceeded by separate indictments for the subsequent defendants, rather than by superseding indictments, because the government presumably did not have the same incentive to secure the assignment of a particular judge. This can be shown by looking at only a few recent cases in which our firm was also involved.

For example, in the cases relating to the collapse of Refco, involving allegations of a fraudulent scheme to hide losses and misrepresent Refco's finances, the government proceeded against Phillip Bennett by indictment on November 10, 2005, and that case was assigned to Judge Buchwald. *United States v. Bennett*, No. 05 Cr. 1192. Prior to the resolution of Mr. Bennett's case, the government filed superseding indictments to include Robert Trosten on October 24, 2006, and then Tone Grant on January 16, 2007. Prior to Mr. Grant's trial in March 2008 before Judge Buchwald, when there was a theoretical possibility of a joint trial (albeit with an adjournment), the government separately indicted a co-conspirator, Joseph Collins, on December 18, 2007, and alleged that he conspired with Messrs. Bennett, Trosten, and Grant in hiding Refco's finances. *See* Indictment ¶¶ 5-9, *United States v. Collins*, No. 07 Cr. 1170. That case was randomly assigned to Judge Sand and then (for health reasons) transferred to Judge Patterson. In other words, in that case, the government obtained a separate indictment against the co-conspirator even though there was the possibility of a joint trial, and Judge Buchwald would have been intimately familiar with all the facts (even if there were separate trials).

---

[6]     Indeed, to accommodate the very possibility that cooperators from one case might testify against an alleged co-conspirator in a different case, this District commonly provides for cooperators to be sentenced by the judge before whom they testified so as to better evaluate their cooperation. *See, e.g.*, *Breen v. United States*, No. 03 Civ. 3495(RMB)(DFE), 2005 WL 735958, at *1 n.1 (S.D.N.Y. Mar. 29, 2005) (noting that the petitioner pled guilty before Judge Patterson but was sentenced by Judge Schwartz because he testified in a criminal proceeding presided over by Judge Schwartz). For this reason, Mr. Horvath also can be sentenced by whichever Judge ultimately presides over Mr. Steinberg's trial.

**KRAMER LEVIN NAFTALIS & FRANKEL** LLP
April 2, 2013
Page 8

        Another example where it was not obvious to the government to proceed by superseding indictment is its prosecution of tax shelters known as HOMER. The government filed an indictment as to two defendants, John Ohle and William Bradley, on November 13, 2008. *United States v. Ohle*, No. 08 Cr. 1109 (randomly assigned to Judge Sand, and then reassigned to Judge Rakoff in April 2010). Mr. Ohle's trial before Judge Rakoff began on May 10, 2010. The jury returned a guilty verdict on all counts on June 2, 2010. In *United States v. Daugerdas*, No. 09 Cr. 581 (assigned to Judge Pauley), the government filed an indictment against six defendants on June 9, 2009, alleging in part that Mr. Ohle was a co-conspirator on the HOMER transactions. *See* Indictment ¶¶ 18, 32. In these cases that involved the same underlying charges of fraud (in part), the government chose not to proceed against the *Daugerdas* defendants by superseding the indictment in *Ohle* despite Judge Sand's familiarity with the issues at the time.

        In other recent insider trading cases, the government also did not proceed by superseding indictment. For example, in *United States v. Rajaratnam*, No. 09 Cr. 1184, the government filed its complaint against Raj Rajaratnam on October 15, 2009, filed its indictment on December 15, 2009, and proceeded to trial in May 2011, with Judge Holwell presiding. Following the conviction of Raj Rajaratnam, the government pursued actions against other alleged co-conspirators, and again did so not by superseding the *Rajaratnam* indictment but by initiating new criminal cases. For example, on October 25, 2011, the government brought an original indictment against Rajat Gupta, alleging that he conspired with Mr. Rajaratnam to commit insider trading. *United States v. Gupta*, No. 11 Cr. 907. Despite Judge Holwell's continued presence on the bench at that time and familiarity with the issues, the case was assigned to Judge Rakoff.[7]

        There are many other such examples and no doubt examples where the government did proceed by superseding indictment. But the important point is that where the government proceeds by separate indictments in some cases but not others, including in cases where there is no possibility for a joint trial, a strong inference arises that the government is judge-shopping, particularly where, as here, the government has a significant incentive to proceed before a particular judge. At minimum, it creates the appearance of impropriety and unfairness in this case by allowing the government to proceed before the only judge to rule in its favor on a crucial legal issue.

---

[7] At the time, the Rules treated certain criminal and SEC enforcement actions as related. Nevertheless, if a superseding indictment had been the obvious way to proceed, presumably the government would have superseded the case, and then the parties and judges would have addressed Rule 13's then-existing exception to the standing rule against relating criminal cases.

**KRAMER LEVIN NAFTALIS & FRANKEL** LLP
April 2, 2013
Page 9

* * * * * *

  For all these reasons, we respectfully request that this case be assigned in accordance with the District's procedures set forth in Rule 6(b).

  Thank you for your consideration.

Respectfully submitted,

*[signature]*

Barry H. Berke

cc: Antonia M. Apps (*via email*)
   John T. Zach (*via email*)
   Assistant United States Attorneys