```
D7C8STEC
```

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
3  UNITED STATES OF AMERICA,
4            v.                            12 Cr. 121 (RJS)
5  MICHAEL STEINBERG,
6            Defendant.
7  ------------------------------x
8                                          July 12, 2013
                                           10:35 a.m.
9
   Before:
10
                   HON. RICHARD J. SULLIVAN
11
                                           District Judge
12
                         APPEARANCES
13
   PREET BHARARA
14      United States Attorney for the
        Southern District of New York
15 BY:  ANTONIA M. APPS
        HARRY A. CHERNOFF
16      Assistant United States Attorneys

17 KRAMER LEVIN NAFTALIS & FRANKEL, LLP
        Attorneys for Defendant
18 BY:  BARRY H. BERKE
        STEVEN S. SPARLING
19
20
21
22
23
24
25

1           (Case called)

2           THE DEPUTY CLERK:  For the government.

3           MS. APPS:  Antonia Apps for the government.  Good

4  morning, your Honor.  And with me at counsel table is Assistant

5  United States Attorney Harry Chernoff.

6           THE COURT:  Ms. Apps, Mr. Chernoff, good morning.

7           For the defendant.

8           MR. BERKE:  Good morning, your Honor.  Barry Berke and

9  Steven Sparling from Kramer Levin, and with us is Michael

10 Steinberg.

11          THE COURT:  Good morning to each of you.

12          Since we were last here I have received the defense

13 motion, basically two motions, one seeking basically a

14 questionnaire and some other remediation related to pretrial

15 publicity surrounding this case.  The second motion is for a

16 bill of particulars or I guess a final bill of particulars from

17 the government by a date certain, which I think was proposed as

18 August 19.  So I was going to set a schedule for the government

19 to respond.

20          With respect to the jury questionnaire, I don't

21 generally do a questionnaire.  I think I am likely to have

22 inquiries the way I did it in the last trial and the way I do

23 it in other trials that generate publicity.  I am certainly

24 going to inquire of the prospective jurors whether they have

25 seen any articles about this case or related cases.  If they

Case 1:12-cr-00121-RJS Document 295 Filed 08/09/13 Page 3 of 17      3
D7C8STEC

1  have, I would follow up with them and allow some questioning,
2  probably outside the presence of the other jurors.  So pretty
3  similar to the way we did it in the Newman trial is what I am
4  contemplating, but I won't prejudge it.  I will be happy to
5  hear the government's response to the motion or to the motions.
6       How long do you think you need to respond?
7       MS. APPS:  Your Honor, I would actually ask for two
8  weeks because I am out of the office next week.  But just to
9  throw something out there, I am not sure on the jury
10 questionnaire that we necessarily need a response.  I only say
11 that because we obviously briefed this exact same issue with
12 the Newman trial.  The law is the law.  The Court has
13 considerable discretion.
14      For the record, as your Honor well knows, the jury
15 selection process in the Newman and Chiasson case took two
16 days.  Your Honor incorporated questions requested by the
17 defense counsel, in terms of questioning the venire for
18 purposes of impaneling a jury.  When there was an affirmative
19 response to particular questions, your Honor took the
20 particular potential juror and the parties to the jury room and
21 extensively questioned them.  At times, as your Honor deemed
22 appropriate, you allowed individual questioning, in fact, by
23 the counsel at the table.
24      So, essentially, our response would be the law is the
25 law, which we have previously submitted to the Court, and you

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1  have considerable discretion, and the process that this Court
2  went through with the Newman and Chiasson trial was
3  particularly extensive.  Obviously, there was no jury
4  questionnaire, but it was a process that took two days and
5  considerable questioning of the jurors.  That would be our
6  response.  I only say two weeks because I said I am out of the
7  office for a period next week, but if the Court still needs a
8  response, I am happy to put in a respond.
9         THE COURT:  I will give you a chance to respond.  You
10 can respond however you see fit.  There are the two motions.
11 So July 26 is fine.
12        Mr. Berke, I will give you a week if you want to do a
13 reply.
14        MR. BERKE:  That's great.
15        THE COURT:  Again, unless there is truly something
16 different about this case from the other in terms of publicity,
17 there has been a little more since, obviously, but I am not
18 sure that there is a categorical difference, my intention is
19 probably to do it the way we did it before.  I thought it
20 worked pretty well.  I am not looking to shortcut or prevent
21 inquiry of jurors who might have formed impressions, far from
22 it.  I think it's very important that we make sure we have a
23 fair and impartial jury, and we should explore whether they
24 have read about either this case or cases like it and reading
25 about those things may have affected them.

1          MS. APPS:  The only thing on the second motion, as I
2     understand Mr. Berke's motion, we are merely disputing about a
3     date.  I don't think we are really disputing about the content
4     of the bill of particulars.  In fact, the government provided
5     to defense counsel on June 7 a bill of particulars that was
6     largely in the form of the final bill of particulars provided
7     in the Newman and Chiasson trial, and the only question is at
8     what point the government would be cut off from amending the
9     bill of particulars.  And if the Court is going to set a
10    schedule today, I think that essentially moots that second
11    motion.  The government had proposed one month before trial.
12    Defense counsel had proposed, I think, three months before
13    trial.  The Court will ultimately set its schedule, but I do
14    think that moots the motion.
15         THE COURT:  My contemplation was two months before
16    trial.  That's what I did last time I think.  That is what I
17    intended to do here.
18         Again, I think, if anything, Mr. Berke, you're sort of
19    farther along than the defendants were in that other case
20    because you have had the benefit of seeing what happened in
21    that case.  But my inclination is to say a bill of particulars
22    by September 18.  Maybe we should just have oral argument on
23    this if you think we don't need a full round of briefing.
24         MR. BERKE:  I am happy to address it.
25         Your Honor, you had one of the best lines I have read

1   yet about jury questionnaires.  I think you said you compared
2   it to root canal, except it took longer and hurt more.  I
3   appreciated that.  I have to say somebody who has had root
4   canal more than once, and not willingly, what I would say about
5   that is, yes, it can take longer, it can be painful, but
6   sometimes it's better than the alternatives.

7       What does concern me in this case is I do think the
8   press is materially different than the Newman/Chiasson trial
9   for a variety of reasons.  I think there has been a lot of
10  information completely extraneous to this case that has really
11  saturated the media that could be relevant if jurors know about
12  it, although it shouldn't be relevant to their consideration
13  because it's inadmissible, the press about SAC, Steve Cohen,
14  other SAC people who pled guilty, the assertion of the Fifth
15  Amendment by the founder of the firm, rumors by the press.
16  There has been a lot of it.  We think the nature of it is that
17  it is likely that jurors will have seen it.

18      What I would suggest on questionnaires, and I
19  understand your Honor's position, I have done it in ways in
20  other cases that I think really can save time.  If it is done
21  before they come here for day one, you have enough jurors in my
22  experience that although, certainly, Mr. Chernoff and Ms. Apps
23  are going to disagree about a lot of things, my guess is when
24  we get responses, there will be a lot of jurors that we can
25  agree on, either because of hardship, for cause, and we can

1    take care of a lot of information that will more than make up

2    in my experience the additional time that we may get from

3    having to follow up on things in the questionnaire.

4              Again, our first request would be a questionnaire, but

5    I think there has been a lot of things written in cases and

6    also in articles that when jurors are asked in a front of a

7    group of people, is there anything about articles and the like

8    that will make you concerned that you couldn't be fair, people

9    are very reluctant to answer yes.  Whereas if we have a

10   questionnaire -- I am talking about a very limited

11   questionnaire, focused really on this pretrial publicity issue.

12   If they are asked, have you seen the articles about Michael

13   Steinberg, SAC, or Steve Cohen, you can even say related to

14   insider trading, what have you seen, what do you recall seeing

15   or hearing, where do you recall seeing or hearing it, did it

16   cause you to form any opinions?  And that's the starting point.

17   That doesn't mean that person obviously can't serve.

18             THE COURT:  I don't know why I couldn't just ask those

19   questions in open court and follow up, at least the first two,

20   and then we follow up with jurors who have answered yes, if

21   they have seen such articles.

22             MR. BERKE:  Again, our first preference would be the

23   questionnaire.  But if your Honor were not inclined to do that,

24   and we are going to do the individualized questioning, we would

25   suggest exactly that.  Judge Holwell in Rajaratnam, I think he

1    asked those exact questions, the first two questions, in open

2    court.  Have you seen anything about the topic that could be

3    relevant?  Obviously, we can agree what that can be.  And where

4    did you see it?  For each juror who answered yes, at that point

5    they did individualized questioning at the bench.  What do you

6    recall seeing specifically and do you have an opinion about it?

7             THE COURT:  I think we basically did that in the last

8    trial.  I think what we did, which made it more efficient, is I

9    inquired as to whether people have seen stories about the

10   defendants that touched on the case, and then noted who raised

11   their hands, and then I asked other questions and often people

12   raised their hands to other questions, and then we did a jury

13   room voir dire, out of the presence of the rest of the venire

14   on all of the subjects, and I think it was more efficient than

15   shuttling back and forth with the same prospective jurors for

16   multiple questions.  I don't know if you have looked at the

17   transcript.

18            MR. BERKE:  I did, your Honor.

19            THE COURT:  I thought it worked pretty well.  If there

20   is something you want to tweak, I am happy to hear it.  We have

21   time because I am not going to even ask the parties to submit

22   proposed requests to charge and voir dire for a couple of

23   months.  But I am on to this.  This is important and it's not

24   part of every case.  Not every case generates any publicity.

25   So I think we are all on the same page.  It's just a matter of

1  how we are going to execute it.

2  MR. BERKE:  To the extent the media is materially
3  different or other issues come up, we will obviously bring that
4  to your attention.

5  THE COURT:  Let's address whether we need further
6  briefing on this.  It sounds like Ms. Apps doesn't want to do
7  any further briefing.  She is relying on the prior briefs and
8  basically pitching that we do it the way we did it in the
9  Newman trial.

10  MR. BERKE:  Unless something materially changes, we
11  don't think we need to give you any further submissions.

12  THE COURT:  As we get closer to the date of trial,
13  when you submit the proposed voir dire, if you want to
14  re-address some of these issues in light of changed
15  circumstances I think that will be fine.

16  Now, with respect to bill of particulars, anything you
17  want to say on that score?

18  MR. BERKE:  What I would say about that is, I
19  appreciate your Honor's statement that we did have the benefit
20  of the bill of particulars that was provided in the
21  Newman/Chiasson case.  I think Ms. Apps said, when talking
22  about trial dates and the benefits we have from that, she said
23  they are going to be relying on the same one, with the
24  exception of one or two names.  I believe they have made those
25  one or two changes based on additional information.  Certainly,

1  we have some additional information from Mr. Horvath.

2  What I would say, consistent with the notion that Ms.
3  Apps said that they were going to rely on the same bill of
4  particulars, we have a trial date in November, what concerns
5  me -- and I also appreciate the debate that happened at the
6  last trial that the government can't disclose trades they don't
7  know about.  I am only asking for what they know about and they
8  are intending to introduce at trial.  But what concerns me,
9  both as to stocks and trades as well as co-conspirators, is
10 that the government at this point, based on not only the last
11 trial but their representations, should be able to give a final
12 list we say three months before trial, August 19.  And it's
13 important to us because, to the extent the government were to
14 add a new stock or a new trade or co-conspirators that are
15 different than what they have now, it will require considerable
16 additional work.

17 THE COURT:  I get that.  The issue is I think sort of
18 what is the pencils down point.  I certainly am presuming the
19 government is going to turn over the additional co-conspirators
20 and additional trades as they learn them.

21 MS. APPS:  Absolutely.

22 THE COURT:  There is no hiding the ball.  It's not
23 that kind of a case.

24 MS. APPS:  As your Honor knows, that's never been the
25 modus operandi for the government in any of these cases.  Just

Case 1:12-cr-00121-RJS   Document 295   Filed 08/09/13   Page 11 of 17     11
D7C8STEC

1   to be clear, the concern for the government is obviously, as we
2   continue to review the databases and the documents and we find
3   additional documents, the concern is there might be incremental
4   documents that support adding a stock or two, or adding a
5   trade, but this is at the margins.  It really is at the
6   margins, and it's just to preserve our ability to continue to
7   review documents.  But I am sure Mr. Berke will make the same
8   argument at this trial.  When we had not listed a stock on a
9   bill of particulars, but we found a particularly incriminating
10  document that listed stock ABC Company, we then had to hold a
11  debate in front of your Honor about whether or not we were
12  permitted to use that particular document, and the rulings
13  depended on the circumstances and the facts.
14          So that's really all we are trying to do.  We are not
15  trying to hide the ball.  We are just trying to preserve our
16  ability to continue to review documents and not have it affect
17  the exhibit deadline three months before trial.  As soon as we
18  learn of additional information over the summer, we will
19  provide it to Mr. Berke.  Again, I really do think it's very
20  small, it's marginal.  The incremental stocks and
21  co-conspirators we may add, it will not create sort of an
22  avalanche of work that Mr. Berke is concerned about.
23          THE COURT:  If it does create an avalanche of work,
24  whether by design or just that's the way it works, I will
25  entertain a motion to adjourn the trial, which I don't want to

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1     do, and hopefully I won't have to, but if that's the situation
2     Mr. Berke finds himself in, that on September 18 he gets 25 new
3     names of stocks and ten new names of co-conspirators, then we
4     will see.
5             MS. APPS:  That's not happening.
6             THE COURT:  I don't think that's going to happen.  I
7     would be disappointed if it did.
8             So I think a bill of particular date of September 18,
9     that's the date for the final bill of particulars, is
10    appropriate.
11            Let me tell you then the schedule leading up to the
12    trial.  Final bill of particulars by September 18.  The
13    government motions in limine, 404(b) notice, and exhibit and
14    witness lists, preliminary exhibit and witness lists by October
15    15.  The defense response and motions in limine and their own
16    exhibit and witness lists by October 25.  The government
17    response to any defense motions in limine by November 1.  Joint
18    requests to charge and joint proposed voir dire by November 6.
19    And then a final pretrial conference November 14 at 10 a.m.
20    And then we will begin jury selection on November 18.  OK.
21            MS. APPS:  Just one other thing.  Experts, to the
22    extent that the defense intends to put on an expert.  The
23    government doesn't anticipate putting on an expert.  If we
24    wanted to put one on, we would give notice too.  If we could
25    have a date for that.

1             The last thing is reverse 3500.  If the defendants
2    know they are going to put on a particular witness, if we could
3    have the 3500 in advance of that.  I will throw out a date for
4    a week before trial, but I will leave it for your Honor's
5    consideration.
6             THE COURT:  As you know, and usually the shoe is on
7    the other foot, I can't order parties to produce 3500 any time
8    basically before the cross, but the better practice is that we
9    produce these things early so that counsel can make use of them
10   and so that we have an efficient trial.
11            So I think we should really focus on the government's
12   3500 material first since that's going to be the bulk of the
13   material.  When were you planning to turn over that stuff?
14            MS. APPS:  If I heard you correctly, I think you said
15   our exhibit and witness list was due October 15.  We would
16   propose handing over all 3500 material at that time.
17            THE COURT:  That's pretty good.
18            What do you think, Mr. Berke?  I can't make them do
19   anything more.  I certainly have had situations where the
20   government has waited a lot longer than that.
21            MR. BERKE:  The only thing I would say is we do know
22   more than we would have because of the last trial.  I would say
23   if the government were able to produce 3500 material for the
24   one witness who was not part of the last trial, which is
25   critical here, John Horvath, a little earlier.  If your Honor

1    would encourage 3500 for that witness for October 1, I think

2    that would be tremendously helpful for the preparation.

3             THE COURT:  I think a month before trial is, I think,

4    pretty good, especially since much of it is already available.

5    It's just a handful of new witnesses.  In any event, all I can

6    do is ask and beseech at this point.  It doesn't matter what I

7    say, but it seems October 15 is a pretty reasonable period of

8    time.

9             By the same token then, you should be producing on a

10   timetable that's designed to make sure the trial goes quickly

11   any 3500 material that you have related to your witnesses, if

12   you call any witnesses.

13            MR. BERKE:  We will do that.

14            THE COURT:  Of course, I don't need to tell you this,

15   but Mr. Steinberg should be reminded he has no obligation to

16   call any witnesses or put on any proof.  The burden is on the

17   government, not on you, so you don't have to do a thing.  If

18   you do wish to call witnesses and put on a case, then the

19   expectation is that you provide things to the government so

20   that they will be able to cross-examine and make the trial go

21   efficiently.  That's really more about trial efficiency and

22   making sure we don't waste the time of the jury.

23            So I will issue an order that memorializes these

24   dates, but that's the schedule that I had in mind and it sounds

25   to me like everybody is in the same ballpark.

1              Experts.  Are you planning to call experts?

2              MR. BERKE:  We don't know yet, your Honor.  It's

3     certainly possible, but we have not yet made that decision.

4              THE COURT:  When do you intend to give notice on

5     experts?

6              MR. BERKE:  In thinking about it, we did look at the

7     dates that your Honor set for Newman/Chiasson.  I know you had

8     the government identify whether they were going to call experts

9     at the same time they gave their 404(b) notice and proposed

10    exhibit list, and then have the defense provide similar notice

11    when the defendants responded to the government's motions in

12    limine and provided their list.  So I would propose a similar

13    schedule, that the government has to identify whether they are

14    going to call any experts by October 15 and the defense has to

15    do the same by October 25.

16             THE COURT:  It sounded like Ms. Apps is saying she is

17    not calling any experts.

18             MS. APPS:  I don't think so, but we are happy to keep

19    the dates.

20             THE COURT:  The 15th for the government, the 25th for

21    the defense.

22             MS. APPS:  Perfectly acceptable.

23             THE COURT:  That sounds good.

24             Well, that's what I intended to cover today.  Is there

25    anything else that we should discuss while we are all here?

1           Ms. Apps?

2           MS. APPS:  Just to exclude time when your Honor is
3   ready.

4           THE COURT:  OK.  Mr. Berke.

5           MR. BERKE:  Nothing further from us.

6           THE COURT:  Any objection to excluding time I guess
7   between now and the trial date?

8           MR. BERKE:  No objection at all.

9           THE COURT:  Mr. Steinberg, as I have told you, you
10  have a right to a speedy trial and the presumption is that a
11  trial would be had within 70 days of the indictment.  Of
12  course, everybody recognizes not all trials are the same.  Some
13  are more complicated than others and this is a paper intensive
14  and probably labor intensive trial relative to the general
15  scheme of trials.  So it seems to me perfectly reasonable to
16  exclude the time between today and the trial date from
17  computation under the Speedy Trial Act.  You all have a lot to
18  do.  In fact, Mr. Berke asked for more time originally.  So I
19  think it will be a busy couple of months.  I think your
20  interest and the public's interest in a speedy trial is
21  outweighed by the need to give you time to prepare for trial.
22  So the 18th will be the trial date, barring something
23  unforeseen, and the time between now and then won't count
24  towards the 70 days that the law prescribes.

25          So if anybody needs to come together before our next

1  conference on November 14, let me know.  Otherwise I will see
2  you then and I will hear from you before then.
3           Great.  Thanks very much.  Have a nice summer.
4           (Adjourned)
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300