UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────┐
│ USDS SDNY                    │
│ DOCUMENT                     │
│ ELECTRONICALLY FILED         │
│ DOC #: _____       │
│ DATE FILED: 11-12-13         │
└─────────────────────────────┘
```

UNITED STATES OF AMERICA

    -v-

MICHAEL STEINBERG,

          Defendant.

No. 12 Cr. 121 (RJS)
ORDER

RICHARD J. SULLIVAN, District Judge:

The Court is in receipt of the attached letter, motion, and supporting documents submitted by Defendant. Defendant's motion requests (1) a three month adjournment of his trial to allow the recent publicity surrounding SAC's guilty plea to dissipate; and (2) "individualized, searching questioning of all potential jurors who have been exposed to" recent SAC publicity. In addition, Defendant requests permission to file his motion under seal. For the reasons set forth below, the Court denies the sealing request, denies the request for an adjournment, and grants the request for individualized questioning of all jurors who have been exposed to SAC publicity.

There is a general presumption of open access to judicial records, especially where the records are relevant to a Court's determination of a litigant's substantive rights. *United States v. Amodeo*, 71 F.3d 1044, 1049–50 (2d Cir. 1995). The Court sees no factors to counterbalance that general presumption in this case. Defendant points to the risk of pretrial publicity, but there is no reason why this motion presents any greater risk for pretrial publicity than any other motion. Accordingly, the request to seal the motion is denied.

The Court acknowledges that there has been a great deal of pretrial publicity relating to this case, especially within the last several weeks. The Court is doubtful, however, that a three-

month adjournment would be helpful in addressing that publicity.  Even assuming that the public is forgetful enough to be affected by a three-month delay, there is a strong likelihood that this and related cases will still be in the news three months from now.  Mathew Martoma is scheduled to go to trial in January and SAC is scheduled to be sentenced in March.  Unfortunately, there will be publicity no matter when the trial is held.  Accordingly, the Court denies the request to adjourn the trial.

Nevertheless, the Court agrees that the amount of publicity surrounding this case risks prejudicing the jury.  Accordingly, the Court grants the request for individualized questioning of all jurors who have been exposed to SAC publicity.  As it has done in previous cases, the Court will individually question, outside of the presence of other jurors, any juror who has been exposed to any publicity regarding this or any related case.

SO ORDERED.

Dated:      November 12, 2013
            New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

2

# KRAMER LEVIN NAFTALIS & FRANKEL LLP

BARRY H. BERKE
PARTNER
PHONE 212-715-7560
FAX 212-715-7660
BBERKE@KRAMERLEVIN.COM

November 11, 2013

**BY EMAIL AND HAND DELIVERY**

The Honorable Richard J. Sullivan
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re: *United States v. Michael Steinberg*, S4 12 Cr. 121 (RJS)

Dear Judge Sullivan:

Enclosed and attached please find Mr. Steinberg's Supplemental Motion for Remedial Measures to Address Pretrial Publicity, along with supporting papers.

We are mindful of the risk that this motion may generate additional pretrial publicity. Accordingly, we respectfully request that the Court consider filing these and any responsive papers under seal for a short period or permitting all such papers to not be filed publicly until these issues are resolved. *See United States v. Rajaratnam*, 708 F. Supp. 3d 371, 374-75 (S.D.N.Y. 2010) (allowing filing under seal of Title III material to protect, *inter alia*, defendants' fair trial interests). We of course recognize that we likely will be discussing these issues in open court at the Pretrial Conference scheduled for Thursday, November 14.

The government has indicated that they oppose our request to file these papers under seal or delay publicly filing them.

We will await the Court's direction. Thank you for your consideration.

Respectfully submitted,

Barry H. Berke

Enclosures

cc:   AUSA Antonia M. Apps (by e-mail)
      AUSA Harry Chernoff (by e-mail)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————— x
                                                  :
UNITED STATES OF AMERICA,                         :
                                                  :          **ECF CASE**
            v.                                    :
                                                  :          S4 12 Cr. 121 (RJS)
MICHAEL STEINBERG,                                :
                                                  :          <u>**NOTICE OF MOTION**</u>
            Defendant.                            :
                                                  :
——————————————————— x

PLEASE TAKE NOTICE that, upon the declaration of Barry H. Berke, Esq., dated

November 11, 2013, the attached exhibits, the accompanying Memorandum of Law, and all prior

papers and proceedings in this action, defendant Michael Steinberg, by his undersigned

attorneys, will move this Court before the Honorable Richard J. Sullivan, at the United States

Courthouse, 40 Foley Square, New York, New York, at a date and time to be determined by the

Court, for an order granting remedial measures to address the risk of prejudice from the

extraordinary pretrial publicity surrounding this case.

Dated: New York, New York
       November 11, 2013

                                        Respectfully submitted,

                                        KRAMER LEVIN NAFTALIS & FRANKEL LLP

                                        By:  _____
                                             Barry H. Berke
                                             Steven S. Sparling
                                             1177 Avenue of the Americas
                                             New York, New York   10036
                                             (212) 715-9100

                                        *Attorneys for Defendant Michael Steinberg*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

UNITED STATES OF AMERICA,

             v.

MICHAEL STEINBERG,

          Defendant.

———————————————————— x

         **ECF CASE**

         S4 12 Cr. 121 (RJS)

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANT MICHAEL STEINBERG'S SUPPLEMENTAL MOTION
## FOR REMEDIAL MEASURES TO ADDRESS PRETRIAL PUBLICITY

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................................... ii

INTRODUCTION ..................................................................................................... 1

BACKGROUND ....................................................................................................... 1

ARGUMENT ........................................................................................................... 15

CONCLUSION ........................................................................................................ 21

# TABLE OF AUTHORITIES

CASES                                                                          Page

*Irvin v. Dowd,*
    366 U.S. 717 (1961)..................................................................................................15

*Marshall v. United States,*
    360 U.S. 310 (1959)..................................................................................................18

*Rideau v. Louisiana,*
    373 U.S. 723 (1963)..................................................................................................18

*Sheppard v. Maxwell,*
    384 U.S. 333 (1966)......................................................................................15, 20, 21

*Skilling v. United States,*
    130 S. Ct. 2896 (2010)..................................................................................17, 19, 20

*United States v. Bonanno,*
    177 F. Supp. 106 (S.D.N.Y. 1959) ....................................................................15, 20

*United States v. Colabella,*
    448 F.2d 1299 (2d Cir. 1971)....................................................................................16

*United States v. Delaney,*
    199 F.2d 107 (1st Cir. 1952)................................................................................20-21

*United States v. Dioguardi,*
    147 F. Supp. 421 (S.D.N.Y. 1956) ..........................................................................21

*United States v. Engleman,*
    489 F. Supp. 48 (E.D. Mo. 1980)..............................................................................20

*United States v. Liddy,*
    509 F.2d 428 (D.C. Cir. 1974) ..................................................................................16

*United States v. Lord,*
    565 F.2d 831 (2d Cir. 1977)......................................................................................18

*United States v. Maldonado-Rivera,*
    922 F.2d 934 (2d Cir. 1990)......................................................................................19

*United States v. Moody,*
    762 F.Supp. 1485 (N.D. Ga. 1991) ..........................................................................20

*United States v. Pomponio,*
    517 F.2d 460 (4th Cir. 1975) ....................................................................................18

# TABLE OF AUTHORITIES (cont'd)

Page

*United States v. Sabhnani*,
    599 F.3d 215 (2d Cir. 2010)..............................................................................................18, 19

*United States v. Trapnell*,
    638 F.2d 1016 (7th Cir. 1980) ...............................................................................................18

ARTICLES AND PRESS STATEMENTS

Daniel Beekman, *SAC Capital Advisors reaches $1.8 billion Deal with Feds over
    Insider Trading Charges*, N.Y. Daily News, Nov. 4, 2013 ....................................................12

Preet Bharara, U.S. Att'y, Prepared Remarks About *U.S. v. S.A.C. Capital Advisors
    LP, et al.*, July 25, 2013 ....................................................................................................4, 8

Dana Blankenhorn, *SAC Capital Is Finally Busted* (Nov. 5, 2013, 10:09 a.m) ...........................13

Dina El Boghdady, *SAC Agrees to Plead Guilty to Insider Trading,
    Pay $1.2 Billion Penalty*, Wash. Post, Nov. 4, 2013 ..............................................................14

Jean Eaglesham & Jenny Strasburg, *SEC Is Seeking to Ban Cohen*, Wall St. J., July
    19, 2013.........................................................................................................................3

Agustino Fontevecchia, *Preet Bharara Isn't Done With Steve Cohen and SAC
    Capital*, Forbes, Nov. 4, 2013.................................................................................................12

Graphic, The Cohen Connections, N.Y. Times, Nov. 4, 2013 .......................................................11

Sam Gustin, *SAC Capital Indicted, in a Blow to Billionaire Steven A. Cohen*, Time,
    July 25, 2013...........................................................................................................................14

Peter J. Henning, *The Impact of the Settlement on SAC Capital and Cohen*, N.Y.
    Times, Nov. 4, 2013................................................................................................................12

Patricia Hurtado, *SAC Agrees to Plead Guilty to End Insider-Trading Case*,
    Bloomberg, Nov. 14, 2013 1:22 p.............................................................................................13

*It's Only Money*, Wall St. J. (Nov. 15, 2013) .............................................................................13

Peter Lattman & Ben Protess, *$1.2 Billion Fine for Hedge Fund in Insider Case*, N.Y.
    Times, Nov. 5, 2013................................................................................................................11

Peter Lattman & Ben Protess, *S.E.C. Charges Are the Latest Test for Billionaire*,
    N.Y. Times, July 19, 2013 ........................................................................................................2

# TABLE OF AUTHORITIES (cont'd)

**Page**

Peter Lattman & Ben Protess, *SAC Is Indicted, and Called a Magnet for Cheating*, N.Y Times, July 25, 2013 ............................................................................................5

Christopher M. Matthews, *Civil Portion of SAC Deal Gets Judge's OK*, Wall St. J. (Nov. 6, 2013)...............................................................................................................13

Tim Mullaney, *SAC to Pay Record $1.8B in Insider Trading Case*, USA Today, Nov. 4, 2013.............................................................................................................14

Larry Neumeister, *SAC Capital Pleads Guilty in NY in $1.8B Deal*, Miami Herald, Nov. 8, 2013.............................................................................................................14

Dunstan Prial, *SAC in Landmark Settlement with Justice Department*, FoxBusiness, Nov. 4, 2013.............................................................................................................12

Ben Protess & Peter Lattman, *SAC Deal Could End Its Advisory Business*, N.Y. Times, Oct. 18, 2013..................................................................................................6

Ben Protess & Peter Lattman, *SAC is Near Guilty Plea, But Cases Aren't Shut*, N.Y. Times, Nov. 4, 2013.................................................................................................12

Ben Protess & Peter Lattman, *After a Decade, SAC Capital Blinks*, N.Y. Times, Nov. 5, 2013....................................................................................................................11

Kevin Roose, *It's Doomsday for SAC Capital*, N.Y. Mag., July 25, 2013 ....................................6

Barbara Ross & Bill Hutchinson, *Feds Charge Billionaire Steven A. Cohen's Hedge Fund with Insider Trading*, N.Y. Daily News, July 25, 2013....................................6

Kara Scannell, *Prosecutors Give SAC Settlement Ultimatum*, Fin. Times, Oct. 8, 2013 ...............6

James B. Stewart, *SAC: A Textbook Case of Corporate Prosecution*, N.Y. Times, Nov. 5, 2013.............................................................................................................13

Jenny Strasburg & James Sterngold, *SAC Hit with Criminal Case*, Wall St. J., July 25, 2013...................................................................................................................5

Andrew Tangel, *U.S. Accuses Hedge Fund SAC Capital Advisors of Insider Trading*, L.A. Times, July 25, 2013...........................................................................................14

Kaja Whitehouse, *SAC Indicted by US, Charge Decade-Long Insider Scam*, N.Y. Post, July 27, 2013.......................................................................................................6

Kaja Whitehouse, *SEC Finally Digs Claws into SAC Honcho Steve Cohen*, N.Y. Post, July 19, 2013...................................................................................................3

## TABLE OF AUTHORITIES (cont'd)

Page

Jia Lynn Yang, *U.S. Files Criminal Fraud Charges Against SAC Capital*, Wash. Post,
July 25, 2013.............................................................................................................14

Press Conference Visuals, U.S. Att'y's Office, S.D.N.Y., *Manhattan U.S. Attorney
and FBI Director-In-Charge Announce Insider Trading Charges Against Four
SAC Capital Management Companies and SAC Portfolio Manager*, July 25, 2013.................5

Press Release, FBI, *Manhattan U.S. Attorney Announces Guilty Plea Agreement with
SAC Capital Management Companies*, Nov. 4, 2013...........................................10

Press Release, FBI, *Statement of Assistant Director in Charge George Venizelos at
Press Conference Announcing Criminal Charges Against SAC Capital*,
July 25, 2013................................................................................................4

Press Release, U.S. Att'y's Office, S.D.N.Y., *Manhattan U.S. Attorney Announces
Guilty Plea Agreement with SAC Capital Management Companies*, Nov. 4, 2013 .................9

Press Release, U.S. Att'y's Office, S.D.N.Y., *Manhattan U.S. Attorney and FBI
Assistant Director-In-Charge Announce Insider Trading Charges Against Four
SAC Capital Management Companies and SAC Portfolio Manager*, July 25, 2013.................4

Press Release, U.S. Att'y's Office, S.D.N.Y., *Manhattan U.S. Attorney and FBI
Assistant Director-in-Charge Announce Insider Trading Charges Against Hedge
Fund Portfolio Manager*, Mar. 29, 2013 .................................................................4

Press Release, U.S. Att'y's Office, S.D.N.Y., *SAC Capital Management Companies
Plead Guilty To Insider Trading Charges In Manhattan Federal Court*,
Nov. 8, 2013................................................................................................10

*SAC Capital Pleads Guilty in Insider Trading Case*, L.A. Times, Nov. 8, 2013 .........................14

**OTHER AUTHORITIES**

28 C.F.R. § 50.2(b)(2)...................................................................................7

ABA Standards on Fair Trial and Public Discourse § 8-5.3 (4th ed. 2013) ...................................17

ABA Standards on Fair Trial and Public Discourse § 8-5.4 (4th ed. 2013) ...................................17

S.D.N.Y. Local Criminal Rule 23.1.............................................................................7

United States Attorneys' Manual § 1-7.500 .................................................................7

## INTRODUCTION

Defendant Michael Steinberg respectfully submits this memorandum of law in support of his supplemental motion for remedial measures to address the risk of prejudice from the extraordinary pretrial publicity that has swirled around this case and the related investigations and prosecutions of S.A.C. Capital Advisors, L.P. ("SAC") – including, most significantly, SAC's guilty plea last week. If press reports are accurate, the timing of these most recent and widely publicized developments is the direct result of the government's insistence that SAC plead guilty before Mr. Steinberg stands trial, or else face even more severe demands. Whatever drove the timing, the result is that Mr. Steinberg now faces jury selection on the heels of an extraordinarily prejudicial and plainly inadmissible development – SAC's admission of guilt. Taken in combination with the prior, widespread, and prejudicial pretrial publicity, these most recent developments leave Mr. Steinberg no alternative but to seek a combination of remedies to protect and ensure his right to a fair trial before an impartial jury. Specifically, and for the reasons set forth below, Mr. Steinberg respectfully seeks: (1) a three-month continuance of his trial date to allow the intense media storm surrounding SAC's guilty plea to subside, and (2) searching and individualized questioning of any prospective juror who may have been exposed to any aspect of this storm of SAC-related publicity.

## BACKGROUND

We first expressed concern that media scrutiny of SAC and Mr. Steinberg would interfere with Mr. Steinberg's fair trial rights in the Pretrial Motion we filed on July 8, 2013. Mem. of L. in Support of Def. Michael Steinberg's Pretrial Mots., ECF No. 287. Our filing (which we incorporate by reference here) described the relevant media coverage to date, noting its breadth and highly prejudicial content, including its constant disparagement of SAC and its purportedly corrupt culture; the frequent association of Mr. Steinberg with other SAC personnel who have

been convicted of or charged with insider trading; and the routine descriptions of Mr. Steinberg's

close relationship with Steven Cohen and prominence at SAC. We asked the Court to implement

remedial measures to protect Mr. Steinberg's right to have his case decided by a fair and

impartial jury – specifically, a juror questionnaire and individualized questioning of any potential

jurors aware of the prejudicial media reports. We also requested leave to seek additional relief as

necessary in the event that the prejudicial media coverage continued or intensified in the weeks

preceding Mr. Steinberg's scheduled trial date. This request was based on our concern that the

level of adverse publicity might increase over the ensuing months for reasons other than the

timing of Mr. Steinberg's trial. We explained that the scope and content of the press coverage

could be impacted by whether the government made charging decisions regarding Mr. Cohen

and/or SAC; whether, if, because of the investigations, investors of SAC took actions

significantly impacting SAC's business prospects; whether there were developments involving

other former SAC employees; and other developments generating additional press interest.

Since our July filing, all of what we were concerned about has actually occurred. The

coverage has in fact intensified and turned out to be far worse than we anticipated. Significantly,

the government bears substantial responsibility for both the timing and inflammatory nature of

this continuing negative pretrial publicity.

Specifically, a few weeks after our submission, the SEC instituted administrative

proceedings against Mr. Cohen, alleging, among other things, a failure to supervise Mr.

Steinberg. This event was widely covered in the press, with the allegations relating to Mr.

Steinberg routinely mentioned.[1] Then, SAC and related entities, including Sigma Capital

---

[1]   *See, e.g.*, Peter Lattman & Ben Protess, *S.E.C. Charges Are the Latest Test for Billionaire*,
N.Y. Times, July 19, 2013, at A1 ("The firm's compliance policies and procedures have come
under fire as many former employees have found themselves under government scrutiny.

Management, LLC, the unit for which Mr. Steinberg worked, were indicted in connection with

alleged insider trading offenses committed by "numerous employees . . . over the span of more

than a decade."[2] Adopting an approach similar to the one it employed when announcing Mr.

Steinberg's indictment,[3] the United States Attorney's Office ("USAO") issued a press release

and also held a press conference in which highly prejudicial extrajudicial statements were made

suggesting strong confidence in SAC's guilt and implying that the hedge fund was a "den[] of

---

Including Mr. Martoma and Mr. Steinberg, nine former SAC employees have been tied to insider trading while at the firm; four have pleaded guilty to criminal charges."); Jean Eaglesham & Jenny Strasburg, *SEC Is Seeking to Ban Cohen*, Wall St. J., July 19, 2013 (including an interactive graphic listing Mr. Steinberg as one of the "SAC Employees Linked to Insider-Trading Probe"); Kaja Whitehouse, *SEC Finally Digs Claws into SAC Honcho Steve Cohen*, N.Y. Post, July 19, 2013 (quoting the allegation that "Cohen 'failed to take reasonable steps to investigate and prevent' securities violations by former portfolios managers Mathew Martoma and Michael Steinberg"; "Steinberg, who worked at SAC's Sigma Capital unit, is facing trial in November for trading shares of Dell and Nvidia on allegedly illegal tips he received from his analyst Jon Horvath, who has pleaded guilty and agreed to cooperate"). These articles are attached hereto as Exhibit A to the Declaration of Barry H. Berke, Esq. ("Berke Decl.").

[2]   *United States v. S.A.C. Capital Advisors, L.P., et al.*, No. 13-Cr-00541-LTS (S.D.N.Y. July 23, 2013), ECF No. 1.

[3]   As noted in our July 8 submission, in a statement issued the day of Mr. Steinberg's arrest and widely quoted in the press, the USAO invoked popular anti-Wall Street sentiments in furtherance of comparing Mr. Steinberg's conduct to those of other Wall Street insiders convicted by that office:

> As alleged, Michael Steinberg was another Wall Street insider who fed off a corrupt grapevine of proprietary and confidential information cultivated by other professionals who made their own rules to make money. With lightning speed in at least one case, Mr. Steinberg seized on the opportunity to cash in and tried to keep his crime quiet, as charged in the Indictment. As alleged, where once Mr. Steinberg answered only to his own rules, now he will have to answer to the rule of law, like so many others before him.

Press Release, U.S. Att'y's Office, S.D.N.Y., *Manhattan U.S. Attorney and FBI Assistant Director-in-Charge Announce Insider Trading Charges Against Hedge Fund Portfolio Manager*, Mar. 29, 2013 (Berke Decl., Ex. C).

corruption."[4]  Some of the most inflammatory and guilt-assuming of these statements by the U.S.

Attorney took place during the press conference, including that:

- "S.A.C. trafficked in inside information on a scale without any known precedent in the history of hedge funds."

- SAC "is a firm with zero tolerance for low returns but seemingly tremendous tolerance for questionable conduct."

- "S.A.C. became, over time, a veritable magnet for market cheaters."

- "[W]hen so many people from a single hedge fund have engaged in insider trading, it is not a coincidence."

- "S.A.C. seeded itself with corrupt traders, empowered to engage in criminal acts by a culture that looked the other way despite red flags all around."[5]

Similar statements were set forth in the USAO's press release and posted to the SDNYnews

Twitter feed.[6]  The FBI's publicly issued statements echoed these themes, including that SAC

"through the actions and inactions of its management—not only tolerated cheating, it encouraged

it."[7]

Additionally, at the press conference, Mr. Steinberg was prominently featured by name,

along with other SAC personnel who have been charged with and in some instances have pled

guilty to insider trading.  The United States Attorney stood next to a visual aid entitled "Insider

---

[4]    Preet Bharara, U.S. Att'y, Prepared Remarks About *U.S. v. S.A.C. Capital Advisors LP, et al.*, July 25, 2013 (Berke Decl., Ex. C at 5-8).

[5]    *Id.*

[6]    Press Release, U.S. Att'y's Office, S.D.N.Y., *Manhattan U.S. Attorney and FBI Assistant Director-In-Charge Announce Insider Trading Charges Against Four SAC Capital Management Companies and SAC Portfolio Manager*, July 25, 2013 (Berke Decl., Ex. C at 1-4); *see also* Berke Decl., Ex. C at 10-13 (selected tweets from @SDNYnews, twitter.com, July 25, 2013).

[7]    Press Release, FBI, *Statement of Assistant Director in Charge George Venizelos at Press Conference Announcing Criminal Charges Against SAC Capital*, July 25, 2013 (Berke Decl., Ex. C at 14-15).

Trading at SAC: Convicted or Charged Employees."[8]  The demonstrative prominently showed
Mr. Steinberg's name, in green, as having been indicted among six other SAC employees,
indicated in red, who have pled guilty and one other, also in green, who has been indicted
(Mathew Martoma).  While an asterisk appeared next to Mr. Steinberg's name (and Mr.
Martoma's), it was only in tiny print at the bottom that the USAO half-heartedly disclosed that:
"Charges are pending as to these defendants who are presumed innocent."[9]

     Needless to say, this press conference and the USAO's inflammatory and sweeping
condemnation of everything SAC-related were widely picked up and echoed in the massive press
coverage that followed, including scores of news stories in print, online, and on television and
radio news.  For example, the *New York Times* reported that:

> [F]ederal prosecutors . . . portrayed the "rampant insider trading" at SAC as
> having no equal, pointing to more than a decade of abuses that took place while
> managers turned a blind eye.  The scheme at SAC, said Preet Bharara, . . . was
> "substantial, pervasive and on a scale without known precedent in the history of
> hedge funds."[10]

The *Wall Street Journal*, in an online article containing links to the USAO press conference,
wrote that "[t]he charges, and an accompanying news conference by federal investigators,
painted a picture of a firm allegedly constructed and managed as a high-powered insider-trading
machine, with staffers paid huge sums to gain an illegal 'edge' and a compliance staff that
helped hide the allegedly manipulative activity."[11]  According to reports, "'SAC not only

---

[8]    Press Conference Visuals, U.S. Att'y's Office, S.D.N.Y., *Manhattan U.S. Attorney and FBI
Director-In-Charge Announce Insider Trading Charges Against Four SAC Capital Management
Companies and SAC Portfolio Manager*, July 25, 2013 (Berke Decl., Ex. C at 9).

[9]    *Id.*

[10]    *See* Peter Lattman & Ben Protess, *SAC Is Indicted, and Called a Magnet for Cheating*, N.Y
Times, July 25, 2013 (Berke Decl., Ex. D at 1-3).

[11]    Jenny Strasburg & James Sterngold, *SAC Hit with Criminal Case*, Wall St. J., July 25, 2013
(Berke Decl., Ex. D at 4-8).

tolerated cheating, it encouraged it,'"[12] by employing a strategy that "revolved around identifying people who were likely to be able to get inside information, hiring them, and pressing them to get as much information as they could."[13] Mr. Cohen reportedly "led the pack in fostering a culture of insider trading, including actively seeking to hire traders who had links to inside information."[14]

In mid-October, the press began reporting the possibility of a guilty plea by SAC. Mr. Steinberg was featured prominently and by name in this coverage – this time because, as the news articles reported, the USAO was pressing SAC to plead guilty in advance of Mr. Steinberg's trial date. Articles quoted "people familiar with the matter" as reporting that

> US prosecutors have given SAC Capital until November to resolve criminal charges against the hedge fund founded by Steven Cohen or risk paying more than the $1.8bn offer on the table. . . . The November deadline ties with the start of the criminal trial against Michael Steinberg, a long-time portfolio manager at SAC and personal friend of Mr. Cohen.[15]

According to the articles, the government communicated that, in the event Mr. Steinberg were to be convicted without SAC first having pled guilty, the government's penalty demand would double and SAC would be required to pay "more than $3 billion."[16]

---

[12]   Barbara Ross & Bill Hutchinson, *Feds Charge Billionaire Steven A. Cohen's Hedge Fund with Insider Trading*, N.Y. Daily News, July 25, 2013 (quoting George Venizelos, Assistant Director in Charge of the FBI's New York office) (Berke Decl., Ex. D at 9-10).

[13]   Kevin Roose, *It's Doomsday for SAC Capital*, N.Y. Mag., July 25, 2013 (Berke Decl., Ex. D at 11-13) (describing charges against SAC as "convincing").

[14]   Kaja Whitehouse, *SAC Indicted by US, Charge Decade-Long Insider Scam*, N.Y. Post, July 27, 2013 (Berke Decl., Ex. D at 14-15).

[15]   Kara Scannell, *Prosecutors Give SAC Settlement Ultimatum*, Fin. Times, Oct. 8, 2013 (Berke Decl., Ex. E at 1).

[16]   *See, e.g.*, Ben Protess & Peter Lattman, *SAC Deal Could End Its Advisory Business*, N.Y. Times, Oct. 18, 2013, at B1 (Berke Decl., Ex. E at 2-3) ("And with next month's insider trading trial of Michael S. Steinberg, one of Cohen's former employees who is central to the indictment of the firm, SAC faces the prospect of an even stiffer penalty. The government, according to one

On October 22, 2013, we wrote to the USAO expressing our concern that the publicity

and media frenzy that would surround any plea made by SAC in the weeks preceding Mr.

Steinberg's scheduled trial date would interfere with his ability to have his case heard by a fair

and impartial jury.[17]  In particular, we raised concerns about reports indicating that the USAO

had been pressing SAC to plead guilty in advance of Mr. Steinberg's trial and about the

possibility that the USAO would repeat the kind of inflammatory extrajudicial comments it made

at the time of the SAC indictment.[18]  As we explained, those comments "tarred SAC with a broad

brush and strongly implied that all of its employees, or at least all those who have been charged

by the government, were in fact guilty of insider trading."[19]  Citing this Court's Local Rule

23.1(a) and related authorities,[20] we also urged the USAO to exercise restraint in order to

---

of the people brief on the matter, was contemplating doubling its demand to more than $3 billion
if SAC refused to settle and Steinberg was subsequently convicted.").

[17]   Letter from Barry H. Berke, et al. to Antonia Apps & Harry Chernoff, Asst. U.S. Att'ys (Oct.
22, 2013) (Berke Decl., Ex. L at 1-5).

[18]   *Id.*

[19]   *Id.*

[20]   Local Rule 23.1(a) provides that "[i]t is the duty of the lawyer or law firm . . . not to release
or authorize the release of non-public information or opinion which a reasonable person would
expect to be disseminated by means of public communication, in connection with pending or
imminent criminal litigation with which they are associated, if there is a substantial likelihood
that such dissemination will interfere with a fair trial or otherwise prejudice the due
administration of justice." Sub-section (d) of that same Local Rule provides in pertinent part that
"[s]tatements concerning the following subject matters presumptively involve a substantial
likelihood that their public dissemination will interfere with a fair trial or otherwise prejudice the
due administration of justice within the meaning of this rule: . . . (6) Information the lawyer or
law firm knows is likely to be inadmissible at trial and would if disclosed create a substantial
likelihood of prejudicing an impartial trial; and (7) Any opinion as to the accused's guilt or
innocence or as to the merits of the case or the evidence in the case." *See also* 28 C.F.R.
§ 50.2(b)(2) ("At no time shall personnel of the Department of Justice furnish any statement or
information for the purpose of influencing the outcome of a defendant's trial, nor shall personnel
of the Department furnish any statement . . ."); *see also* U.S.A.M. § 1-7.500 ("At no time shall
any component or personnel of the Department of Justice furnish any statement or information
that he or she knows or reasonably should know will have a substantial likelihood of materially
prejudicing an adjudicative proceeding.").

safeguard Mr. Steinberg's fair trial rights in the event SAC pled guilty before Mr. Steinberg's trial.[21]  Specifically, we asked the USAO "not to issue any press release, hold any press conference or make any public statement (including by way of social media such as Twitter) if in fact there is a plea by SAC in the remaining few weeks before Mr. Steinberg's trial, other than a public statement announcing the fact of any guilty plea and sentence."[22]

In a letter dated October 28, 2013, the USAO advised that "the Government is committed to ensuring that Mr. Steinberg receives a fair trial and understands fully its obligations under Local Criminal Rule 23.1 of the Southern District of New York and the other rules relating to public statements concerning pending criminal matters."[23]  Nonetheless, two weeks before Mr. Steinberg's scheduled trial date, the USAO announced that SAC, apparently acceding to the schedule reportedly insisted on by the USAO, would plead guilty to the indictment.

When announcing that a plea agreement had been reached, the USAO, on November 4, again issued a press release and again held a press conference.  During that press conference, the USAO stated:

> This past July, we filed a criminal indictment against four SAC Capital-related
> companies for engaging in insider trading that was substantial, pervasive and on a

---

[21]   Letter from Barry H. Berke, et al. to Antonia Apps & Harry Chernoff, Asst. U.S. Att'ys (Oct. 22, 2013) (Berke Decl., Ex. L at 1-5).

[22]   *Id.*  We also asked the USAO to "take down the internet links to its press release, press conference and any other public comments concerning the SAC indictment or Mr. Steinberg" whether SAC entered a plea or not.  *Id.*  To date, the USAO's November press releases, video of its press conference, and the USAO's prepared remarks in connection with the press conference remain available online, as do the press release, prepared remarks, and video of the press conference relating to the July announcement of the SAC indictment.  The FBI press release and prepared remarks also remain available online.  Berke Decl., ¶¶ 5,5.

[23]   Letter from Antonia Apps & Harry A. Chernoff, Asst. U.S. Att'ys, to Barry H. Berke, et al. (Oct. 28, 2013) (Berke Decl., Ex. L at 6).

scale without known precedent in the history of hedge funds. Three months later, we are here to announce a resolution that is matching in its magnitude.[24]

After detailing the terms of the plea agreement, the USAO concluded by saying: "[t]oday, one of the world's largest and most powerful hedge funds agreed to plead guilty . . . and pay the largest fine in history for insider trading offenses. That is the just and appropriate price for the pervasive and unprecedented institutional misconduct that occurred here."[25] Though there was an acknowledgement during the press conference that any individuals who have been charged and are awaiting trial are presumed to be innocent, in response to a question about the ongoing investigation, the following response was given, strongly suggesting in the government's view that anyone who is indicted is in fact guilty: "As I've said, a number of people have been charged and convicted, and the investigation remains ongoing . . . we bring cases where we have proof beyond a reasonable doubt that we can convince a jury unanimously of someone's criminal guilt, and when we get to that point with respect to anyone . . . we bring the case at that time."[26]

The USAO's November 4 press release reiterated many of these same points, including that the financial penalty imposed was "the largest [in] insider trading history" and that "insider trading offenses [were] committed by numerous employees . . . over the span of more than a decade."[27] A link to the USAO press release was also posted to the SDNYnews Twitter feed as were some of the inflammatory comments discussed earlier, including that SAC engaged "in

---

[24]   Preet Bharara, U.S. Att'y, Prepared Remarks About *U.S. v. S.A.C. Capital Advisors LP, et al.*, Nov. 4, 2013 (Berke Decl., Ex. M at 4-6).

[25]   *Id.*

[26]   Transcript of SAC Capital Settlement Press Conference, Nov. 4, 2013 (transcribed by CNBC Nat'l) (Berke Decl., Ex. N).

[27]   Press Release, U.S. Att'y's Office, S.D.N.Y., *Manhattan U.S. Attorney Announces Guilty Plea Agreement with SAC Capital Management Companies*, Nov. 4, 2013 (Berke Decl., Ex. M at 1-3)

insider trading that was substantial & pervasive" and "on a scale w/o known precedent in the history of hedge funds."[28]

A special agent from the FBI also appeared and spoke during the November 4 USAO press conference.  In discussing the plea, Agent Brooks explained: "SAC didn't just break the law; their illegal activity resulted in insider trading that was substantial, pervasive, and on a scale without known precedent."[29]  The FBI's press release was to the same effect:

> What SAC Capital's plea demonstrates is that cheating and breaking the law were not only permitted but allowed to persist. The result is $1.8 billion in fines and forfeiture, the largest penalty in an insider trading case ever, and termination of their investment advisory business. The problem of insider trading is real. For companies that willfully turn a blind eye, be on notice: how your employees make money is just as important as how much they make.[30]

At the very bottom of the press release, the FBI acknowledged that the agreement relates "only to the guilt of the SAC companies" and that other criminal defendants are "presumed innocent."[31]

The USAO issued a subsequent press release on November 8, the day of SAC's plea, stating that SAC and its related entities had "pled guilty to serious federal crimes that undermined the integrity of our securities markets."[32]  The release again detailed the charges against SAC, including that its employees had engaged in "systematic insider trading" that

---

[28]   Berke Decl., Ex. M at 7-8 (selected tweets from @SDNYnews, twitter.com, Nov. 4, 2013).

[29]   Transcript of SAC Capital Settlement Press Conference, Nov. 4, 2013 (transcribed by CNBC Nat'l) (Berke Decl., Ex. N).

[30]   Press Release, FBI, *Manhattan U.S. Attorney Announces Guilty Plea Agreement with SAC Capital Management Companies*, Nov. 4, 2013 (Berke Decl., Ex. M at 9-10).

[31]   *Id.*

[32]   Press Release, U.S. Att'y's Office, S.D.N.Y., *SAC Capital Management Companies Plead Guilty To Insider Trading Charges In Manhattan Federal Court*, Nov. 8, 2013 (Berke Decl., Ex. M at 13-15).

occurred "over the span of more than a decade" and involved the securities of "more than 20 publicly-traded companies across multiple sectors of the economy."[33]

The coverage that followed the announcement of SAC's agreement to plead guilty was again widespread, high-pitched, and extremely critical with respect to SAC and all those former SAC employees who had been charged by the government. The day the settlement was announced, the *New York Times* published an online graphic entitled "The Cohen Connections," the subheading of which reads: "The top hedge fund SAC Capital agreed to plead guilty to insider trading and pay a record $1.2 billion fine. At least seven current or former SAC employees—all of whom have been cited in the latest indictment—have been charged separately with insider trading."[34] The graphic featured a picture of Mr. Cohen surrounded by photographs of other current or former SAC employees, including Mr. Steinberg, who have been accused of or have pled guilty to insider trading. Mr. Steinberg was described as a "15-year employee of SAC who worked closely with Cohen."[35]

The next day, this same graphic appeared in print, covering more than half of the front page of the *New York Times* Business Section, accompanying an article about the settlement. This article described SAC as "the first large Wall Street firm in a generation to confess to criminal conduct" and said that "[t]he deal caps a decade-long investigation that has turned a mighty hedge fund into a symbol of financial wrongdoing."[36] The *Times* also ran an entirely

---

[33]   *Id.*

[34]   Graphic, *The Cohen Connections*, N.Y. Times, Nov. 4, 2013,  http://www.nytimes.com/ interactive/2013/07/26/business/dealbook/insider-trading-cases-at-sac.html (Berke Decl., Ex. E at 6).

[35]   *Id.*

[36]   Ben Protess & Peter Lattman, *After a Decade, SAC Capital Blinks*, N.Y. Times, Nov. 5, 2013, at B1 (Berke Decl., Ex. E at 7-9).

separate article about the settlement that same day on the front page.[37]  This article, and many

others, referred back to the inflammatory comments made or graphics used by the USAO in its

public statements about SAC.[38]  In addition, the *New York Daily News* ran an article containing a

picture of the visual aid showing Mr. Steinberg's name and reported that "Manhattan U.S.

Attorney Preet Bharara labeled the 10-figure clawback 'the largest fine in history for insider

trading offenses' and 'the just and appropriate price for the pervasive and unprecedented

institutional misconduct that occurred here.'"[39]  An article by *FoxBusiness* reported that

prosecutors, "[i]nvoking Gordon Gekko . . . said the deal with SAC shows that 'principles are

just as important as your profit.'"[40]  This same article quoted the FBI as saying that "SAC

institutionalized their practices by cultivating a culture of corporate corruption" and suggested

that SAC "willfully turn[ed] a blind eye."[41]

    Other articles speculated on the negative impact the plea would have on Mr. Steinberg's

case, including "a fear that with jury selection only two weeks away, headlines about an SAC

guilty plea could corrupt the jury pool."[42]  One of these articles explained that while SAC's

guilty plea "does not directly affect [Mr. Steinberg's] criminal case," the publicity surrounding

---

[37]   Peter Lattman & Ben Protess, *$1.2 Billion Fine for Hedge Fund in Insider Case*, N.Y. Times, Nov. 5, 2013, at A1 (Berke Decl., Ex. E at 10-11).

[38]   *See, e.g.*, *id.* (Berke Decl., Ex. E at 10-11) ("Insider trading at SAC was 'substantial, pervasive and on a scale without precedent in the history of hedge funds"); Agustino Fontevecchia, *Preet Bharara Isn't Done With Steve Cohen and SAC Capital*, Forbes, Nov. 4, 2013 (Berke Decl., Ex. F at 1-2) (including link to Nov. 4 USAO press conference).

[39]   Daniel Beekman, *SAC Capital Advisors reaches $1.8 billion Deal with Feds over Insider Trading Charges*, N.Y. Daily News, Nov. 4, 2013 (Berke Decl., Ex. F at 3-7).

[40]   Dunstan Prial, *SAC in Landmark Settlement with Justice Department*, FoxBusiness, Nov. 4, 2013 (Berke Decl., Ex. F at 8-9).

[41]   *Id.*

[42]   Ben Protess & Peter Lattman, *SAC is Near Guilty Plea, But Cases Aren't Shut*, N.Y. Times, Nov. 4, 2013, at B1 (Berke Decl., Ex. F at 10-11).

SAC could be a "potential issue in selecting an unbiased jury."[43]  Another article, quoting a law

professor, explained "'[t]he government has amassed tons of evidence against the fund which

can't be helpful to others.  The pressure's on for one of them [Mr. Steinberg or Mr. Martoma] to

plead guilty.'"[44]

Coverage of the settlement continued throughout this past week, with many reports

identifying the current or former SAC employees, including Mr. Steinberg, who have been

linked to insider trading.  The *Wall Street Journal*, for example, in an online article entitled

"Civil Portion of SAC Deal Gets Judge's OK," had three separate interactive features that

contained photographs of and information about each of these individuals, including Mr.

Steinberg.[45]  Reporters and the public also took time to express their dissatisfaction with the

settlement.  As one article opined, "[t]herefore, after a multiyear investigation, the legal

conclusion seems to be that Mr. Cohen is a noncriminal running a criminal enterprise."[46]

Another prominent financial news site explained:

> There are, after all, victims here.  Everyone who traded stock in a company SAC
> manipulated and who played by the rules was a victim.  Everyone doing business
> honestly, in the stock market, was a victim.  Every investor who should be in the
> market today but isn't because he assumes the game is rigged is a victim.[47]

---

[43]   Peter J. Henning, *The Impact of the Settlement on SAC Capital and Cohen*, N.Y. Times, Nov. 4, 2013 (Berke Decl., Ex. F at 12-14).

[44]   Patricia Hurtado, *SAC Agrees to Plead Guilty to End Insider-Trading Case*, Bloomberg, Nov. 14, 2013 1:22 p.m. (Berke Decl., Ex. F at 1-3).

[45]   Christopher M. Matthews, *Civil Portion of SAC Deal Gets Judge's OK*, Wall St. J. (Nov. 6, 2013), http://online.wsj.com/news/articles/SB10001424052702303763804579181763656319656 (containing interactive features "SAC And Steven A. Cohen Over the Years, "Who's Who in the SAC Case," and "SAC's Paper Trail") (Berke Decl., Ex. G at 4-8).

[46]   *It's Only Money*, Wall St. J. (Nov. 15, 2013) (Berke Decl., Ex. G at 9).

[47]   Dana Blankenhorn, *SAC Capital Is Finally Busted*, TheStreet.com (Nov. 5, 2013, 10:09 a.m) (Berke Decl., Ex. G at 10-11).

Still others considered the fine too small – a mere "dent in [Mr. Cohen's] personal fortune."[48]

All told, since our July filing, news outlets in this venue – including the *New York Times*, the *Wall Street Journal*, the *New York Post*, the *New York Daily News*, *New York Magazine*, the *New Yorker*, *New York Business Journal*, *Crain's NY*, *Financial Times*, CNBC, Associated Press, Bloomberg and Reuters – have published over 450 articles, in print and online, about Mr. Steinberg, Mr. Cohen and/or insider trading at SAC Capital.[49]  National and local broadcast news on cable TV and radio have covered Mr. Steinberg and/or SAC Capital in connection with insider trading allegations at least 300 times.[50]  Since news broke of SAC's guilty plea one week ago today, there have been over 100 articles and 50 broadcasts.  As with the announcement of SAC's indictment, the coverage of SAC's guilty plea was not only local but also made national headlines as well – including stories around the country in major papers like the *Washington Post*, *USA Today*, the *Chicago Tribune*, the *Miami Herald*, and the *Los Angeles Times*.[51]

---

[48]   James B. Stewart, *SAC: A Textbook Case of Corporate Prosecution*, N.Y. Times, Nov. 5, 2013, at B1 (Berke Decl., Ex. E at 7-9).

[49]   For the court's convenience, an index compiling the articles is attached as Ex. J to the Berke Decl.  As indicated, a number of these articles have appeared on the front page of the paper and also been posted to Twitter. *Id.*

[50]   An index compiling the broadcasts is attached as Ex. K to the Berke Decl.

[51]   *See, e.g.*, Sam Gustin, *SAC Capital Indicted, in a Blow to Billionaire Steven A. Cohen*, Time, July 25, 2013 (Berke Decl., Ex. H at 1-2); Jia Lynn Yang, *U.S. Files Criminal Fraud Charges Against SAC Capital*, Wash. Post, July 25, 2013 (Berke Decl., Ex. H at 3-4); Andrew Tangel, *U.S. Accuses Hedge Fund SAC Capital Advisors of Insider Trading*, L.A. Times, July 25, 2013 (Berke Decl., Ex. H at 5-6); Tim Mullaney, *SAC to Pay Record $1.8B in Insider Trading Case*, USA Today, Nov. 4, 2013 (Berke Decl., Ex. H at 7-8); Dina El Boghdady, *SAC Agrees to Plead Guilty to Insider Trading, Pay $1.2 Billion Penalty*, Wash. Post, Nov. 4, 2013 (Berke Decl., Ex. H at 9-11); Reuters, *SAC to Pay $1.8 Billion to Settle Insider Trading Cha rges*, Chi. Tribune, Nov. 4, 2013 (Berke Decl., Ex. H at 12-14); Larry Neumeister, *SAC Capital Pleads Guilty in NY in $1.8B Deal*, Miami Herald, Nov. 8, 2013 (Berke Decl., Ex. I at 1-3); *SAC Capital Pleads Guilty in Insider Trading Case*, L.A. Times, Nov. 8, 2013 (Berke Decl., Ex. I at 4-5).

## ARGUMENT

The Sixth Amendment guarantees that in all criminal prosecutions, the defendant shall enjoy the right to trial "by an impartial jury." In addition, "[a] basic requirement of due process" is that a jury's "verdict must be based upon the evidence developed at the trial" and not influenced by adverse pretrial publicity. *Irvin v. Dowd*, 366 U.S. 717, 721-22 (1961). Where, as here, a case gives rise to extensive and prejudicial pretrial publicity, the prudent course is to employ prophylactic measures designed to safeguard a defendant's right to trial by an impartial jury. *See Sheppard v. Maxwell*, 384 U.S. 333, 363 (1966) ("We must remember that reversals are but palliatives; the cure lies in those remedial measures that will prevent the prejudice at its inception.").

Judge Kaufman long-ago set forth sensible guiding principles to guide a district court's exercise of discretion in deciding requests for continuances based on pretrial publicity:

> A study of the cases dealing with the problem of pre-trial publicity indicates that four main factors should be considered in deciding if relief of some kind should be granted at this stage of the proceedings. First, it is necessary that the publicity be recent, widespread and highly damaging to the defendants. Second, it is an important consideration whether the government was responsible for the publication of the objectionable material, or if it emanated from independent sources. This factor is especially significant in regard to the third factor, the inconvenience to the government and the administration of justice of a change of venue or continuance. The government can hardly be heard to complain of inconvenience if it was responsible for the dissemination of damaging material. In fact, governmental complicity was almost singularly dispositive in the leading case in which a trial judge's discretion was reversed, *see Delaney v. United States*, 1 Cir., 1952, 199 F.2d 107, though the publicity in that case was particularly virulent and was concentrated on the eve of trial. Last, it must be considered whether a substantially better panel can be sworn at another time or place.

*United States v. Bonanno*, 177 F. Supp. 106, 122 (S.D.N.Y. 1959).

With respect to individualized and searching questioning of prospective jurors in the face of widespread pretrial publicity, a similar set of considerations guides the Court's discretion.[52] The Second Circuit has approvingly cited the American Bar Association's recommendation that "[w]henever there is believed to be a significant possibility that individual talesmen will be ineligible to serve because of exposure to potentially prejudicial material, the examination of each juror with respect to his exposure shall take place outside the presence of other chosen and prospective jurors." *United States v. Colabella*, 448 F.2d 1299, 1303 & n.5 (2d Cir. 1971) (quoting Proposed Final Draft of ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Fair Trial and Free Press § 3.4(a) (Dec. 1967)). Around the same time, the D.C. Circuit explained that "[w]hether such a 'significant possibility' exists in a given case depends on such circumstances as the amount and pervasiveness of the publicity, its tone or quality, its proximity to the date of trial, and the nature of the particular case." *United States v. Liddy*, 509 F.2d 428, 435 (D.C. Cir. 1974) (citation omitted). The ABA Standards have been revised several times since 1967, though the substance is largely the same. The most recent version, which was adopted a few months ago, instructs that prospective jurors who have likely been exposed to prejudicial publicity should be "individually questioned," "outside the presence of other chosen and prospective jurors," "in the presence of counsel," and on the record "to determine what they have read and heard about the case and how any exposure has affected their

---

[52]   At the July 12 pretrial conference, Your Honor indicated: "With respect to the jury questionnaire, I don't generally do a questionnaire. I think I am likely to have inquiries the way I did it in the last trial and the way I do it in other trials that generate publicity. I am certainly going to inquire of the prospective jurors whether they have seen any articles about this case or related cases. If they have, I would follow up with them and allow some questioning, probably outside the presence of the other jurors." Pretrial Hr'g Tr. 2:20-3:2, July 12, 2013.

attitudes toward the trial." ABA Standards on Fair Trial and Public Discourse § 8-5.4 (4th ed. 2013).[53]

We respectfully submit that the sustained, inflammatory, prejudicial, and very recent pretrial publicity outlined above – the timing and tenor of which are largely attributable to the government's actions – more than meets the standards for both an adjournment and individualized, probing questioning of prospective jurors who have been exposed to it.

*First*, the pretrial publicity is recent, widespread and highly damaging. Numerous cases recognize the danger that a defendant's fair trial rights will be compromised by prejudicial news reports published in the days or weeks preceding trial, where the coverage has not yet faded from memory and is likely to be on the minds of potential jurors when they enter the courthouse.[54]

---

[53]   *Available at* http://www.americanbar.org/groups/criminal_justice/standards/ crimjust_standards_fairtrial_blk.html.

*See also id.* § 8-5.3. Mitigating the effects of publicity on the fairness of a trial

> If a case has been the subject of significant publicity, the court should consider the following options, to the extent available under applicable law in the jurisdiction and subject to the standards elaborated below, as means of mitigating the prejudicial effects of such publicity. The court should select the most effective option or options in light of the circumstances presented that will be the least disruptive to the proceedings and to jurors. The options include:
>
> > (a) ordering a continuance;
> > (b) conducting voir dire as to pretrial publicity;
> > (c) providing clear cautionary instructions to the jury from the outset of jury selection;
> > (d) providing clear cautionary instructions to court personnel, parties, lawyers, and witnesses;
> > (e) providing lawyers with additional peremptory challenges;
> > (f) impanelling additional alternate jurors;
> > (g) importing jurors from another district or locality;
> > (h) ordering a severance;
> > (i) impanelling an anonymous jury;
> > (j) sequestering the jury; and
> > (k) ordering a change of venue.

[54]   *See, e.g., Skilling v. United States,* 130 S. Ct. 2896, 2902 (2010) ("[U]nlike [cases] in which trial swiftly followed a widely reported crime, over four years elapsed between Enron's

17

Here, SAC's guilty plea gave rise to massive pretrial publicity within just the last week. This highly prejudicial publicity built upon and reinforced the similar wave of harmful media coverage that followed SAC's earlier indictment, locally as well as across the country. The upshot of all of this pretrial publicity is a very high likelihood and danger that prospective jurors may assume the guilt of anyone who, like Mr. Steinberg, worked at SAC.

Particularly damaging is the fact that the most recent pretrial publicity has focused on an extraordinarily prejudicial development that will be inadmissible at Mr. Steinberg's trial – i.e., his employer's guilty plea. Pretrial publicity that exposes jurors to highly prejudicial inadmissible evidence has been recognized as especially damaging, often leading to reversals of convictions.[55] Here, Mr. Steinberg's employer has now agreed to a final, non-contestable admission of guilt to charges that its employees engaged in illegal insider trading and that its

---

bankruptcy and Skilling's trial. Although reporters covered Enron-related news throughout this period, the decibel level of media attention diminished somewhat in the years following Enron's collapse." (internal citation omitted)); *Rideau v. Louisiana*, 373 U.S. 723, 724 (1963) (no fair trial where defendant's confession broadcast by local news station on three separate occasions shortly before trial); *United States v. Sabhnani*, 599 F.3d 215, 232 (2d Cir. 2010) (district court did not abuse discretion in declining to grant change of venue where, *inter alia*, prejudicial publicity stemmed from bail hearings that took place in mid-May, and voir dire in the case began in late October).

[55] *See, e.g., Marshall v. United States*, 360 U.S. 310, 312-13 (1959) (granting new trial where, as a result of pretrial publicity, jurors were exposed to evidence that the trial judge had excluded, including that the defendant had two previous felony convictions and that he was arrested with his wife who was also convicted of drug charges); *United States v. Lord*, 565 F.2d 831, 837-39 (2d Cir. 1977) (reversing convictions where trial court refused to poll jurors as to their knowledge of articles stating that one of the government's witnesses was stabbed in connection with the crime, evidence that the court had previously excluded); *United States v. Trapnell*, 638 F.2d 1016, 1022-23 (7th Cir. 1980) (reversing convictions where district court inadequately addressed pretrial publicity that may have exposed jurors to inadmissible and prejudicial information including defendant's criminal history, the fact that defendant rejected a plea deal, and the fact that two co-defendants pled guilty); *United States v. Pomponio*, 517 F.2d 460, 462-63 (4th Cir. 1975) (reversing convictions where trial court failed to question jurors about exposure to news articles that referenced inadmissible matters, including defendants' refusal to testify and courtroom proceedings conducted in jury's absence).

institutional practices encouraged such wrongdoing.[56]  Potential jurors cannot "reasonably be

expected to shut from sight" (*Skilling,* 130 S. Ct. at 2916) such a high profile and costly ($1.8B)

admission by Mr. Steinberg's employer, particularly where it is described as arising in part out of

the same allegations that have been leveled against him.  The coverage of SAC's guilty plea, in

other words, invites "prejudgment" of Mr. Steinberg's culpability.  *Id.*

    *Second*, the government is to blame for much of the timing and tenor of this highly

prejudicial pretrial publicity.  The Second Circuit has repeatedly held that the degree of

government responsibility is one of the "traditional factors" to be considered in assessing

prejudice from pretrial publicity.  *See United States v. Maldonado-Rivera*, 922 F.2d 934, 966 (2d

Cir. 1990); *see also Sabhnani*, 599 F.3d at 232 (2d Cir. 2010) (in assessing a motion for a change

of venue, district court may consider "the government's role in generating adverse publicity").

This is not a case where pretrial publicity was generated as a result of courtroom advocacy,

*Sabhnani*, 599 F.3d at 232, or a press release that "for the most part merely documented the

names and addresses of the individual defendants and the offenses with which they were

charged," *Maldonado-Rivera,* 922 F.2d at 967.  Quite the contrary.

    Here, the government chose to make highly inflammatory extrajudicial statements

regarding SAC and Mr. Steinberg in repeated press releases and press conferences.  These

prejudicial comments have been widely quoted in the media coverage.  The most recent

extrajudicial statements by the USAO were made notwithstanding Mr. Steinberg's letter of

October 22, 2013, urging the government to exercise restraint and refrain from fueling the media

frenzy.  Worse still, the timing of SAC's plea last week and the predictable negative and

---

[56]   In addition, SAC's guilty plea has been an occasion for the government and the media to
highlight and repeat the additional prejudicial and inadmissible fact that several former SAC
employees have pled guilty as well.

extensive publicity that followed on the eve of Mr. Steinberg's trial appear to have been orchestrated by the government. On this record, the government's high degree of responsibility for the recent, widespread and highly damaging pretrial publicity weighs heavily in favor of Mr. Steinberg's requested relief.[57]

 *Third,* as for inconvenience, "the government can hardly be heard to complain" (*Bonnano,* 177 F. Supp. at 122) given its aggravating role in driving the tenor and timing of the prejudicial pretrial publicity. While we certainly appreciate that an adjournment will inconvenience the Court, the Clerk's Office, and prospective jurors to the extent they already have been summoned, the inconvenience would be far more substantial and far-ranging if the Court were to have to adjourn the trial due to pretrial publicity concerns arising during jury selection or, worse still, declare a mistrial if such an issue emerged during the trial. We respectfully submit that on the record presented, Mr. Steinberg's right to a fair and impartial jury must take precedence over such considerations of convenience.

 *Last,* we firmly believe – and precedent supports the view – that there is a high likelihood that a substantially better panel of jurors can be sworn if the trial is adjourned to allow the taint of the pretrial publicity to subside. *See Skilling,* 130 S. Ct. at 2917 (where co-defendant's "well-publicized decision to plead guilty" shortly before trial created a danger of juror prejudice, trial

---

[57] *See Sheppard,* 384 U.S. at 360 (reversing denial of habeas petition where state trial judge did not fulfill his duty in protecting the defendant from prejudicial pretrial publicity, much of which was in the form of "clearly inadmissible evidence" that was made available to the news media by the prosecution); *United States v. Delaney,* 199 F.2d 107, 114 (1st Cir. 1952) (vacating conviction where government's decision to conduct public hearings while indictment was pending resulted in significant adverse pretrial publicity including reports of evidence that would be inadmissible at trial); *United States v. Moody,* 762 F.Supp. 1485, 1490 (N.D. Ga. 1991) (change of venue granted because of "inordinate, widespread, and prejudicial publicity" and because "government agents have been responsible for much of it"); *United States v. Engleman,* 489 F. Supp. 48, 51 (E.D. Mo. 1980) (granting change of venue motion where "specific testimony of essential witnesses [had] been outlined in the media," creating "an atmosphere of pervasive public prejudice so great that it is impossible for defendants to obtain a fair trial").

court acted appropriately by delaying proceedings by two weeks, thereby "lessening the immediacy of that development"); *Sheppard*, 384 U.S. at 363 ("where there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the judge should continue the case until the threat abates, or transfer it to another county not so permeated with publicity"); *Delaney*, 199 F.2d at 114 (reversing conviction for failure to grant continuance until prejudicial publicity surrounding a congressional investigation into defendant's actions abated); *United States v. Dioguardi*, 147 F. Supp. 421, 422-23 (S.D.N.Y. 1956) (adjourning trial in interests of justice due to publicity "interw[eaving]" defendants' pending trial with recently concluded co-conspirators' trial and conviction).

## CONCLUSION

Mr. Steinberg and his lawyers have been intensively preparing for trial for months. We are ready and eager to try this case next week. But given the extraordinary pretrial publicity described above and in Mr. Steinberg's July 8 filing, we are compelled to supplement and expand our request for relief in order to protect Mr. Steinberg's right to a fair trial before an impartial jury. Accordingly, Mr. Steinberg respectfully asks that the Court: (1) grant a continuance of three months to allow the recent, widespread and highly prejudicial publicity surrounding SAC's indictment and guilty plea to dissipate, and (2) conduct individualized, searching questioning of all potential jurors who have been exposed to any such SAC-related pretrial publicity (a subject the Court previously addressed prior to the most recent publicity (*see* note 52, *supra*)).

Dated: New York, New York
          November 11, 2013

Respectfully submitted,

KRAMER LEVIN NAFTALIS & FRANKEL LLP

By: _____

    Barry H. Berke
    Steven S. Sparling

1177 Avenue of the Americas
New York, New York 10036
(212) 715-9100  (Phone)
(212) 715-8000  (Fax)
bberke@kramerlevin.com
ssparling@kramerlevin.com

*Counsel for Defendant Michael Steinberg*

22

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————— x
                           :

UNITED STATES OF AMERICA,      :

                           :      S4 12 Cr. 121 (RJS)

            v.              :

MICHAEL STEINBERG,         :      **DECLARATION OF**

                           :      **BARRY H. BERKE, ESQ.**

              Defendant.     :

                           :
——————————————————————— x

      BARRY H. BERKE, ESQ., hereby declares, pursuant to 28 U.S.C. § 1746 and under

penalty of perjury, as follows:

      1.      I am a partner at the law firm of Kramer Levin Naftalis & Frankel LLP, counsel

for defendant Michael Steinberg in the above-captioned matter.

      2.      I submit this Declaration in support of and to provide the Court with documents

pertinent to Mr. Steinberg's Supplemental Motion for Remedial Measures to Address Pretrial

Publicity.

      3.      Upon information and belief, Exhibit A consists of true and correct copies of:

- An article entitled "S.E.C. Charges Are Latest Test for Billionaire" that
  appeared in the *New York Times* on July 20, 2013;

- An article entitled "SEC Is Seeking to Ban Cohen" that appeared on the *Wall
  Street Journal*'s website on July 19, 2013;

- An article entitled "SEC Finally Digs Claws into SAC Honcho Steve Cohen"
  that appeared on the *New York Post*'s website on July 19, 2013.

4.      Upon information and belief, Exhibit B is a true and correct copy of a press release from the U.S. Attorney's Office for the Southern District of New York entitled "Manhattan U.S. Attorney and FBI Assistant Director-in-Charge Announce Insider Trading Charges Against Hedge Fund Portfolio Manager," dated March 29, 2013.

5.      Upon information and belief, Exhibit C consists of true and correct copies of:

- A press release from the U.S. Attorney's Office for the Southern District of New York entitled "Manhattan U.S. Attorney and FBI Assistant Director-in-Charge Announce Insider Trading Charges Against Four SAC Capital Management Companies and SAC Portfolio Manager," dated July 25, 2013;

- Prepared remarks for U.S. Attorney Preet Bharara concerning *United States v. S.A.C. Capital Advisors LP, et al.*, dated July 25, 2013;

- A demonstrative used by the U.S. Attorney's Office during its July 25, 2013 press conference concerning *United States v. S.A.C. Capital Advisors LP, et al.*;

- Selected tweets sent by the U.S. Attorney's Office for the Southern District of New York on July 25, 2013;

- A press release from the New York Field Office of the Federal Bureau of Investigation entitled "Statement of Assistant Director in Charge George Venizelos at Press Conference Announcing Criminal Charges Against SAC Capital," dated July 25, 2013.

Upon information and belief, all of these materials remain available to the public through the websites of the United States Attorney's Office and the Federal Bureau of Investigation.

6.      Upon information and belief, Exhibit D consists of true and correct copies of:

- An article entitled "SAC Capital Is Indicted, and Called a Magnet for Cheating" that appeared on the *New York Times DealBook* website on July 25, 2013;

- An article  entitled "SAC Hit with Criminal Case" that appeared on the *Wall Street Journal*'s website on July 25, 2013;

- An article entitled "Feds Charge Billionaire Steven A. Cohen's Hedge Fund SAC Capital with Insider Trading" that appeared on the *New York Daily News*'s website on July 25, 2013;

KL3 2949836.4

- An article entitled "It's Doomsday for SAC Capital" that appeared on *New York* magazine's Daily Intelligencer website on July 25, 2013;

- An article entitled "SAC Indicted by US, Charge Decade-Long Scam" that appeared on the *New York Post*'s website on July 25, 2013.

7. Upon information and belief, Exhibit E consists of true and correct copies of:

- An article entitled "Prosecutors Give SAC Settlement Ultimatum" that appeared on the *Financial Times*'s website on October 8, 2013;

- An article entitled "SAC Deal Could End Its Advisory Business" that appeared in the *New York Times* on October 18, 2013;

- An article entitled "SAC Capital Settlement Means Government to Flex Its Muscle to the Maximum Degree, Lawyers Say" that appeared on the marketwatch.com website on November 4, 2013;

- An graphic entitled "The Cohen Connections" that appeared on the *New York Times DealBook* website on November 4, 2013 and in the *New York Times* on November 5, 2013;

- Articles entitled "A Textbook Case for Prosecuting Corporate Crime" and "Persistent Prosecutors Wrest a Guilty Plea from a Hedge Fund" that appeared in the *New York Times* on November 5, 2013 under the banner "After a Decade, SAC Capital Blinks";

- An article entitled "$1.2 Billion Fine for Hedge Fund in Insider Case" that appeared in the *New York Times* on November 5, 2013.

8. Upon information and belief, Exhibit F consists of true and correct copies of:

- An article entitled "Preet Bharara Isn't Done with Steve Cohen and SAC Capital" that appeared on *Forbes*'s website on November 4, 2013;

- An article entitled "SAC Capital Advisors Reaches $1.8 Billion Deal with Feds Over Insider Trading Charges" that appeared on the *New York Daily News*'s website on November 4, 2013;

- An article entitled "SAC in Landmark Settlement with Justice Department" that appeared on the FoxBusiness website on November 4, 2013;

- An article entitled "SAC Is Near Guilty Plea, But Cases Aren't Shut" that appeared in the *New York Times* on November 4, 2013;

- An article entitled "The Impact of the Settlement on SAC Capital and Cohen" that appeared on the *New York Times DealBook* website on November 4, 2013.

9.  Upon information and belief, Exhibit G consists of true and correct copies of:

- An article entitled "SAC Agrees to Plead Guilty to End Insider-Trading Case" that appeared on *Bloomberg*'s website on November 5, 2013;

- An article entitled "Civil Portion of SAC Deal Gets Judge's OK" that appeared on the *Wall Street Journal*'s website on November 6, 2013 and relevant webpages hyperlinked to that article;

- An article entitled "It's Only Money" that appeared on the *Wall Street Journal*'s website on November 5, 2013;

- An article entitled "SAC Capital Is Finally Busted" that appeared on the TheStreet.com website on November 5, 2013.

10.  Upon information and belief, Exhibit H consists of true and correct copies of:

- An article entitled "SAC Capital Indicted, in a Blow to Billionaire Steven A. Cohen" that appeared on *Time*'s website on July 25, 2013;

- An article entitled "U.S. Files Criminal Fraud Charges Against SAC Capital" that appeared on the *Washington Post*'s website on July 25, 2013;

- An article entitled "U.S. Accuses Hedge Fund SAC Capital Advisors of Insider Trading" that appeared on the *Los Angeles Times*'s website on July 25, 2013;

- An article entitled "SAC to Pay Record $1.8B in Insider Trading Case" that appeared on *USA Today*'s website on November 4, 2013;

- An article entitled "SAC Agrees to Plead Guilty to Insider Trading, Pay $1.2 Billion Penalty" that appeared on the *Washington Post*'s website on November 4, 2013;

- An article entitled "SAC to Pay $1.8 Billion to Settle Insider Trading Charges" that appeared on the *Chicago Tribune*'s website on November 4, 2013.

11.  Upon information and belief, Exhibit I consists of true and correct copies of:

- An article entitled "SAC Capital Pleads Guilty in NY in $1.8B Deal" that appeared in the *Miami Herald* on November 8, 2013;

- An article entitled "SAC Capital Pleads Guilty in Insider Trading Case" that appeared in the *Los Angeles Times* on November 8, 2013.

12.    Upon information and belief, Exhibit J is an index of original articles published online or in periodicals of wide circulation in the New York metropolitan area between July 7, 2013 and November 9, 2013 that reference alleged insider trading and Michael Steinberg, S.A.C. Capital, and/or Steven Cohen.   One hundred and twenty-six of those articles mention Mr. Steinberg.  Many of these articles, as indicated, have appeared on the front page or front page of the business section of newspapers and have also been posted to Twitter.

13.    Upon information and belief, Exhibit K is an index of broadcast programs that reference alleged insider trading and Michael Steinberg, S.A.C. Capital, and/or Steven Cohen.

14.    Upon information and belief, Exhibit L is a true and correct copy of correspondence between Barry H. Berke, Steven S. Sparling, Eric A. Tirschwell, Antonia M. Apps, and Harry Chernoff, dated October 22, 2013 and October 28, 2013, concerning pretrial publicity.

15.    Upon information and belief, Exhibit M consists of true and correct copies of:

- A press release from the United States Attorney's Office for the Southern District of New York entitled "Manhattan U.S. Attorney Announces Guilty Plea Agreement With SAC Capital Management Companies," dated November 4, 2013;

- Prepared Remarks for U.S. Attorney Preet Bharara about *United States v. S.A.C. Capital Advisors LP, et al.*, dated November 4, 2013;

- Selected tweets sent by the U.S. Attorney's Office for the Southern District on November 4, 2013;

- A press release from the New York Field Office of the Federal Bureau of Investigation entitled "Manhattan U.S. Attorney Announces Guilty Plea Agreement with SAC Capital Management Companies," dated November 4, 2013;

- A press release from the New York Field Office of the Federal Bureau of Investigation entitled "Remarks as Prepared for Delivery by FBI Special

- 5 -

KL3 2949836.4

Agent April Brooks at Press Conference Concerning SAC Capital," dated November 4, 2013;

- A press release from the United States Attorney's Office for the Southern District of New York entitled "SAC Capital Management Companies Plead Guilty to Insider Trading Charges in Manhattan Federal Court," dated November 8, 2013.

Upon information and belief, all of these materials remain available to the public through the websites of the United States Attorney's Office and the Federal Bureau of Investigation.

16.     Upon information and belief, Exhibit N is a true and correct copy of a transcript of CNBC's coverage of the United States Attorney's Office for the Southern District of New York's November 4, 2013 press conference concerning *United States v. S.A.C. Capital Advisors LP, et al.*

Dated: New York, New York
        November 11, 2013

_____
Barry H. Berke

KL3 2949836.4

# EXHIBIT  A

"All the News That's Fit to Print"

# The New York Times

Late Edition

Today, humid, thunderstorms, high 94. Tonight, thunderstorms, mainly evening, severe, low 74. Tomorrow, not as hot, chance of showers, high 88. Weather map on Page C8.

VOL. CLXII . . . No. 56,203 | ©2013 The New York Times | NEW YORK, SATURDAY, JULY 20, 2013 | $2.50

[illegible] FOR THE NEW YORK TIMES

**It's Not the Heat, It's the Irony**

Louis Martinez's character is Scrat from, yes, "Ice Age." But Friday in Times Square was anything but, with a heat index above 100.

## S.E.C. Charges Are Latest Test For Billionaire

### Hedge Fund Chief Is Target of Civil Case

By PETER LATTMAN and BEN PROTESS

After a long-running investigation into insider trading at the hedge fund SAC Capital Advisors, an inquiry that has produced several guilty pleas and a record $616 million civil penalty, the government on Friday brought a case for the first time against the fund's billionaire owner, Steven A. Cohen.

In a civil action, the Securities and Exchange Commission accused Mr. Cohen of failing to supervise former employees who face criminal charges. The case, filed as an administrative proceeding at the agency rather than a lawsuit in federal court, contends that he ignored "red flags" that should have led him to investigate suspicious trading activity at SAC and take steps to prevent illegal conduct. If the S.E.C. prevails in its action against Mr. Cohen, there are a range of possible penalties, including assessing additional fines, barring Mr. Cohen from managing money for clients, or banning him from the financial services industry for life.

Although the case stops short of accusing Mr. Cohen of fraud or insider trading, it represents the first government action brought directly against him after an inquiry that has persisted for nearly a decade.

And while the government has taken its first direct shot at Mr. Cohen, it is unlikely to be the last. Federal prosecutors and the F.B.I. are continuing to build a

Continued on Page B6

**Harder Line by S.E.C.**

A flurry of moves shows things may be different. Page B1

## PRESIDENT OFFERS A PERSONAL TAKE ON RACE IN U.S.

### SPEAKS OF FLORIDA CASE

### 'Trayvon Martin Could Have Been Me 35 Years Ago'

By MARK LANDLER and MICHAEL D. SHEAR

WASHINGTON — After days of angry protests and mounting public pressure, President Obama summoned five of his closest advisers to the Oval Office on Thursday evening. It was time, he told them, for him to speak to the nation about the Trayvon Martin verdict, and he had a pretty good idea what he wanted to say.

For the next 35 minutes, according to a senior aide, Mr. Obama spoke without interruption, laying out his message of why the not-guilty ruling had caused such pain among African-Americans, particularly young black men accustomed to arousing the kind of suspicion that led to the shooting death of Mr. Martin in a gated Florida neighborhood.

President Obama

On Friday, reading an unusually personal, handwritten statement, Mr. Obama summed up his views with a single line: "Trayvon Martin could have been me 35 years ago."

That moment punctuated a turbulent week marked by dozens of phone calls to the White House from black leaders, angry protests that lit up the Internet and streets from Baltimore to Los Angeles, and anguished soul-searching by Mr. Obama. Aides say the president closely monitored the public reaction and talked repeatedly about the case with friends and family.

Several people who have had conversations with Mr. Obama's top aides said a president who has rarely spoken about America's racial tensions from the White House was particularly torn about appearing to force the hand of Eric H. Holder Jr., the attorney general, when it comes to any investigations in the case.

The White House's original plan — for Mr. Obama to address the verdict in brief interviews on Tuesday with four Spanish-language television networks — was foiled when none of them asked about it.

Instead, he appeared in the White House briefing room with no advance warning and little of the orchestration that usually accompanies presidential speeches. Mr. Obama spoke for 18 minutes, offering his own reflections and implicitly criticizing gun laws and racial profiling methods — both of which, critics say, played a role in Mr. Martin's death.

Mr. Obama continued to avoid

Continued on Page A11

## Kerry Achieves Deal to Revive Mideast Talks

By MICHAEL R. GORDON and JODI RUDOREN

AMMAN, Jordan — Israeli and Palestinian leaders have "established a basis" to resume direct peace negotiations for the first time in three years, Secretary of State John Kerry announced Friday, after an intense round of shuttle diplomacy aimed at reviving the dormant Middle East peace process.

The preliminary agreement is the Obama administration's first incremental success in efforts to convene talks since the president's attempt to broker a deal early in his first term ended in acrimony. If negotiations develop beyond what Mr. Kerry described as an "initial" phase by chief negotiators, it would be the first face-to-face meeting of Prime Minister Benjamin Netanyahu of Israel and President Mahmoud Abbas of the Palestinian Authority since the Arab

Continued on Page A6

## Town's Schools Test a Law of Racial Arithmetic

### District in Connecticut Struggles to Balance Demographic Gap

By AL BAKER

GREENWICH, Conn. — Just a few minutes' drive from the polo fields, the fieldstone walls guarding 10-acre estates and the Greenwich Country Day School, from which the elder George Bush graduated in 1937, is far denser terrain, where the homes are smaller and closer together and part of a public housing complex that seems escaped from New York City.

This, too, is Greenwich, and the two public elementary schools in this part of town look, demographically, nothing like most schools in the whiter, wealthier areas. At both, minority students make up at least two-thirds of the enrollment, including some students who are the children of housekeepers, landscapers and construction workers who keep up the lavish homes in the backcountry.

And that is putting the town on a collision course with the State of Connecticut.

Segregation within school districts is not unique to Greenwich — one need look no farther than New York City to find mostly white schools a few blocks from mostly black schools. But Connecticut is one of a few states that forbid districts from letting any of their schools deviate too much in racial makeup from any of their other schools.

The Greenwich district, where minority students constitute one-third of the overall public school population, is trying to come up with solutions. But as previous attempts to correct the imbalance have failed to keep up with population shifts, the district's leaders and many parents are challenging the notion that the law, which was passed in 1969, is even relevant today.

"In 2013, that is a very different conversation than in the civil rights era," the superintendent, William S. McKersie, said. "We are getting high-quality outcomes. The challenge with the state is, 'Are you applying an old understanding of how to get educational opportunity that could undermine what we are trying to

Continued on Page A17

[illegible] FOR THE NEW YORK TIMES

**Hard Days in Detroit, Struggling for a Way Forward**

UNCHARTED WATERS A day after Detroit filed for bankruptcy, anxious residents wrestled with how the move might change their lives. PAGE A10

A MUSEUM'S ART AT RISK The municipally owned Detroit Institute of Arts finds its collection on the table as the city negotiates with creditors. PAGE C1

LEGAL FIGHT A state judge said the governor had no right to approve the bankruptcy move. PAGE A11

DOING THE MATH An error in Detroit's pension plan is nothing new to people who run them. PAGE B1

## Court Tells Reporter to Testify In Case of Leaked C.I.A. Data

By CHARLIE SAVAGE

WASHINGTON — In a major ruling on press freedoms, a divided federal appeals court on Friday ruled that James Risen, an author and a reporter for The New York Times, must testify in the criminal trial of a former Central Intelligence Agency official charged with providing him with classified information.

In a 118-page set of opinions, two members of a three-judge panel for the United States Court of Appeals for the Fourth Circuit, in Richmond, Va., ruled that the First Amendment does not protect reporters who receive unauthorized leaks from being forced to testify against the people suspected of leaking to them. A district court judge who had ruled in Mr. Risen's case had said that it did.

"Clearly, Risen's direct, firsthand account of the criminal conduct indicted by the grand jury cannot be obtained by alternative means, as Risen is without dispute the only witness who can offer this critical testimony," wrote Chief Judge William Byrd Traxler Jr., who was joined by Judge Albert Diaz in Friday's ruling.

Mr. Risen has vowed to go to prison rather than testify about his sources and to carry any appeal as far as the Supreme Court. But some legal specialists said an appeal to the full appeals court was a likely first step. Mr. Risen referred a request to comment to his lawyer, Joel Kurtzberg, who wrote in an e-mail: "We are disappointed by and disagree with the court's decision. We are currently evaluating our next steps."

Judge Roger Gregory, the third member of the panel, filed a vigorous dissent, portraying his colleagues' decision as "sad" and a serious threat to investigative journalism.

"Under the majority's articulation of the reporter's privilege, or lack thereof, absent a showing of bad faith by the government, a reporter can always be com-

Continued on Page A13

## Taiwan's Tennis Ace Flirts With China. How Could She? Cash.

By DAN LEVIN

BEIJING — What is the quickest way for a professional athlete in Taiwan to get a sponsorship deal? Perhaps by threatening to shift her allegiance to China.

A Taiwanese tennis champion tapped into her homeland's deep political insecurities after word spread that she was willing to become a citizen of China. That is, if she gets the right endorsement contract.

Taiwan is a self-governing island, but China regards it as a breakaway province.

The player, Hsieh Su-wei, 27, this month became the first person from Taiwan to win a Grand Slam title, claiming the women's doubles championship at Wimbledon with Shuai Peng of China. When Hsieh returned to Taiwan, fans showered her with garlands of flowers.

The victory celebration, however, was subdued by Hsieh's father, who said that a Chinese liquor company had offered her 10 million renminbi a year, or $1.63 million, to represent the western province of Qinghai in China's national sports competition. That would require her to renounce her Taiwanese citizenship, he said.

Of course, it could have been a bluff — pressing a geopolitical hot button to drum up support. Either way, it effectively got Taiwan's attention.

"Su-wei might have to become a mainlander to play in the National Games, but we prefer that doesn't happen," her father, Hsieh Tsu-lung, said in a telephone interview this week.

China and Taiwan have been

Continued on Page D4

NATIONAL A10-14

**Seeking a Business Alliance**

Advocates of an immigration overhaul say business groups may be their best shot for turning up the pressure on House Republicans. PAGE A12

**Showdown at the Bulger Trial**

A mobster and a killer glowered at each other in court like toothless junkyard dogs. This Land by Dan Barry. PAGE A10

NEW YORK A15-17, 20

**Next Move for Commissioner**

With a new mayor coming, the future is uncertain for New York's police commissioner, Raymond W. Kelly. PAGE A15

INTERNATIONAL A4-9

**Talk of a Different Royal Birth**

As Belgium's king, Albert II, above, steps down, eyes focus on a woman who says she's his illegitimate child. PAGE A4

**Judge's Challenge on Drones**

A federal judge challenged the White House on killings with drones. PAGE A8

BUSINESS DAY B1-7

**Global Plan on Corporate Tax**

The G-20 industrialized nations, starved for cash, endorsed a blueprint to curb tax-avoidance strategies used by multinational corporations. PAGE B1

**Stymied, Despite a Degree**

Those who finished college during the recession are being passed over in favor of newly minted graduates. PAGE B1

ARTS C1-7

**Prestigious Plays for Broadway**

The coming Broadway season is poised to showcase plays from several winners of the Pulitzer Prize for drama. PAGE C1

SPORTSSATURDAY D1-6

**Jeter Back on Disabled List**

After playing just one game after his return from a foot injury, Derek Jeter, the Yankees' shortstop and captain, will not be able to play for at least another week while he recovers from a strained quadriceps muscle. PAGE D3

**Woods Is Near Lead at Open**

Tiger Woods, going for his 15th major championship, is one stroke behind the leader, Miguel Ángel Jiménez, after two rounds of the British Open. PAGE D1

EDITORIAL, OP-ED A18-19

**Gail Collins** PAGE A19

THIS WEEKEND

**Annie and Her Sisters**

Woody Allen's new film, "Blue Jasmine," features the latest of the distinctive female characters he has been creating for 40 years. ARTS & LEISURE

July 20, 2013

Reproduced with permission of the copyright owner. Further reproduction prohibited without permission.

# Blogger For Times Is to Join ESPN Staff

By BRIAN STELTER

Nate Silver, the statistician who attained national fame for his accurate projections about the 2008 and 2012 presidential elections, is parting ways with The New York Times and moving his FiveThirtyEight franchise to ESPN, the sports empire controlled by the Walt Disney Company, according to ESPN employees with direct knowledge of his plans.

At ESPN, Mr. Silver is expected to have a wide-ranging portfolio. Along with his writing and number-crunching, he will most likely be a regular contributor to "Olbermann," the late-night ESPN2 talk show hosted by Keith Olbermann that will have its debut at the end of August. In political years, he will also have a role at ABC News, which is owned by Disney.

An ESPN spokeswoman declined to comment on Friday night. Mr. Silver declined to comment. The employees, who spoke on the condition of anonymity,

*Nate Silver of FiveThirtyEight is said to be going to Olbermann's show.*

said that Mr. Silver's deal could be announced as soon as Monday.

Before creating statistical models for elections, Mr. Silver was a baseball sabermetrician who built a highly effective system for projecting how players would perform in the future. For a time he was a managing partner of Baseball Prospectus.

At public events recently, he has expressed interest in covering sports more frequently, so the ESPN deal is a logical next step.

Mr. Silver's three-year contract with The Times is set to expire in late August and his departure will most likely be interpreted as a blow to the company, which has promoted Mr. Silver and his brand of poll-based projections.

He gained such prominence in 2012 that President Obama joked that Mr. Silver had accurately predicted which turkeys the president would pardon that Thanksgiving. "Nate Silver completely nailed it," he said. "The guy's amazing."

Speculation about the future of Mr. Silver and FiveThirtyEight heated up shortly after last November's election, and he was wooed by no small number of other news organizations. Jill Abramson, the newspaper's executive editor, and Mark Thompson, the chief executive of The New York Times Company, said earlier this year that they would try hard to sign Mr. Silver to a new contract.

NBC News and its cable news channel MSNBC was another interested party.

In an e-mail several weeks ago, Mr. Silver said negotiations were continuing with The Times "and I'm still trying to make a decision." He informed The Times on Friday of his plan to leave.

He occasionally hinted in interviews and public appearances that his relationship with The Times had moments of tension. But it was mutually beneficial. The news organization gained Web traffic and prestige by hosting his work, and he received a salary, a wider audience and editorial support.

The same will most likely be true at ESPN.

*James Andrew Miller contributed reporting.*

# S.E.C. Civil Charges Are Latest Test for a Hedge Fund Billionaire

*From Page A1*

criminal case against SAC, according to people briefed on the matter, who spoke on the condition of anonymity. The authorities expect to announce charges as soon as this summer, the people said, noting that prosecutors might indict other traders at SAC or the fund itself, a move that would effectively destroy the company.

Though a legal deadline to file some insider trading charges is approaching, authorities are planning to navigate around that requirement by filing a broader criminal conspiracy case against SAC, these people said. As long as one of the trades cited in the case took place in the last five years, then the government has leeway to include older trades to highlight a continuing scheme.

Mr. Cohen is not out of the woods, either. In May, federal authorities issued subpoenas to Mr. Cohen and five of his senior executives to testify before a grand jury. Mr. Cohen declined to testify, exercising his constitutional right against self-incrimination, the people briefed on the matter said.

Even if a criminal case never materializes, the S.E.C.'s action on Friday is a blow to Mr. Cohen, who has built SAC, which is based in Stamford, Conn., into one of the world's largest and most powerful hedge funds, with about 1,000 employees and $15 billion in assets at the start of the year. It has a nearly unparalleled investment record, delivering nearly 30 percent annual returns, on average, over two decades. SAC's investors, however, have already withdrawn billions of dollars from the fund this year as the government's investigation has intensified.

Mr. Cohen, 57, thought he put his legal troubles behind him in March when SAC agreed to pay a $616 million civil penalty to the S.E.C. The case resolved insider trading actions connected to the suspected misconduct of two former employees, Mathew Martoma and Michael S. Steinberg, though they did not directly implicate Mr. Cohen.

The S.E.C. filed its case, which accused Mr. Cohen of failing to supervise the two employees, a day before the five-year legal deadline to bring a case related to trades that Mr. Martoma made in July 2008.

"Hedge fund managers are responsible for exercising appropriate supervision over their employees to ensure that their firms comply with the securities laws," Andrew J. Ceresney, co-director of enforcement of the S.E.C., said

Steven A. Cohen, above, the owner of SAC Capital Advisors, is accused of failing to supervise former employees who face criminal charges, like Mathew Martoma, left.

in a statement.

On Friday, Jonathan Gasthalter, an SAC spokesman, said the S.E.C.'s action had no merit. "Steve Cohen acted appropriately at all times and will fight this charge vigorously," he said. "The S.E.C. ignores SAC's exceptional supervisory structure, its extensive compliance policies and procedures, and Steve Cohen's strong support for SAC's compliance program."

The firm's compliance policies and procedures have come under scrutiny as many former employees have found themselves under government scrutiny. Including Mr. Martoma and Mr. Steinberg, nine former SAC employees have been tied to insider trading while at the firm; four have pleaded guilty to criminal charges. Mr. Cohen has not been accused of any criminal wrongdoing.

Mr. Martoma, 39, and Mr. Steinberg, 40, have each pleaded not guilty to criminal insider trading charges and face separate trials in November. Lawyers for each declined to comment on the S.E.C. action against Mr. Cohen. Representatives for the United States attorney's office for the Southern District of New York and the F.B.I. also declined to comment.

Despite the substantial investor withdrawals, Mr. Cohen has vowed to continue managing funds for outside clients, to whom he charges some of the highest fees in the hedge fund industry. Yet Mr. Cohen could return investors' money and still run a sizable business that managed his own personal fortune. His wealth accounts for more than half of the fund's $15 billion in assets.

The S.E.C.'s case against Mr. Cohen intensified this spring, people briefed on the case said, soon after the agency struck the settlement with the fund. The agency sent him a so-called Wells notice in late May, the people said, warning that the agency's investigators would soon recommend charges.

Mr. Cohen's lawyers pushed back in recent weeks, outlining a potential defense to the charges. But the agency decided to proceed, one person said, holding a special meeting with the agency's five commissioners to consider the charges. The meeting was separate from the agency's typical weekly gathering to discuss enforcement cases, a measure that allowed the agency to keep a tight lid on the case.

The case is not a slam-dunk. The S.E.C. must show not only that Mr. Martoma and Mr. Steinberg violated the law and that they operated under Mr. Cohen's supervision, but also that Mr. Cohen failed to "reasonably" supervise them.

It could benefit the agency that the case will appear on its home turf. Instead of a being heard by a judge in federal court, the proceeding will take place before an S.E.C. administrative law judge, who will determine what penalties, if any, should be assessed against Mr. Cohen. The S.E.C. says that the illicit trading earned SAC profits and avoided losses totaling more than $275 million.

Friday's filing provides additional details about two sets of trades made by SAC in 2008. The first involved Mr. Cohen's collaboration with Mr. Martoma in accumulating large positions in the pharmaceutical companies Elan and Wyeth, which at the time were jointly developing an Alzheimer's drug. In November, federal prosecutors charged Mr. Martoma with obtaining secret information from a doctor overseeing the drug's clinical trials. That doctor, Sidney Gilman, has agreed to testify against Mr. Martoma.

Inside SAC, a number of other drug stock analysts at the fund objected to the large positions, but Mr. Cohen told them that he was following Mr. Martoma's advice because he was "closer to it than you," according to the court filing. The S.E.C. said that in a later instant message, Mr. Cohen said that it seemed as if Mr. Martoma "has a lot of good relationships in this area."

Mr. Cohen also knew of a second doctor who might possibly have had secret information about the clinical trials, the S.E.C. said. Rather than express concern about the fund possessing potentially confidential information, Mr. Cohen encouraged Mr. Martoma to talk further with the doctor, according to the court filing.

On July 21, 2008, after building sizable holdings in Elan and Wyeth, SAC began aggressively selling shares in the two companies. The day before, on a Sunday, Mr. Martoma had a 20-minute phone call with Mr. Cohen. It is unclear what was said during that conversation, but Mr. Cohen, in a deposition that he gave to the S.E.C. last year, said that Mr. Martoma told him he had lost conviction in the positions.

The second trade at issue in the case involves shares of Dell. The S.E.C. also faults Mr. Cohen for not ferreting out what they suspect was illegal trading in shares of Dell in August 2008 by Mr. Steinberg and another former SAC employee, Jon Horvath, who pleaded guilty to criminal charges last year.

Friday's court filing cites an e-mail about Dell that an SAC trader forwarded to Mr. Cohen, who was working at his summer home in the Hamptons. The e-mail was from Mr. Horvath, who worked under Mr. Steinberg, saying that he had a "2nd hand read from someone at the company" and went on to provide detailed information about Dell's financial performance.

"Please keep this to yourself as obviously not well known," Mr. Horvath wrote.

The S.E.C. says that based on this e-mail, Mr. Cohen should have taken prompt action to determine whether the fund was engaged in insider trading. Instead, according to the agency, Mr. Cohen quickly sold his small Dell position just before the company announced earnings.

Three hours after the earnings release, Mr. Cohen e-mailed Mr. Steinberg: "Nice job on Dell."

# Feistier S.E.C. Emerges Under New Chief, Pleasing the Agency's Critics

*From First Business Page*

neither "admit nor deny" wrongdoing when reaching settlements. The leaders of the S.E.C. enforcement unit detailed the policy shift in a memo last month, saying there might be cases that "justify requiring the defendant's admission of allegations in our complaint or other acknowledgment of the alleged misconduct as part of any settlement."

"It's welcome news for the American people desperate for a tougher S.E.C.," said Dennis M. Kelleher, who runs Better Markets, an advocacy group critical of Wall Street. He said, however, that the agency still had a high bar to prove it could be a tough enforcer. "Two hedge fund cases are good, but not good enough," he said.

A preliminary settlement with Mr. Falcone had been collapsing for weeks, people close to the S.E.C. said, as Ms. White and the agency's other commissioners questioned whether it was too lax. On Thursday, the agency's commissioners rejected the settlement, a rare move that happens only once or twice a year.

Moments later, the S.E.C. notified Mr. Falcone and his hedge fund, Harbinger Capital Partners,

The S.E.C. rejected a settlement in its civil lawsuit against Philip A. Falcone, chief executive of Harbinger Capital Partners.

that the agency had rejected "the previously disclosed agreement in principle," according to a public filing his company made on Friday. The charges stemmed from accusations that Mr. Falcone had manipulated the market, used hedge fund assets to pay his own taxes and secretly favored select customers at the expense of others.

The S.E.C.'s rejection of the settlement — a move that will prompt the agency to either negotiate a tougher penalty or take Mr. Falcone to trial — suggested that its preliminary deal did not match the gravity of the crime. The deal, announced in May by Mr. Falcone, came with an $18 million penalty from the S.E.C., a rounding error to a hedge fund billionaire. Mr. Falcone was set to personally pay $4 million of the penalty, according to people briefed on the matter, while the fund's management company would have paid the rest.

While the deal also included at least a two-year ban from raising new capital, that punishment came with a number of caveats. And in a moral victory for Mr. Falcone, the deal also omitted a common provision barring defendants from committing future violations with fraudulent intent, raising concerns that the S.E.C.'s results fell short of its ambitions.

For a time, the S.E.C. was questioning whether to sanction Mr. Cohen. The agency spent nearly a decade investigating his hedge fund, SAC Capital Advisors, and even brought charges against several employees. But Mr. Cohen was not accused of wrongdoing. That changed on Friday, when the S.E.C. accused him of "failing to supervise" employees.

The action, filed as an administrative proceeding at the agency rather than as a lawsuit in federal court, delivers a serious blow to Mr. Cohen. The agency is seeking to bar him from overseeing outside investor funds, a death knell to a hedge fund manager.

It is unusual for the S.E.C. to pursue a case against someone of Mr. Cohen's stature without formally accusing him of insider trading or fraud. The charge of failing to properly supervise is similar to what other regulators have done in a lawsuit against Jon S. Corzine, who led MF Global during the brokerage firm's collapse two years ago.

In its charging document on Friday, the S.E.C. says Mr. Cohen failed to halt two of his portfolio managers from trading on confidential information. The two SAC employees, who both face criminal charges, were swept up in a broad federal investigation into insider trading.

One of the portfolio managers, Mathew Martoma, is accused of improperly acting on data about a clinical drug trial in 2008. The other, Michael S. Steinberg, is accused of trading on confidential information about Dell's financial performance that same year.

Both men have denied the charges and face separate trials that begin in November. An SAC spokesman said that the S.E.C.'s action had no merit. "Steve Cohen acted appropriately at all times and will fight this charge vigorously," the spokesman said.

The case against Miami came just hours after the action against Mr. Cohen was announced. The S.E.C. accused the city of giving misleading information about its finances to investors in 2009 in an effort to make its municipal bonds more attractive.

The agency also said the city broke a cease-and-desist order it signed in 2003 after facing similar charges. George Canellos, co-director of the S.E.C.'s enforcement unit, said in a statement that the city's conduct was "all the more appalling and unacceptable" because of the earlier problems.

A lawyer for Miami, Ivan Harris, said the city would fight the charges in court.

*Nathaniel Popper contributed reporting.*

STOCKS & BONDS

# Mixed Day on Wall Street as Investors Digest Disagreeable Technology Earnings

By Reuters

The Dow Jones and Nasdaq stock gauges fell on Friday as disappointing results from Microsoft and Google seemed to weigh on the market, while the Standard & Poor's 500-stock index edged up to end at a second straight high.

Stronger-than-expected results from General Electric and the oil-field services company Schlumberger helped the S.&P. 500 offset losses in the technology sector and post a fourth week of gains.

For the week, the Dow rose 0.5 percent, the S.&P. added 0.7 percent, and the Nasdaq fell 0.3 percent. The S.&P. is up 18.5 percent for the year.

On Friday, Microsoft was the biggest drag on all three major indexes, its stock slumping 11.4 percent to $31.40, with the Nasdaq registering the day's steepest declines. Google, which lost 1.5 percent to $893.80, also weighed on the S.&P. 500 and Nasdaq. Both companies reported earnings that fell short of expectations.

Technology "may be the one area where companies haven't gotten expectations sufficiently reduced," said Eric Kuby, chief investment officer at North Star Investment Management in Chicago. "Stocks like Microsoft and Google I think were probably at the point where they had traded so nicely into earnings that people were really looking for something positive to be said."

The Dow Jones industrial average slipped 4.80 points, or 0.03 percent, on Friday to close at 15,543.74. The S.&P. 500 was up 2.72 points, or 0.16 percent, at 1,692.09. The Nasdaq fell 23.88 points, or 0.66 percent, at 3,587.61.

Analysts' estimates for corporate earnings have been reduced so much that investors say they believe the targets for the most part should be beaten easily. Through Friday, of the 101 companies in the S.&P. 500 that had reported quarterly earnings, 65.4 percent reported earnings above expectations, while 51 percent topped revenue estimates, according to Thomson Reuters.

Also in the tech sector, Advanced Micro Devices tumbled 13.2 percent to $4.03 after the company said gross margins would fall, even as it forecast stronger-than-expected revenue growth in the third quarter.

Encouraging earnings from other companies helped offset the tech losses. Shares of General Electric rose 4.6 percent to $24.72, while shares of Schlumberger gained 5.4 percent to $82.74.

The benchmark 10-year Treasury note rose 14/32 to 93 31/32, to yield 2.48 percent, down from 2.53 percent on Thursday.

**The Dow Minute by Minute**

Position of the Dow Jones industrial average at 1-minute intervals yesterday

15,560
15,540
15,520
15,500
15,480
Previous close: 15,548.54
10 a.m.
Noon
2 p.m.
4 p.m.

Source: Bloomberg THE NEW YORK TIMES

July 20, 2013

Reproduced with permission of the copyright owner. Further reproduction prohibited without permission.



# S.E.C. Charges Are Latest Test For Billionaire

### Hedge Fund Chief Is Target of Civil Case

**By PETER LATTMAN
and BEN PROTESS**

After a long-running investigation into insider trading at the hedge fund SAC Capital Advisors, an inquiry that has produced several guilty pleas and a record $616 million civil penalty, the government on Friday brought a case for the first time against the fund's billionaire owner, Steven A. Cohen.

In a civil action, the Securities and Exchange Commission accused Mr. Cohen of failing to supervise former employees who face criminal charges. The case, filed as an administrative proceeding at the agency rather than a lawsuit in federal court, contends that he ignored "red flags" that should have led him to investigate suspicious trading activity at SAC and take steps to prevent illegal conduct. If the S.E.C. prevails in its action against Mr. Cohen, there are a range of possible penalties, including assessing additional fines, barring Mr. Cohen from managing money for clients, or banning him from the financial services industry for life.



Although the case stops short of accusing Mr. Cohen of fraud or insider trading, it represents the first government action brought directly against him after an inquiry that has persisted for nearly a decade.

And while the government has taken its first direct shot at Mr. Cohen, it is unlikely to be the last. Federal prosecutors and the F.B.I. are continuing to build a

*Continued on Page B6*

### Harder Line by S.E.C.

A flurry of moves shows things may be different. Page B1.




THE NEW YORK TIMES, SATURDAY, JULY 20, 2013

# S.E.C. Civil Charges Are Latest Test for a Hedge Fund Billionaire

*From Page A1*

ff

ER

:atistician
fame for
ns about
esidential
ays with
d moving
nchise to
pire con-
ney Com-
r employ-
lge of his

is expec-
:ing port-
-iting and
will most
tributor to
late-night
l by Keith
ve its de-
. In politi-
ive a role
owned by

man de-
n Friday
d to com-
.he spoke
nonymity,

·is

to

nw.

eal could
as Mon-

·tatistical
Ir. Silver
netrician
tive sys-
· players
ture. For
ing part-
us.
·ently, he
in cover-
bly, so the
·xt step.
·ear con-
·to ex-
·i his de-
· by in-
· compa-
l Mr. Sil-
oli-based

criminal case against SAC, ac-
cording to people briefed on the
matter, who spoke on the condi-
tion of anonymity. The authori-
ties expect to announce charges
as soon as this summer, the peo-
ple said, noting that prosecutors
might indict other traders at SAC
or the fund itself, a move that
would effectively destroy the
company.

Though a legal deadline to file
some insider trading charges is
approaching, authorities are
planning to navigate around that
requirement by filing a broader
criminal conspiracy case against
SAC, these people said. As long
as one of the trades cited in the
case took place in the last five
years, then the government has
leeway to include older trades to
highlight a continuing scheme.

Mr. Cohen is not out of the
woods, either. In May, federal au-
thorities issued subpoenas to Mr.
Cohen and five of his senior exec-
utives to testify before a grand
jury. Mr. Cohen declined to testi-
fy, exercising his constitutional
right against self-incrimination,
the people briefed on the matter
said.

Even if a criminal case never
materializes, the S.E.C.'s action
on Friday is a blow to Mr. Cohen,
who has built SAC, which is
based in Stamford, Conn., into
one of the world's largest and
most powerful hedge funds, with
about 1,000 employees and $15
billion in assets at the start of the
year. It has a nearly unparalleled
investment record, delivering
nearly 30 percent annual returns,
on average, over two decades.
SAC's investors, however, have
already withdrawn billions of dol-
lars from the fund this year as the
government's investigation has
intensified.

Mr. Cohen, 57, thought he put
his legal troubles behind him in
March when SAC agreed to pay a
$616 million civil penalty to the
S.E.C. The case resolved insider
trading actions connected to the
suspected misconduct of two for-
mer employees, Mathew Marto-
ma and Michael S. Steinberg,
though they did not directly im-
plicate Mr. Cohen.

The S.E.C. filed its case, which
accused Mr. Cohen of failing to
supervise the two employees, a
day before the five-year legal
deadline to bring a case related to
trades that Mr. Martoma made in
July 2008.

"Hedge fund managers are re-
sponsible for exercising appro-
priate supervision over their em-
ployees to ensure that their firms
comply with the securities laws,"
Andrew J. Ceresney, co-director
of enforcement at the S.E.C., said

in a statement.

On Friday, Jonathan Gasthal-
ter, an SAC spokesman, said the
S.E.C.'s action had no merit.
"Steve Cohen acted appropriate-
ly at all times and will fight this
charge vigorously," he said. "The
S.E.C. ignores SAC's exceptional
supervisory structure, its exten-
sive compliance policies and pro-
cedures, and Steve Cohen's
strong support for SAC's compli-
ance program."

The firm's compliance policies
and procedures have come under
scrutiny as many former employ-
ees have found themselves under
government scrutiny. Including
Mr. Martoma and Mr. Steinberg,
nine former SAC employees have
been tied to insider trading while
at the firm; four have pleaded
guilty to criminal charges. Mr.
Cohen has not been accused of
any criminal wrongdoing.

Mr. Martoma, 39, and Mr.
Steinberg, 40, have each pleaded
not guilty to criminal insider
trading charges and face sepa-
rate trials in November. Lawyers
for each declined to comment on
the S.E.C. action against Mr. Co-



Steven A. Cohen, above, the
owner of SAC Capital Advi-
sors, is accused of failing to
supervise former employees
who face criminal charges,
like Mathew Martoma, left.

STEVE MARCUS/REUTERS

KEITH BEDFORD/REUTERS

hen. Representatives for the
United States attorney's office
for the Southern District of New
York and the F.B.I. also declined
to comment.

Despite the substantial invest-
or withdrawals, Mr. Cohen has
vowed to continue managing
funds for outside clients, to whom
he charges some of the highest
fees in the hedge fund industry.
Yet Mr. Cohen could return in-
vestors' money and still run a siz-
able business that managed his
own personal fortune. His wealth
accounts for more than half of the
fund's $15 billion in assets.

The S.E.C.'s case against Mr.
Cohen intensified this spring,
people briefed on the case said,
soon after the agency struck the
settlement with the fund. The
agency sent him a so-called Wells
notice in late May, the people
said, warning that the agency's
investigators would soon recom-
mend charges.

Mr. Cohen's lawyers pushed
back in recent weeks, outlining a
potential defense to the charges.
But the agency decided to pro-

ceed, one person said, holding a
special meeting with the agen-
cy's five commissioners to con-
sider the charges. The meeting
was separate from the agency's
typical weekly gathering to dis-
cuss enforcement cases, a meas-
ure that allowed the agency to
keep a tight lid on the case.

The case is not a slam-dunk.
The S.E.C. must show not only
that Mr. Martoma and Mr. Stein-
berg violated the law and that
they operated under Mr. Cohen's
supervision, but also that Mr. Co-
hen failed to "reasonably" su-
pervise them.

It could benefit the agency that
the case will appear on its home
turf. Instead of a being heard by a
judge in federal court, the pro-
ceeding will take place before an
S.E.C. administrative law judge,
who will determine what penal-
ties, if any, should be assessed
against Mr. Cohen. The S.E.C.
says that the illicit trading
earned SAC profits and avoided
losses totaling more than $275
million.

Friday's filing provides addi-
tional details about two sets of
trades made by SAC in 2008. The
first involved Mr. Cohen's col-
laboration with Mr. Martoma in
accumulating large positions in
the pharmaceutical companies
Elan and Wyeth, which at the
time were jointly developing an
Alzheimer's drug. In November,
federal prosecutors charged Mr.
Martoma with obtaining secret

information from a doctor over-
seeing the drug's clinical trials.
That doctor, Sidney Gilman, has
agreed to testify against Mr. Mar-
toma.

Inside SAC, a number of other
drug stock analysts at the fund
objected to the large positions,
but Mr. Cohen told them that he
was following Mr. Martoma's ad-
vice because he was "closer to it
than you," according to the court
filing. The S.E.C. said that in a lat-
er instant message, Mr. Cohen
said that it seemed as if Mr. Mar-
toma "has a lot of good rela-
tionships in this area."

Mr. Cohen also knew of a sec-
ond doctor who might possibly
have had secret information
about the clinical trials, the S.E.C.
said. Rather than express con-
cern about the fund possessing
potentially confidential informa-
tion, Mr. Cohen encouraged Mr.
Martoma to talk further with the
doctor, according to the court fil-
ing.

On July 21, 2008, after building
sizable holdings in Elan and Wy-
eth, SAC began aggressively sell-
ing shares in the two companies.
The day before, on a Sunday, Mr.
Martoma had a 20-minute phone
call with Mr. Cohen. It is unclear
what was said during that con-
versation, but Mr. Cohen, in a
deposition that he gave to the
S.E.C. last year, said that Mr.
Martoma told him he had lost
conviction in the positions.

The second trade at issue in
the case involves shares of Dell.
The S.E.C. also faults Mr. Cohen
for not ferreting out what they
suspect was illegal trading in
shares of Dell in August 2008 by
Mr. Steinberg and another for-
mer SAC employee, Jon Horvath,
who pleaded guilty to criminal
charges last year.

Friday's court filing cites an
e-mail about Dell that an SAC
trader forwarded to Mr. Cohen,
who was working at his summer
home in the Hamptons. The
e-mail was from Mr. Horvath,
who worked under Mr. Steinberg,
saying that he had a "2nd hand
read from someone at the compn-
ny" and went on to provide de-
tailed information about Dell's fi-
nancial performance.

"Please keep this to yourself as
obviously not well known," Mr.
Horvath wrote.

The S.E.C. says that based on
this e-mail, Mr. Cohen should
have taken prompt action to de-
termine whether the fund was
engaged in insider trading. In-
stead, according to the agency,
Mr. Cohen quickly sold his small
Dell position just before the com-
pany announced earnings.

Three hours after the earnings
release, Mr. Cohen e-mailed Mr.
Steinberg: "Nice job on Dell."

Reproduced with permission of the copyright owner. Further reproduction prohibited without permission.

Regulators Move Against SAC Chief Steven Cohen - WSJ.com

# THE WALL STREET JOURNAL.
WSJ.com

MARKETS  |  Updated July 19, 2013, 7:45 p.m. ET

# SEC Is Seeking to Ban Cohen

*Regulator Says Founder of Hedge Fund SAC Ignored Signs of Illegal Trading*

By JEAN EAGLESHAM and JENNY STRASBURG

U.S. securities regulators accused Steven A. Cohen of ignoring "red flags" that should have alerted him to insider trading at his hedge-fund firm and moved to ban the billionaire for life from the industry where he made his fortune.

After circling Mr. Cohen for years, the Securities and Exchange Commission filed an administrative action against him Friday. It marked the first time he was personally accused of wrongdoing in a long-running insider-trading probe.



The SEC has filed a civil-enforcement action against SAC chief Steven A. Cohen, alleging he ignored "red flags" that should have alerted him to insider trading "under his watch." Banking editor Colin Barr and Jacob Frenkel, former SEC senior counselor discuss on The News Hub. Photo: AP.

**More**

- Law Blog: A Guide to SEC's Action Against Cohen
- Cohen's Successes Bought an Array of High-Dollar Purchases
- Highlights From the SEC's Case
- Read the SEC Order

**SAC Employees Linked to Insider-Trading Probe**

**Steven A. Cohen:** SAC Capital Adviser's

But the weapon used against Mr. Cohen by the SEC is one of the weakest in its enforcement arsenal, falling short of a lawsuit that would be decided by a jury in federal court. The charge of failing to supervise employees leveled at Mr. Cohen isn't an accusation of insider-trading or any other form of securities fraud.

Mr. Cohen still faces a criminal insider-trading probe that is continuing. However, The Wall Street Journal previously reported that prosecutors had concluded they don't have enough evidence to file criminal insider-trading charges this month against Mr. Cohen personally.

The SEC didn't file civil-fraud charges against him, even though it faces a lower burden of proof than required for criminal convictions. Still, the agency could claim victory if it succeeds in getting Mr. Cohen banned for life from the industry.

The civil action sets up a showdown between a federal agency operating under a new chairman pledging to get tough on financial misconduct and one of its longest-running targets. SAC manages roughly $14 billion, of which about $8 billion belongs to Mr. Cohen and his

founder and chief. He was targeted Friday in a civil-enforcement action by the SEC, which alleged he ignored red flags on insider trading.

**Richard C.B. Lee:** Former technology analyst at SAC, cooperating with the government. He tried to get rehired at SAC in 2009, at the direction of the FBI. Mr. Lee worked in the same group as SAC trader Michael Steinberg, currently charged with insider-trading.

**Richard Grodin and Dipak Patel:** Former SAC traders. The government listed them as eavesdropping targets on a 2008 application to wiretap Mr. Lee. A former SAC analyst told the FBI he gave Mr. Patel inside information, and Mr. Patel was taped by another FBI informant. Neither Mr. Grodin nor Mr. Patel has been charged with wrongdoing.

**Jon Horvath:** Ex-analyst under SAC trader Michael Steinberg. Pleaded guilty to insider trading and implicated Mr. Steinberg.

**Mathew Martoma and Michael Steinberg:** Mr. Martoma, an SAC ex-trader, and Mr. Steinberg, a current one, have pleaded not guilty to insider-trading charges and are headed for trial.

**Noah Freeman and Donald Longueuil:** Ex-SAC traders who pleaded guilty to insider trading. The FBI examined their trading in a portfolio overseen by Steven A. Cohen, according to court records.



Bloomberg News

SAC Capital Advisors CEO Steven Cohen

**Previously**

- **Cohen Probe Is Missing Key Elements** (July 7, 2013)
- **SAC Figure: Media May Bias Jurors** (July 9, 2013)
- **Cohen Likely to Avoid Criminal Charges** (July 4, 2013)
- **SAC Sees Investors Pulling Out $3.5 Billion** (June 2, 2013)
- **SAC Trading Probe Reaches Higher** (March 29, 2013)
- **SAC Hit With Record Insider Penalty** (March 15, 2013)
- **Trading Charges Reach SAC** (Nov. 20, 2012)

employees.

A spokesman for SAC said Friday the SEC's action had "no merit."

"Steve Cohen acted appropriately at all times and will fight this charge vigorously," the spokesman said in a statement, adding that the agency was ignoring the hedge-fund firm's "extensive compliance policies and procedures."

The SEC's move Friday is the culmination of more than a decade's scrutiny by regulators of the hedge-fund titan and the firm he started in 1992, which has consistently posted some of the best returns on Wall Street.

The SEC alleged the 57-year-old financier ignored signs of illicit trading by star staffers and instead traded personally on their advice. The agency alleged the trading resulted in hundreds of millions of dollars in profits and avoided losses for Mr. Cohen and the firm.

Six former SAC employees have pleaded guilty to, or been convicted of, federal insider-trading charges in New York. A current and a former employee are headed to trial. In March, SAC agreed to pay a record $616 million to settle SEC allegations related to insider trading, without admitting or denying wrongdoing.

The SEC action comes days before a five-year deadline on enforcement actions linked to some of the trades flagged by regulators. The agency wouldn't have been able to impose a fine on Mr. Cohen if it had filed an action after this five-year statute-of-limitations cutoff.

Mr. Cohen's professional success has fueled an opulent lifestyle even by the standards of the hedge-fund industry, with a sprawling mansion in Greenwich, a $60 million oceanfront property in Long Island's East Hampton and one of the top private art collections in the world.

His decision to keep buying trophy properties, even as his former employees and firm were facing charges, privately irked government officials, according to people familiar with the matter.

When colleagues and other confidants in recent years urged Mr. Cohen to consider returning client money and just manage his own billions, he refused, according to people close to the discussions.

Regulators Move Against SAC Chief Steven Cohen - WSJ.com

The high-profile government probe has already had a significant impact on Mr. Cohen, spooking his clients. In the first six months of this year, SAC investors have asked to pull about $5 billion from the firm, according to people familiar with the matter.

The SEC is seeking in the administrative action to bar Mr. Cohen from managing other people's money or supervising others in the financial-services industry, as well as financial penalties. Such bars wouldn't prevent Mr. Cohen from running a "family office" that would manage his own considerable wealth.

Still, "this is the baseline, bottom-line case for the SEC," said Jacob Frenkel, a former SEC attorney, now a partner at law firm Shulman, Rogers, Gandal, Pordy & Ecker PA in Potomac, Md. He gave the SEC "a marginally passing grade after an investigation where the agency was hoping for the highest possible marks."

The move is the SEC's highest-profile enforcement action since Mary Jo White took the helm of the agency in April. In a separate hedge-fund case, Harbinger Group Inc. said Friday the SEC had rejected a "previously disclosed agreement in principle" to settle allegations that Philip Falcone and his hedge-fund firm misled investors. Ms. White, who has pledged to toughen the agency's approach to wrongdoers, was one of the commissioners who rejected the proposed Falcone deal, according to people familiar with the matter. Mr. Falcone's lawyer has said the SEC's allegations are without merit. A spokesman for Mr. Falcone and his firm declined to comment Friday.

The SEC's order paints a more detailed picture than previously set out by the government of Mr. Cohen's alleged personal involvement in the SAC trades targeted by prosecutors.

In one instance in August 2008, Mr. Cohen received an email from a trader related to information about upcoming Dell Inc. earnings, according to the SEC. In the email, an analyst wrote to Michael Steinberg and another portfolio manager, telling them he had a "secondhand read from someone at the company" about disappointing earnings that could hurt the stock.

The email was forwarded to Mr. Cohen's office and home email addresses, and, by the end of the day, Mr. Cohen "sold his entire Dell position," according to the SEC.

The SEC didn't accuse Mr. Cohen of fraud based on that trading. Instead, the agency said the email reflected "the clear possibility" that the information was improperly obtained. According to the SEC, Mr. Cohen ignored that and other warning signs, supervising trades based on suggestions by an ex-employee and a current employee on leave who have both pleaded not guilty to insider-trading charges.

The SEC said that questionable behavior was discussed within SAC, as reflected in claims by one of its ex-employees, Mathew Martoma, that he had "black edge," referring to illicit information, according to the SEC order.

Both Mr. Martoma and Mr. Steinberg have been charged criminally with insider trading. They have pleaded not guilty.

**Write to** Jean Eaglesham at jean.eaglesham@wsj.com and Jenny Strasburg at jenny.strasburg@wsj.com







TODAY'S PAPER    NEWSLETTERS    CLASSIFIEDS +    ARCHIVES    SUBSCRIBE    Search

When you sign up for New York Post home delivery today!    CLICK HERE

| News | Page Six | Sports | Entertainment |
|---|---|---|---|



Swift current
'Wolverine' claws to top
'Stalk' fright



**Eye on Hoda**
NBC could be up for another battle with ABC, this time over...

**Captain returns**
Joe Girardi was on the field Opening Day in Cleveland in 1995,...



**Denim by decade**
Whether your look is 50s fresh or contemporary cool, we've got a...

Gossip   Celeb Photos   Cindy Adams    Teams +   Scores +   Columnists    TV   Movies   Fashion   Travel

Home   News   Local +   Business   Opinion   Columnists +   Politics   Metro   US News   World News   Real Estate +   Weird But True   Crime   Lottery

Story

# SEC finally digs claws into SAC honcho Steve Cohen

By KAJA WHITEHOUSE
Last Updated: 7:04 PM, July 19, 2013
Posted: 4:43 PM, July 19, 2013

Billionaire investment honcho Steve Cohen was accused today of failing to supervise two top traders who are going to trial for insider trading.

The civil action, the first against the hedge fund mogul, could lead to the 57-year old Greenwich, Ct., moneyman being barred from managing investor money.

The lawsuit was filed by Mary Jo White's Securities and Exchange Commission, which earlier this year settled an insider trading probe against Cohen's SAC Capital Advisors in which the firm paid a whopping $615 million.

SAC did not admit or deny guilt in settling the matter.

Cohen hedge funds manage around $15 billion, including roughly $7.5 billion of which is his personal money and would not be affected by an industry ban.

In the latest suit, Cohen "failed to take reasonable steps to investigate and prevent" securities violations by former portfolio managers Mathew Martoma and Michael Steinberg — both of whom are facing trial in the coming months, it is alleged.

A spokesman for Cohen said the suit "has no merit."

"Steve Cohen acted appropriately at all times and will fight this charge vigorously," he said, citing "Cohen's strong support for SAC's compliance program."

Martoma, a former trader in SAC's CR Instrinsic unit, stands accused of helping SAC earn a whopping $276 million trading Elan Corp. and Wyeth based on tips he allegedly gleaned from a doctor overseeing the companies' joint clinical drug trial.

Steinberg, who worked at SAC's Sigma Capital unit, is facing trial in November for trading shares of Dell and Nvidia on allegedly illegal tips he received from his analyst Jon Horvath, who has pleaded guilty and agreed to cooperate.

In both cases, Cohen was aware of suspicious trading activity and yet did nothing to stop it, the SEC said.

For example, in late August, 2008, Cohen sold 500,000 shares he had in Dell after receiving a "highly suspicious email" from Steinberg's analyst Horvath suggesting the computer maker's shares were set to tank.

"I have a 2nd hand read from someone at the company," Horvath wrote to a third



8 WEEKS FREE
When you sign up for New York Post home delivery today!
CLICK HERE
Start home delivery now!

Get New York Post Emails & Alerts


Your Email Address    SIGN-UP

By clicking 'SIGN-UP' you agree to our Terms of Use & Privacy Policy

Photos    Videos    Blogs

Post Pics    More Post Pics »



Post Video



SEC finally digs claws into SAC honcho Steve Cohen - NYPOST.com

SAC employee, Gabe Plotkin, who was — like Cohen — betting Dell shares would rise. Horvath said his insider was expecting disappointing gross poor gross margin numbers in the upcoming quarterly results.

"Please keep to yourself as obviously not well known," he told Plotkin, who then forwarded Horvath's email on to a research trader at SAC whose job it was to keep Cohen appraised of trading-related information worthy of attention.

The research trader sent the email at 1:29 pm on August 25 to Cohen's home and office email addresses. The two then spoke a few minutes later, at 1:37, for 48 seconds on Cohen's cell phone. By 1:39 p.m., Cohen began selling shares of Dell and sold everything before 4 p.m. that day, the complaint alleges.

After the markets closed on Aug. 28, Dell announced its second quarter financial results, gross margin results that were substantially worse what analysts had expected.

Three hours after Dell's announcement, Cohen emailed Steinberg: "Nice job on Dell," the SEC said.

kwhitehouse@nypost.com



News | Gossip | Sports | Weird | Entertainment



8 WEEKS FREE

When you sign up for New York Post home delivery today!

**CLICK HERE**

**Start home delivery now!**

TODAY'S PAPER    NEWSLETTERS    CLASSI



*NEW YORK POST*

### We recommend

- It's official - Saks Fifth Avenue bought by Lord & Taylor owner (Business)
- $ex in the suburbs (Local News)
- TV judge busted! (Local News)
- Johnny Depp plans to quit acting after latest box office bomb: report (Page Six)
- 'Big Brother sex' rage (National News)
- KKR draws healthy skeptics after co-head collapses during investor meeting (Business)

### From around the web

- Plastic Surgery Disasters: Lil Kim, Meg Ryan & More (Hollyscoop)
- Avoid China: Subprime-Like Bubble Brewing (Charles Schwab)
- 10 Worst 529-plan Blunders (Savingforcollege.com)
- Buying vs. Renting a House: The Advantages of Each (YouTube)
- The 10 Worst Hotels and Motels in America (The Fiscal Times)
- In Pennsylvania, a shipyard is back to life due to U.S. energy development (ExxonMobil)

Recommended by

# EXHIBIT  B

Home » News

**PRESS RELEASES**

Follow @SDNYNews      🖶 Printer Friendly

# Manhattan U.S. Attorney And FBI Assistant Director-In-Charge Announce Insider Trading Charges Against Hedge Fund Portfolio Manager

**FOR IMMEDIATE RELEASE**
Friday, March 29, 2013

### *Michael Steinberg Allegedly Earned $1.4 Million in Illegal Profits*

Preet Bharara, the United States Attorney for the Southern District of New York, and George Venizelos, the Assistant Director-in-Charge of the New York Field Office of the Federal Bureau of Investigation ("FBI"), today announced conspiracy and securities fraud charges against Michael STEINBERG, a portfolio manager at a hedge fund located in New York, New York ("Hedge Fund A"), for his alleged involvement in an insider trading scheme. As alleged, STEINBERG executed trades based on material, nonpublic information ("Inside Information") provided to him by a Hedge Fund A analyst who worked for him, John Horvath, who previously pled guilty to securities fraud charges pursuant to a cooperation agreement. In particular, STEINBERG is alleged to have traded in two publicly traded technology companies, Dell, Inc. ("Dell") and NVIDIA Corporation ("NVIDIA"), based on Inside Information that Horvath obtained from a circle of research analysts at several different investment firms, all of whom have also pled guilty for their roles in the scheme. Those individuals are: Jesse Tortora, a former research analyst at Diamondback; Spyridon "Sam" Adondakis, a former research analyst at Level Global; Danny Kuo, a former research analyst and fund manager at Whittier Trust Company; and Sandeep "Sandy" Goyal, a former research analyst who worked at the Manhattan office of Neuberger Berman. STEINBERG's trading in Dell and NVIDIA earned Hedge Fund A $1.4 million in illegal profits. STEINBERG was arrested this morning in Manhattan, and will be presented and arraigned in Manhattan federal court before U.S. District Judge Richard J. Sullivan at 11:00 a.m.

Manhattan U.S. Attorney Preet Bharara said: "As alleged, Michael Steinberg was another Wall Street insider who fed off a corrupt grapevine of proprietary and confidential information cultivated by other professionals who made their own rules to make money. With lightning speed in at least one case, Mr. Steinberg seized on the opportunity to cash in and tried to keep his crime quiet, as charged in the Indictment. As alleged, where once Mr. Steinberg answered only to his own rules, now he will have to answer to the rule of law, like so many others before him."

FBI Assistant Director-in-Charge George Venizelos said: "Mr. Steinberg's arrest is the latest in the FBI's campaign to root out insider trading at hedge funds and expert networking firms, resulting in more than 70 arrests so far. As alleged, Mr. Steinberg was at the center of an elite criminal club, where cheating and corruption were rewarded. Research was nothing more than well-timed tips from an extensive network of well-sourced analysts. The law is clear for everyone including Mr. Steinberg. Trading on inside information is illegal. The FBI will continue to police our markets and arrest anyone who violates the law."

In a separate action, the U.S. Securities and Exchange Commission ("SEC") announced civil charges against STEINBERG.

According to the allegations in the Superseding Indictment, other court documents, and evidence adduced at a related trial:

A group of analysts at different hedge funds, including Tortora, Adondakis, Horvath, and Kuo obtained Inside Information directly or indirectly from employees who worked at certain public companies, and then shared the Information with each other and with the hedge fund portfolio managers for whom they worked, including STEINBERG. In particular, Tortora provided Horvath and others with Inside Information related to Dell's quarterly earnings (the "Dell Inside Information"), which Tortora obtained from Goyal who, in turn, had obtained the Information from an employee at Dell (the "Dell Insider"). For Dell's quarter ended August 1, 2008, the results for which were publicly announced by Dell on August 28, 2008 (the "Dell Announcement"), the Dell Inside Information indicated that Dell would report gross margins that were materially lower than market expectations. In advance of the Dell Announcement, Horvath reported this negative Inside Information to STEINBERG.

On August 18, 2008, after a series of calls from the Dell Insider to Goyal and from Goyal to Tortora and Horvath, Horvath then called STEINBERG. Within a minute of the telephone call between STEINBERG and Horvath, STEINBERG's portfolio began shorting shares of Dell. One minute later, Horvath wrote an email to STEINBERG stating: "Pls keep the DELL stuff especially on the down low . . . just mentioning because JT [Jesse Tortora] asked me specifically to be extra sensitive with the info." By the end of the day on August 18, 2008, STEINBERG had accumulated a net short position of over 167,000 shares of Dell. On August 26, 2008, Horvath confirmed in an email to STEINBERG and another portfolio manager at Hedge Fund A that Horvath's Dell information had been based on a "2nd hand read from someone at the company." STEINBERG responded: "Yes normally we would never divulge data like this, so please be discreet." And on August 27, 2008, STEINBERG sent an email to Horvath with the subject line, "Dell action," in which he asked, "Have u double checked [with] JT this week?" Horvath responded, "Yes he [Tortora] checked in [a] couple days ago, same read no change."

On August 28, 2008, before Dell's Announcement, STEINBERGexecuted or caused to be executed additional short trades. STEINBERGalso executed or caused to be executed options trades in Dell in advance of the Dell Announcement.

After the close of the market on August 28, 2008, Dell publicly announced gross margins that were substantially below market expectations. At the end of the next trading day following Dell's Announcement, its stock price dropped by more than 13%. Shortly thereafter, STEINBERG covered his short position, and closed out his position in Dell option contracts, resulting in an illegal profit for Hedge Fund A of approximately $1 million.

In addition, in 2009, Kuo obtained Inside Information regarding NVIDIA's financial results (the "NVIDIA Inside Information") in advance of NVIDIA's quarterly earnings announcements. The NVIDIA Inside Information indicated, among other things, that NVIDIA's gross margins would be lower than market expectations. Kuo obtained the NVIDIA Inside Information from a friend, Hyung Lim ("Lim"), who received it from an employee at NVIDIA (the "NVIDIA Insider"). In advance of NVIDIA's May 7, 2009 quarterly earnings announcement (the "NVIDIA Announcement"), Kuo provided the NVIDIA Inside Information, which he had obtained from Lim, to Tortora, Horvath, and others. Horvath, in turn, provided the NVIDIA Inside Information to STEINBERG, who executed or caused to be executed transactions in NVIDIA in advance of the NVIDIA Announcement.

On May 7, 2009, NVIDIA publicly announced gross margins that were substantially lower than the market expected. At the end of the trading day following the NVIDIA Announcement, NVIDIA's stock price dropped by more than 13%. Shortly thereafter, STEINBERG caused Hedge Fund A to liquidate its position in NVIDIA, resulting in an illegal profit for Hedge Fund A of over $400,000.

<div align="center">*   *   *</div>

STEINBERG, 40, of New York, New York, is charged with one count of conspiracy to commit securities fraud and four counts of securities fraud. The conspiracy count carries a maximum sentence of five years in prison and a fine of the greater of $250,000 or twice the gross gain or loss from the offense. Each of the securities fraud counts carries a maximum sentence of 20 years in prison and a fine of $5 million or twice the gross gain or loss from the offense.

The allegations in the Indictment against STEINBERG are merely accusations and he is presumed innocent unless and until proven guilty.

Horvath, 43, and Kuo, 37, each pled guilty to one count of conspiracy to commit securities fraud and two substantive counts of securities fraud in September 2012 and April 2012, respectively.

Tortora, 35, Adondakis, 41, and Goyal, 40, each pled guilty to one count of conspiracy to commit securities fraud and one substantive count of securities fraud in May 2011, April 2011, and June 2011, respectively.

Mr. Bharara praised the investigative work of the FBI. He also thanked SEC. Mr. Bharara noted that the investigation is continuing.

This case was brought in coordination with President Barack Obama's Financial Fraud Enforcement Task Force, on which Mr. Bharara serves as a Co-Chair of the Securities and Commodities Fraud Working Group. The task force was established to wage an aggressive, coordinated and proactive effort to investigate and prosecute financial crimes. With more than 20 federal agencies, 94 U.S. attorneys' offices and state and local partners, it's the broadest coalition of law enforcement, investigatory and regulatory agencies ever assembled to combat fraud. Since its formation, the task force has made great strides in facilitating increased investigation and prosecution of financial crimes; enhancing coordination and cooperation among federal, state and local authorities; addressing discrimination in the lending and financial markets and conducting outreach to the public, victims, financial institutions and other organizations. Over the past three fiscal years, the Justice Department has filed nearly 10,000 financial fraud cases against nearly 15,000 defendants including more than 2,900 mortgage fraud defendants. For more information on the task force, please visit www.StopFraud.gov.

This case is being handled by the Office's Securities and Commodities Fraud Task Force. Assistant U.S. Attorneys Antonia M. Apps and John T. Zach are in charge of the prosecution.

13-105

Return to Top

# EXHIBIT  C

Home » News

**PRESS RELEASES**

**Follow @SDNYNews**                                              🖶 Printer Friendly

# Manhattan U.S. Attorney And FBI Assistant Director-In-Charge Announce Insider Trading Charges Against Four SAC Capital Management Companies And SAC Portfolio Manager

**FOR IMMEDIATE RELEASE**
Thursday, July 25, 2013

### *SAC Management Companies Allegedly Engaged in Decade-Long Insider Trading Scheme on a Scale Without Known Precedent in the Hedge Fund Industry*

Preet Bharara, the United States Attorney for the Southern District of New York, and George Venizelos, the Assistant Director-in-Charge of the New York Office of the Federal Bureau of Investigation ("FBI"), announced today the unsealing of insider trading charges against four companies – S.A.C. CAPITAL ADVISORS, L.P. ("SAC Capital LP"), S.A.C. CAPITAL ADVISORS, LLC ("SAC Capital LLC"), CR INTRINSIC INVESTORS, LLC ("CR Intrinsic"), and SIGMA CAPITAL MANAGEMENT, LLC ("Sigma Capital"), collectively (the "SAC Companies"). The SAC Companies are responsible for the management of a group of affiliated hedge funds, collectively (the "SAC Hedge Fund" or "SAC"). Charges were also unsealed today against RICHARD LEE, a portfolio manager employed by SAC Capital LP, who focused on "special situations" like mergers and acquisitions, private equity buy-outs, and corporate restructurings in publicly-traded companies across various industry sectors. LEE pled guilty on July 23, 2013, before U.S. District Judge Paul G. Gardephe, to conspiracy and securities fraud charges in connection with his work at SAC Capital LP.

The SAC Companies are charged with criminal responsibility for insider trading offenses. These alleged offenses were committed by numerous employees, occurred over the span of more than a decade, and involved the securities of more than 20 publicly-traded companies across multiple sectors of the economy. It is charged that the acts of these employees were made possible by institutional practices that encouraged the widespread solicitation and use of material, non-public information ("Inside Information"). This activity allegedly resulted in hundreds of millions of dollars in illegal profits and avoided losses at the expense of members of the investing public. The SAC Companies are expected to be arraigned on the charges on tomorrow at 10:00 a.m. before U.S. District Judge Laura Taylor Swain.

Manhattan U.S. Attorney Preet Bharara said: "A company reaps what it sows, and as alleged, S.A.C. seeded itself with corrupt traders, empowered to engage in criminal acts by a culture that looked the other way despite red flags all around. S.A.C. deliberately encouraged the no-holds-barred pursuit of an 'edge' that literally carried it over the edge into corporate criminality. Companies, like individuals, need to be held to account and need to be deterred from becoming dens of corruption. To all those who run companies and value their enterprises, but pay attention only to the money their employees make and not how they make it, today's indictment hopefully gets your attention."

FBI Assistant Director-in-Charge George Venizelos said: "Our aim all along has been to root out the wrongdoers, and send a message to anyone else inclined to break the law. If your information 'edge' is inside information, you can't trade on it."

According to the allegations in the five-count Indictment and the criminal Information to which LEE pled guilty, both of which were unsealed today in Manhattan federal court:

The SAC Hedge Fund operated as a collection of dozens of individual trading portfolios that covered nearly every trading sector of the economy. Each portfolio was headed up by a portfolio manager ("PM"), and supported by one or more research analysts ("RA"). SAC PMs had substantial discretion in managing the investments in their own portfolios, and were required by the SAC Companies to share the investment recommendations in which they had the greatest confidence with the owner of the SAC Companies (the "SAC Owner"). The SAC Owner managed the largest trading portfolio at SAC.

From 1999 through at least 2010, numerous employees of the SAC Companies obtained and traded on Inside Information, or recommended trades based on such information to SAC PMs or the SAC Owner. To date, eight SAC Company PMs and RAs have been charged and/or convicted in insider trading cases involving the SAC Hedge Fund, including LEE, who was charged and pled guilty earlier this week.

The systematic insider trading engaged in by SAC PMs and RAs was the predictable and foreseeable result of an institutional failure. The SAC business culture encouraged and tolerated the relentless pursuit of an information "edge," with no meaningful commitment to ensuring that such an "edge" came from legitimate research and not Inside Information.

As charged in the Indictment, these institutional failings fell into three main categories:

First, the SAC Companies focused on recruiting SAC PMs and SAC RAs who had proven networks of public company contacts. The SAC Companies, however, did not make any corresponding effort to ensure that prospective SAC PMs and SAC RAs did not use these contacts to obtain illegal Inside Information. For example, in a November 16, 2008, e-mail forwarded to the SAC Owner, an SAC PM candidate in the industrial sector was recommended in part because he had "a house in the Hamptons with the CFO" of a Fortune 100 industrial sector company. In another instance, the SAC Companies hired LEE despite a warning to the SAC Owner from LEE's prior employer, that LEE had been a member of an insider trading group at that hedge fund. LEE ultimately traded on Inside Information in the $1.25 billion "special situations" SAC portfolio he jointly managed with a second SAC PM.

Second, employees of the SAC Companies were financially rewarded for recommending to the SAC Owner "high conviction" trading ideas, in which the SAC PM had an "edge" over other investors. In many cases, the employees were not questioned when making trading recommendations that appeared to be based on Inside Information. On numerous occasions, the SAC Owner failed to follow up with SAC employees who were promoting trading sourced to an "edge" from a contact at a public company or with similar language suggesting potential insider trading. On one occasion, the SAC Owner participated in a discussion with his employees on the topic of confidential information the SAC employees had said that they learned during a paid consultation session from a clinical investigator for a drug trial. During the discussion with his employees, the SAC Owner, a sophisticated trader with over three decades of experience, never questioned whether the drug trial data constituted Inside Information. In addition, the SAC Owner and SAC Companies cultivated an environment that emphasized not discussing Inside Information openly rather than not seeking or trading on it in the first place.

Case 1:12-cr-00121-RJS Document 319 Filed 11/12/13 Page 56 of 195

Third, the SAC Companies employed limited compliance measures designed to detect or prevent insider trading by SAC PMs or SAC RAs. They failed to routinely monitor employee e-mails for indications of insider trading until late 2009, even though SAC's head of compliance had recommended such monitoring to SAC management four years earlier. Indeed, despite numerous documented cases of insider trading at SAC – established by, among other things, guilty pleas of six former SAC PMs and RAs, each predicated upon repeated insider trading over substantial periods of time – SAC's compliance department contemporaneously identified only a single instance of suspected insider trading by its employees. In that one case, the SAC Companies permitted those involved to continue working at SAC and failed to report the conduct to regulators or law enforcement.

<div align="center">*   *   *</div>

In addition to the Indictment, today the Government filed a civil forfeiture action (the "Forfeiture Complaint") in Manhattan federal court, seeking the forfeiture of assets held by investment funds to which the SAC Companies served as investment advisors, assets held by affiliated investment funds, and assets held by the SAC Companies themselves. The Forfeiture Complaint alleges that the SAC Companies engaged in money laundering by commingling the illegal profits from insider trading with other assets, using the profits to promote additional insider trading, and transferring the profits with the assistance of financial institutions.

The SAC Companies are charged together in Count One of the Indictment with wire fraud, and each of the four SAC Companies is charged separately in Counts Two through Five with securities fraud. Each of the SAC Companies faces a maximum fine, for the securities fraud charges, of the greater of $25 million, or twice the gross gain or loss derived from the offense on each charge.

The criminal Information unsealed today, to which RICHARD LEE pled guilty earlier this week, charges LEE with one count of conspiracy and one count of securities fraud in connection with insider trading between April 2009 through 2010, while he was employed by SAC Capital LP. LEE faces a maximum penalty of 20 years in prison for the securities fraud charge and five years in prison for the conspiracy charge. He also faces a maximum fine of $5 million for the securities fraud charge and $250,000 or twice the gross gain or loss derived from the offense on the conspiracy charge.

Of the seven other SAC Company portfolio managers and research analysts previously charged in insider trading cases involving the SAC Hedge Fund, five have pled guilty and await sentencing. They include:

- Jon Horvath, who pled guilty on September 28, 2012;

- Wes Wang, who pled guilty on July 13, 2012;

- Donald Longueuil, who pled guilty on April 28, 2011;

- Noah Freeman, who pled guilty on February 7, 2011; and

- Richard Choo-Beng Lee, who pled guilty on October 13, 2009

Charges are still pending against the remaining two defendants previously charged in connection with SAC, Michael Steinberg and Mathew Martoma, who are presumed innocent unless and until proven guilty.

Mr. Bharara praised the efforts of the FBI and also thanked the U.S. Securities and Exchange Commission for its assistance in the investigation. He added that the investigation is continuing.

This case was brought in coordination with President Barack Obama's Financial Fraud Enforcement Task Force, on which Mr. Bharara serves as a Co-Chair of the Securities and Commodities Fraud Working Group. The task force was established to wage an aggressive, coordinated and proactive effort to investigate and prosecute financial crimes. With more than 20 federal agencies, 94 U.S. attorneys' offices and state and local partners, it is the broadest coalition of law enforcement, investigatory and regulatory agencies ever assembled to combat fraud. Since its formation, the task force has made great strides in facilitating increased investigation and prosecution of financial crimes; enhancing coordination and cooperation among federal, state and local authorities; addressing discrimination in the lending and financial markets and conducting outreach to the public, victims, financial institutions and other organizations. Over the past three fiscal years, the Justice Department has filed nearly 10,000 financial fraud cases against nearly 15,000 defendants including more than 2,900 mortgage fraud defendants. For more information on the task force, please visit www.StopFraud.gov.

This case is being handled by the Office's Securities and Commodities Fraud Task Force. Assistant U.S. Attorneys Arlo Devlin-Brown, Antonia M. Apps and John T. Zach are in charge of the prosecution, and Assistant U.S. Attorney Micah Smith is responsible for the forfeiture aspects of the case.

The charges contained in the Indictment are merely accusations and the defendants are presumed innocent unless and until proven guilty.

13-246

Return to Top

**United States v. S.A.C. Capital Advisors LP, et al.**
**Prepared Remarks for U.S. Attorney Preet Bharara**
**July 25, 2013**

Good afternoon. My name is Preet Bharara, and I am the United States Attorney for the Southern District of New York.

Today we announce three law enforcement actions relating to the S.A.C. group of hedge funds. First, we unseal insider trading charges and wire fraud against the four entities that principally managed the multi-billion dollar S.A.C. Capital Hedge Fund and which employed the many people responsible for what can only be described as rampant insider trading within those funds.

Second, we have filed civil money laundering charges against numerous S.A.C. funds, seeking appropriate forfeiture of assets to address S.A.C.'s liability.

And third, we unseal the guilty plea of yet another portfolio manager at S.A.C., Richard Lee, who just this past Tuesday pled guilty to committing insider trading offenses while an employee at S.A.C.

Mr. Lee brings to eight the number of employees so far convicted of, or charged with, engaging in insider trading for the benefit of S.A.C.

What today's indictment against S.A.C. makes clear is this: when so many people from a single hedge fund have engaged in insider trading, it is not a coincidence.

It is, instead, the predictable product of substantial and pervasive institutional failure. As alleged, S.A.C. trafficked in inside information on a scale without any known precedent in the history of hedge funds.

As described in the indictment, the scope of illegal trading was deep and wide – it spanned more than a decade in time; involved the securities of at least 20 public companies; extended across multiple sectors of the economy; and benefited S.A.C. to the tune of at least hundreds of millions of dollars.

Today's indictment, though, is not just a narrative of names and numbers. It is, more broadly, an account of a firm with zero tolerance for low returns but seemingly tremendous tolerance for questionable conduct. And so, S.A.C. became, over time, a veritable magnet for market cheaters. The S.A.C. Companies operated a compliance system that appeared to talk the talk, but almost never walked the walk.

And that is why today the institution itself – rather than just individuals – stands charged with wire and securities fraud.

Before I review the charges in more detail, let me introduce our partners in this investigation and prosecution.

1

I am joined by our partner in this and so many other cases, the FBI, led by George Venizelos, the Assistant Director-in-Charge of the New York Field Office, and April Brooks, the Special Agent-in-Charge of the Criminal Division.

I want to thank both George and April and their dedicated team – FBI Special Agents: James Hinkle, Matthew Callahan, B.J. Kang, David Makol, Matthew Thoreson, and Ronan Byrne – for their incredibly hard work and assistance.

I especially want to acknowledge the career prosecutors from my office. They are Arlo Devlin-Brown, Antonia Apps, and John Zach, the AUSAs handling the prosecution, and their chiefs, Marc Berger and Anjan Sahni; also, Micah Smith for his work on the forfeiture aspects of the case, as well as Asset Forfeiture Chief Sharon Cohen Levin. [Lorin Reisner and Richard Zabel]

Let me now take a moment to talk about the particulars of today's charges and guilty plea.

First, the guilty plea we announce today is by one of S.A.C.'s Portfolio managers – Richard Lee – who until very recently co-managed a $1.25 billion portfolio focused on "special situations" – like mergers and acquisitions. While a portfolio manager at S.A.C., Lee obtained inside information with respect to various securities, including Yahoo! and 3Com Corporation.

As set forth in the larger indictment, the particular story of Richard Lee's time at S.A.C. is emblematic of the broader culture problem at the fund.

As alleged, the S.A.C. Companies hired Richard Lee despite a reputation for insider trading. Indeed, he was hired – over objections from S.A.C.'s own legal department – despite specific warnings during his application process that Lee had improperly been part of an "insider trading group" at his prior employer.

Predictably, from virtually the inception of his employment at S.A.C. in 2009, Richard Lee began to trade on inside information – conduct he admitted by his guilty plea two days ago. He is continuing to cooperate with the Government's investigation.

Second, as I mentioned, this morning we filed a civil forfeiture action in federal court. The forfeiture complaint alleges that the S.A.C. Companies engaged in money laundering by commingling the illegal profits from insider trading with other assets, using the profits to promote additional insider trading, and transferring the profits.

Our action today does not seek to freeze any of S.A.C.'s assets, and we are always mindful to minimize risks to third-party investors. In other words, we have not restrained any money, and we will discuss with the company a reasonable method going forward to protect everyone's legitimate interests.

And finally, an indictment unsealed today charges the four S.A.C. management companies with insider trading.

2

Why are the S.A.C. entities being charged?

In addition to individuals, sometimes the organizations that employ them are criminally culpable and merit prosecution too.

The S.A.C. Companies are being held accountable for the criminal acts of so many of their employees because the misconduct was pervasive; because those employees were acting for the direct financial benefit of the firm; and because the company did not effectively police its own precincts.

As alleged in the indictment, the S.A.C. Companies went out of their way to find employees with personal networks of company insiders but without correspondingly considering whether the employees were using such contacts to obtain inside Information.

By way of just one example, Jon Horvath was an analyst in the tech sector for one of the entities charged today. S.A.C.'s hiring report on Horvath touted that Horvath generated investment ideas by "mining his industry contact network for datapoints."

Last September, Mr. Horvath pled guilty to "mining" illegal inside information from this very network.

More generally, the failures of S.A.C. to police itself are legion, as alleged in the indictment:

- Red flags and warning signs were repeatedly ignored;

- Until late 2009, the compliance department rarely reviewed electronic communications by S.A.C. employees containing suspicious terms;

- And failed to detect the insider trading by ANY of the eight S.A.C. employees charged to date.

As alleged, in its entire history, S.A.C. identified possible insider trading by any of its employees just once. And on that occasion, S.A.C. not only failed to report the matter to law enforcement or regulators, but those individuals were not even terminated from employment.

In fact, as far as we can tell, S.A.C. never reported suspicious trading to any regulator or criminal authority, ever.

A company reaps what it sows, and as alleged, S.A.C. seeded itself with corrupt traders, empowered to engage in criminal acts by a culture that looked the other way despite red flags all around. S.A.C. deliberately encouraged the no-holds-barred pursuit of an "edge" that literally carried it over the edge into corporate criminality.

3

Companies, like individuals, need to be held to account and need to be deterred from becoming dens of corruption. To all those who run companies and value their enterprises, but pay attention only to the money their employees make and not how they make it, today's indictment hopefully gets your attention.

# INSIDER TRADING AT SAC:
# CONVICTED OR CHARGED EMPLOYEES



**SAC**

**SIGMA CAPITAL MANAGEMENT, LLC**

**Michael Steinberg***
PM, Technology
Indicted 03/2013

**Richard CB Lee**
RA, Technology
Pled Guilty 10/2009

**John Horvath**
RA, Technology
Pled Guilty 9/2012

**Wes Wang**
RA, Technology
Pled Guilty 7/2012

**S.A.C. CAPITAL ADVISORS, LLC**

**Noah Freeman**
PM, Technology
Pled Guilty 02/2011

**S.A.C. CAPITAL ADVISORS, LP**

**Richard Lee**
PM, M&A
Pled Guilty 07/2013

**CR INTRINSIC INVESTORS, LLC**

**Mathew Martoma***
PM, Healthcare
Indicted 12/2012

**Donald Longueuil**
PM, Technology
Pled Guilty 04/2011

**PM: Portfolio Manager**
**RA: Research Analyst**

\* Charges are pending as to these defendants who are presumed innocent.



**SDNYnews** ✔
@SDNYnews
SDNY U.S. Attorney's Office led by Preet Bharara. Est. 1789, DOJ
does not collect comments or messages through this account. Learn
more at justice.gov/privacy-file.h...
Southern District of New York · justice.gov/usao/nys/

| **1,260** | **171** | **2,380** |
| TWEETS | FOLLOWING | FOLLOWERS |

🔽 Follow

**SDNYnews** @SDNYnews                                              25 Jul
4  mgmt companies charged w/ insider trading. Portfolio
mgr's guilty plea unsealed. @SDNYnews  #breaking
Collapse                        ← Reply  ⇄ Retweet  ★ Favorite  ••• More

**16**          **1**
RETWEETS    FAVORITE          

6:48 AM - 25 Jul 13 · Details

Reply to @SDNYnews @NewYorkFBI



**SDNYnews** @SDNYnews                                              25 Jul
US Atty Bharara: "A company reaps what it sows." #live #SAC
Collapse                        ← Reply  ⇄ Retweet  ★ Favorite  ••• More

**1**       
RETWEET

10:18 AM - 25 Jul 13 · Details

Reply to @SDNYnews

10



**SDNYnews** @SDNYnews                                            25 Jul
"As far as we can tell, SAC never reported suspicious trading to any
regulators or criminal authority, ever." #live
Collapse                        ← Reply  ⇄ Retweet  ★ Favorite  ••• More

**2**
RETWEETS  

10:17 AM - 25 Jul 13 · Details

Reply to @SDNYnews



**SDNYnews** @SDNYnews                                            25 Jul
#SAC operated compliance systems that "appeared to talk the talk,
but almost never walked the walk." #live
Collapse                        ← Reply  ⇄ Retweet  ★ Favorite  ••• More

10:11 AM - 25 Jul 13 · Details

Reply to @SDNYnews



**SDNYnews** @SDNYnews                                            25 Jul
Bharara: SAC had "zero tolerance for low returns but seemingly
tremendous tolerance for questionable conduct" #live
Collapse                        ← Reply  ⇄ Retweet  ★ Favorite  ••• More

**2**
RETWEETS  

10:11 AM - 25 Jul 13 · Details

Reply to @SDNYnews

11



**SDNYnews** @SDNYnews                                                    25 Jul
Bharara: "When so many people from a single hedge fund have
engaged in insider trading, it is no coincidence." #live
Collapse                          ← Reply  ⇅ Retweet  ★ Favorite  ••• More

**2**
RETWEETS  

10:10 AM - 25 Jul 13 · Details

Reply to @SDNYnews



**SDNYnews** @SDNYnews                                                    25 Jul
8 SAC employees have been convicted or charged w/ insider trading.
2 cases pending.
Collapse                          ← Reply  ⇅ Retweet  ★ Favorite  ••• More

10:10 AM - 25 Jul 13 · Details

Reply to @SDNYnews



**SDNYnews** @SDNYnews                                                    25 Jul
SAC's decade-long insider trading scheme was on a scale w/o known
precedent in the hedge fund industry
Collapse                          ← Reply  ⇅ Retweet  ★ Favorite  ••• More

**11**
RETWEETS      

7:17 AM - 25 Jul 13 · Details

Reply to @SDNYnews



**SDNYnews** @SDNYnews                                                    25 Jul
US Atty Bharara starting press conference on #SAC insider trading
case now. #live
Collapse                              ← Reply  ⇄ Retweet  ★ Favorite  ••• More

1
RETWEET

10:08 AM - 26 Jul 13 - Details

Reply to @SDNYnews

SAC

FBI — Statement of Assistant Director in Charge George Venizelos at Press Conference Announcing Criminal Charges Against SAC Capital



*New York Field Office*

Home · New York · Press Releases · 2013 · Statement of Assistant Director in Charge George Venizelos at Press Conference Announcing Criminal Charges Against SAC...

Twitter (2)   Facebook (5)   Share

### Statement of Assistant Director in Charge George Venizelos at Press Conference Announcing Criminal Charges Against SAC Capital

**FBI New York**
July 25, 2013

**FBI Public Information Office**
(212) 384-2100

*Remarks prepared for delivery.*

This is a case about corporate conduct and corporate responsibility. The indictment says it best: Illegal conduct by employees and institutional indifference resulted in "insider trading that was substantial, pervasive, and on a scale without known precedent."

SAC Capital and its management fostered a culture of permissiveness. To be blunt, SAC—through the actions and inactions of its management—not only tolerated cheating, it encouraged it.

Management at SAC Capital, including the firm's owner, actively recruited portfolio managers and research analysts with access to inside information.

Once hired, these employees were rewarded financially for passing on inside information to the SAC owner.

Repeatedly they described their information "edge" as "contacts at the company" or "my guy at" such-and-such company.

Compliance at SAC, to the extent that it existed, was woefully inadequate. That is to say, it was woefully inadequate to the task of monitoring and preventing the acquisition and use of inside information.

The compliance department did enable SAC Capital to say it had a compliance department.

And the compliance department was effective in explaining away potentially troublesome employee e-mails that seemed to describe access to inside information.

The e-mails were typically documented as being simply the result of careless writing by a portfolio manager or analyst. Essentially, the compliance people were saying, "This e-mail isn't evidence of inside information; it's just badly written."

Despite a history of insider trading at SAC Capital—including the conduct that resulted in the six guilty pleas outlined in the indictment—SAC's compliance department uncovered just one single case of employee insider trading in its entire history.

The charges against the corporate entity are serious crimes. The indictment recounts the history of systemic, institutional insider trading at SAC Capital over a period of more than a decade.

The government brings charges based on the evidence. We didn't draw a target on SAC Capital, or anyone who worked there. Today's charges grew out of years of work by our two offices.

These investigations have already led to dozens of people being charged with insider trading. Information developed in one case often forms the predication for the next one.

We will continue to work with the U.S. Attorney and the Securities and Exchange Commission.

Our aim all along has been to root out the wrongdoers and send a message to anyone else inclined to break the law. If your information "edge" is inside information, you can't trade on it.

Thanks to Preet, and to Assistant U.S. Attorneys Arlo Devlin-Brown, Antonia Apps, John Zack, and Micah Smith.

Congratulations, as well to FBI Special Agents Matthew Callahan, Matthew Thoreson, Ronan Byrne, James Hinkle, B.J. Kang, and David Makol.

*- Related press release*

**New York Field Office Links**

**New York Home**

**Contact Us**
- Overview
- Territory/Jurisdiction

**News and Outreach**
- Press Room | Stories
- In Your Community

**About Us**
- Our People & Capabilities
- What We Investigate
- Our Partnerships
- New York History

**Wanted by the FBI - New York**

**FBI Jobs**

14

FBI — Statement of Assistant Director in Charge George Venizelos at Press Conference Announcing Criminal Charges Against SAC Capital

*Follow the FBI's New York Office on Twitter.*

*Sign up for our e-mail alerts to receive the latest information from the FBI's New York Office on breaking news, arrests, and fugitives.*

Twitter (2)   Facebook (5)   Share

Contact Us | About Us | Most Wanted | News | Stats & Services | Scams & Safety | Jobs | Fun & Games | Mobile | Español
Resources for: Law Enforcement | Intel Partners | Researchers/Students | Communities | Parents | Victims | Businesses
Follow Us On: Facebook | You Tube | Twitter | iTunes | All Sites

Accessibility | eRulemaking | Freedom of Information Act | Legal Notices | Legal Policies and Disclaimers | Links | Privacy Policy | USA.gov | White House
FBI.gov is an official site of the U.S. government, U.S. Department of Justice

**EXHIBIT  D**

SAC Capital Is Indicted, and Called a Magnet for Cheating - NYTimes.com



**DealB%k**
Edited by Andrew Ross Sorkin

---

JULY 25, 2013, 9:53 AM

## SAC Capital Is Indicted, and Called a Magnet for Cheating

*By PETER LATTMAN and BEN PROTESS*

Federal authorities, under fire for handling Wall Street with kid gloves, have delivered a crippling blow to one of its most successful firms, SAC Capital Advisors, whose outsize trading profits have drawn government scrutiny for more than a decade.

Calling SAC "a veritable magnet of market cheaters," federal prosecutors announced criminal charges against the hedge fund on Thursday, a rare move against a large company that could threaten its survival. The authorities argued that the firm and its units permitted a "systematic" insider trading scheme to unfold from 1999 to 2010, activity that generated hundreds of millions of dollars in profit for the firm, owned by its founder, the billionaire stock picker Steven A. Cohen.

The indictment offers the most detailed account yet of SAC's inner workings, citing e-mails indicating that Mr. Cohen and other top executives failed to prevent possible insider trading.

In one e-mail about the technology company Sun Microsystems, an SAC analyst informed Mr. Cohen that, "My edge is contacts at the company and their distribution channel." In an instant message, an employee informed Mr. Cohen that he planned to bet against Nokia's shares and then apologized for being "cryptic," explaining that SAC's compliance chief "was giving me Rules 101 yesterday — so I won't be saying much." (Mr. Cohen never responded to the message.) SAC, the indictment says, also recruited employees who possessed what the fund called "an edge," including one trader who was fired from another hedge fund on suspicion of insider trading.

The United States attorney's office in Manhattan and the F.B.I., which brought the charges, have spearheaded the largest and most prominent securities fraud cases in the nation's history, including those against Ivan Boesky, Michael Milken and Raj Rajaratnam. Yet federal prosecutors on Thursday portrayed the "rampant insider trading" at SAC as having no equal, pointing to more than a decade of abuses that took place while managers turned a blind eye.

The scheme at SAC, said Preet Bharara, the United States attorney for the Southern District of New York, was "substantial, pervasive and on a scale without known precedent in the history of hedge funds."

Mr. Cohen, 57, was not charged, but the 41-page indictment is a stinging attack on him nonetheless, declaring that he "fostered a culture that focused on not discussing inside information too openly, rather than not seeking or trading on such information in the first place." Last week, the Securities and Exchange Commission filed a civil action against Mr. Cohen, accusing him of failing to supervise his employees.

The criminal indictment lists eight former SAC employees who the government said engaged in misconduct while at the fund; six of them have already pleaded guilty to individual criminal charges,

and are expected to testify in a trial against SAC.

One of the cooperating employees emerged publicly for the first time in Thursday's indictment. Richard Lee, 34, pleaded guilty earlier this week to insider trading charges, according to the indictment. It was Mr. Lee whom Mr. Cohen hired despite a warning from a previous employer that he was part of an "insider trading group."

The earlier employer was Citadel, a large fund based in Chicago. Citadel, which has not been accused of wrongdoing, said "it does not have, and never has had, an 'insider trading group.'"

"Richard Lee has accepted responsibility for his prior conduct," said Mr. Lee's lawyer, Richard D. Owens of Latham & Watkins.

In response to Thursday's developments, a spokesman for the firm said, "SAC has never encouraged, promoted or tolerated insider trading." The spokesman added, "The handful of men who admit they broke the law does not reflect the honesty, integrity and character of the thousands of men and women who have worked at SAC over the past 21 years."

Despite the onslaught, SAC was open for business on Thursday with Mr. Cohen at the center of the firm's cavernous trading floor in Stamford, Conn., sifting through information, buying and selling stocks, and trying to make money for his investors. Banks including Goldman Sachs and Morgan Stanley continued to trade with SAC and finance its operations, though several are discussing the implications that the indictment will have on their relationships, said people with knowledge of those conversations. SAC is also wrestling with how to stanch an exodus of its investors, which is expected to accelerate after the indictment.

For its part, the government signaled that it could pursue hefty penalties, staking claim to "any and all assets" of SAC.

SAC managed about $15 billion at the beginning of the year, but the government's investigation has buffeted the firm; investors have withdrawn about $5 billion in recent months. Mr. Cohen's fortune and employee money accounts for about $9 billion of SAC's assets under management.

While prosecutors could theoretically pursue all of SAC's money, they have no plans to do so, a person briefed on the matter said. Instead, they are likely to demand that SAC forfeit money that is traceable to any illicit trading, a sum that could reach a few billion dollars.

By filing the indictment under the theory of corporate criminal liability, the government is wielding a potent weapon. If prosecutors can show that SAC traders were acting "on behalf of and for the benefit of" SAC when breaking the law — and six such traders are likely to testify to that — then the theory allows the government to impute liability to the firm itself.

To avoid charging corporations every time an employee commits a crime, the government often relies on so-called deferred prosecution agreements, which suspend an indictment so long as the company improves its behavior. Prosecutors seized on this approach after the Justice Department indicted Enron's accounting firm, Arthur Andersen, in 2002, leading the firm to collapse and terminate 28,000 jobs. Deferred-prosecution agreements have drawn ire from critics of Wall Street who have complained that no Wall Street banks faced criminal charges after the financial crisis.

SAC Capital Is Indicted, and Called a Magnet for Cheating - NYTimes.com

But in the case of SAC, which has about 1,000 employees in five offices across the globe, the government rejected that more cautious measure, limiting the fund's ability to defend itself.

"In the corporate criminal world, avoiding indictment is the key battleground," said Alan Vinegrad, a former federal prosecutor now a partner at Covington & Burling. "Once you have the indictment, either it's a deferred prosecution agreement or you have your work cut out for you."

At the heart of the government's case is an attack on SAC's pursuit of an edge in stock trading. Though it has pushed into other investment strategies, at its core SAC has traditionally been an information-driven hedge fund, aggressively trading stocks around market-moving events like earnings releases and merger announcements.

At the height of SAC's powers in 2006 and 2007, Mr. Cohen is reported to have earned about $900 million each year, helping to give the firm a certain mystique. But it also generated whispers about whether the fund routinely crossed the line.

The indictment paints Mr. Cohen and his staff as promoting a culture of lax compliance and crooked morals. In one example, an SAC employee forwarded an e-mail to Mr. Cohen in which a prospective hire was praised for his access to industrial companies. The message described him as "the guy who knows the quarters cold, has a share house in the Hamptons" with a senior executive at a big industrial company.

In another instance, prosecutors quote internal e-mails from two SAC analysts saying that a third colleague had a "black edge," secret information about a company so good that it almost guaranteed an investment's success.

SAC used the word "edge" in a marketing document to summarize the fund's investment strategy in 2008, a year that much of the activity at the center of the indictment occurred. But by 2011, in a deposition for a private lawsuit, and at a time when the investigation was heating up, Mr. Cohen said, "I hate that word."

The charges will not necessarily destroy SAC. One option for Mr. Cohen would be to shut down SAC and open up a family office that manages his own personal fortune. But the S.E.C. could seek to have him barred from stock trading for other investors for life.

The government will face off against an army of lawyers from two of the world's most sophisticated law firms: Willkie Farr & Gallagher and Paul, Weiss, Rifkind, Wharton & Garrison. Martin Klotz at Willkie and Daniel J. Kramer at Paul Weiss have headed the SAC representation. For the criminal case, the fund has also enlisted Mark F. Pomerantz and Theodore V. Wells Jr., both at Paul Weiss and two of the country's most renowned criminal defense lawyers.

Paul Weiss finds itself in a familiar position. Two decades ago, it represented Mr. Milken.

*William Alden contributed reporting*

Copyright 2013 The New York Times Company | Privacy Policy | NYTimes.com 620 Eighth Avenue New York, NY 10018

U.S. Attorney Alleges 'Rampant Insider Trading' at SAC - WSJ.com

# THE WALL STREET JOURNAL.
WSJ.com

MARKETS    |    Updated July 25, 2013, 7:39 p.m. ET

# SAC Hit With Criminal Case

*U.S. Alleges Firm Was 'Magnet for Market Cheaters'; Hedge Fund Denies Wrongdoing*

By JENNY STRASBURG and JAMES STERNGOLD



AFP/Getty Images

U.S. Attorney Preet Bharara at a news conference Thursday afternoon

U.S. prosecutors accused SAC Capital Advisors LP, one of the country's largest hedge-fund firms, of acting as a criminal enterprise where executives including founder Steven A. Cohen encouraged insider trading on a "scale without known precedent."



Reuters

SAC Capital founder Steven A. Cohen in 2011

The government charged that SAC, which has about $14 billion under management, repeatedly took inside information related to public companies and turned it into trading profits. Prosecutors said the firm encouraged the use of illegal tips and hired traders even after they "implied" their performance was based on the use of inside information.

**SAC and Steven A. Cohen over the Years**

U.S. Attorney Preet Bharara, at a news conference Thursday, called

U.S. Attorney Alleges 'Rampant Insider Trading' at SAC - WSJ.com



**Who's Who in the SAC Case**



the company a "magnet for market cheaters."

An SAC spokesman said Thursday the firm "never encouraged, promoted or tolerated insider trading and takes its compliance and management obligations seriously."

### More

- Former SAC Trader Is Cooperating in U.S. Case
- U.S. Attorney Bharara Seeks Another Notch
- SAC Staff Are Liable to Head for Exits
- The Intelligent Investor: Behind the High-Pressure Hedge-Fund Culture
- Focus Turns to SAC's Access to Capital
- Why Two Investors Are Sticking With SAC
- What Does SAC's Indictment Mean?
- Feds Seek Forfeiture of About $10 Billion
- Quiet at SAC Headquarters
- Indictment Calls Insider Trading 'the Norm'
- Recap: U.S. Attorney's Press Conference
- Highlights From the Complaint
- ⬚ Read the Documents



U.S. prosecutors filed criminal and civil charges against SAC Capital Advisors, accusing the giant hedge-fund firm of a decadelong insider-trading "scheme" that was "substantial, pervasive and on

The Wall Street Journal previously reported that the government was planning criminal charges against SAC, but the scope of the action and the language used by prosecutors caught many lawyers and financial executives by surprise. The government's bold move comes after prosecutors determined they didn't have sufficient evidence to personally charge Mr. Cohen, according to people familiar with the matter.

Mr. Cohen has denied wrongdoing for years and has the financial resources to marshal a vigorous defense of his namesake firm.

In a civil action filed alongside the criminal charges, the government said it is seeking to recover "any and all" of the firm's assets, potentially a huge blow to the wealth Mr. Cohen and his employees have acquired over more than two decades of outsize investment returns. The government estimates those assets at $10 billion, according to people familiar with the matter.

Mr. Bharara said the U.S. isn't freezing any assets but declined to comment on the amount sought through forfeiture. Depending on how the case evolves, the government could reduce the amount it seeks in forfeiture, one of the people familiar with the government's estimate said.

U.S. Attorney Alleges 'Rampant Insider Trading' at SAC - WSJ.com

a scale without known precedent." WSJ's Ashby Jones and Solomon Wisenberg, partner at Barnes & Thornburg, discuss. Photo: AP.



Federal prosecutors have indicted SAC Capital for criminal securities fraud. This is a Wall Street story, but it's also now a legal story. WSJ Legal affairs reporter Ashby Jones joins MoneyBeat. Photo: AP.

The large amount contrasts with the hundreds of millions of dollars SAC is alleged to have made, or avoided losing, through insider trading. In seeking forfeiture of such size —unusual in an insider-trading case—the government is using the theory that SAC allegedly engaged in money laundering, tainting the firm's assets as a whole, according to people familiar with prosecutors' thinking.

SAC, which has largely stayed silent throughout the government investigation, pushed back against the allegations. In addition to saying the firm doesn't tolerate insider trading, the SAC spokesman added that the government's forfeiture attempt won't immediately affect the firm's operations: "SAC will continue to operate as we work through these matters."

The government, while not charging Mr. Cohen, aimed directly at his reputation, saying he, as "the SAC owner," failed to query analysts and portfolio managers about questionable information and recruited employees he believed could pry nonpublic information out of companies.

The move caps one of the longest-running investigations of a financial firm in Wall Street history, with government officials first having suspicions about trading at SAC more than a decade ago. The case pits an ambitious prosecutor, Mr. Bharara, against Mr. Cohen, known as one of the savviest investors on Wall Street, in a high-profile legal chess match that has captivated the financial world.

The charges, and an accompanying news conference by federal investigators, painted a picture of a firm allegedly constructed and managed as a high-powered insider-trading machine, with staffers paid huge sums to gain an illegal "edge" and a compliance staff that helped hide the allegedly manipulative activity.

George Venizelos, assistant director in charge of the New York office of the Federal Bureau of Investigation, said, "To be blunt, SAC—through the actions and inactions of its management—not only tolerated cheating, it encouraged it."

The criminal charges by the U.S. attorney's office in Manhattan come in an era of unprecedented insider-trading prosecutions, and they are the most aggressive move against a major Wall Street firm since investment bank Drexel Burnham Lambert Inc. in 1988 pleaded guilty to six felony counts and paid a $650 million fine.

No major financial firm has survived a criminal indictment.

Prosecutors accused SAC Capital and its business units of a total of four counts of securities fraud and one count of wire fraud. Thursday's actions follow a separate civil proceeding filed last week in which the Securities and Exchange Commission is seeking to ban Mr. Cohen from managing client money for the rest of his life. An SAC spokesman said Mr. Cohen "acted appropriately at all times" and will fight those charges.

Mr. Cohen built SAC over the past two decades into a powerhouse, revered among investors for its

returns and valued as a lucrative trading partner at many major securities firms.

The alleged illegal activity, which prosecutors say took place between 1999 and at least 2010, provided hundreds of millions of dollars for SAC in profits or avoidance of losses, according to the government.

Prosecutors named eight portfolio managers and analysts who worked at SAC and who, it said, received inside information and either traded with it themselves or shared it with others at the hedge fund for trading. Most of those were names that were previously disclosed as part of other civil and criminal actions.

One figure named was former SAC portfolio manager Richard Lee, whom the government on Thursday charged with conspiracy to commit securities fraud. Mr. Lee is cooperating with prosecutors and the FBI, according to a cooperation agreement dated Monday. He pleaded guilty in a closed hearing in Manhattan federal court Tuesday, according to the indictment against SAC. The government says Mr. Lee was hired even though Mr. Cohen "received a warning" from a previous employer of Mr. Lee's that he was part of an "insider trading group."

That previous employer, identified by prosecutors as Hedge Fund A, is Chicago-based Citadel LLC, according to people familiar with the matter. A spokeswoman for Citadel said the firm fired Mr. Lee in 2008 for violating policies not related to insider trading. She said Citadel doesn't have an "insider trading group." Citadel hasn't been accused of wrongdoing.

"Richard Lee has accepted responsibility for his prior conduct" and "looks forward to moving past this episode in this life," said his lawyer, Richard Owens of Latham & Watkins LLP.

Previously, in defending itself against allegations, SAC has said it has a strong compliance department and warned employees it wouldn't tolerate illegal behavior. The government's civil complaint characterized the compliance effort as lax.

Prosecutors noted that, while six former SAC employees have been convicted or pleaded guilty to insider-trading-related charges, "SAC's compliance department contemporaneously identified only a single instance of suspected insider trading by its employees in its history."

SAC's compliance department rarely reviewed emails or computer instant messages for "suspicious terms" that might suggest insider trading before late 2009, when the firm beefed up its compliance, according to prosecutors.

According to the civil complaint, in the one case where inside trading was discovered within SAC, the two individuals involved were fined but not fired, and the firm didn't report the matter to regulators or law-enforcement officials.

SAC's consistent and enduring success allows it to charge some of the highest fees in the business: Most clients pay

U.S. Attorney Alleges 'Rampant Insider Trading' at SAC - WSJ.com



Reuters

SAC Capital's headquarters in Stamford, Conn. on Thursday.

**Previous Coverage**

- Shift in Investing Strategy Sparked Suspicions (July 24, 2013)
- Prosecutors Preparing to Charge SAC (July 23, 2013)
- U.S. Prosecutor Stakes Legacy on SAC Case (July 24, 2013)
- Cohen Is Set to Face Off With SEC in August (July 23, 2013)
- SAC: Cohen Didn't Read Key Email (July 23, 2013)
- SEC Is Seeking to Ban Cohen (July 19, 2013)
- Cohen Probe Is Missing Key Elements (July 7, 2013)
- Cohen Likely to Avoid Criminal Charges (July 4, 2013)
- SAC Sees Investors Pulling Out $3.5 Billion (June 2, 2013)
- SAC Trading Probe Reaches Higher (March 29, 2013)
- SAC Hit With Record Insider Penalty (March 15, 2013)
- Trading Charges Reach SAC (Nov. 20, 2012)

SAC an automatic fee annually amounting to 3% of the capital they invest with the firm, plus as much as 50% of whatever profit SAC generates, according to people familiar with the firm.

The firm's trading prowess also helped Mr. Cohen amass what is considered one of the best private art collections in the world and a number of multimillion-dollar homes.

Amid the continuing government probe, clients have requested to withdraw billions from the firm, according to people with knowledge of SAC's assets.

The charges come four months after SAC agreed to a record $616 million civil settlement of insider-trading charges with the SEC, without admitting or denying wrongdoing.

—Chad Bray, Michael Rothfeld and Dana Cimilluca contributed to this article.

**Write to** Jenny Strasburg at jenny.strasburg@wsj.com and James Sterngold at james.sterngold@wsj.com

*A version of this article appeared July 26, 2013, on page A1 in the U.S. edition of The Wall Street Journal, with the headline: SAC Hit With Criminal Case.*

Copyright 2012 Dow Jones & Company, Inc. All Rights Reserved

This copy is for your personal, non-commercial use only. Distribution and use of this material are governed by our Subscriber Agreement and by copyright law. For non-personal use or to order multiple copies, please contact Dow Jones Reprints at 1-800-843-0008 or visit www.djreprints.com

Feds charge billionaire Steven A. Cohen's hedge fund SAC Capital with insider trading - NY Daily News

Wednesday, July 31, 2013

# DAILY◉NEWS

Crime

## Feds charge billionaire Steven A. Cohen's hedge fund SAC Capital with insider trading

The SEC charged the hedge fund operated by embattled billionaire Steven A. Cohen with wire fraud and four counts of securities fraud on Thursday, days after Cohen himself was accused of failing to prevent insider trading at his firm.

Comments (6)

BY BARBARA ROSS AND BILL HUTCHINSON / NEW YORK DAILY NEWS

PUBLISHED: THURSDAY, JULY 25, 2013, 10:28 AM
UPDATED: FRIDAY, JULY 26, 2013, 12:59 AM

Facebook 65   Twitter 8   Pinterest 0   +1


SANDY HOOK BEACH FROM NEW YORK CITY
Get Tickets
seastreak





### Billionaire Steven Cohen's toys:

- 4% stake in New York Mets, after he plunked down $20 million last year.
- Art collection worth about $1 billion that includes a $155 million Picasso.
- $14.5 million, 14-acre estate in Greenwich, Conn.
- $115 million penthouse in Bloomberg Tower.
- $60 million oceanfront mansion in East Hampton.

REUTERS
NEW YORK DAILY NEWS

Hedge fund manager Steven A. Cohen, founder and chairman of SAC Capital Advisors, could be forced to forfeit assets if insider trading allegations against the firm are true.

Wall Street's richest hedge fund, SAC Capital Advisors, owned by billionaire Steven Cohen, was indicted Thursday by a federal grand jury on charges of being an insider-trading machine.

Prosecutors charge that SAC made "hundreds of millions of dollars of illegal profits" from 1999 to 2010 by recruiting employees based on trade secrets they brought to the firm, or if

### RELATED STORIES

- SEC charges billionaire hedge-fund manager with failing to prevent insider trading
- Matthew Martoma, bedge

## TRUE CRIME STORIES

- Justice Story: John Jamelske keep girls in dungeon
- Justice Story: Son's bomb in mom's luggage kills 44 during flight
- Justice Story: Chicago's 'Lady Luck' Catherine Cassler's dark run of death
- Justice Story: 'Takes more than that to kill a Bull Moose'
- Justice Story: The Yosemite Murders


Master of Arts in Military History Online
Fully Accredited, Top Ranked
1st Private Military College
& Birthplace of ROTC
Learn More

## MOST POPULAR

- MOST READ   • MOST SHARED

1   Masked trio stole $250K — and plot of

Feds charge billionaire Steven A. Cohen's hedge fund SAC Capital with insider trading - NY Daily News

they had the know-how to get them.

The scheme "was substantial, pervasive and on a scale without known precedent in the hedge-fund industry," the indictment charges.

"SAC not only tolerated cheating, it encouraged it," said George Venizelos, head of the FBI's New York office.

RELATED: SEC CHARGES BILLIONAIRE HEDGE-FUND MANAGER FOR FAILING TO PREVENT INSIDER TRADING

Eight SAC employees have already been charged in the investigation and six have pleaded guilty. An SAC affiliate has agreed to pay $615 million to settle federal charges.

Hedge-fund honcho Cohen has avoided charges, so far, but could end up losing his fortune if the feds are successful in forcing him to forfeit his company's assets.

"I'm not going to say what tomorrow may or may not bring," said U.S. Attorney Preet Bharara. "The investigation is continuing."

The indictment comes less than a week after the Securities and Exchange Commission charged in a civil suit that Cohen failed to prevent insider trading at his firm even when red flags were obvious.

RELATED: FABRICE TOURRE TRIAL: FORMER GOLDMAN SACHS TRADER SET TO TESTIFY

Cohen, 57, purchased a 4% stake in the Mets last year after team owners paid $162 million to settle claims they willfully ignored the Ponzi scheme orchestrated by Bernard Madoff.

He founded SAC Capital in 1992 and turned it into Wall Street's largest hedge fund with $15 billion of assets under management.

Cohen — who owns mansions in Connecticut and East Hampton, and a $115 million East Side penthouse — has about $9 billion invested in his company.

John Coffee, a professor at Columbia University Law School, said fleeing investors will make it hard for SAC to stay afloat.

RELATED: FORMER NYC PROSECUTOR MARY JO WHITE CONFIRMED TO HEAD SEC

"In the case of a hedge fund, I think it's difficult to have any relationship with investors once you've been indicted," said Coffee. "There are just too many clouds on the horizon for any public investor to stay with them."

The feds stopped short of freezing SAC's assets to prevent it from immediately going under, throwing hundreds of employees out of work and causing a swoon in the market.

SAC officials said they will fight.

"SAC has never encouraged, promoted or tolerated insider trading and takes its compliance and management obligations seriously," the company said in a statement.

*With Elizabeth Lazarowitz*

funder accused of inside trading, pleads not guilty

- Hedge-fund honcho's wife drops $300M suit

- Fabrice Tourre trial: Ex Goldman Sachs trader's fraud case headed to jury

powered by **inform** 

'The Town'

2   Staten Island gun nuts arrested

3   Navy veteran sentenced 31 years in prison for weapons dealing

4   Mom and son accused of staffing brothels with undocumented immigrants

5   Girl charged with child porn felony over photo

6   Motorist high on PCP had no idea he was behind wheel after smashing into 6 people in East Village: court papers

7   Naked Detroit man filmed having sex with dog

8   Fugees video director gets 50 more years in rape case

9   Director of Fugees video 'Killing Me Softly' charged with impregnating daughters

10  Newly released documents show abuse of boy missed until after his torture-murder death

## TAKE OUR POLL

**How do you feel about releasing 911 distress calls to the public?**

○  Some of them are interesting, but most are probably boring.

○  It provides another angle to the story.

○  I wouldn't want it done to me. It could be embarrassing.

○  It's a breach of privacy.

○  It's fascinating to hear them.

[Submit]

## EDITORS' PICKS

**Anthony Weiner's spokeswoman trashes intern Olivia Nuzzi**
Anthony Weiner's communications director trashed a former campaign 

**Sharon Stone flaunts bikini bod in Italy**
These stars make 40 (and even 50!) look like the new 20. Check out who's been drinking from Hollywood's 

**George Zimmer**
George Zimmerman,

Why SAC Capital Is Doomed -- Daily Intelligencer



NYMAG.COM | THE MAGAZINE ⌄ | DAILY INTELLIGENCER | VULTURE | THE CUT | GRUB STREET          LOG IN | REGISTER     Like      Follow

Search   GO

*New York*
# NEWS & FEATURES

ONLINE AND IN STORES
THE LIST.

**HOME** | **NEWS & FEATURES** ⌄ | **RESTAURANTS** ⌄ | **BARS** ⌄ | **ENTERTAINMENT** ⌄ | **FASHION** ⌄ | **SHOPPING** ⌄ | **Agenda** ⌄

TRAVEL ⌄ | REAL ESTATE ⌄ | VISITOR'S GUIDE ⌄ | BEAUTY ⌄ | DESIGN | WEDDINGS | BEST DOCTORS | DATING | BEST OF NY ⌄          *New York*: Subscribe Today | Give a Gift

《 Yeah, New York Hates Anthony Weiner Now          *Daily* **Intelligencer**          Non-White George Zimmerman Juror 'Fought to the End' for Guilty Verdict 》

TOP STORIES

- Are House Republicans Voter-Proof?
- Anti-Spitzer Sentiment Spawns Two Super-PACs
- Fear of a Female Fed Chief
- Wendy Davis Reclaims Life Story From Rick Perry

7/25/13 at 2:53 PM | 30 Comments

## It's Doomsday for SAC Capital
By Kevin Roose

0 | TWEET 13 |

It's not really a surprise that federal investigators found a way to press charges against SAC Capital, the massive Stamford-based hedge fund run by art-collecting billionaire Steve Cohen. Preet Bharara, the crusading U.S. Attorney from the SDNY, has been on a quest to bring down Cohen and SAC for what feels like a decade, and the dozen-odd smaller insider-trading cases brought against employees of SAC in the past few years have been leading up nicely to one big, fat set of charges against the firm itself.

What's surprising is how convincing the new charges are.

First, it's worth explaining that criminal liability – the idea that corporations, rather than individuals, can be charged with crimes – is a very controversial legal concept, and you can kind of see why. If a group of Walmart executives cheat on their taxes, shouldn't they get charged with tax evasion individually?

MOST POPULAR STORIES

Most Viewed

1. Kristen Bell Shows Us How a Post-Baby Body Should Look
2. All My Exes Live in Texts: Why the Social Media Generation Never Really Breaks Up
3. Weiner's New York *Times* Profiler Missed the Key Question
4. Reza Aslan Feels 'Kind of Bad' for His Fox News Interrogator
5. *OITNB*'s Taryn Manning on Being Typecast As a Crackhead, Playing a Meth Addict, and Those God-Awful Teeth
6. Chris Claremont, Writer of *The Wolverine*'s Classic Comics, Critiques the New Film

Why should the entire organization – down to cashiers and shelf-stockers – be punished for the sins of a few? Corporate liability is especially dicey when it comes to financial firms, which for various reasons are often put out of business when they're charged with crimes. (See: Andersen, Arthur.) And most times, prosecutors settle corporate criminal cases rather than bringing a full indictment, to avoid the possibility of too much collateral damage.

I happen to think that corporate criminal liability is problematic in a lot of scenarios. But after reading the indictment, I'm convinced that SAC Capital might be one of the few examples where indicting the entire company actually makes sense.

The indictment basically presents SAC as a one-man operation. There's Cohen, and then there's a mass of traders, lawyers, HR execs, and compliance people below him, all of whom are powerless to overrule his whims. Even when it comes to hiring known insider traders!

> In particular, in or around the summer of 2008, the SAC Owner received a warning from an employee of another hedge fund ("Hedge Fund A") that Richard Lee, who previously had worked at Hedge Fund A, and was known for being part of Hedge Fund A's "insider trading group." A SAC business development employee subsequently informed Richard Lee that the SAC Owner had decided to hire Richard Lee ... anyway, overruling objections from SAC's legal department.

Most of the facts in the SAC indictment are old news – carefully-worded e-mails between Cohen and his traders kinda-but-not-really acknowledging that they were trading on illegal inside information, rehashes of how SAC traders talked about "black edge," proof that Cohen knew (or should have known) that this stuff was taking place. The news in the indictment is basically that the firm's laissez-faire attitude toward inside information extended to all areas of operation – that SAC's entire strategy revolved around identifying people who were likely to be able to get inside information, hiring them, and pressing them to get as much information as they could. This wasn't a few traders acting on illegal information – it was a group of traders that had been given jobs *on the basis that they could get illegal information to act on.*

Add SAC's penchant for identifying likely insider-traders to the fact that the firm's compliance department seems to have trained employees on how to craft e-mails to disguise insider trading, and you have basically the ideal place to charge with criminal fraud – a corporation that is seeded with illegality and blind-eye-turning all the way from the corner office down to the lowly HR workers, a firm whose internal forces of ethical conduct have been completely neutered, and that is so thoroughly corrupt that it can't be reformed simply by throwing out a few bad apples. Corporate-level charges mean that it doesn't even matter whether Cohen himself was involved in insider trading – it simply accuses him of having established a corporate culture that was a petri dish for fraud.

Now that SAC itself has been charged criminally, there are basically five ways the firm's saga can end:

1. SAC pleads guilty and dies quickly, turning into a family office that manages just Cohen's fortune or simply shutting down.

**7.** Are House Republicans Voter-Proof?

**8.** Fear of a Female Fed Chief

**9.** The Surveillance-Free Day (Part I)



Why SAC Capital Is Doomed -- Daily Intelligencer

2. SAC pleads not guilty, but clients stage an exodus before the trial, and prime brokers refuse to do business with an indicted firm. SAC also dies quickly, or simply kicks out all its remaining clients and turns into a family office.

3. SAC pleads not guilty, goes to trial, and loses. It dies.

4. SAC pleads not guilty, goes to trial, and wins. But it doesn't really matter, because most clients have already pulled their money out, and most top employees have already left SAC for hedge funds that aren't living under a cloud of criminal charges. The firm muddles on as a second-rate trading shop, managing mostly Cohen's money, with only the weakest traders left.

5. SAC pleads not guilty, goes to trial, wins, and returns in a blaze of glory. Clients flood back in with billions of dollars, and immediately forgive the nine (nine!) current or former SAC employees who have been charged with insider trading. Returns skyrocket, superstar traders all want to work for the newly unburdened SAC, and Cohen rides off to Greenwich in a diamond-encrusted Maybach.

As you can see, 5. is the least likely possibility here. Restoring SAC Capital to its onetime greatness was already unlikely – the firm is already an untouchable in some corners of the financial sector, thanks to the years of scrutiny it has faced. But now that a criminal indictment has been handed down, the reputational damage to SAC will be permanent and probably terminal. It would take a miracle to save the firm, and restore Cohen to the pedestal he once occupied.

[ NYT ]
[ DOJ / SAC Indictment ]

SAC indicted by US, charge decade-long insider scam - NYPOST.com

# NEW YORK POST

# SAC indicted by US, charge decade-long insider scam

By KAJA WHITEHOUSE
*Last Updated:* 12:41 AM, July 26, 2013
*Posted:* 11:58 PM, July 25, 2013

Federal authorities yesterday indicted Steve Cohen's SAC Capital Advisors, charging the $14 billion hedge-fund firm with operating an unprecedented insider-trading scheme stretching over more than 10 years.

Cohen, who wasn't charged, nonetheless headed a hedge-fund firm that made "hundreds of millions of dollars in illegal profits," according to the charges laid out yesterday by US Attorney Preet Bharara.

Alongside the five-count criminal indictment, prosecutors also filed a civil forfeiture action against SAC and announced the guilty plea of an eighth SAC trader.

The "systematic" insider trading at Stamford, Conn.-based SAC dates back to 1999, it is alleged.

"When so many people from a single hedge fund have engaged in insider trading, it is not a coincidence," Bharara said, in explaining why his office took the rare step and indicted the company.

The latest SAC executive caught in the feds' six-year crackdown on insider trading is Richard Lee, a former portfolio manager, who pleaded guilty earlier this week and is cooperating with Bharara.

The complaint alleges that SAC hired Lee — not to be confused with Richard C.B. Lee, another SAC trader who has pleaded guilty — despite knowledge that he had a reputation for insider trading at a former firm.

"To be blunt, SAC — through the actions and inactions of its management — not only tolerated cheating, it encouraged it," said George Venizelos, assistant director in charge of the FBI's New York office.

"SAC has never encouraged, promoted or tolerated insider trading and takes its compliance and management obligations seriously," the firm said in a statement. "The handful of men who admit they broke the law does not reflect the honesty, integrity and character of the

SAC indicted by US, charge decade-long insider scam - NYPOST.com

thousands of men and women who have worked at SAC over the past 21 years.

Cohen led the pack in fostering a culture of insider trading, including actively seeking to hire traders who had links to inside information, prosecutors contend.

In addition to Lee's hiring, which SAC's legal department objected to, the complaint referenced a description of a candidate that was forwarded to Cohen in November 2008.

The assessment described the candidate as "the guy who knows the quarters cold, has a share house in the Hamptons with the CFO of [a Fortune 100 industrial sector company], tight with management," according to the complaint.

Once at SAC, employees were then encouraged to obtain an "edge," or inside information, according to the complaint.

kwhitehouse@nypost.com

NEW YORK POST is a registered trademark of NYP Holdings, Inc.

nypost.com , nypostonline.com , and newyorkpost.com are trademarks of NYP Holdings, Inc.

Copyright 2013 NYP Holdings, Inc. All rights reserved. Privacy | Terms of Use

# EXHIBIT  E

# FINANCIAL TIMES

| Home | World | Companies | Markets | Global Economy | Lex | Comment | Management | Life & Arts |

| Energy | Financials | Health | Industrials | Luxury 360 | Media | Retail & Consumer | Tech | Telecoms | Transport | By Region | | Tools |

October 8, 2013 5:57 pm

# Prosecutors give SAC settlement ultimatum

By Kara Scannell in New York

US prosecutors have given SAC Capital until November to resolve criminal charges against the hedge fund founded by Steven Cohen or risk paying more than the $1.8bn offer on the table, people familiar with the matter said.

Lawyers for SAC Capital met representatives from the US attorney's office in Manhattan last month and argued the penalty being sought was too high. They are expected to return with a counter-offer, these people said.

SAC, and its subsidiaries Sigma and CR Intrinsic, were indicted in July on allegations that they engaged in a rampant insider trading scheme. The companies, through their attorney, pleaded not guilty.

The November deadline ties with the start of the criminal trial against Michael Steinberg, a long-time portfolio manager at SAC and personal friend of Mr Cohen. Mr Steinberg has pleaded not guilty to allegations that he traded shares of Dell and Nvidia after receiving confidential earnings information. His trial is scheduled for November 18.

Authorities have told SAC lawyers that the price to resolve the criminal charges will increase after the trial, these people said. SAC or one of its units would be required to plead guilty as part of any deal, they said. Mr Cohen has not been charged personally with any criminal wrongdoing.

Prosecutors would have a low legal hurdle to prove whether SAC violated insider trading laws because a company can be held criminally responsible for the actions of any of its employees. To date, six former SAC analysts and portfolio managers have pleaded guilty to insider trading in relation to their time at the hedge fund.

SAC could balk at the ultimatum and wait to see if Mr Steinberg is acquitted. The hedge fund could try to use that as leverage to argue for a lower fine.

Another factor that could come into negotiations is that SAC previously paid $616m to settle civil fraud charges with the Securities and Exchange Commission related to alleged insider trading by Mr Steinberg and Mathew Martoma, a former portfolio manager accused of telling Mr Cohen to sell drug company shares after learning the results of a confidential clinical drug trial. The company did not admit or deny wrongdoing. Mr Martoma has pleaded not guilty and will go to trial in January.

Mr Cohen is also fighting a civil SEC action alleging that he failed to supervise Mr Steinberg and Mr Martoma. Mr Cohen, who faces a potential lifetime bar on managing outside money, has denied any wrongdoing.

SAC, which managed $15bn earlier this year, has faced significant redemptions from outside investors. It is expected to continue in future as a vehicle that mostly manages Mr Cohen's $9bn personal fortune.

Representatives of SAC and the US attorney's office declined to comment.

1

| S.&P. 500 | 1,733.15 | ↗ | 11.61 |
| Dow industrials | 15,371.65 | ↗ | 2.18 |
| Nasdaq composite | 3,853.15 | ↗ | 23.72 |
| 10-yr. Treasury yield | 2.59% | ↗ | 0.08 |
| The euro | $1.3678 | ↗ | 0.0151 |

## Corner Office
### New Razzle Dazzle
Brian O'Kelley urges his AppNexus workers to share new knowledge. **2**

A bill would require proof of ownership before a phone is sold. **6**

China's economy picks up, expanding 7.8% in the third quarter. **8**

## SportsFriday
**10-15**
### New Meets Old
Capitalizing on a Jaguars-Fulham connection. **10**

# Business Day
## The New York Times

**BN** · FRIDAY, OCTOBER 18, 2013 · **B1**

---

## Revenue Fall at Goldman Sachs Raises Concerns

By SUSANNE CRAIG and PETER EAVIS

Among Goldman Sachs employees, the chatter started months ago that 2013 was going to be a good-but-not-great year. Wall Street bank began the year strong, and despite concerns about the economy, it doubled over year-ago levels in the second quarter.

These hopes were all but dashed Thursday when the firm announced that revenue in its fixed-income, currency and commodities division, a powerful unit inside the bank that in past years has produced more than 35 percent of Goldman's entire revenue, dropped 44 percent from year-ago levels. It was the worst quarterly result in fixed income since the fourth quarter of 2006, when the financial crisis was raging.

The poor performance forced the company to cut its way to a decent profit, slashing the amount of money it sets aside for pay and bonuses.

The weakness in this division has led to renewed concerns from analysts and investors about the benchmark that Goldman and other banks are facing in big money-producing areas like the trading of interest-rate products and currencies. There is some concern that the pullback is not short term and could be the new normal.

On Thursday, Goldman faced a number of questions on the revenue decline during an usually long earnings call with

*Continued on Page 5*

Continued on Page 5



Lloyd C. Blankfein, the chief executive of Goldman Sachs.

LUCAS JACKSON/REUTERS

---

## An Ale Admired, Now Owned

### Belgian Brewery Buys U.S. Maker Of Craft Beers

By STEPHANIE STROM

As European interest in American craft beers begins to mirror the mania here from decades, the Duvel Moortgat Brewery of Belgium on Thursday announced a deal to buy the Boulevard Brewing Company, a craft brewery in Kansas City, Mo.

The acquisition of Boulevard will give Duvel, pronounced DOO-vul, ownership of a large craft brewery that is perhaps as well known in the Midwest and produces a wide range of beers, with its signature street flavor and light bitterness. Boulevard's brands range from Tank 7 Farmhouse Ale to a dark Dry Stout, with Intemessa Series beers, Smokestack Series and other richly flavored beers.

---

## Extracting A Toll From A Patent 'Troll'

### FLOYD NORRIS
### HIGH & LOW FINANCE

It looks as if "patent trolls" are going to lose a big one.

The Supreme Court announced this month that it would hear two appeals of decisions by the federal appeals court that generally assume that the court should not award costs to a defendant who wins a patent-infringement case, even if the company that was headed for patent infringement had no reasonable claim but did so proceed in having its legal fees paid by the losing party.

The court will decide whether to make it much easier for victors in patent suits to force their opponents to pay their legal fees. It does so — and patent watchers generally assume that the court would eventually be asked to bless the appeals if at least some justices were not sympathetic to the patent reformer's side — it could make it much more expensive to file a frivolous suit, and perhaps hold out small companies from being forced to pay the other side's legal bills, which can run into the millions of dollars.

There are two ways to look at the court's willingness to take up the litigation. It is the plaintiff's lawyer seeking to defend the rights of his client, and patent reformer's side resolutions? Or is the lawyer abusing the process in the hope of forcing a settlement out of someone who thinks paying to end the litigation will be cheaper than going to court?

---

## SAC Deal Could End Its Advisory Business

By BEN PROTESS and PETER LATTMAN

The hedge fund SAC Capital Advisors is moving closer to a plea deal with prosecutors that would force it to wind down its business of managing money for outside investors, punctuating its decline from one of the Wall Street to a firm caught in the government's cross hairs.

An agreement to stop operating as an investment adviser is one feature of a larger agreement SAC is negotiating as it seeks to resolve insider trading charges. According to people briefed on the case, the plea deal, these people said, would also require SAC to plead guilty to criminal misconduct and pay more than $1 billion in penalties, a record for an insider trading prosecution.

The winding down of the investment adviser business at the company, owned by the billionaire investor Steven A. Cohen, would be a symbolic move for the hedge fund, which has already reined in billions of dollars to investors who fled as its legal problems escalated. It will probably continue to operate in a different form as a so-called family office, allowing Mr. Cohen to manage his personal fortune. Under the proposed terms of the tentative deal with the government, however, he would be prohibited from managing outside money for some period of time.

The people briefed on the matter, who spoke on the condition of anonymity, cautioned that the agreement could still fall apart. SAC's lawyers, continue to negotiate with the government.

A spokesman for SAC declined to comment. Previously, the spokesman has said that "SAC has never encouraged, promoted or tolerated insider trading." Representatives for the government.

*Continued on Page 6*

Continued on Page 6

# Plea Agreement Could End SAC's Advisory Business

*From First Business Page*

also declined to comment.

As the negotiations unfolded in recent weeks, the people briefed on the matter said, the government demanded \$3 billion in penalties from SAC. The government was asking for \$900 million in fines and \$900 million in forfeited profits.

SAC's lawyers were urging the government to deduct from that amount the \$616 million the fund has already paid to the Securities and Exchange Commission, which previously issued civil charges against the firm's subsidiaries.

The government seems prepared to strike that compromise, a person briefed on the matter said. If the people said, it would pay \$900 million in fines and forfeit an additional \$300 million to the government, reflecting the \$616 million settlement.

Mr. Rajaratnam, the hedge fund manager who was convicted of insider trading in 2011, was ordered to pay a \$92.8 million penalty and forfeit an additional \$53.8 million in fines and forfeit an additional \$300 million. If approved, would eclipse those of earlier noteworthy Wall Street prosecutions.

Mr. Rajaratnam, the hedge fund manager who was convicted of insider trading in 2011, was ordered to pay a \$92.8 million penalty and forfeit an additional \$53.8 million, which included his stake in the Galleon Group. Goldman Sachs paid \$550 million in 2010 to settle a fraud case against such a large corporation.

The indictment, announced in July, portrayed a number of SAC's former employees as

pioneer who pleaded guilty to securities fraud charges more than two decades ago, paid about \$1 billion, adjusted for inflation.

While SAC would be agreeing to a record penalty, it could have been steeper for the company. If it balked at a plea deal, the people briefed on the matter said, the government threatened to pursue a much larger fine against the fund.

And with next month's insider trading trial of Michael S. Steinberg, one of Mr. Cohen's former employees who is central to the indictment of the firm, SAC faces the prospect of an even steeper penalty. The government, according to one of the people briefed on the matter, was contemplating doubling the fund's penalty if Mr. Steinberg and the F.B.I. announced the indictment of SAC, calling the fund "a magnet for market cheaters." The tentative plea deal is emerging just months after federal prosecutors announced a criminal action against such a large corporation.

The indictment, announced in July, portrayed a number of SAC's former employees as



Steven A. Cohen, the founder and chairman of the hedge fund SAC Capital Advisors.

proof that the firm and its units permitted a "systematic" insider trading scheme that unfolded from 1999 to 2010. Six former SAC employees have pleaded guilty to insider trading while at the fund. Two others, Mr. Steinberg and Mathew Martoma, are fighting the charges and have trials scheduled.

Preet Bharara, the United States attorney for the Southern District of New York, called SAC's scheme "substantial, pervasive and on a scale without any precedent in the history of hedge funds."

SAC was left with little to do but cooperate. Under the law of corporate criminal liability, an entity like SAC would be held responsible for the acts of its employees. And the employees who have admitted insider trading charges are cooperating with prosecutors and would most likely testify at a trial, bolstering the government's case.

In the aftermath of the indictment, investors continued to flee SAC, but the fund stayed afloat as banks and other trading partners continued to do business with it. SAC managed about \$15 billion at the beginning of the year, but virtually all of its outside investors have asked for their money back. After returning that money in the coming months, SAC would be left managing about \$9 billion of Mr. Cohen's personal money.

In addition to his investments, Mr. Cohen owns one of the world's largest private art collections, and he plans to build a pair of prominent paintings as a Sotheby's auction next month.

The group — two works by Andy Warhol and one by Gerhard Richter — could raise as much as \$80 million, according to Sotheby's estimates.

## NOTICE OF PUBLIC SALE OF COLLATERAL
### NEW YORK COMMERCIAL CODE LAW-SECTION 9-610

(small legal notice text)

---

STOCKS & BONDS

# S.&P. Hits New High as Market's Focus Shifts

*By The Associated Press*

Stocks that had moved modestly higher on Thursday as Wall Street put the government shutdown and debt ceiling behind it and focused on corporate earnings.

The Standard & Poor's 500 stock index rose 11.61 points, or 0.7 percent, to close at a nominal record of 1,744.50.

The American Express and Verizon rose the most in the Dow Jones industrial average after reporting earnings that beat analysts' expectations. But the Dow barely budged 1.3 points, or 0.01 percent, dragged down by declines in I.B.M., Goldman Sachs and other companies whose quarterly financial results

led to dominate trading for the next couple of weeks in the S.&P. 500 79 companies in the S.&P. 500 have reported third-quarter results, according to Thomson Reuters. Of those that have reported, earnings are expected to increase 3.3 percent.

"I don't think we can definitively close the door on the debt ceiling issue once we get on the debt ceiling again in the future, but we get back to the stuff that really

matters," said Jonathan Corpina, who manages trading on the floor of the New York Stock Exchange for Meridian Equity Partners.

Other indexes also posted noticeable gains. The Nasdaq composite index closed up 23.71 points, or 0.6 percent, to 3,914.28.

The Russell 2000 index, which is made up of smaller companies, notched its third record high. It closed up 9.85 points, or 0.9 percent, to

## The Dow Minute by Minute

Position of the Dow Jones industrial average at 1-minute intervals yesterday.

1,06527 and has risen nearly 30.2 percent this year.

Market analysts think the 16-day partial shutdown of the government caused billions of dollars of damage to the economy. Analysts at Wells Fargo said the shutdown lowered the rate of economic growth by half of a percentage point.

With the end of the debt-ceiling battle, the one-month Treasury bill was back to trading at a yield of 0.03 percent, about half a month ago, and down sharply from 0.35 percent on Oct. 16.

Usually, a staid, conservative security, the one-month Treasury bill was whipsawed during the selling at the beginning of the month. Investors feared the Treasury would be the first piece of government debt to be affected by a government default if the debt ceiling was not lifted. The federal government could no longer pay its obligations.

The yield on the more closely watched 10-year Treasury note fell to 2.59 percent from 2.61 percent on Wednesday as its price rose.

# COMMERCIAL REAL ESTATE
# BUSINESS OPPORTUNITIES

## OFFICE SPACE

## RETAIL SPACE

## INVESTMENT PROPERTIES

## BUSINESS OPPORTUNITIES

# The New York Times Store
# nytstore.com

3

# MarketWatch

November 4, 2013, 3:55 PM ET

# SAC Capital settlement means government to flex its muscle to the maximum degree, lawyers say

The massive SAC settlement for insider trading will now allow the government to flex its muscle to the maximum degree, say legal experts.

"No matter how you slice it, it's awful [for SAC]," said Richard Scheff, partner and chairman of Montgomery, McCracken, Walker & Rhoads and formerly a federal prosecutor.

One of the biggest hedge funds in the world, SAC Capital is admitting to all the charges brought against it by the government for alleged "rampant" insider trading and agreed to pay the biggest penalty in history, the government announced Monday. Founded by Steve Cohen, SAC will pay the government $1.8 billion and close its investment-advisory business as part of the deal.



Steve Cohen, SAC founder

"It definitely shows a greater propensity on the part of government to be more aggressive regarding insider-trading violations," said Harvey Pitt, former SEC chairman and CEO of Kalorama Partners, LLC. "But the situation with SAC was unique, and therefore can't be seen as an indication of what might happen in more plain-vanilla cases."

"It certainly demonstrates that that government is watching," said Scheff. "It's a focus of the government, and it will continue to be a focus."

And insiders says for financial firms, it has become a cost of doing business as the government ratchets up significant fines and penalties.

In the case of SAC, it had no defense. The firm had people who had pleaded guilty to the very conduct that SAC was accused of, noted Scheff.

And subsequently, the government had free rein to exert whatever leverage it could exert on the firm, say legal experts. But it's not over for Cohen.

"The fine is huge. The admission that insider trading was rampant at SAC is also huge," said Pitt. "I think this sounds the death knell — not just for SAC, but also for Cohen."

"Understand that Mr. Cohen is only about two-thirds of the way through the wash cycle," said John Coffee, professor of law at Columbia University Law School.

There is still the Securities and Exchange Commission case, which will seek to bar Cohen from serving as an investment advisor, either on his own or with a newly formed company, and the possibility of a criminal indictment still looms if the Department of Justice can acquire a willing witness, notes Coffee.

"In short, this case — just like the Rajaratnam and Gupta cases — know that the government is very unforgiving about insider trading; in that field at least, no one is 'too big to jail'."

– Sital S. Patel

– Follow The Tell on Twitter @thetellblog

– Follow Sital @Sital

Copyright 2013 Dow Jones & Company, Inc. All Rights Reserved

This copy is for your personal, non-commercial use only. Distribution and use of this material are governed by our Subscriber Agreement and by copyright law. For non-personal use or to order multiple copies, please contact Dow Jones Reprints at 1-800-843-0008 or visit www.djreprints.com

The Cohen Connections - Graphic - NYTimes.com

HOME PAGE | TODAY'S PAPER | VIDEO | MOST POPULAR | U.S. Edition ▼

Subscribe: Digital / Home Delivery | Log In | Register Now | Help

The New York Times

Business Day
# DealBook

Search All NYTimes.com [        ] Go

Capital One 360

WORLD | U.S. | N.Y. / REGION | BUSINESS | TECHNOLOGY | SCIENCE | HEALTH | SPORTS | OPINION | ARTS | STYLE | TRAVEL | JOBS | REAL ESTATE | AUTOS

[        ] Search | International | DealBook | Markets | Economy | Energy | Media | Personal Tech | Small Business | Your Money

UPDATED November 4, 2013

FACEBOOK   TWITTER   GOOGLE+   E-MAIL   SHARE

## The Cohen Connections

The top hedge fund SAC Capital agreed to plead guilty to insider trading and pay a record $1.2 billion fine. At least seven current or former SAC employees — all of whom have been cited in the latest indictment — have been charged separately with insider trading.   Related Article »

**INVESTIGATION**

Suspicious trading reports; emails with secret data from an industry expert.

Wiretap of a tech expert at a company known to traffic in illegal information.

Raid of two hedge fund offices finds "circle of friends" trading insider tips about the tech sector.

A government informant recorded incriminating phone calls and meetings.

Emails revealing insider trading.

**INDICTED**

Mathew Martoma had SAC sell shares of Elan and Wyeth after getting insider tips that clinical trials were not going well. He has denied the charges via his lawyer. He is expected to go to trial in January.

**BOTH GUILTY**

Donald Longueuil (top) and Noah Freeman admitted to taking part in an insider trading conspiracy involving technology stocks.

**GUILTY**

Jon Horvath passed confidential financial data about Dell.

**INDICTED**

Michael Steinberg, who was Horvath's boss, is accused of trading on that information; he denies the charges.

**GUILTY**

Wesley Wang admitted to passing illegal tips about semiconductor stocks to a former portfolio manager, Dipak Patel, who worked in the same division.

**GUILTY**

Richard Lee, a former SAC employee not previously named by prosecutors, admitted to insider trading of tech stocks and is cooperating in the case.

Said to have collaborated with Cohen on questionable drug-stock trades.

Managed a portfolio of technology stocks for Cohen.

Has said he believed his job was to provide Cohen with secret data.

On a team that traded technology stocks for SAC.

A 15-year employee of SAC who worked closely with Cohen.

An analyst at Sigma Capital, a unit of SAC.

Cohen hired Lee despite Lee's reputation for insider trading.

**TRADERS' CONNECTIONS TO STEVEN A. COHEN**

Cohen, SAC's founder, has not been criminally charged, but the company has agreed to plead guilty to insider trading.

| S.& P. 500 | 1,767.93 | ↗ | 6.29 |
| Dow industrials | 15,639.12 | ↗ | 23.57 |
| Nasdaq composite | 3,936.59 | ↗ | 14.55 |
| 10-yr. Treasury yield | 2.60% | ↘ | 0.02 |
| The euro | $1.3518 | ↗ | 0.0033 |

**Itineraries**

**Sports Lodging**

Professional sports teams are reliable and lucrative customers for hotels. **8**

The F.C.C.'s new chairman hires an outspoken critic of the agency. **2**

Netflix acquires streaming rights to an acclaimed documentary. **2**

**SportsTuesday**
Pages 10-15

**Weighing the Risks**
A goalkeeper plays on after losing consciousness. **10**

# Business Day

## The New York Times

TUESDAY, NOVEMBER 5, 2013

B1



## After a Decade, SAC Capital Blinks

### A Textbook Case For Prosecuting Corporate Crime



**JAMES B. STEWART**

**COMMON SENSE**

SAC Capital's guilty plea to insider trading and $1.2 billion fine may represent a sweeping victory for Preet Bharara, the United States attorney, and his team of prosecutors, and vindication for their multiyear investigation of one of the country's most successful hedge funds.

But the decision to indict a company, and to spare, at least for now, its founder and billionaire manager, Steven A. Cohen, has already ignited criticism.

"A company can't commit a crime," said Edwin T. Burton, a professor of economics at the University of Virginia, who wrote a widely circulated blog post this summer that criticized the government's indictment. "They should only go after the people doing things wrong. There are innocent bystanders, a lot of people, being hurt. Why is the villain the one who sweeps out the floor every night?"

The Justice Department itself recognizes in its "Principles of Federal Prosecution of Business Organizations" that "corporate prosecutions can potentially harm blameless investors, employees, and others." The collapse of Arthur Andersen after it was indicted in 2002, reducing the number of large international accounting firms to just four, is widely cited as an example of the collateral damage that corporate

*Continued on Page 4*

---

### Persistent Prosecutors Wrest a Guilty Plea From a Hedge Fund

**By BEN PROTESS and PETER LATTMAN**

SAC Capital first sought to fend off a federal indictment. Then like the hedge fund, run by the billionaire Steven A. Cohen, offered to pay about $700 million to settle. Finally, SAC suggested it plead guilty to only some of the criminal charges in the five-count indictment.

But at every turn, the government refused.

And so on Monday, SAC agreed to plead guilty to all five counts of insider trading violations and pay a record $1.2 billion penalty, becoming the first large Wall Street firm in a generation to confess to criminal conduct. The deal capped a decade-long investigation that has turned a mighty hedge fund into a symbol of financial wrongdoing.

An account of the negotiations, based on interviews with people briefed on the case, illuminates the private wrangling and underscores just how aggressive the government was in extracting the deal.

The guilty plea and fine paid by SAC, a broader plea deal that will impose a five-year probation on the fund and require it to hire an outside monitor. SAC must also terminate its business of managing money for outside investors, as it already faces an exodus of client money.

It will still exist but continue to manage Mr. Cohen's vast fortune, a move that would help maintain his influence on Wall Street.

*Continued on Page 4*

Preet Bharara, the United States attorney in Manhattan, details SAC Capital's agreement with the government.

---

## J.&J. to Pay $2.2 Billion In Risperdal Settlement

**By KATIE THOMAS**

Johnson & Johnson has agreed to pay more than $2.2 billion in criminal and civil fines to settle accusations that it improperly promoted the antipsychotic drug Risperdal to older adults, children and people with developmental disabilities, the Justice Department said on Monday.

The agreement is the third-largest pharmaceutical settlement in United States history and the largest in a string of recent cases involving the marketing of antipsychotic and anti-seizure drugs to older dementia patients. It is part of a decade-long effort by the federal government to hold the health care giant — and other pharmaceutical companies — accountable for illegally marketing the drugs in a way to controlled patients with dementia in nursing homes and children with certain behavioral disabilities, despite the health risks of the drugs.

The settlement, which requires the approval of a federal judge, will also resolve accusations that the company inappropriately promoted two other drugs, the heart-failure drug Natrecor and

B1

7

## A Takeover Bid for BlackBerry Collapses, And Its Chief Executive Vacates His Post

**By IAN AUSTEN and DAVID GELLES**

OTTAWA — A tentative takeover bid for BlackBerry from its largest shareholder collapsed on Monday, clouding the immediate future of the company.

Fairfax Financial Holdings of Toronto, the insurance and investment company, had made a conditional, nonbinding offer to buy the 90 percent of BlackBerry shares it does not own for $9 each, valuing the company at about $4.7 billion. But Fairfax announced on Monday that it would not proceed with the offer, setting the struggling company on a path into the unknown and sending its stock into a tailspin. Shares of BlackBerry fell more than 16 percent, to $6.49.

Adding to the uncertainty and confusion was the company's announcement that Thorsten Heins, who was appointed chief executive in January 2012 with a mandate to turn the company around, had stepped down. BlackBerry said that John S. Chen, the former chief executive of Sybase, would become BlackBerry's interim executive chairman and acting chief executive but offered no indication of when the company might name a permanent chief executive and who that person might be.

BlackBerry's new handsets are a commercial failure.



*Continued on Page 6*

## On Strong Demand, Twitter Raises I.P.O. Price Range

**By DAVID GELLES and VINDU GOEL**

Twitter is feeling more optimistic about investor appetite for its imminent initial public offering.

On Monday morning, the company raised the price range for its I.P.O. to $23 to $25, from a previous range of $17 to $20 a share, setting the stage for a bullish stock market debut later this week.

The new range increases Twitter's potential market value by several billion dollars. If it prices at the high end, Twitter would be valued at $13.9 billion at the start of its first day of trading.

That is more than other relatively young technology companies like Groupon and Zynga, but less than Facebook, valued at about $19 billion, and LinkedIn, valued at about $25 billion.

The new price range also increases the amount of money that the company will raise for itself. At $25 a share, the offering would raise about $1.7 billion for the company, giving the company capital to finance its growth.

On Oct. 24, the company said in a filing with the Securities and Exchange Commission that it planned to sell 70 million shares at $17 to $20 each. That

*Continued on Page 6*

## U.S. in Talks To Settle Suit Over Merger Of 2 Airlines

**By JAD MOUAWAD and CHRISTOPHER DREW**

The Justice Department has started talks with American Airlines and US Airways, seeking concessions on airport takeoff and landing slots in exchange for dropping an antitrust lawsuit aimed at blocking their merger, Attorney General Eric H. Holder Jr. said on Monday.

Mr. Holder's comments on the negotiations, which began just three weeks before a trial on the suit was scheduled to start in federal court in the District of Columbia, raised expectations on Wall Street and in the aviation industry that the merger would stay in place with relatively modest concessions.

The department sued in August to block the merger, which would create the nation's largest airline. Claiming that the combination would harm consumers, Justice Department officials said that they had to take a tough stance because other big airline mergers had increased airfares.

Several legal and airline specialists said that despite that talk, the Justice Department's case was relatively weak and that it now appeared to be narrowing its main concerns about competition to a few airports.

Robert A. McTamaney, a mergers and acquisitions lawyer at Carter Ledyard & Milburn in New York, said Mr. Holder seemed to be "making our hard sanctioned settlement would result, instead, in a tough settlement with Washington that the government would insist, in any settlement, on 'divestitures of facilities at key constrained airports throughout the United States.'

For example, Mr. Holder said the combined airline had determined how many slots it would want

*Continued on Page 6*

---

invega, a newer antipsychotic drug.

Much of the conduct highlighted in the case, which for Risperdal extends from 1999 through 2005, occurred while Alex Gorsky was vice president for sales and marketing and later president of the company's pharmaceutical unit, Janssen. Mr. Gorsky became chief executive of Johnson & Johnson last year. Risperdal, which had lost its patent protection, was once one of the company's best-selling drugs.

In a news conference announcing the settlement, Eric H. Holder

*Continued on Page 6*

---

## The Cohen Connections

The top hedge fund SAC Capital agreed to plead guilty to insider trading and pay a record $1.2 billion fine. At least seven current and former SAC employees — all of whom have been cited in the latest indictment — have been charged separately with insider trading.



**INVESTIGATION**

Suspicious trading records, emails and secret data from an industry expert.

**INDICTED**

Mathew Martoma tied SAC's leaders to a $276 million trade that cheated trials were not going well. He has denied the charges via his lawyer. He is expected to go to trial in January.

**PLEADED GUILTY**

Donald Longueuil (top) and Noah Freeman admitted to taking part in an insider trading conspiracy involving technology stocks.

Jon Horvath passed confidential financial data about Dell.

Michael Steinberg, who was Horvath's boss, is accused of trading on that information. He denies the charges.

**GUILTY**

Wesley Wang admitted to passing illegal tips about semiconductor stocks to a former portfolio manager, who he worked in the same division of the company.

Richard Lee, a former SAC employee not previously named by prosecutors, admitted to insider trading of two stocks and is cooperating in the case.

A government informant recorded incriminating phone calls and meetings.

Emails revealing insider trading.

Wiretap of a tech expert at a company known to traffic in illegal information.

Raid of two hedge fund offices from the "circle of friends" trading insider in the tech sector.

**TRADERS' CONNECTIONS TO STEVEN A. COHEN**

Cohen, SAC's founder, has not been criminally charged, but the company has agreed to plead guilty.

SAC have collaborated with illegal tips for confidential stocks for Cohen.

Managed a portfolio of stocks for Cohen.

Has said he traded technology stocks to provide Cohen with secret data.

On a team that traded technology stocks for SAC.

A 15-year employee of SAC who worked closely with Cohen.

An adviser to the SAC Capital Group chairman.

Cohen had a close relationship with a former insider trader.

*Source: The New York Times; reports; court records.*



Center, Preet Bharara, the United States attorney in Manhattan, and April Brooks of the F.B.I. announce SAC's plea on Monday.

*JOHN MARSHALL MANTEL FOR THE NEW YORK TIMES*

## A Textbook Case Of Corporate Prosecution

From First Business Page

prosecutions can harm.

But SAC Capital is no Arthur Andersen.

"Based on all that we know and the evidence that's come to light, I'd say justice was done," said Lawrence M. Friedman, a professor at the New England School of Law and author of "In Defense of Corporate Criminal Liability" in the Harvard Journal of Law and Public Policy. "It's hard to imagine a better case for advancing the goals of criminal liability."

Mr. Bharara said in an interview on Monday that he didn't want to comment on the SAC plea, which still must be approved by a federal judge. But, he said: "There are lots of different ways to punish wrongdoing and effect deterrence. Sometimes you charge individuals, sometimes you seek a large penalty, sometimes you send people to jail and sometimes you try to make the world understand that an entire institution deserves to be held blameworthy. Just because you do one doesn't mean you don't do the others."

Given the broader goals of the criminal code, SAC Capital may emerge as a textbook case for prosecuting companies — and a harbinger of far more aggressive prosecution of corporate crime.

While Professor Burian is correct that only human beings can commit crimes, the notion that corporations are the same as individuals in the eyes of the law dates at least to an early 19th century Supreme Court case, which held that corporations, like people, can enter into contracts. That view was reaffirmed in the recent Citizens United case, where a majority of the justices are entitled to the free speech guarantees of the First Amendment.

The federal government has long prosecuted corporations whose managers engaged collectively in criminal behavior. "Corporations should not be treated leniently because of their artificial nature nor should they be subject to harsher treatment," the Justice Department principles state. "Vigorous enforcement of the criminal laws against corporate wrongdoers, where appropriate, results in great benefits for law enforcement and the public."

These benefits, according to Professor Friedman, include protecting the public, deterring similar unlawful conduct and what he called "expressive value," which is the public statement that certain behavior should be subject to criminal sanction.

"There are many critics who will say, 'You can't incarcerate a corporation, so what's the point?' My view is, what they did, it was just as wrong, and by treating it as a criminal rather than civil matter, it makes an important statement about the seriousness of the wrongdoing."

Brenton L. Garrett, a professor at the University of Virginia School of Law and author of the forthcoming book, "Too Big to Jail: How Prosecutors Target Corporations," said that while environmental and antitrust inquiries frequently resulted in corporate indictments, financial fraud investigators were just now starting to see the light.

"Prosecutors have increasingly been saying that no company is too big to jail, and now they can point to SAC case and say 'We really mean it,'" Mr. Garrett said.

cent bystander. The Securities and Exchange Commission has filed civil charges against Mr. Cohen claiming failure to supervise, and said he didn't follow up on numerous "red flags" indicating potential insider trading at the firm. (Mr. Cohen has denied the charges and vowed to fight the suit, which wasn't affected by the guilty plea on Monday.)

It's true that many of SAC's employees may lose their jobs as the firm winds down; it has already shrunk considerably. And many investors have already moved their money elsewhere, and may have trouble replacing SAC's astounding track record. But presumably, traders at one of the country's most successful hedge funds will have no trouble landing new, multimillion-dollar positions at rival firms in the fiercely competitive hedge fund world. And investors can hardly complain that they can no longer earn market-beating returns aided by illegal insider trading.

As for deterrence, "This is a very visible case with a very large dollar sign attached to it," Professor Friedman said. "You could argue that the audience for this is very sensitive to dollar signs. They're other hedge funds and money managers. It's a big enough number to get attention because if it's too low, it's just perceived as another cost of doing business."

And given Mr. Cohen's ownership of the firm, the $1.2 billion fine, as well as a previous $600 million settlement with the S.E.C., will come out of his pocket, rather than public shareholders'. With a fortune estimated at $9 billion, Mr. Cohen will still be a billionaire many times over, but the fine is nonetheless more than a dent to his personal fortune.

This aspect even modified a critic like Professor Burton. "At least the target is the same as the alleged villain," he said, referring to Mr. Cohen. "This is almost never the case when you sue and indict a public company."

SAC Capital didn't even pay lip service to the idea that it would wholeheartedly cooperate with the government's investigation, let alone make a "timely and voluntary disclosure of wrongdoing," which is another factor in the Justice Department's guidelines that SAC flouted. "It's extraordinary that they said publicly they would not cooperate," Professor Friedman said. "They evidently thought they would get away with it with impunity."

Mr. Cohen's lavish spending during the course of the investigation — he bought "Le Rêve" by Pablo Picasso for $155 million and paid $60 million on a Hamptons estate earlier this year — was widely perceived as thumbing his nose at prosecutors.

Even after his company's guilty plea, Mr. Cohen is hardly out of the woods, and he won't find any comfort in the Justice Department's principles. They state, "Prosecution of a corporation is not a substitute for the prosecution of criminally culpable individuals within or without the corporation." And, "Only rarely should provable individual culpability not be pursued, particularly if it relates to high-level corporate officers, even in the face of an offer of a corporate guilty plea or some other disposition of the charges against the corporation."

Do not forget the Needlest!

---

# Persistence Wrests Guilty Plea From SAC Capital

From First Business Page

The case could inspire other aggressive actions against Wall Street, as the Justice Department's uneven crackdown on financial fraud has gained momentum. Coming just days before JPMorgan Chase is expected to complete a $13 billion settlement with the government over the bank's questionable mortgage practices, the SAC plea might stem lingering concerns that the Obama administration has been reluctant to bring charges against major financial firms.

"No institution should rest easy in the belief that it is too big to jail," Preet Bharara, the United States attorney in Manhattan, said on Monday.

The $1.2 billion penalty adds to the $616 million in insider trading fines that SAC already agreed to pay to the Securities and Exchange Commission. Mr. Cohen, who owes 100 percent of the firm, will pay those penalties himself.

SAC's total $1.8 billion punishment sets a record for insider trading cases and far surpasses those of other recent noteworthy financial prosecutions. Raj Rajaratnam, the fallen hedge fund titan serving an 11-year prison sentence for insider trading, was ordered to pay about $157 million.

In a letter to the court, Mr. Bharara called the SAC penalty, which was slightly above federal guidelines, "steep but fair" and "commensurate with the breadth and duration of the charged criminal conduct," a reference to the eight former SAC traders charged with securities fraud. Six of those traders have pleaded guilty and are cooperating with prosecutors.

SAC, which is based in Stamford, Conn., said in a statement that it took "responsibility for the handful of men who pleaded guilty and whose conduct gave rise to SAC's liability. Even one person crossing the line into illegal behavior is too many and we greatly regret this conduct occurred."

SAC's guilty plea serves as a capstone moment in the government's vast insider trading

crackdown, which has produced more than 70 convictions, including that of Mr. Rajaratnam.

Led by federal authorities in Manhattan, the inquiry began in the middle of the last decade using techniques normally reserved for organized crime cases. F.B.I. agents used wiretaps to record Wall Street traders and pressured low-level employees to cooperate against their colleagues and bosses.

The SAC case began 11 years ago with a simple suspicion: Its investment returns were too good to be true. The fund had posted average annual returns of nearly 30 percent.

With questions mounting, a small team of investigators at the S.E.C. contacted the raider's stock exchanges to ferret out whether insider trading was at play, officials briefed on the case said. The inquiry ebbed and flowed for years, producing leads but no smoking gun.

But in 2006, the F.B.I. had a breakthrough. It secured the cooperation of David Slaine, an employee of Mr. Rajaratnam's hedge fund, the Galleon Group. Mr. Slaine soon offered the government a lens inside not only Galleon but the inner workings of competitors like SAC.

Starting in 2009, after the S.E.C. intensified its focus on SAC, the government gained further momentum when it secured a series of guilty pleas that appeared to legitimize the speculation swirling around the hedge fund. Noah Freeman, who joined SAC in 2008, told investigators that he thought insider trading was part of his job description.

"What started with a key cooperator, led to thousands of hours of relentless investigative work by a team of F.B.I. agents, uncovering an extensive network trafficking in inside information throughout the hedge fund industry," April Brooks, the F.B.I. special agent in charge, said at a news conference on Monday.

The tightening by two other former SAC portfolio managers, Mathew Martoma and Michael S. Steinberg, is also expected to be the indictment. Prosecutors have ac-

cused Mr. Martoma, who has pleaded not guilty, of using confidential drug trial information to trade the stocks of drug firms.

Mr. Steinberg stands accused of trading on inside information about the computer maker Dell. He has maintained his innocence and will stand trial on Nov. 18.

From his batch of cases, the government needed charges against SAC. But an indictment was not a forgone conclusion.

SAC and the government, the people briefed on the matter said, discussed a plea deal that included a guilty plea and a fine but without having spared it the embarrassment of an indictment.

Ultimately, talks broke down, paving the way for the govern-

ment to bring the indictment in July, charging SAC with four counts of securities fraud and one count of wire fraud.

SAC pleaded not guilty. But in the weeks that followed, the fund had little to do but settle. The law of corporate criminal liability, which allows the government to attribute the criminal acts of employees to the company itself, buttresses the case. With former SAC employees having pleaded guilty — and the employees likely to have testified at a trial — SAC's defenses were few.

And yet SAC, led by lawyers at Paul, Weiss, Rifkind, Wharton and Garrison and Willkie Farr & Gallagher, still pushed back when it came to money.

The United States attorney's office, according to the people briefed on the case, demanded $1.8 billion in penalties from SAC — $800 million in fines and $500 million in forfeited profits. The office cut its criminal division chief, who handled negotiations, Lorin L. Reisner, was willing to deduct from that amount the $616 million

the fund already paid to the S.E.C., reducing the additional penalty to about $1.2 billion.

SAC's initial offer of roughly $700 million, the fund raised the amount to about $1 billion. When that failed, SAC acceded to the $1.2 billion deal.

Even with the deal, criminal authorities continue to view Mr. Cohen and other SAC employees as targets of a continuing insider trading investigation. The plea agreement expressly states that it "provides no immunity from prosecution for any individual."

What's more, the plea deal does not incorporate a separate civil action the S.E.C. brought against Mr. Cohen. The S.E.C., which accused him of turning a blind eye to misconduct at his fund, is seeking to bar Mr. Cohen from managing outside money, a SAC or elsewhere.

Many have drawn comparisons between Mr. Cohen and Michael B. Milken, the junk bond pioneer at Drexel Burnham Lambert who became synonymous with financial greed during the go-go 1980s. After pleading guilty to securities fraud charges, Mr. Milken paid about $1 billion in penalties, adjusted for inflation. A quarter-century ago, Drexel pleaded guilty to securities fraud, the last big Wall Street firm to enter a guilty plea.

Guilty pleas by financial institutions are exceedingly rare, and legal specialists say the case against SAC could embolden prosecutors to bring criminal charges against other firms.

---

No institution is 'too big to jail,' warns a government official.

VOL. CLXIII . . No. 56,311

# The New York Times

© 2013 The New York Times

NEW YORK, TUESDAY, NOVEMBER 5, 2013

$2.50

"All the News That's Fit to Print"

**Late Edition**

Today, clouds and sunshine, high 52. Tonight, partly cloudy, low 45. Tomorrow, variably cloudy, but milder than recent days, high 62. Weather map is on Page A24.

---

## For Uninsured, Clearing a Way To Enrollment

### Kentucky Offers Model on Health Care Law

**By ABBY GOODNOUGH**

LA GRANGE, Ky. — Kelli Cauley's fingers raced over her keyboard as she asked the anxious woman on the other end a series of questions. What was her income? How many people lived in her household? Did she smoke? "That's the only health question it asks," Ms. Cauley said of the application they were completing.)

The woman, a thin 61-year-old who refused to give her name, citing privacy concerns, had come to the public library here to sign up for health insurance through Kentucky's new online exchange. She had a painful lump on her back and had been unable to see a doctor, and had been uninsured for most of the two decades she had worked in a home health care worker who earns $9 an hour.

Within a minute, the system checked her information and flashed its conclusion on Ms. Cauley's laptop: eligible for Medicaid. The woman, skeptical, said she was as she felt, "it's cheaper than free."

Known as "navigators" or "assisters," people like Ms. Cauley are fanning out across the country, searching for the uninsured and walking them through the enrollment process. Under the new federal health care law

Kelli Cauley and an insurance applicant in La Grange, Ky.

The woman, a thin 61-year-old who refused to give her name, citing privacy concerns, had come to the public library here to sign up for health insurance...

*Continued on Page A14*

---

## $1.2 BILLION FINE FOR HEDGE FUND IN INSIDER CASE

### A CRIMINAL GUILTY PLEA

### Deal for SAC Capital Leaves Owner Free to Keep Trading

**By PETER LATTMAN and BEN PROTESS**

The hedge fund titan Steven A. Cohen sat on the bench of his vast trading floor on Monday, buying and selling stocks. In a sign of his enduring influence on Wall Street, he did business with many of the biggest banks like Goldman Sachs and JPMorgan Chase.

Just last week, Mr. Cohen appeared relaxed, courtside at Madison Square Garden while watching the New York Knicks defeat the Milwaukee Bucks in their season opener, and he was closely monitor the auctions at Sotheby's and Christie's, which are selling about $80 million worth of art from his vaulted collection, including two Warhol paintings and a Cy Twombly sculpture.

For the 57-year-old billionaire, life continued as usual as usual.

But on Monday, federal prosecutors announced that Mr. Cohen's firm, SAC Capital Advisors, had agreed to plead guilty to insider-trading violations and pay a record $1.2 billion penalty, becoming the first large Wall Street firm in a generation to confess to criminal conduct. The government has also forced SAC to terminate its business of managing money for outside investors.

Insider trading at SAC was "substantial, pervasive and on a scale without precedent in the history of hedge funds," said Preet Bharara, the United States attorney in Manhattan, whose office has criminally charged eight former SAC employees; six have pleaded guilty.

Mr. Cohen's apparent nonchalance — even as the firm bearing his initials admitted to committing fraud on a grand scale — reflects a special criminal organization — reflects

*Continued on Page B4*

---

## BIG MONEY FLOWS IN BID TO THWART CHRISTIE AGENDA

### LEGISLATIVE ELECTIONS

### Democrats Seek to Blunt a Landslide Victory by the Governor

**By NICHOLAS CONFESSORE**

Democrats and unions, fearful that a landslide victory by Gov. Chris Christie will reshape New Jersey's political landscape, have poured tens of millions of dollars into a record-breaking outside spending campaign that has transformed the state's election season.

The effort, intended to preserve Democratic domination of the State Legislature and complicate Mr. Christie's plans to build a record of legislative achievement — and to cast a fresh, presidential bid in 2016, has inundated some legislative districts with millions of dollars in negative ads, on a scale never before seen in New Jersey.

As of last Thursday, according to the state's election law enforcement board, outside spending by candidates had topped $35 million, twice the amount spent when Mr. Christie, a Republican, was elected in 2009 and the highest recorded by any state except California.

The surge of spending is likely to be replicated around the country next year, as outside groups vary widely in their tactics. New Jersey underscores the election's continuing ripple effect, as legal challenges mount. In the few states remaining that still limit independent expenditures, a federal appeals court filed New York's limit on

*Continued on Page A20*

---

## Egypt's Ex-President Is Defiant at Murder Trial

**By DAVID D. KIRKPATRICK and MAYY EL SHEIKH**

CAIRO — Held incommunicado for the four months since his overthrow as president, Mohamed Morsi of the Muslim Brotherhood walked into a makeshift courtroom on Monday for his new role as a defendant in a murder trial.

But Mr. Morsi, dressed in a blue suit, refused even to wear the usual all-white prisoner's costume.

"I want a microphone so I can talk to you," Mr. Morsi shouted three times from a special defendant's cage constructed to obstruct the view from public view. "I am the real president. I should be shouted, adding, "I

an the president of the republic, according to the Constitution of the state, and I am forcibly detained!"

Repeatedly cited by the new government as evidence of its adherence to the rule of law, the trial instead threatened to embarrass its leadership, with the defendants and their lawyers seizing a rare platform to question the military takeover that deposed Mr. Morsi. Egypt, galvanized by Mr. Morsi's defiance and determined to protect Mr. Morsi, while Islamists would rise again.

Such statements would be politically...

And the timid, analysts said, also proved awkward for the secretary of State John Kerry. On a visit to Cairo just a day before, he had said — for a day before he predicted, in the same venue of mass killings of protesters, the

shutdown of opposition news media outlets and apparently politicized trials like Mr. Morsi's. "There are indications that interim generals who ousted Egypt's first freely elected president intended to restore democracy."

The visit was "unbelievable timing," said Michael Wahid Hanna, an Egypt scholar at the Century Foundation in New York. He argued that the experience of the Islamists would see the trip as an American effort to protect Mr. Morsi.

*Continued on Page A8*

Mohamed Morsi, Egypt's former president, in the defendants' cage at a trial on Monday in Cairo.

---

10

B4   N

THE NEW YORK TIMES BUSINESS TUESDAY, NOVEMBER 5, 2013

# SAC Capital Advisors to Pay $1.2 Billion Fine in Insider Trading Case

From Page A1

what is missing from the plea deal Mr. Cohen himself. As the pending investigation, federal authorities have not been able to build a case against SAC's billionaire owner.

Without such a case, Mr. Cohen could still be a force on Wall Street, which for years had deep relationships with SAC. With its rapid-fire trading style, the hedge fund has been a top moneymaking client of the major banks, paying them billions of dollars in commissions. The banks have also made big profits extending loans to the fund. On Monday, they all continued to trade with SAC.

According to his friends on Wall Street, Mr. Cohen says that he has done nothing wrong and thinks the government is bent on destroying him and his firm. Mr. Cohen, who owns 100 percent of SAC, has also privately complained that he has to pay more than $1 billion out of his own pocket for the crimes of rogue employees.

A statement issued by SAC's senior management on Monday appeared to underscore Mr. Cohen's indignation. The statement said: "SAC has never encouraged, promoted or tolerated insider trading."

The statement, especially the last sentence, angered government officials because it contradicted SAC's admission that it

committed insider trading crimes. After prosecutors made their displeasure known to SAC, the firm issued a new statement that swapped out the last sentence and replaced it with, "Even one person crossing the line into illegal behavior is too many and we greatly regret this conduct occurred."

The son of a retail-clothing executive and a piano teacher, Mr. Cohen grew up in Great Neck, N.Y. Today, he lives across Long Island Sound in Greenwich, Conn., in a 36,000-square-foot

home with an indoor pool and a two-hole golf course.

Mr. Cohen started SAC in 1992 with just $25 million. As the hedge fund grew, Mr. Cohen created an unorthodox structure, letting his deputies oversee "teams," in which about 140 small teams each have control over hundreds of millions of dollars. The teams are all required to share their best investment ideas with Mr. Cohen, who historically has managed the largest account, worth several billion dollars.

SAC attracted ambitious, talented traders and promised them outsize pay as long as they performed. In good times, the fund's top talent earned as much as $100 million annually. As for Mr. Cohen, he reportedly earned about $906 million a year in 2006 and 2007.

Mr. Cohen was able to pay such mammoth compensation because he charged among the highest annual fees in the hedge fund industry — 3 percent of assets and as much as 50 percent of profits. The average hedge fund, by posting some of the best returns in the business — an average of

## Wrongdoing by a hedge fund 'on a scale without precedent.'

30 percent annually from 1992 to 2013 — has made SAC's investors very rich, and made Mr. Cohen one of the wealthiest men in the world. Forbes estimates that Mr. Cohen is worth about $9 billion.

SAC Capital's offices, in Stamford, Conn. The hedge fund agreed on Monday to plead guilty to insider trading.

Since early 2011, the government secured a series of guilty pleas by former SAC traders that gave legitimacy to those rumors and ultimately underpinned the indictment of the hedge fund. Prosecutors have said that one of those traders, Mathew Martoma, spoke with Mr. Cohen about his questionable trades, but he has not cooperated and awaits trial.

In recent weeks, friends say, Mr. Cohen's spirits have been high with the hope that the settle-

ment would resolve a major legal problem. But several challenges remain.

SAC's plea deal does not incorporate a separate civil action the Securities and Exchange Commission brought against Mr. Cohen. The S.E.C. lawsuit has accused him of turning a blind eye to misconduct at his fund, and seeks to bar him from ever managing outside money, at SAC or elsewhere, people briefed on the case said.

Criminal authorities also continue to view Mr. Cohen and subordinate SAC employees as targets. F.B.I. agents, the people said, are

examining SAC's trading records and seeking the cooperation of potential informants.

If the investigation has ensnared a significant toll on SAC. Nearly all "the firm's investors have pulled their money. But SAC was always more insulated than other hedge funds from the damaging effects of withdrawals because of the $15 billion it managed at its peak, only $8 billion was from outside investors. The balance belongs simply to Mr. Cohen.

There was speculation that an indictment of SAC might cause the fund to collapse. But the government vowed to limit the potential for collateral damage among the fund's investors and trading partners. Prosecutors did not freeze SAC's assets and encouraged brokerage firms to continue to do business with the fund.

SAC is now most likely morph into a so-called family office, with Mr. Cohen and a staff of hundreds investing his personal wealth. With billions at his disposal, Mr. Cohen is likely to remain a presence in the stock market.

His business associates are optimistic that SAC might some how retain its footing as a powerful force on Wall Street.

"His attitude is great and he is trying to put the best face forward," said a senior brokerage firm executive who trades with Mr. Cohen. "His personal money" — 9 billion — "will always be a big—

"We take responsibility for the

11

# EXHIBIT  F

# Forbes



**Agustino Fontevecchia**, Forbes Staff
Bringing You The Bull And Bear Case From The Markets Desk

MARKETS | 11/04/2013 @ 2:48PM | 4,473 views

# Preet Bharara Isn't Done With Steve Cohen And SAC Capital

Preet Bharara doesn't seem to be done with Steve Cohen. In a press conference announcing a massive insider trading settlement with SAC Capital, the U.S. Attorney for the Southern District reiterated no individual is off the hook, and that their investigation remains ongoing. Steve Cohen has been accused by the SEC of failing to supervise two portfolio managers, Mathew Martoma and Michael Steinberg, who are being taken to trial by the government for insider trading. Beyond the SEC charges, Cohen will have to pay attention to the trials of his former employees, as their outcomes, or either of them choosing to cooperate with Bharara's office, could give the government a stronger case against the embattled billionaire. With 75 convictions for insider trading under his belt, Bharara is probably pretty optimistic.

"Greed, sometimes, is not good," Preet Bharara told a room full of reporters on Monday, as he proudly announced a $1.8 billion settlement with SAC Capital which includes the firm ceasing to manage outside money. Despite scoring a high profile victory, which comes with the end of closing of one of the largest hedge funds out there, Bharara indicated his office is not done with its insider trading case against Steve Cohen's firm.



Preet Bharara, United States Attorney for the Southern District of New York, when he unveiled the indictment of SAC Capital - Image credit: AFP/Getty Images via @daylife

The settlement documents point it out clearly, noting "this agreement does not provide any protection against prosecution or other enforcement action against the SAC Entity Defendants, any owner, shareholder, or employee of the SAC Entity Defendants or any other person." In a letter to the judges Bharara goes further, saying "the agreement provides no immunity from prosecution for any individual and does not restrict the Government from charging any individual for any criminal offense and seeking the maximum term of imprisonment applicable to any such violation of criminal law."

Preet Bharara Isn't Done With Steve Cohen And SAC Capital - Forbes                    Page 2 of 2

Asked repeatedly about Cohen during the press conference, Bharara stressed that the investigation is far from over. He even noted they still had wiretaps of other individuals who haven't been charged yet. And while Cohen himself will be paying the totality of the fine from his own pocket, as he did with the previous $616 million settlement with the SEC, some could say he managed to get away. Cohen remains a multi-billionaire and hasn't been charged with any criminal wrongdoing. He will probably earn enough this year to cover the whole fine, as my colleague Nathan Vardi explained, and will still be able to manage his own fortune. Whether he'll still be able to deliver returns without the massive infrastructure is another question.

It is important to note that SAC Capital admitted to having broken the law. "We take responsibility for the handful of men who pleaded guilty and whose conduct gave rise to SAC's liability. The tiny fraction of wrongdoers does not represent the 3,000 honest men and women who have worked at the firm during the past 21 years. SAC has never encouraged, promoted or tolerated insider trading," read a statement released by Cohen's hedge fund. SAC Capital, which is wholly owned and managed by Steve Cohen, agreed to plead guilty to insider trading charges, meaning its employees were engaging in criminal activity and while that doesn't directly tie in Cohen, in conjunction with the SEC's failure to supervise charges, it builds a stronger body of proof against the hedge fund manager.

It's not clear whether Preet Bharara will succeed in getting Steve Cohen prosecuted for insider trading. If he had a case, he would have already brought it to court. What is evident, though, is that the prosecution will not rest until it has exhausted every option.

---

**This article is available online at:**
http://www.forbes.com/sites/afontevecchia/2013/11/04/preet-bharara-isnt-done-with-steve-cohen-and-sac-capital/

SAC Capital Advisors reaches $1.8 billion deal with feds over insider trading charges  - NY Daily News

# DAILY NEWS

Local

## SAC Capital Advisors reaches $1.8 billion deal with feds over insider trading charges

**Steven Cohen's company has agreed to pay, plead guilty to all criminal charges and close its investment advisory business in a deal reached with Manhattan U.S. Attorney Preet Bharara.**

BY DANIEL BEEKMAN / NEW YORK DAILY NEWS

MONDAY, NOVEMBER 4, 2013, 10:20 AM



Hedge fund manager Steven Cohen — seen with his wife, Alexandra — has reportedly struck a deal to end federal prosecution of the firm that was at one point worth $15 billion.

Wall Street cheaters have 1.8 billion new reasons to play by the rules.

SAC Capital Advisors, one of the richest hedge funds in the world, has struck a mammoth plea deal to resolve insider trading claims, federal prosecutors said Monday.

The moneymaking machine owned by billionaire Steven Cohen will shell out $1.8 billion, plead guilty to all criminal charges and shutter its investment advisory business.

SAC Capital Advisors reaches $1.8 billion deal with feds over insider trading charges - NY Daily News



Manhattan U.S. Attorney Preet Bharara called the deal 'the largest fine in history for insider trading offenses.'

RELATED: FEDS CHARGE HEDGE FUND SAC CAPITAL WITH INSIDER TRADING

The penalties will deal a lethal blow to the company, although Cohen himself will be left with no jail time and plenty of spare change — his net worth has been estimated at $8.8 billion.

Manhattan U.S. Attorney Preet Bharara labeled the 10-figure clawback "the largest fine in history for insider trading offenses" and "the just and appropriate price for the pervasive and unprecedented institutional misconduct that occurred here."



According to the FBI, SAC Capital Advisors 'not only tolerated cheating, it encouraged it.'

Stamford, Conn.-based SAC raked in hundreds of millions of dollars from 1999 to 2010 as its traders used inside information from dozens of publicly traded companies to make scores, authorities said.

RELATED: SEC CHARGES BILLIONAIRE HEDGE-FUND MANAGER FOR FAILING TO PREVENT INSIDER TRADING

But experts said the landmark win for the feds comes with an asterisk: The prosecutors have been unable to pin criminal charges on Cohen himself, although the hedge fund prince faces a civil case brought by the Securities and Exchange Commission.



SAC Capital Advisors attorney Martin Klotz (left) and the firm's legal team enter a not guilty plea to insider trading July 26, 2013, in federal court in New York.

"You have to infer from the present state of affairs that they don't believe they have sufficient evidence to indict him," said former Manhattan Federal Judge Richard Holwell, who presided over the insider trading case against billionaire hedge funder Raj Rajaratnam.

Two judges must approve the plea deal, which will settle a six-count fraud indictment, along with a civil forfeiture and money-laundering action.

RELATED: SAC CAPITAL PORTFOLIO MANAGER STEINBERG ARRESTED IN NY

SAC Capital Advisors reaches $1.8 billion deal with feds over insider trading charges - NY Daily News



Steven Cohen reportedly owns this sprawling $14.5 million estate in Greenwich, Conn.

The $1.8 billion includes $616 million that SAC had agreed to pay in an SEC case.

The indictment refers repeatedly to the "SAC owner" rather than naming Cohen.

"The SAC owner fostered a culture that focused on not discussing inside information too openly," the indictment said, referring to Cohen.



Steven Cohen's SAC Capital Advisors must shut down its investment advisory business under plea deal, but federal prosecutors were unable to pin criminal charges on Cohen himself.

RELATED: ACCUSED INSIDE TRADER POSTS $5 MILLION BAIL

The investigation into individual conduct at SAC is ongoing, he said, now a partner at Holwell, Shuster and Goldberg LLP.

"These wrongdoers do not represent the 3,000 honest men and women who have worked at the firm during the past 21 years," an SAC spokesman said Monday.

SAC Capital Advisors reaches $1.8 billion deal with feds over insider trading charges  - NY Daily News

Cohen, 57, paid about $20 million last year for a 4% stake in the Mets. He reportedly owns a $14.5 million estate in Greenwich, Conn., a $115 million penthouse in the Bloomberg Tower in Midtown and an art collection worth $1 billion.  His worth was once pegged at $8.8 billion.

Cohen is reportedly offloading $80 million in artwork this week through auction houses.

Bharara said a crackdown on insider trading has generated 75 convictions and curbed the practice.

The penalty money won't come from SAC client accounts, meaning the burden will fall squarely on Cohen and his employees. Many clients have jumped ship, but SAC still manages four or five times the amount it owes the feds, Bharara said.

dbeekman@nydailynews.com



# SAC in Landmark Settlement with Justice Department

By Dunstan Prial

Published November 04, 2013 | FOXBusiness

Besieged hedge fund powerhouse SAC Capital Advisors has pleaded guilty to insider trading charges in a deal announced Monday that levies a record-setting $1.8 billion in total fines and requires the firm to close its investment advisory business.

The $1.8 billion penalty includes $616 million in fines SAC agreed to pay earlier this year to settle civil insider trading charges filed by the Securities and Exchange Commission.

The deal, which must be approved by a judge, is a big blow to SAC founder and erstwhile Wall Street heavyweight Steven A. Cohen, once a legendary money manager who is now blocked by the deal from managing other peoples' money.

"Today, SAC Capital, one of the world's largest and most powerful hedge funds, agreed to plead guilty, shut down its outside investment business, and pay the largest fine in history for insider trading offenses. That is the just and appropriate price for the pervasive and unprecedented institutional misconduct that occurred here," said Preet Bharara, U.S. Attorney for the Southern District of New York in a 1 p.m. press conference in Manhattan.

**Invoking Gordon Gekko**

Bharara said victims of SACs insider trading schemes included "everyone" who believes securities markets should operate "fairly."

Invoking Gordon Gekko, the iconic Wall Street wheeler dealer of movie fame, prosecutors said the deal with SAC shows that "principles are just as important as your profit."

"As today's plea illustrates, SAC institutionalized their practices by cultivating a culture of

corporate corruption," said FBI Special Agent in Charge April Brooks. "The problem of insider trading is real and for companies that willfully turn a blind eye -- be on notice -- how your employees make money is just as important as how much they make."

As part of the agreement, SAC Capital is required to shut down its investment advisory business to outside investors. The firm can continue to manage Cohen's personal fortune, said to be worth at least several billion dollars.

Cohen could conceivably be approved by the SEC to once again manage outside clients' funds.

"The government believes that the proposed global resolution is fair, reasonable, and firmly promotes the interests of justice, deterrence and respect for the law. The aggregate $1.8 billion is – to the Government's knowledge – the largest financial penalty in history for insider trading offenses," prosecutors wrote in court papers.

**No Immunity for Individuals**

The deal provides no immunity from prosecution for any individual still under investigation. Bharara said the investigation continues into how the firm because so rife with illegal insider trading.

At its peak, SAC Capital managed about $14 billion in funds. Clients have been pulling their money en masse in recent years as the firm has been targeted by numerous insider trading probes. Six people have pleaded guilty so far in those cases.

SAC released the following statement Monday: "We take responsibility for the handful of men who pleaded guilty and whose conduct gave rise to SAC's liability. The tiny fraction of wrongdoers does not represent the 3,000 honest men and women who have worked at the firm during the past 21 years.  SAC has never encouraged, promoted or tolerated insider trading."

In addition to criminal charges, the deal to be announced Monday will also settle civil charges filed against SAC.

In July, prosecutors in New York indicted SAC Capital in a 41-page criminal complaint, alleging that the firm encouraged its employees to engage in numerous insider trading schemes to improve profits. According to the indictment, insider trading at SAC was "substantial, pervasive and on a scale without known precedent."

"What SAC Capital's plea demonstrates is that cheating and breaking the law were not only permitted but allowed to persist. SAC focused on hiring the best talent, talent who was equipped with extensive networks to circumvent traditional lines of communication. Talent who would be prepared to get confidential information to fuel their illicit trades," said Brooks.

### Achieving An 'Edge' for Ill-Gained Profits

The indictment said SAC and its various affiliated units repeatedly sought out and hired portfolio managers and research analysts whom Cohen and his top managers believed could provide SAC with "an edge" based on recruits' "network of contacts" at public companies within the sectors in which the recruits specialized.

"The focus on hiring employees with such networks was not balanced by any corresponding effort to ensure that prospective SAC (portfolio managers and research analysts) did not use these contacts to obtain illegal inside information," the indictment said.

At least one SAC portfolio manager was allegedly hired despite warnings from a former employer that the recruit routinely used his contacts to obtain and trade on inside information.

Cohen still faces civil charges filed by SEC that accuse him of ignoring insider trading that was taking place at SAC. Discussions for a settlement in that case are ongoing. He was not personally indicted when the charges were handed down against his firm in July.

B1

MONDAY, NOVEMBER 4, 2013

# Business Day

## The New York Times

---

**Media**

**Control Over TV's Future**

Dish Network and Disney are negotiating a deal that could lead to an over-the-Internet "College GameDay," with Lee Corso.  3



**Environment**

**Benefits of Burning Wood**

In an effort to cut carbon emissions at coal-fired power plants, some utilities are starting to use wood as an additive.  3

**Disruptions**

**Yahoo Still Seeks Its Voice**

Marissa Mayer, Yahoo's chief, has revamped its sites' looks but has not resolved questions about its direction.  7

---

## Stratospheric Views, and Prices

### The Tallest, Richest Additions to the Skyline

These residential buildings under construction in Manhattan are so tall that they will be instant landmarks. And apartments inside are selling for record amounts.

**By JULIE CRESWELL**

Walking slowly to the windows facing the meadow of green that is Central Park, Gary Barnett slips into salesman mode as he spreads his arms wide, embracing the sweeping 360-degree view he has from the 57th floor of a skyscraper rising in Midtown Manhattan.

Nothing, a visitor gets at the stunning vista, the artist. "That's what we mean. We want the 'Oh, wow,'" he says.

That "Oh, wow" factor is part of a $250-square-foot, full-floor apartment in his soaring skyscraper, One57, complete with a soon-to-be trophy bedroom. For the apartment in this single piece of Italian marble. The apartment comes with a hefty price tag of $97 million. On the market in One57, the $90 million, that's Per-Square. Foot.

Too rich? Well, there is another, similar apartment a few floors lower that a number of potential buyers circling it that's "only $55 million," Mr. Barnett says before pausing. "I didn't really say, only $55 million?" He

laughs. "It's all relative."

And relatively speaking, it is practically a bargain. From the perspective of the overseas buyer, it may very well be. Even as the prices of some of the city's newest and hottest buildings like these stretch into the stratosphere, luxury apartments in Manhattan remain relatively cheap compared to other cosmopolitan cities around the world. That fact is attracting more global buyers to New York.

Last year, an apartment in Monaco's cavernous Tour Odéon sold for $9,850 a square foot. A well-off buyer paid slightly less, $9,779 a square foot, for an apartment in the Frank Gehry-designed Opus Hong Kong.

And in West London, the average price for an apartment in One Hyde Park has been more than $9,300 a square foot, according to research from the British property consulting firm Knight Frank.

At One57, the activist hedge fund King William A. Ackman is reportedly part of an investment group that is paying more than $90

million, or about $6,666 per square foot, for the 13,500-square-foot duplex on the 75th and 76th floor, referred to as the "Winter Garden," because of its 2,500-square foot glass-enclosed space that can house either a garden or a swimming pool. One57 is originally a steal at an average price of more than $6,000 a square foot. Another condo tower on the south side of Midtown, 432 Park Avenue, is asking for $6,894 a square foot, based on the sales average plan.

This new crop of super-luxurious New York high rises — skyscrapers so tall they are pushing the Federal Aviation Administration — are attracting Wall Street moneymen, company executives and foreign sheiks, in addition to a percentage of foreign buyers in Manhattan real estate has jumped to about 30 or 40 percent of certain high-end buildings, those who purchased the properties say.

At new developments like One57, foreign buyers make up about half the buyers. Among the purchasers are the Canadian business-

*Continued on Page 6*



LOOKING FOR A SALE At left, and near left, two Manhattan buildings, One57 and 432 Park Avenue, will surpass one another as the tallest residential buildings in the city.

---

**96 Lexord St.**
1,396 FEET
2015 expected completion
50 stories, 145 units
Architect: Rafael Viñoly
When completed, it will stand at 1,396 feet at the top, the tallest residential building in the Country. The most expensive apartment now for sale is about $85 million.

**432 Park Ave.**
1,396 FEET
2015 expected completion
95 stories, 104 units
Architect: Rafael Viñoly
When completed, it will stand the tallest residential building in the Country. The penthouse was bought for $95 million.

**One57**
1,004 FEET
Expected to open in 2013 90 stories, 94 units 210-room Park Hyatt Hotel
Architect: Christian de Portzamparc
"Winter Garden" Duplex "Winter Garden" Building" because it boasts a glass-enclosed space for an indoor garden or pool. Penthouse purchased somewhere there. A penthouse sold for $90 million.

**15 Central Park West**
Built: 2008
43 stories, 201 units.
Architect: Robert A.M. Stern
Russian billionaire Dmitry Rybolovlev paid $88 million to buy a penthouse from Sanford Weill, the former Citigroup chief, a record in 2000.

**240 York Ave.**
Built: 1930
31 stories, 31 units
Architect: Rosario Candela
A traditional salmon-colored brick.



THE NEW YORK TIMES

---

## SAC Is Near Guilty Plea, But Cases Aren't Shut

**By BEN PROTESS and PETER LATTMAN**

The criminal case against the hedge fund SAC Capital Advisors has reached a conclusion, people briefed on the matter said, with the government expected to announce Monday that SAC will plead guilty to insider trading charges and pay a fine of roughly $1.2 billion.

But the plea deal will hardly remove SAC and its owner, the billionaire money manager Steven A. Cohen, from the legal spotlight.

For one thing, the people said, the agreement does not resolve a separate civil lawsuit that the Securities and Exchange Commission brought against Mr. Cohen in July, accusing him of failing to supervise his employees. Six former SAC traders have pleaded guilty to insider trading crimes.

The firm and Mr. Cohen will also remain under scrutiny during the coming criminal trials of two other employees, one whose case begins in federal court in Manhattan this month. The trials of the employees, Michael S. Steinberg and Mathew Martoma, are expected to provide the first detailed witness testimony about the inner workings of SAC and Mr. Cohen's role in the trades at the center of those cases.

And while Mr. Cohen has not been charged criminally or even accused of insider trading, the people briefed on the matter said, federal authorities will continue to investigate whether he committed any crimes. Over the next five to six years, agents of the continuing insider trading investigation and as lawyers of the continuing investigation nearly $9,000,000.

In recent weeks, the people said, the F.B.I. has been poring over new SAC records turning over records that could be increasingly pursuing the cooperation of potential witnesses. With the high-profile persons who

*Continued on Page 4*

---

**Globe's Richest See Bargains In New York's Newest Towers**





10

# SAC Is Said to Be Near a Guilty Plea, but Its Legal Woes Remain

*From First Business Page*

Is now cooperating, authorities have scrutinized SAC trading in shares of Gymboree, the children's clothing and music retailer, these people, who spoke on condition of anonymity because the guilty plea has not been announced. Authorities suspect that the trading activity might involve Mr. Cohen.

The flurry of investigative work shows that even after a guilty plea and a decade of digging, the Government continues to press its case relentlessly against SAC.

Mr. Cohen, 57, a collector of art and real estate, has assured his investors that he has acted appropriately at all times. As the investigations drag on, Mr. Cohen has come to believe that the gov-

ernment is fixated on trying to shut down his business, people close to him said.

A plea deal, the latest but not the last development in the case, would cement more than three decades after the United States attorney's office in Manhattan announced a criminal indictment of SAC, a rare criminal action against a Wall Street firm. The indictment cited the guilty pleas of SAC's former employees as evidence that the firm permitted a "systematic" insider trading scheme for more than a decade.

The $1.2 billion penalty for SAC, scheduled for payment at the year managed $15 billion, would be a record fine for insider trading cases. It would come on top of a $616 million penalty that the fund already paid to the S.E.C., which previously fined gov-

it charges against the firm.

As part of the agreement with prosecutors, SAC, based in Stamford, Conn., will also wind down its business of managing money for outside investors, the people briefed on the matter said. It would still allow Mr. Cohen and SAC to invest his own wealth, which is estimated at about $9 billion.

The S.E.C., in its civil "failure to supervise" case against Mr. Cohen, is looking to go a step further than federal prosecutors. The commission, the people briefed on the matter said, is expected to demand that Mr. Cohen himself never manage outside money at SAC or anywhere else.

That civil action, which has been delayed pending the outcome of the criminal case against SAC, could also be resolved, noted "red flags" that should have led him to investigate suspicious trading activity at his fund.

Mr. Cohen has denied the accusations. "Steve Cohen acted appropriately at all times," a spokesman said at the time. "The S.E.C.'s charges are unfounded and should be dismissed."

Prosecutors have accused Mr. Martoma of corrupting two doctors to obtain confidential data about an Alzheimer's drug being developed by the pharmaceutical companies Elan and Wyeth. When one of the doctors told Mr. Martoma that the trial results were not as good as expected,

*Coverage about a hedge fund concerns lawyers representing one of its employees.*

SAC dumped its shares, averting gains and avoiding losses totaling $276 million, the government contends.

With the arrest of Mr. Martoma a year ago, the government appeared to be zeroing in on Mr. Cohen. Prosecutors said that Mr. Cohen was intimately involved with the Elan and Wyeth trades. A day before Mr. Martoma began aggressively selling its shares, Mr. Martoma spent 20 minutes on the telephone with Mr. Cohen.

But the government stopped

short of saying that Mr. Martoma told Mr. Cohen about the secret clinical trials. In a sworn deposition with the S.E.C., Mr. Cohen said he sold the drug stocks after Mr. Martoma told him that he had lost conviction about the investment, said a person briefed on the testimony. There was little else on the case. There was little else Mr. Cohen could be remembered about the conversation, according to that person.

Government investigators sought to turn Mr. Martoma into a witness against SAC and Mr. Cohen. While he rebuffed the government's multiple overtures, and his trial is scheduled for January, some investigators are holding out hope that he will still cooperate.

Mr. Steinberg faces charges that he traded shares of the technology companies Dell and NVIDIA while in possession of secret information about their quarterly earnings results. Jon Horvath, a former SAC analyst who worked under Mr. Steinberg, has pleaded guilty and is expected to testify against Mr. Steinberg at his trial, which is set to begin Nov. 18.

In a legal filing last week could have an impact on Mr. Steinberg's case. Lawyers for Mr. Steinberg said the deadline for Anthony could compromise their right to a fair trial. And there is a fear that with a jury selection only two weeks away, some of the pretrial publicity about SAC guilty plea could corrupt the jury pool.

In a legal filing this summer, Barry Berke, a lawyer for Mr. Steinberg, asked the presiding judge, Richard J. Sullivan, to address the risk that pretrial media attention would taint the trial. Specifically, he requested that Mr. Sullivan focus his questioning of prospective jurors on their exposure to publicity surrounding the case.

Mr. Berke said that since September 2012, alleged insider trading at SAC had been mentioned in more than 250 articles, and that Mr. Cohen, Mr. Steinberg and SAC were the subject of 3,454 Twitter messages and reviews.



COMMERCIAL REAL ESTATE
BUSINESS OPPORTUNITIES

**FOR IMMEDIATE RELEASE**

November 1, 2013

## SALHAB FAMILY VINDICATED AGAIN

*The United States Attorney's Office for the Southern District of New York, on behalf of the United States Government, submitted a Notice of Voluntary Dismissal, which was granted by Court Order dated October 21, 2013.*

The Court's Order of October 22, 2013, dismissed all claims for civil money laundering penalties against the SALHAB TRAVEL AGENCY, STE MARCO SAL, and STE MOMEGO SAL ("Salhab Family Entities").

In addition, the United States District Court dismissed all claims for the assets of the Salhab Family Entities. They were specifically represented and assisted by Matthew L. Jacobs, Esq. of the firm Allred, Bacon, Halfhill & Young, PC, of Fairfax Virginia, and Maroun J. Bacar, Esq. of Beirut, Lebanon.

The decision to drop all claims against these companies and the Salhab family, now including Oussama Salhab, reflects a stark contrast to the Federal Government's assertions in 2011. That suit initially attempted to forfeit the Salhab family by wrongfully claiming that, among other things, Oussama Salhab, was a Hezbollah operative, and that Ayman Joumaa was involved in money laundering. However, in early 2013, a Stipulation and Order of Dismissal involving Ozkaymar Swiss GMBH, was entered by the Court, clearing the good names of Ozkaymar Swiss GMBH, Ozkaymar GMBH, Bti Euroanimalar, or possibly Salhab individually. They were all innocent of all the U.S. Government's claims and had done nothing wrong.

When the recent Court Order was entered, Oussama Salhab stated, "I am happy to see that the United States Government has finally dropped all claims against me, and I think with the help of my firms business partners in Europe, Africa, and the Middle East, I can quickly restore my good name and the good name of my family."

The Impact of the Settlement on SAC Capital and Cohen - NYTimes.com

**The New York Times**

## DealB%k

Edited by Andrew Ross Sorkin

NOVEMBER 4, 2013, 2:40 PM

## The Impact of the Settlement on SAC Capital and Cohen

*By PETER J. HENNING*

The plea agreement between the Justice Department and SAC Capital Advisors that calls for the firm to pay almost $1.2 billion to resolve insider trading charges is carefully drafted to permit the government to continue its pursuit of Steven A. Cohen, the hedge fund firm's founder and owner. SAC has finally put the government's criminal case behind it, but Mr. Cohen remains the focus of a continuing criminal investigation and an administrative complaint filed by the Securities and Exchange Commission.

Resolving the case was just a matter of time because SAC could put up only token resistance to fight the charges. Corporate criminal liability can be imposed based on a violation by any employee, even if the person violated the firm's internal policies. Six former analysts had already pleaded guilty to insider trading charges. So the issue was how much SAC would have to pay and whether its guilty plea would be enough to insulate Mr. Cohen, something the Justice Department did not grant.

SAC settled both the criminal charges and a parallel asset forfeiture case in which the Justice Department sought all of the firm's assets. The payment involves a criminal fine of $900 million and the forfeiture of $900 million of assets. The forfeiture amount was reduced by a previous settlement with the S.E.C. that resulted in a payment of $616 million. The firm also agreed to withdraw from the investment advisory business and not accept money from outside investors.

In looking at the plea agreement, here are some thoughts about what it means for both SAC and Mr. Cohen:

SAC and its subsidiaries pleaded guilty to each of the five charges in the indictment, unlike most cases in which a defendant admits to only one or two charges. SAC's guilty plea to each count allowed the government to obtain a larger fine, and the $900 million penalty is higher than the applicable federal sentencing guidelines called for.

The largest trades in the case involved SAC's sale of Elan and Wyeth shares after a portfolio manager, Mathew Martoma, received information that a drug trial the companies were pursuing had unfavorable results. After Mr. Martoma spoke with Mr. Cohen, SAC sold its position and then shorted the shares, netting gains and avoiding losses totaling about $276 million.

Although SAC pleaded guilty to all the charges, it did not specifically admit that the Elan and Wyeth trading was based on inside information. The plea agreement states that the firm only has to admit that "at least one employee of each of the SAC Entity Defendants engaged in insider trading," but there was no admission that every trade listed in the indictment resulted in a violation.

The charge against CR Intrinsic, a SAC subsidiary where Mr. Martoma worked that was also named as a defendant, identified two different instances of insider trading — one based on the drug trial results and

12

much smaller transactions involving information about Dell and Foundry Networks. Thus, while SAC admitted that there was insider trading at CR Intrinsic, it did not specifically acknowledge its sales of Elan and Wyeth stocks as based on inside information.

That means the firm can continue to support Mr. Martoma as he fights charges filed against him in an upcoming criminal trial, and does not affect civil claims against it filed by investors in Wyeth and Elan.

The plea agreement also protects SAC from being charged with criminal insider trading for any transactions from 1999 to December 31, 2012, including any asset forfeiture action. That gives the firm the comfort of knowing that the Justice Department is pretty much done with it.

The same cannot be said of Mr. Cohen, however. The agreement states that it "provides no immunity from prosecution to any individual." So the Justice Department can pursue charges for any violation and seek "the maximum term of imprisonment applicable to any such violation of criminal law."

The plea agreement does not mean the government is committed to pursuing a case against Mr. Cohen, but it remains open to doing so if it can obtain evidence of violations that implicate him. That effort has failed so far, but not for lack of trying, and we can expect the Justice Department will not rest until it has exhausted every avenue of investigation.

The agreement is made under Federal Rule of Criminal Procedure 11(c)(1)(C), which does not give the court any discretion to vary the terms if the agreement is accepted. Thus, the judge who is presiding over the criminal case, Laura Taylor Swain of the Federal District Court in Manhattan, will have to decide whether to accept the terms imposing the $900 million criminal fine, or reject them and give SAC the opportunity to withdraw.

Federal judges are usually wary of these types of agreements because of the limits on their ability to fashion a sentence to fit the type of violation that occurred and the characteristics of the defendant. But when an organization is the defendant, it is much more likely that the agreement will be found acceptable. That is especially true in a case where there is little chance the government unfairly exercised its power over a vulnerable defendant who may have been forced into pleading guilty.

One potential bump in the road to accepting the plea agreement is a letter submitted to Judge Swain on behalf of investors in Elan and Wyeth suing SAC who want to address the terms as victims of the crime. A court is required to give victims the opportunity to raise issues about a guilty plea, and the investors are likely to object to the absence of a specific admission of wrongdoing in SAC's trading in those companies.

It is not clear whether investors in a company qualify as victims of insider trading. Even if Judge Swain allows them to speak, it is unlikely to derail the plea agreement but may slow down the process of resolving the case.

SAC's guilty plea does not directly affect the criminal cases of Mr. Martoma and Michael S. Steinberg, another former SAC portfolio manager accused of insider trading. A guilty plea by one defendant cannot be used as evidence against others to show that they committed a crime.

But the publicity surrounding SAC has already been raised by Mr. Steinberg's counsel as a potential issue in selecting an unbiased jury. With his trial scheduled to begin on Nov. 18, there is a good chance that a motion for a change of venue to move the case outside of New York will be filed. Although such motions

The Impact of the Settlement on SAC Capital and Cohen - NYTimes.com

are rarely granted, the widespread attention to SAC's guilty plea is likely to make the process of selecting jurors to hear the case more difficult if the trial remains in Manhattan.

Copyright 2013 The New York Times Company | Privacy Policy | NYTimes.com 620 Eighth Avenue New York, NY 10018

# EXHIBIT  G

SAC Agrees to Plead Guilty to End Insider-Trading Case - Bloomberg

# Bloomberg

🖶 Print   Back to story

## SAC Agrees to Plead Guilty to End Insider-Trading Case

By Patricia Hurtado - Nov 5, 2013

Billionaire Steven A. Cohen's SAC Capital Advisors LP, the hedge fund accused of fostering a culture of rampant insider trading, has agreed to plead guilty Nov. 8 to securities fraud and wire fraud, pay a record $1.8 billion and shutter its investment advisory business.

The company, indicted this year, was accused of operating a conspiracy stretching back to 1999, reaping hundreds of millions of dollars in illicit profit. Cohen, 57, wasn't charged in the indictment of the Stamford, Connecticut-based firm. He still faces an administrative action filed by the U.S. Securities and Exchange Commission for his alleged failure to supervise the hedge fund's activities.

"What SAC Capital's plea demonstrates is that cheating and breaking the law were not only permitted but allowed to persist," George Venizelos, head of the Federal Bureau of Investigation's New York office, said yesterday in a statement.

The fund's penalty includes $616 million that Cohen, SAC's founder and owner, agreed to pay the SEC to settle a related lawsuit in March. SAC also has agreed to close the affiliate SAC capital hedge funds to outside investors, the U.S. said.

Jonathan Gasthalter, a spokesman for SAC, said in an e-mailed statement that the hedge fund takes "responsibility for the handful of men who pleaded guilty and whose conduct gave rise to SAC's liability. These wrongdoers do not represent the 3,000 honest men and women who have worked at the firm during the past 21 years."

Statement Revision

The firm changed the statement after it was told it could be violating the terms of its plea agreement, said a person familiar with the matter who asked not to be identified because it wasn't public.

In its initial statement, the firm said, "SAC has never encouraged, promoted or tolerated insider trading." That appeared to contradict the fund's acceptance of responsibility in the accord reached with federal prosecutors in New York, potentially scuttling the agreement, said the person.

Hours later, that line was deleted in the second statement. "Even one person crossing the line into illegal behavior is one too many and we greatly regret this conduct occurred," according to the new statement.

A representative of SAC will plead guilty on its behalf in Manhattan federal court on Nov. 8, court officials said today. A hearing to resolve the civil money-laundering suit filed by the U.S. is scheduled for tomorrow, court officials said.

No Immunity

The plea deal isn't the end of the U.S. investigation of SAC or Cohen, who has been the target of the multiyear probe. Two insider-trading trials in the next three months of managers at his hedge fund may shed more light on its internal workings, and prosecutors continue to investigate trading by SAC employees in Gymboree Corp., a children's-apparel maker, a person familiar with the matter said.

The SAC agreement provides "no immunity from prosecution for any individual and does not restrict the government from charging any individual for any criminal offense," the government wrote in the court filing.

"It's far easier for SAC Capital as a corporate entity to plead guilty and settle with the government because it doesn't have to worry about being incarcerated," Anthony Sabino, a professor of law at St. John's University in New York, said in an interview. "The government has amassed tons of evidence against the fund which can't be helpful to the others. The pressure's on for one of them to plead guilty."

SAC Agrees to Plead Guilty to End Insider-Trading Case - Bloomberg

## Two Doctors

SAC portfolio manager Michael Steinberg is scheduled to go on trial Nov. 18 for allegedly engaging in insider trading in Dell Inc. and Nvidia Corp. (NVDA) based on illicit tips provided by Jon Horvath, his analyst. Horvath, who has pleaded guilty and is cooperating with the U.S., is scheduled to be a witness against Steinberg, the longest-serving SAC employee of those the U.S. has charged in its insider-trading probe.

Mathew Martoma, a former fund manager for a unit of SAC, has a January trial date. He's accused of using inside information from two doctors who were involved in the clinical trial of an Alzheimer's drug to trade shares of Elan Corp. and Wyeth. The government has called it the biggest criminal insider-trading case against an individual in history.

As part of the agreement, SAC will name an independent compliance consultant who will be approved by the government, according to prosecutors. SAC Capital and its funds named in the indictment are pleading guilty to all five counts in the indictment, including securities fraud and wire fraud. Each of the SAC entities will be under a term of five years' probation, the U.S. said.

## Market Cheaters

Manhattan U.S. Attorney Preet Bharara in July called the hedge fund "a veritable magnet for market cheaters" and said the company had "zero tolerance for low returns but seemingly tremendous tolerance for questionable conduct."

While Cohen wasn't charged, prosecutors said he "encouraged" SAC employees to obtain trading information from company insiders while ignoring indications that it was illegal.

SAC "focused on hiring the best talent, talent who was equipped with extensive networks to circumvent traditional lines of communication," April Brooks, FBI special agent in charge of the New York office's criminal division, said at a press conference yesterday in lower Manhattan. "Talent who would be prepared to get confidential information to fuel their illicit trades."

## Powerful Fund

Clients have pulled their money out of SAC as the government investigation progressed. Executives at the hedge fund, which oversaw about $15 billion in assets at the start of 2013, expect to begin 2014 with about $9 billion.

"One of the world's largest and most powerful hedge funds agreed to plead guilty, to shut down its outside investment business and pay the largest fine in history for insider trading offenses," Bharara said at the press conference. "That is the just and appropriate price, in our view, for the pervasive and unprecedented institutional misconduct that occurred here."

The plea agreement is contingent upon the approval of U.S. District Judge Laura Taylor Swain, who is presiding over the criminal case, and U.S. District Judge Richard Sullivan, who is overseeing the civil money-laundering case. The agreement was signed by the U.S. and SAC, who was represented by Peter Nussbaum, the hedge fund's general counsel, on Nov. 1.

Bharara said the investigation of insider trading at SAC is "ongoing."

## Good Reason

"You would think that SAC would agree only to a global resolution that would put this whole thing to bed, and would also include a resolution to a criminal investigation of Steve Cohen," said Stephen Miller, a former federal prosecutor, now a partner at Cozen O'Connor in Philadelphia. "The government would have a good reason why it doesn't and it could mean further charges may very well be coming down the pike."

"From the government's perspective, it's a guilty plea for an entity and it's a sizable amount of money," Miller said. "Their willingness to accept a monetary settlement and plea reflects a view that it might be difficult to prevail at trial."

Bharara's office has charged at least 87 people with insider trading and won convictions after trial or guilty pleas against 75.

Raj Rajaratnam, the Galleon Group LLC co-founder whose 11-year prison sentence is one of the longest in U.S. history for insider trading,

SAC Agrees to Plead Guilty to End Insider-Trading Case - Bloomberg

was ordered to pay $156 million in civil and criminal fines and penalties stemming from his conviction in 2011.

Ivan Boesky

Ivan Boesky, who pleaded guilty to conspiracy in 1987 in an insider case, paid $100 million and was sentenced to three years in prison.

Michael Milken, the former junk bond financier who pleaded guilty to securities fraud, paid more than $1.1 billion in criminal and civil fines as part of his March 1991 settlement with the Justice Department and SEC. In 1990, Milken was sentenced to 10 years in prison. That term was later reduced to two years.

In its civil money-laundering complaint, the U.S. said it wanted "all right, title and interest" in SAC's assets, should the government prove its case.

The civil claims posed the greatest threat to Cohen's fortune. The law states that any property "involved in" money-laundering activities, or traceable to them, can be forfeited. Bharara said criminal conduct at SAC resulted in "hundreds of millions of dollars of illegal profits."

Possible Forfeiture

Under the theory of commingling, profits from an insider-trading scheme that are plowed back into a hedge fund's general account could expose all the fund's money to a forfeiture claim if the transfer was found to be money laundering.

Still, some judges have invoked the U.S. Constitution's prohibition on excessive fines to stop prosecutors from punishing a defendant disproportionately.

Taken to its extreme, the government's demand for assets in its money-laundering suit could cover even Cohen's personal property, from his mansion in the Hamptons to his art collection, said Hillary Sale, a professor at Washington University School of Law. The art collection is valued at about $750 million, according to Bloomberg's Billionaires Index.

The criminal case is U.S. v. SAC Capital Advisors LP, 13-cr-00541, U.S. District Court, Southern District of New York (Manhattan). The civil case is U.S. v. SAC Capital Advisors LP, 1:13-cv-5182, U.S. District Court, Southern District of New York (Manhattan).

To contact the reporter on this story: Patricia Hurtado in Manhattan federal court at pathurtado@bloomberg.net;

To contact the editor responsible for this story: Michael Hytha at mhytha@bloomberg.net

©2013 BLOOMBERG L.P. ALL RIGHTS RESERVED.

Civil Portion of SAC Deal Gets Judge's OK - WSJ.com

MARKETS

# Civil Portion of SAC Deal Gets Judge's OK

*Move Paves Way for Court to Weigh In Friday on Criminal Piece of $1.8 Billion Plea Agreement*

By CHRISTOPHER M. MATTHEWS

Nov. 6, 2013 11:58 a.m. ET

A Manhattan federal judge on Wednesday approved one piece of the $1.8 billion settlement between the Justice Department and hedge-fund group SAC Capital Advisors LP, saying whether or not he thinks the penalty is appropriate is "irrelevant."

U.S. District Judge Richard Sullivan told lawyers for SAC and the Manhattan U.S. attorney's office that he would approve the civil piece of the case, a $900 million civil forfeiture reduced to $284 million because SAC received credit for a pending $616 million settlement with the Securities and Exchange Commission.

**SAC and Steven A. Cohen Over the Years**



\*\*\*

**Who's Who in the SAC Case**

The announcement in July of criminal charges against SAC Capital Advisors marked the culmination of a yearslong probe that has produced criminal and civil cases against several individuals.



**Mathew Martoma**
*Former SAC trader*

Judge Sullivan added that while the court rules made his scrutiny of the civil portion of the settlement "quite minimal," scrutiny of the criminal penalty would be more intrusive. "That will be a more searching inquiry I take it," Judge Sullivan said during the roughly 20-minute hearing on Wednesday morning.

The plea agreement is a global settlement that would resolve two separate cases, one criminal and one civil. Judge Sullivan is presiding over the civil piece of the case. On Friday afternoon, Judge Laura Swain will hold a hearing on the $900 million criminal fine.

The plea bargain is a hard-fought and high-profile win by prosecutors in their long-running campaign against insider trading, and there is tremendous pressure to get it approved. But the unusual legal terms of the deal and the involvement of two judges have created atypical risks that the deal could be blown up.

Judge Sullivan's acquiescence was pivotal, because in order for the criminal portion of the settlement to be approved, Judge Sullivan had to first accept the civil piece. Only after that happened, according to the terms of plea agreement,

Civil Portion of SAC Deal Gets Judge's OK - WSJ.com



\*\*\*

SAC's Paper Trail

The government spent years building a case against SAC and its hedge-fund traders. Read the court documents filed by prosecutors and regulators.





A Friday court hearing will decide whether SAC's settlement stands. *Bloomberg News*

could the criminal case go to Judge Swain's courtroom for the Friday hearing.

But the risk doesn't stop there. When Judge Swain examines the agreement on Friday, her only option will be to give the deal a thumbs up or a thumbs down. If she rejects the deal, SAC Capital can withdraw its guilty plea, because of a unique clause in the settlement terms.

After denying for years that it had done anything wrong, the firm founded by billionaire Steven A. Cohen agreed to plead guilty to criminal insider-trading charges, give up managing outside investors' money, agree to a five-year probationary period and submit to monitoring by a compliance consultant.

"We take responsibility for the handful of men who pleaded guilty," SAC said in a statement Monday. "These wrongdoers do not represent the 3,000 honest men and women who have worked at the firm during the past 21 years."

The pact, announced on Monday, marks a high point in an era of unprecedented insider-trading prosecutions and is the most high-profile guilty plea involving a major Wall Street firm since Drexel Burnham Lambert Inc. in 1989 pleaded guilty to six felony counts and paid a $650 million fine. Drexel collapsed in 1990.

On Tuesday, Judge Sullivan asked SAC and the government to appear before him to address what standard of review he should apply in deciding whether or not to approve their settlement, and cited ongoing legal debate about how much discretion judges have to approve or deny settlements.

But on Wednesday, Judge Sullivan questioned whether his approval was even needed. He said he had recently received an anonymous email from someone who was outraged by the "sweetheart deal" SAC had received, but that under federal rules governing civil cases, it was not his place to weigh in on the fairness of the settlement.

Judge Sullivan indicated courts presiding over criminal settlements have more authority to scrutinize such deals and said he had heard it "will be a different story Friday."

One subject Judge Sullivan did inquire on was whether or not other third parties or victims of SAC's alleged fraud could make claims on the forfeited funds, calling it a "live" issue.

Assistant U.S. Attorney Sharon Levin said that third parties didn't have a legal claim on the $284 million forfeited by SAC, but could file a separate petition with the Justice Department to receive compensation.

News, Quotes, Companies, Videos | SEARCH

Updated
Privacy Policy »

Live Help

# THE WALL STREET JOURNAL. ☰

Mariella's Journal ▸

## TOP STORIES IN INTERACTIVE GRAPHICS


The Sun Erupts
with Major Flares


Refugee Trail


How State Test
Scores Stack Up

Eyes on Reform
Beijing

← BACK TO ARTICLE

MARKETS

## Civil Portion of SAC Deal Gets Judge's OK

Move Paves Way for Court to Weigh In Friday on Criminal Piece of $1.8 Billion Plea Agreement

✉ Email   f   ⊕   ⋈   in

## SAC and Steven A. Cohen Over the Years

SAC Capital Advisors agreed to plead guilty to securities fraud, capping a multiyear insider-trading probe. (See correction.) Source: staff reports







March 29, 2013

SAC portfolio manager Michael Steinberg is arrested and charged with insider trading. He denies the allegations, and SAC issues a statement defending him. Michael Steinberg left federal court in New York on March 29, 2013. (Bloomberg News)

    

# THE WALL STREET JOURNAL. ≡

Subscribe | Log In

ONLY $1 A WEEK FOR 12 WEEKS
SUBSCRIBE NOW >>    For a limited time.

TOP STORIES IN INTERACTIVE GRAPHICS

   

The Sun Erupts with Major Flares

Refugee Trail

How State Test Scores Stack Up

Eyes on Reform Beijing

← BACK TO ARTICLE

MARKETS

## Civil Portion of SAC Deal Gets Judge's OK
Move Paves Way for Court to Weigh In Friday on Criminal Piece of $1.8 Billion Plea Agreement

✉ Email    📘 🔲 📧 📎

## Who's Who in the SAC Case
SAC Capital Advisors agreed to plead guilty to securities fraud, capping a multiyear insider-trading probe that has produced criminal and civil cases against several individuals.

     

Steven A. Cohen    Richard Lee    Preet Bharara    Mary Jo White    Michael Steinberg



## Michael Steinberg
SAC trader

He has pleaded not guilty to insider-trading charges and is headed for trial.

Bloomberg News

Source: staff reports

---

**Related Interactives**

October's Jobs Report    New Jersey's Different



Refugee Trail

How State Test Scores Stack Up



Eyes on Reform in Beijing

✉ Email    📘 🔲 📧 📎

THE WALL STREET JOURNAL.   f  ▼  in  ✉  Q+  ✉  ▦  📱 App Store   Subscribe / Login   Back to Top ▲

   

| Customer Service | Policy | Ads | Tools & Features | More |
|---|---|---|---|---|
| Customer Center | Privacy Policy Updated | Advertise | Apps | Register for Free |
| Live Help | 10/21/13 | Place a Classified Ad | Emails & Alerts | Reprints |
| Contact Us | Cookie Policy | Sell Your Home | Graphics & Photos | Content Partnerships |
| WSJ Weekend | Data Policy | Sell Your Business | Columns | Conferences |
| Contact Directory | Copyright Policy | Commercial Real Estate Ads | Topics | SafeHouse |
| Corrections | Subscriber Agreement & Terms of Use | Recruitment & Career Ads | Guides | Mobile Site |
|  | Your Ad Choices | Franchising | Portfolio | News Archive |
|  |  | Advertise Locally | Old Portfolio |  |

Jobs at WSJ    Copyright ©2013 Dow Jones & Company, Inc. All Rights Reserved



SAC's Paper Trail

The government spent years building a case against SAC and its hedge-fund traders. Read the court documents filed by prosecutors and regulators.

| Criminal Indictment of SAC | Richard Lee Indictment | Civil Forfeiture Suit | SEC Order Against Cohen | SEC Complaint Against Steinberg | Indictment Against Steinberg |

## Indictment Against Steinberg

Read the U.S. attorney's office indictment against Michael Steinberg from March 29, 2013.

DOCUMENT   PAGES   TEXT

Q Search

Zoom

Page   1   of 17

Original Document (PDF) »

Contributed by: Megan Douglass, The Wall Street Journal

DocumentCloud

p.1



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA                  :

            -v.-                          :         SEALED
                                          :         SUPERSEDING
                                          :         INDICTMENT

MICHAEL STEINBERG,                        :

            Defendant.                    :         S4 12 Cr. 121 (RJS)

- - - - - - - - - - - - - - - - X

                    COUNT ONE

        (Conspiracy to Commit Securities Fraud)

        The Grand Jury charges:

        Relevant Entities and Individuals

        1.   At all times relevant to this Indictment, MICHAEL
STEINBERG, the defendant, was a portfolio manager at a hedge fund
located in New York, New York ("Hedge Fund A").   STEINBERG
managed a portfolio that was predominantly invested in technology
stocks.

        2.   At all times relevant to this Indictment, Jon
Horvath ("Horvath"), a coconspirator not named as a defendant
herein, was an analyst at Hedge Fund A who worked for MICHAEL
STEINBERG, the defendant.

        3.   At all times relevant to this Indictment, Jesse

Review & Outlook: It's Only Money - WSJ.com

REVIEW & OUTLOOK

# It's Only Money

SAC Capital pays a record penalty but nobody admits anything.

Email    Print    Save    21 Comments

*Updated Nov. 5, 2013 11:30 p.m. ET*

Preet Bharara, U.S. Attorney for the Southern District of New York, announced on Monday that SAC Capital Advisors and related companies had agreed to pay record *penalties and to plead guilty to criminal insider-trading charges.* SAC has also agreed to shut down its business of managing other people's money.

But in this settlement, assuming it is approved by a judge, no individuals will plead guilty to anything. SAC will pay $1.8 billion, including more than $600 million it agreed to pay in a related settlement earlier this year with the Securities and Exchange Commission. Few people expect criminal charges to be filed against SAC founder and CEO Stephen A. Cohen.

Therefore, after a multiyear investigation, the legal conclusion seems to be that Mr. Cohen is a noncriminal running a criminal enterprise. In a Monday statement, Mr. Bharara claimed that "*individual guilt is not the whole of our mission. Sometimes,* blameworthy institutions need to be held accountable too. No institution should rest easy in the belief that it is too big to jail."



U.S. Attorney for the Southern District of New York,
Preet Bharara Getty Images

But institutions don't rest, don't believe and certainly don't go to jail. People do. And if—without much in the way of cooperating witnesses or wiretaps—Mr. Bharara has decided he can't make a case against Mr. Cohen, will he now slap the cuffs and an orange jumpsuit on SAC's Stamford, Connecticut headquarters?

On Monday George Venizelos, Assistant Director-in-Charge of the FBI's New York field office, employed the passive voice to describe this phenomenon of crimes without criminals: "What SAC Capital's plea demonstrates is that cheating and breaking the law were not only permitted but allowed to persist." But who allowed them to persist?

It's true that six former SAC employees have pleaded guilty to insider trading and two more criminal trials of individuals are on the horizon. But as far as who *allowed* crimes to occur in a firm of roughly 1,000 employees, that question will apparently remain unresolved.

The SEC has a pending civil case against Mr. Cohen for a failure to supervise. No trial date has been set, and if one ever occurs, it might shed some light on how he managed the firm. But the SEC would only have to prove negligence, not intent, so even a finding of liability wouldn't answer the question of whether this outlaw organization was actually run by an outlaw.

Whether there are any victims to SAC's crimes may be an even harder question to answer, Mr. Bharara couldn't name any at his Monday press conference, because they are theoretical. The prosecutor spoke of people who believe the markets are fair and that investors all play by the same rules. Others would argue that investors view as most fair a market in which prices reflect all available information and are therefore more accurate, or perhaps one in which investors, not regulators, decide what kind of disclosure they require.

Perhaps hazier still is the public understanding of what exactly insider trading is. After his recent win in a civil insider-trading case against the SEC, billionaire Mark Cuban noted that there are "no bright-line rules" and added of the SEC, "They regulate through litigation."

Illegal insider trading is generally understood to be trading securities on material nonpublic information by a fiduciary or someone in a position of trust, but it's never been precisely defined. The Securities and Exchange Commission notes that "Insider trading violations may also include 'tipping' such information, securities trading by the person 'tipped,' and securities trading by those who misappropriate such information."

The SAC case centered on this gray area of tips, and of course Monday's settlement involved the Department of Justice and criminal charges, where the government must clear a much higher bar than in the SEC's civil cases. At trial Mr. Bharara would have had to prove guilt beyond a reasonable doubt, rather than simply having to demonstrate a preponderance of the evidence as the SEC does. Had the Justice case gone to trial, however, there's no guarantee that SAC could have capped its payouts at even $1.8 billion.

So we have the unsatisfying result of Mr. Cohen, who remains a multibillionaire, going on his way after agreeing to a hefty fee. And we have $1.8 billion flowing from the private economy to Washington, though prosecutors haven't proven that the government deserves a single dollar.

SAC Capital Is Finally Busted | Opinion News | Print Financial & Investing Articles | The...

# The Street

Opinion

## SAC Capital Is Finally Busted

**Dana Blankenhorn**

11/05/13 - 10:09 AM EST

NEW YORK (TheStreet) -- If you don't like cops, then the next time you're in trouble call a hippie.

My dad used to say that, back in the 1970s. He was a small businessman, and back then, businessmen were staunch defenders of law and order.

But in the run-up to SAC Capital Advisors' guilty plea on charges of insider trading, I got the distinct impression that some on Wall Street didn't want the cops involved.

That has been a nagging feeling of mine throughout the last few years, as charges have rolled on against **JPMorgan Chase** (JPM), **Bank of America** (BAC) and others, including Cohen. There's an idea that Wall Street bankers should be thanked for agreeing to rescue the very institutions they almost destroyed and treated as idols regardless of how they became wealthy.

[Read: *Kass: Emotion Begets More Volatility*]

That's not the way I was taught, by my dad or by anyone else.

I was taught that fiduciary responsibility meant something. It meant that you avoided breaking not only the written law, but also a host of unwritten laws and ethical rules, that you treated the client's money as you would treat your own, not as if it were your own to spend, but as if it were your nest egg to protect.

I was taught this is why the U.S. financial markets are the biggest in the world. Because they're the best run. Because they have the highest accounting standards. Because there are cops in the suites to deter crooked dealings.

[Read: *Is Amazon Bad for Publishers?*]

John Cassidy of *The New Yorker* says that Cohen "paid-off" the government with a $1.8 billion fine , but that's not entirely accurate.

There remains an active Securities and Exchange Commission investigation. Two SAC employees will soon go on trial and may testify against Cohen. A criminal case of insider trading could still be lodged against Steven Cohen, personally.

The agreement will damage the business of SAC Capital, once one of the giants among Wall Street hedge funds, and although Cohen himself will retain a significant fortune, that's bound to be whittled away in the litigation to come.

[Read: *Ford's Appeal Improves for Investors*]

No plea deal is perfect for the prosecutor. That's why it's called a deal. But we're dealing here, the government alleges, with a conspiracy. Every deal in a conspiracy case peels away some layer of the conspiracy onion. It brings new facts to light, leads to the exposure of more conspirators, and may lead to more cooperation by conspirators.

What upsets Cohen's friends and associates may be that he's being treated in this more like a Mafia don than a scion of Greenwich. On the other hand, the law is the law, and how different is perverting the law through insider knowledge, illegally obtained, from pumping a few bullets into Danny Walnuts?

There are, after all, victims here. Everyone who traded stock in a company SAC manipulated and who played by the rules was a victim. Everyone doing business honestly, in the stock market, was a victim. Every investor who should be in the market today but isn't because he assumes the game is rigged is a victim.

[Read: *Obamacare Web site: Slow, Buggy and Waiting to be Hacked*]

SAC Capital Is Finally Busted | Opinion News | Print Financial & Investing Articles | The...

Each year Gallup asks people whether they're invested in the stock market. This year, the figure is down to 52%. In 2009 it was 57%. By that time the losses from the 2008 crash had been shaken out. Yet 5% of Americans have since missed a move that could have doubled their money.

I'd say those people are victims, too. Don't call insider trading a victimless crime. It's a crime, just like plugging bullets into Danny Walnuts is a crime.

And we will have turned a corner when we start to understand that, in the end, Steven Cohen may have been no different, and no better, than a Mafia don.

If you don't like cops, then the next time you're in trouble call a broker.

*At the time of publication, the author had no position in any of the stocks mentioned.*

Follow @DanaBlankenhorn

*This article was written by an independent contributor, separate from TheStreet's regular news coverage.*

# EXHIBIT  H



# Business & Money

Economy | Wall Street | Tech | Small Business | Personal Finance | Real Estate | Business of Creativity | Management | Careers | New Energy

WHITE COLLAR CRIME

# SAC Capital Indicted, in a Blow to Billionaire Steven A. Cohen

The Feds say SAC Capital engaged in "systematic insider trading" on a scale "without known precedent in the hedge fund industry"

By Sam Gustin @samgustin   July 25, 2013   1 Comment



The United States has charged SAC Capital, the multi -billion dollar hedge fund, with multiple federal crimes, in a stinging blow for its embattled founder, Wall Street mogul Steven A. Cohen. In the indictment, which was expected, the government leveled securities fraud and wire fraud charges against the fund, which the feds say engaged in a pattern of "systematic insider trading" that allowed it to reap hundreds of millions of dollars in illegal profits. The charges could spell the end of Cohen's storied Wall Street career, in which he made billions through his trading acumen.

Steven Cohen, founder and chief executive officer of SAC Capital Advisors LP.

The 41-page U.S. indictment against Stamford, Conn. -based SAC Capital is one of the most high-profile insider trading actions in U.S. history. In the indictment, the government said Cohen's firm displayed "an institutional indifference" to unlawful conduct that "resulted in insider trading that was substantial, pervasive and on a scale without known precedent in the hedge fund industry." The charges represent the culmination of a multi-year federal probe of SAC Capital, which has long been dogged by rumors of insider trading.

Manhattan U.S. Attorney Preet Bharara said the charges against SAC Capital represent "what can only be described as rampant insider trading," during a Thursday news conference in New York. "When so many people from a single hedge fund have engaged in insider trading, it is not a coincidence," Bharara said, adding that SAC Capital is a "company with zero tolerance for low returns but seemingly limitless tolerance for insider trading." Bharara did not rule out bringing separate criminal charges against Cohen himself.

The government, which alleges that the insider trading scheme lasted from 1999 to 2010, says that SAC's "relentless pursuit of an information 'edge' fostered a business culture within SAC in which there was no meaningful commitment to ensure that such 'edge' came from legitimate research and not inside information," according to the indictment. "The predictable and foreseeable result," the feds charged, "was systematic insider trading by the SAC entity defendants resulting in hundreds of millions of dollars of illegal profits and avoided losses at the expense of members of the investing public."

**(MORE:** U.S. Poised to Charge Billionaire Steve Cohen's SAC Capital Hedge Fund)

Cohen himself has not been charged with criminal actions, but the indictment says that his hedge fund "fostered a culture that focused on not discussing inside information too openly, rather than not seeking or trading on such information in the first place." Last Friday, the feds aimed civil charges at the 57-year-old billionaire, saying that he failed to supervise two of his employees who have been accused of insider trading. Cohen's lawyers maintain that he has done nothing wrong over the last two decades, during which time he became one of the wealthiest men on Wall Street.

Cohen is worth an estimated $9.3 billion and lives with his family in a palatial 35,000 square foot Connecticut mansion filled with expensive art that the mogul has spent hundreds of millions of dollars to collect. Last month, faced with a grand jury probe, Cohen's lawyers informed the government that their client would invoke his Fifth Amendment right against self-incrimination. Since the beginning of the year, several SAC clients, including Wall Street giants Citigroup and Blackstone Group, have sought to withdraw more than $5 billion, but Cohen retains an estimated $8 billion of his own money in the fund.

Last November, the U.S. charged one of SAC's former portfolio managers, Mathew Martoma, with orchestrating an insider trading fraud that resulted in $276 million in gains and avoided losses for the fund. Martoma is charged with trading illegally on inside information he obtained from a doctor involved in a 2008 pharmaceutical trial for an Alzheimer's drug. The feds had hoped to convince Martoma, who earned a $9 million bonus thanks to the alleged scheme, to testify against Cohen, but apparently have thus far not been successful. Several other SAC employees have cooperated, however, including Noah Freeman, Jon Horvath, Donald Longueuil, and Wesley Wang, who have all pleaded guilty to insider trading charges.

A SAC Capital spokesman did not immediately return a request for comment Thursday, but issued a statement to MarketWatch. "SAC has never encouraged, promoted or tolerated insider trading and takes its compliance and management obligations seriously," the statement read. "The handful of men who admit they broke the law does not reflect the honesty, integrity and character of the thousands of men and women who have worked at SAC over the past 21 years."

The criminal case against SAC Capital, which was announced by federal prosecutors and the FBI in Manhattan, is the latest example of the federal government's wide-ranging insider trading crackdown on Wall Street. U.S. Attorney Preet Bharara has secured dozens of convictions against Wall Street figures, including former Galleon Group founder Raj Rajaratnam and former Goldman Sachs director and McKinsey managing director Rajat Gupta. Rajaratnam is currently serving an 11-year prison sentence, and last year Gupta was sentenced to two years in prison.

(**MORE**: U.S. Regulators File Charges Against Hedge Fund Billionaire Steve Cohen)

The civil case against Cohen alleges that he failed to supervise two of his employees who have been accused of insider trading. The SEC's civil action came two weeks after reports emerged that Cohen himself was poised to avoid criminal charges. The SEC is seeking to bar the reclusive hedge fund titan — who earned as much as $900 million per year at the peak of his career — from overseeing investor funds, which could amount to a Wall Street death sentence for the hedge fund manager.

The SEC alleged that Cohen received "highly suspicious" information that should have caused any "reasonable" hedge fund manager to investigate the basis for trades made by Martoma and another former SAC portfolio manager, Michael Steinberg, who has also been charged with insider trading. When the FBI showed up at Martoma's Florida mansion last fall, he fainted on his front lawn. Steinberg was arrested at his Park Avenue home in March. The feds allege that Cohen ignored "red flags" and allowed Martoma and Steinberg to place the suspicious trades. The SEC's administrative proceeding will determine what measures to take against Cohen, including financial penalties and, potentially, a financial services industry ban.

Earlier this week, SAC sought to fight back against the SEC allegations. In a 46-page document, SAC lawyers said Cohen shouldn't be held responsible for the alleged insider trading of his employees because he didn't read the email that the government says should have raised "red flags" about insider trading concerns. "Cohen has no memory of having seen it and no witness will testify that they discussed it with him," said the document, which was reviewed by TIME.

Martoma has pleaded not guilty to insider trading charges and is set to go on trial in November. He faces decades in prison for what the feds have called the largest insider trading scheme in U.S. history. In March, SAC Capital agreed to pay a $616 million penalty to the SEC to settle the insider-trading civil case, without admitting or denying guilt.



**Sam Gustin @samgustin**

Sam Gustin is a reporter at TIME focused on business, technology, and public policy. A native of New York City, he graduated from Reed College and Columbia University's Graduate School of Journalism.

U.S. files criminal fraud charges against SAC Capital - Washington Post

Sign In    SUBSCRIBE: Home Delivery · Digital    Real Estate | Rentals | Cars | Today's Paper | Going Out Guide | Find&Save · Service Alley

**The Washington Post**   PostTV | Politics | Opinions | Local | Sports | National | World | Business | Tech | Lifestyle | Entertainment | Jobs | More

# BUSINESS   The Washington Post with Bloomberg

Home > Collections > Securities Fraud

## U.S. files criminal fraud charges against SAC Capital

By Jia Lynn Yang, July 25, 2013



People walk past a building that includes SAC Capital as a tenant in New York... (CARLO ALLEGRI/REUTERS)

Federal prosecutors unveiled criminal charges Thursday against SAC Capital, the famed hedge fund, citing "institutional practices" that encouraged a culture of using inside information to gain illegal profits.

The government charged SAC Capital with wire fraud and four counts of securities fraud. The indictment cites activity that spanned more than a decade from roughly 1999 to 2010, saying employees at the hedge fund engaged in a "pattern" of collecting non-public information about dozens of publicly traded companies.

"Unlawful conduct by individual employees and an institutional indifference to that unlawful conduct resulted in insider trading that was substantial, pervasive and on a scale without known precedent in the hedge fund industry," the indictment said.

The 41-page document paints a picture of a hedge fund where a constant pressure to gain an edge in trading led to the widespread use of inside information, resulting in hundreds of millions of dollars of illegal profits.

"SAC became over time a veritable magnet for market cheaters," Preet Bharara, U.S. attorney for the Southern District of New York, said at a news conference Thursday.

The charges did not target the firm's founder, Steven A. Cohen, although they do mark a new nadir for the billionaire's career.

With a number of employees already convicted or charged with insider trading, investors have been pulling their money from the fund en masse. It's likely that a large share of the money left over is Cohen's own.

Bharara said the indictment does not seek to freeze any of SAC's assets.

A spokesman for SAC Capital did not respond immediately to a request for comment Thursday morning.

Prosecutors say traders and analysts were hired in part for their network of contacts at public

We Recommend

Accused tipster is charged with insider trading
July 30, 2013

Justice Department is readying criminal charges against SAC...
July 24, 2013

SEC's charges against hedge fund billionaire Steven

U.S. files criminal fraud charges against SAC Capital - Washington Post

companies. For instance, one prospective employee who specialized in the industrial sector was described in a November 2008 e-mail as "the guy who knows the quarters cold, has a share house in the Hamptons with the CFO of [a Fortune 100 industrial sector company], tight with management."

Time and again, the indictment alleges, the company failed to check whether the information being used was obtained legally.

Prosecutors say the firm was warned that a prospective employee at another hedge fund had been working in what was known informally as the "insider trading group." According to the indictment, the candidate was hired anyway — over the objections of SAC's legal department.

Cohen...
July 25, 2013

Find More Stories About

Securities Fraud

Cohen, the firm's founder, is not named in the indictment, but references to him are made throughout the pages of charges and evidence, always as the "SAC Owner" who is constantly pressing his employees for tips and a "better edge" on trades.

In a wide-ranging series of insider trading investigations that has ensnared several other firms and dozens of people, SAC is the most ambitious target yet. The hedge fund and its billionaire founder are symbols of the greatest possible success that can be attained on Wall Street.

SAC, based in Stamford, Conn., at its peak managed $15 billion in assets. It charged its clients more than the industry standard and performed especially well when markets were down.

Cohen, whose initials form the name of his company, is known for running a cutthroat office. He is also known for his lavish spending habits. Earlier this year, he paid $155 million for the Picasso painting "Le Rêve," the most ever paid by a U.S. collector. That same month, he paid $60 million for an oceanfront property in East Hampton, N.Y.

Some legal experts said the government went after the hedge fund because it's failed so far to amass enough evidence to indict Cohen himself.

"I view it largely as a face-saving measure," said Martin D. Sklar, a lawyer at Kleinberg, Kaplan, Wolff & Cohen who works primarily with hedge fund clients. "I suppose if successful it'll generate revenue, but no one will go to jail as a result."

Federal prosecutors have already targeted at least eight traders and analysts at SAC Capital for insider trading, apart from the charges filed this week.

Bharara announced Thursday that a portfolio manager, Richard Lee, pleaded guilty on Tuesday to insider trading charges. Lee, according to the indictment against him, received non-public information about Yahoo's earnings and then executed trades based on the data.

A research analyst, Jon Horvath, pleaded guilty in federal court in September 2012 to conspiracy and securities fraud for insider trading related to tech companies Dell and Nvidia.

Horvath admitted that he passed on inside information about the firms to his manager Michael Steinberg, who prosecutors say executed trades based on the tips. In March, a grand jury indicted Steinberg for insider trading.

Earlier this month, the Securities and Exchange Commission accused Cohen of failing to supervise two of the SAC portfolio managers accused of insider trading. But the agency did not charge him with fraud or insider trading.

In that civil case, the SEC is seeking to demonstrate that Cohen received suspicious information that should have tipped him off to wrongdoing at his firm.

Cohen and his wife Alexandra are major political donors, contributing more than $272,000 to federal candidates and political committees since 2009, according to campaign finance records.

During the 2012 campaign, Cohen hosted a fundraiser at his Greenwich home for Republican presidential nominee Mitt Romney, according to a report in the Connecticut Post, and Cohen and his wife each gave $30,800 to the Republican Senatorial Campaign Committee.

Matea Gold contributed to this report.

U.S. accuses hedge fund SAC Capital Advisors of insider trading - Los Angeles Times

## Los Angeles Times | ARTICLE COLLECTIONS

← Back to Original Article

# U.S. accuses hedge fund SAC Capital Advisors of insider trading

*The fund's manager, Steven A. Cohen, isn't named in the indictment, but the government could seek to cripple his firm or even ban him from doing business on Wall Street.*

July 25, 2013 | By Andrew Tangel

NEW YORK — Like nobody else, Steven A. Cohen conquered Wall Street.

The boy from blue-collar Long Island built one of the era's most legendary investment firms, helping him amass a personal fortune of $9 billion. He lives a lavish life even by billionaire standards. His 35,000-square-foot Connecticut mansion has an ice skating rink with a Zamboni machine, and his other home in the Hamptons has an oceanfront view.

**Video: Indictment announced**

His vast art collection includes a $150-million Picasso. During his unsuccessful bid to buy the Los Angeles Dodgers last year, Cohen earned his way onto the prestigious Museum of Contemporary Art's board and made a donation of as much as $10 million.

But Cohen's success has a dark side, according to the federal government. In a rare criminal prosecution of a major financial institution, authorities took unprecedented steps Thursday that could effectively close Cohen's hedge fund, SAC Capital Advisors, and drain his largesse.

"Cohen is done," said Dominic Auld, a securities attorney at the New York law firm Labaton Sucharow who is not involved in the case. "This is it. The death knell is sounding. It's just a matter of when the bell stops tolling."

The government has been circling Cohen for the better part of a decade in an investigation that has now culminated in a 41-page indictment against SAC Capital. Authorities accused the $15-billion hedge fund of an unprecedented "deep and wide" illegal trading operation that cheated the investing public of "hundreds of millions of dollars."

Cohen isn't named in the court documents nor personally accused of insider trading. But the government could seek to cripple his firm or even ban him from doing business on Wall Street for life. The case accuses several SAC Capital employees of criminal acts and claims that management "enabled and promoted" the illegal behavior.

The federal charges also mark a major turning point for the Justice Department, which has been lambasted in the past for not leveling criminal charges against Wall Street wrongdoers in the shadow of the global financial crisis. It has led some critics to openly wonder whether some financial firms are not just too big to fail but also too big to jail.

"A company reaps what it sows," U.S. Atty. Preet Bharara, the top federal prosecutor in Manhattan, said in unveiling the charges. "Companies, like individuals, need to be held to account and need to be deterred from becoming dens of corruption."

The case won praise on Capitol Hill. Sen. Charles E. Grassley (R-Iowa) said the case would help make markets more fair.

"I've criticized prosecutors and the SEC for not taking on big fish," Grassley said in a statement. "They deserve credit for taking on a big, challenging case. This sends a signal that no firm is too big or too powerful to escape scrutiny. It has a deterrent factor. It gives a level of assurance to investors that markets are fair and the playing field for investors is level."

SAC Capital has been one of the hedge fund world's most successful companies, employing a nearly 1,000-person workforce known for turning out massive profits quarter after quarter.

But the firm's success also generated buzz on Wall Street trading floors that Cohen's firm might have an unfair edge. There have been whispers about insider trading for years, and that piqued the interest of law enforcement and regulators.

At the heart of the government's case is the allegation that SAC Capital prospered by fostering and turning a blind eye to cheating. Prosecutors alleged SAC Capital encouraged its traders and portfolio managers to sniff out lucrative, secret company information to give the hedge fund an all-important edge.

A top FBI official said the fund's in-house compliance department embodied: "See no evil. Hear no evil. Speak no evil." Bharara said SAC Capital became a "magnet for market cheaters" over more than a decade.

Cohen's firm fired back against the government's assertions Thursday.

U.S. accuses hedge fund SAC Capital Advisors of insider trading - Los Angeles Times

"SAC has never encouraged, promoted or tolerated insider-trading and takes its compliance and management obligations seriously," a spokesman said in a statement. "The handful of men who admit they broke the law does not reflect the honesty, integrity and character of the thousands of men and women who have worked at SAC over the past 21 years. SAC will continue to operate as we work through these matters."

Regulators had Cohen on their radar three decades ago. The SEC questioned Cohen in 1985, peppering him with questions about whether he traded RCA Corp. stock based on inside information. He asserted his 5th Amendment right against self-incrimination and refused to answer questions, according to a transcript The Times obtained via the Freedom of Information Act. Cohen was never accused of wrongdoing in the case.

More recently, his firm caught investigators' attention, and observers speculate that it's all part of a bigger plan to snag Cohen himself.

In November, federal prosecutors accused former SAC portfolio manager Mathew Martoma with conducting the most lucrative trading scheme of all time. His allegedly illicit trades in two drug company stocks netted $276 million in profits and avoided losses. Prosecutors say Martoma — who has pleaded not guilty — leaked confidential information concerning problems with the companies' experimental Alzheimer's drug.

In March, SAC Capital agreed to a record $616-million settlement with the Securities and Exchange Commission. The firm agreed to pay the largest-ever insider-trading penalties to end probes into Martoma's trades, as well as other allegedly suspicious trades in Dell Inc. stock. SAC settled the cases without admitting or denying wrongdoing.

Thursday's indictment listed SAC employees accused of insider trading. Of eight noted by authorities, six have pleaded guilty.

The SEC, which has been conducting a parallel regulatory probe, took administrative steps last week in an attempt to bar Cohen from managing anyone else's money.

The Justice Department has been wary of prosecuting financial companies, fearful that criminal cases could have severe economic consequences. A decade ago, prosecution led to the death of accounting giant Arthur Andersen, which was energy giant's Enron's auditor. Thousands of people lost their jobs.

But John Coffee, a securities law expert at Columbia University, said SAC Capital seemed to be a perfect candidate for indictment — unlikely to cause much collateral damage. However the case shakes out, Coffee said, Cohen may be able to keep much of his workforce if he can run a "family office" investing his money alone. (Authorities noted that they did not freeze SAC Capital's assets.)

"No one else is going to suffer," Coffee said. "There are no widows and orphans invested in this firm."

Auld, the New York securities attorney, said the government's case could tarnish SAC employees who never broke the law.

"I shed a tear for the other traders who never managed to cross that boundary," Auld said. "SAC Capital is not going to look so good on a resume for a while."

*andrew.tangel@latimes.com*

---

**Los Angeles Times** Copyright 2013 Los Angeles Times

Index by Keyword | Index by Date | Privacy Policy | Terms of Service

# SAC to pay record $1.8B in insider trading case

Tim Mullaney, USA TODAY    *8:03 p.m. EST November 4, 2013*

*The proposed $1.8 billion settlement would be the largest ever for insider-trading offenses, federal prosecutors say.*



*(Photo: Seth Wenig AP)*

NEW YORK — The giant hedge fund SAC Capital capitulated to federal prosecutors in a plea deal announced Monday, agreeing to plead guilty to every count of an insider-trading indictment issued in July, pay $1.8 billion in fines, and close its investment advisory business.

The total penalty is the largest ever assessed by the government for insider trading, U.S. Attorney Preet Bharara said at a press conference Monday afternoon.

The proposed deal requires court approval.

The agreement does not contain measures limiting how SAC principal Steven A. Cohen may continue to manage his personal fortune, which *Forbes* magazine estimates at $9.4 billion.

Prosecutors alleged that SAC leaders created a culture that enabled widespread insider trading by its employees, in stocks such as pharmaceutical maker Elan and a slew of technology companies including chipmakers Intel and Advanced Micro Devices, as well as consumer companies like Yahoo and BlackBerry. The government said top SAC leaders ignored signs that their employees were suggesting trades based on illegal tips.

``The government believes the proposed global resolution is fair, reasonable and firmly promotes the interests of justice, deterrence and respect for the law,'' Bharara and three other Justice Department attorneys wrote in the letter to two judges overseeing the government's civil and criminal cases against SAC. "The aggregate $1.8 billion financial penalty is — to the Government's knowledge — the largest financial penalty in history for insider trading offenses."

At a press conference, Bharara said the deal does not rule out further criminal indictments of SAC executives, including Cohen. At least eight executives have been criminally charged so far. And he said that the Justice Department's crackdown on insider trading, which has resulted in criminal convictions for about 75 defendants, is changing the culture of Wall Street.

``It has had a deterrent effect,'' Bharara said, saying prosecutors have heard evidence of that on wiretaps. ``It's impossible to quantify completely, but when you talk to people in the industry it's (there).''

The deal will effectively shut down SAC by taking away its ability to invest outsiders' money, Bharara said. The SAC subsidiaries that agreed to the deal are to be put on probation for five years, but are expected to be dissolved sooner than that, he said.

None of the $1.8 billion in penalties is tax-deductible, he added.

Prosecutors intend for the rest of Wall Street to take heed, including both other hedge funds and commercial banks, Bharara said.

``No institution should rest assured in the belief that it is too big to jail,'' he said. ``Sometimes institutional punishment is essential to deter misconduct and to serve justice.''

SAC to pay record $1.8B in insider trading case

A federal grand jury indicted SAC and three affiliates in July, charging them with wire fraud and securities fraud. The 41-page indictment and prosecutors depicted a corporate structure and culture in which Cohen sat at the center of a web of portfolio managers and research analysts, systematically collecting and trading on information he should have suspected was illegally gathered from employees of publicly traded firms such as Intel, Dell and Yahoo.

``Understand this: Principles are just as important as profit,'' said April Brooks, special agent in charge of the criminal division at the Federal Bureau of Investigation's New York office. ``How your employees make their money is just as important as how much they make.''

Citing numerous examples of "institutional indifference" to the alleged unlawful conduct, the indictment charged that the trading scheme "was substantial, pervasive and on a scale without known precedent in the hedge fund industry."

SAC Capital and CR Intrinsic, another Cohen affiliate, earlier this year agreed to pay the SEC a record $616 million in penalties to resolve civil insider-trading charges against the firms. The $1.8 billion figure announced Monday includes the earlier penalties.

Additionally, the SEC on July 19 filed civil administrative charges against Cohen himself, alleging that he "failed reasonably to supervise" two senior portfolio managers who themselves have been been hit with insider-trading charges and are awaiting trial.

In a statement released Monday, SAC said, "We take responsibility for the handful of men who pleaded guilty and whose conduct gave rise to SAC's liability. These wrongdoers do not represent the 3,000 honest men and women who have worked at the firm during the past 21 years. Even one person crossing the line into illegal behavior is too many and we greatly regret this conduct occurred."

Contributing: Kevin McCoy

# The Washington Post

Back to previous page

---

# SAC agrees to plead guilty to insider trading, pay $1.2 billion penalty

**By Dina ElBoghdady, Published: November 4**

The beleaguered hedge fund owned by billionaire Steven A. Cohen agreed to pay $1.2 billion to settle charges that it tolerated rampant insider trading for more than a decade, a deal that could sink one of Wall Street's big success stories and crush its owner's vaunted reputation.

SAC Capital Advisors agreed to plead guilty to each of the five counts in a criminal indictment unveiled in July by U.S. Attorney Preet Bharara in Manhattan. The Connecticut-based firm would stop managing the money of outside investors if the deal is approved by the courts. It can continue to manage Cohen's sizeable fortune, but would have to do so under the eye of an independent compliance consultant.

The plea agreement, announced Monday, marks the culmination of a multi-year effort to close in on a storied hedge fund that has racked up stellar profits since Cohen founded it in 1992. It also represents one of the most high-profile successes in the government's aggressive push to purge Wall Street of insider
trading and hold wrongdoers accountable.

Since Bharara took office in August 2009, he has filed insider-trading charges against 87 defendants and convicted 75 of them — including hedge fund billionaire Raj Rajaratnam, who is now behind bars, and his friend Rajat K. Gupta, a former Goldman Sachs board member who was found guilty of divulging boardroom secrets to Rajaratnam.

Under Monday's deal, SAC agreed to pay $900 million in fines and forfeit an additional $900 million, for a total of $1.8 billion, a record for an insider-
trading case. But the firm will receive a $616 million credit for civil settlements it reached with the Securities and Exchange Commission in March involving alleged insider trading at two SAC affiliates.

"It's the end of SAC as the markets have come to know it," said Jacob S. Frenkel, a former federal prosecutor and a former SEC enforcement lawyer. "Today's plea will kick the pedestal out from under Cohen's long-enjoyed lofty status on Wall Street."

In a statement, SAC said that it takes responsibility for the "handful of men" who have pleaded guilty to insider trading while at the firm. Early in the day, SAC's statement said that it "has never encouraged, promoted or tolerated insider trading." That language disappeared in the afternoon and the statement instead said: "Even one person crossing the line into illegal behavior is too many and we greatly regret this conduct occurred."

None of the cases that the government has settled with the hedge fund accuse Cohen of criminal wrongdoing. But he remains a target of a separate civil proceeding by the SEC, which recently charged him with failing to supervise two of the firm's employees in insider-trading incidents. If the SEC wins, Cohen might be banned from the industry for life.

On Monday, Bharara implied that Cohen remains in his office's crosshairs, too, saying that the plea agreement does not provide criminal protection or immunity for any individuals.

Bharara described the deal as a "fair but steep" resolution.

"No institution should rest easy in the belief that it is too big to jail," Bharara said when announcing the agreement. "That is a moral hazard that a just society can ill afford."

The deal is likely to eat into the considerable wealth amassed by Cohen, whose net worth is estimated at $9 billion by Forbes magazine. None of the $1.8 billion will be paid by outside investors, which means that Cohen or his various entities must pony up the cash, according to legal experts tracking the case.

All the funds will go to the U.S. Treasury, Bharara said.

Investors have pulled billions of dollars in recent months from Cohen's hedge fund, which managed $15 billion in assets at its peak. Nearly all the money left over belongs to Cohen.

When prosecutors announced the criminal charges leveled against SAC in July, Bharara described the hedge fund as a "veritable magnet for market cheaters."

The indictment portrayed a pressure-cooker culture that encouraged illegal tips in the quest for profits. Bharara said SAC "seeded itself" with corrupt traders and then turned a blind eye to suspicious activity, which is why he went after the company, not just its employees.

In the past few years, eight SAC employees have either been accused or convicted of insider trading that took place from 1999 through 2010. Five have pleaded guilty, and two — Mathew Martoma and Michael Steinberg — are fighting the allegations in court.

Prosecutors say the hedge fund failed to detect any of the employees' misconduct. It even hired Richard Lee despite warnings that he had been involved in an "insider trading group" at his prior firm,

SAC agrees to plead guilty to insider trading, pay $1.2 billion penalty - The Washington ...    Page 3 of 3

prosecutors said. Only once in its history did SAC identify possible insider trading at its firm, the indictment said. But it did not fire the individuals involved or report the matter to federal authorities.

Prosecutors did not mention Cohen by name in the indictment. But they said that the corrupt employees at times recommended trades to the "SAC owner" based on illegal tips.

Tying Cohen directly to insider trading has proved elusive, in part because none of the current or former employees charged turned on him. Now, all eyes are on Steinberg and Martoma, who face trial in mid-November and January, respectively.

"The people who testified against Rajaratnam were lifetime friends," said John C. Coffee Jr., a professor at Columbia Law School. "But people facing years in prison can give up on friendships."

© The Washington Post Company

SAC to pay $1.8 billion to settle insider trading charges - Chicago Tribune

# BUSINESS

All Sections

Home > Featured Articles > **Insider Trading**

# SAC to pay $1.8 billion to settle insider trading charges

November 04, 2013 | Reuters

Billionaire investor Steven A. Cohen's days as a hedge fund manager may be finished with an agreement by his SAC Capital Advisors to plead guilty to criminal charges of insider trading and pay a record $1.8 billion in fines and forfeitures.



But Cohen, one of Wall Street's best known traders, has not been personally charged with any crime and will likely continue managing some $9 billion of his own money through a family office once his hedge fund's plea deal is cleared by the courts.

Cohen's fund will shut down its investment advisory business, according to a settlement with prosecutors announced on Monday. SAC Capital is up 1.3 percent in October and up 15.95 percent so far this year, a source familiar with its performance said.

If approved by federal judges, the agreement would also resolve civil forfeiture action against SAC and its affiliates. The deal also requires SAC to install an independent compliance monitor if it continues to trade.

SAC to pay $1.8 billion to settle insider trading charges - Chicago Tribune

Jonathan Gasthalter, a spokesman for SAC Capital, did not immediately respond to a request for comment.

The settlement is only the beginning of a long process for Cohen of freeing himself from the constraints of a federal investigation that has gone on for at least seven years and has tarnished the reputation of one of Wall Street's most revered stock traders.

"The government is getting an enormous amount of money and shutting down his advisory business. They've basically achieved what they wanted, which is to cut off this guy's ability to manage other people's money," said C. Evan Stewart, a partner at Zuckerman Spaeder who is not connected with the case.

Manhattan U.S. Attorney Preet Bharara outlined the plea deal in a letter to federal judges in the case that accused SAC Capital of presiding over a culture in which employees flouted the law and were encouraged to tap personal networks for inside information about publicly traded companies.

"The government believes that the proposed global resolution is fair, reasonable and firmly promotes the interests of justice, deterrence and respect for the law," Bharara wrote.

The agreement does not preclude future criminal charges against individuals in the investigation, according to the letter filed in U.S. District Court. Investigations are continuing into trading in at least two other stocks, Weight Watchers International and The Gymboree Corporation , according to a person familiar with the matter. The person said the investigation could lead to other charges against people who are still employed at SAC.

LONG-RUNNING INVESTIGATION

The deal also does not include a specific cooperation agreement between the government and SAC, which means it is not clear whether the firm will have to provide more information to the government for the ongoing investigations.

The deal will punctuate one of the longest-running, highest-profile insider trading investigations in recent years, although it will not necessarily end the effort.

The guilty plea from SAC Capital is the biggest achievement yet for U.S. prosecutors in its multi-year crackdown on insider trading in the $2.2 trillion hedge fund industry that has already led to the convictions of former Galleon Group founder Raj Rajaratnam and former Goldman Sachs Group Inc director Rajat Gupta, also a onetime head of McKinsey & Co consultancy.

SAC to pay $1.8 billion to settle insider trading charges - Chicago Tribune

The hedge fund founded by Cohen in 1992 with $25 million charged some of the highest fees in the industry and was one the more successful, returning an average of 25 percent a year for investors.

U.S. prosecutors in July charged the hedge fund - which managed as much as $14 billion this year before investors began withdrawing money - on one count of wire fraud and four counts of securities fraud. As part of Monday's deal, SAC has agreed to plead guilty to all five counts.

The total settlement amount of $1.8 billion is made up of $900 million in fines and forfeiture of $900 million. The total forfeiture amount includes a $616 million sum that SAC had already agreed to pay earlier this year to settle civil lawsuits by the U.S. Securities and Exchange Commission for insider trading, according to Bharara's letter in U.S. District Court in Manhattan.

If SAC continues to trade in securities, it will have to install an independent, government-approved compliance monitor to ensure its future trades are legitimate and not based on non-public information, the prosecutor's letter said.

Meanwhile, observers are expecting an exodus from SAC, which employed roughly 900 people earlier this year. Cohen has been slowly returning money to outside investors and was widely expected to convert his operation to a family office, merely managing his own billions, by early next year.

Cohen will have to "dramatically" downsize his operation, said Stephen Martiros, an independent consultant to family office and private investors.

# EXHIBIT  I



Posted on Fri, Nov. 08, 2013

# SAC Capital pleads guilty in NY in $1.8B deal

By LARRY NEUMEISTER
Associated Press



U.S. Attorney Preet Bharara speaks at a press conference, Monday, Nov. 4, 2013, in New York. Federal prosecutors in New York say hedge fund giant SAC Capital Advisors has agreed to plead guilty to fraud charges and to pay a $1.8 billion financial penalty..

SAC Capital Advisors pleaded guilty to criminal fraud charges Friday, satisfying a deal with the government that requires the Connecticut-based hedge fund to pay a record $1.8 billion to settle charges that it allowed, if not encouraged, insider trading to occur for more than a decade.

The plea came in U.S. District Court in Manhattan four days after the government announced that the once influential hedge fund owned by billionaire Steven A. Cohen had reached the deal that also required it to shut down its operations to outside investors.

But Judge Laura Taylor Swain did not immediately accept the plea, saying she'd wait until a probation report is made and other papers are submitted for her review. She set a sentencing date for March 14, assuming she accepts it.

The plea was entered by Peter Nussbaum, SAC's longtime general counsel, to a single count of wire fraud and four counts of securities fraud. It was made on behalf of SAC Capital LP, SAC Capital Advisors LLC, CR Intrinsic Investors LLC and Sigma Capital Management LLC.

In pleading guilty, Nussbaum said SAC Capital wanted to "express our deep remorse for the misconduct of each individual who broke the law while employed at SAC."

"This happened on our watch, and we are responsible for that misconduct," he said.

Nussbaum then described the crimes of six former SAC employees who had pleaded guilty to insider trading charges.

"We at SAC regret terribly the misconduct of these individuals," the lawyer said. "We have paid, and are paying, a very steep price for their actions."

He expressed regret at the damage to the firm's reputation and said it was "chastened by this experience."

But a prosecutor, Arlo Devlin-Brown, insisted the crimes were "not limited to the conduct of these six individuals. Additional people engaged in insider trading."

He cited "institutional failure," saying the firm hired individuals with proven access to insiders at public companies and failed to effectively monitor its employees even when their actions should have served notice that they may be based on inside information.

Devlin-Brown said a tone was set by senior management at the company that allowed insider trading to occur and prosecutors would have proven so at trial through the use of witnesses, recorded conversations, trading records and other documents.

"Between 1999 and 2010, numerous portfolio managers and analysts engaged in insider trading in at least 20 public companies," the assistant U.S. attorney said. He also said the company encouraged its employees to "aggressively pursue" an edge in information, regardless of "whether that edge was lawfully obtained."

Devlin-Brown also noted that the agreement bans the company from making any public statements for five years that would conflict with or disavow the plea.

The company on Monday replaced a sentence in a statement that claimed the company "never encouraged, promoted or tolerated insider trading" with one saying: "Even one person crossing the line into illegal behavior is too many and we greatly regret this conduct occurred."

On Friday, the judge listened to a statement from one objector to the plea, Ethan Wohl, who noted that "no one is going to jail for the crime."

Afterward, lawyers for the company declined comment.

U.S. Attorney Preet Bharara issued a statement, saying the SAC Capital companies "pled guilty to serious federal crimes that undermined the integrity of our securities markets. Financial institutions should know that they are not automatically immune from prosecution, and we will hold companies, as well as individuals, accountable wherever appropriate."

The plea does not stop the government from continuing a criminal investigation that already has led to criminal charges against at least eight former SAC employees. Most have pleaded guilty.

Cohen is not among those criminally charged, although the Securities and Exchange Commission accused him in a civil action in July of failing to prevent insider trading at the company, which he founded in 1992 and which bears his initials. The SEC sought to fine Cohen and bar him from managing investor funds. Cohen has disputed the allegations.

SAC Capital rose to prominence over the last two decades as Cohen created a competitive environment for portfolio managers with huge bonuses for trading successes and swift punishment for losses.

The government has said that the breakneck pressure at the firm contributed to an environment where the rules were bent and laws were sometimes broken to achieve success.

As the company grew, so did Cohen's riches and reputation. He became one of the highest-profile figures in U.S. finance and the 40th-richest American, with a net worth of $8.8 billion, according to Forbes.

U.S. Attorney Preet Bharara told a news conference Monday that the settlement should send the message that "no institution should rest easy in the belief that it is too big to jail."

The plea calls for the company to pay a $900 million fine and forfeit another $900 million to the federal government, though $616 million that SAC companies have already agreed to pay to settle parallel actions by the U.S. Securities and Exchange Commission will be deducted from the $1.8 billion.

© 2013 Miami Herald Media Company. All Rights Reserved.
http://www.miamiherald.com

latimes.com/business/la-fi-sac-plea-20131108,0,5654251.story

# latimes.com

## SAC Capital pleads guilty in insider trading case

**The plea by hedge fund SAC Capital comes as part of a deal with the government in which it also would pay a $1.8 billion to settle insider trading charges.**

Times wire services

4:40 PM PST, November 8, 2013

SAC Capital Advisors pleaded guilty to criminal fraud charges Friday, satisfying a deal    advertisement
with the government that requires the Connecticut hedge fund to pay a record $1.8 billion
to settle charges that it allowed, if not encouraged, insider trading to occur for more than a decade.

The plea came in U.S. District Court in New York four days after the government announced that the
once-influential hedge fund owned by billionaire Steven A. Cohen had reached the deal that also
required it to shut down its operations to outside investors.

But Judge Laura Taylor Swain did not immediately accept the plea, saying she'd wait until a probation
report is made and other papers are submitted for her review. She set a sentencing date for March 14,
assuming she accepts it.

The plea was entered by Peter Nussbaum, SAC's longtime general counsel, to a single count of wire
fraud and four counts of securities fraud. It was made on behalf of SAC Capital, SAC Capital
Advisors, CR Intrinsic Investors and Sigma Capital Management.

In pleading guilty, Nussbaum said SAC Capital wanted to "express our deep remorse for the
misconduct of each individual who broke the law while employed at SAC."

"This happened on our watch, and we are responsible for that misconduct," he said.

Prosecutor Arlo Devlin-Brown said the crimes were "not limited to the conduct of these six
individuals. Additional people engaged in insider trading."

Devlin-Brown cited "institutional failure," saying the firm hired individuals with proven access to
insiders at public companies and failed to effectively monitor its employees even when their actions
should have served notice that they may be based on inside information.

He said that a tone was set by senior management at the company that allowed insider trading to occur
and that prosecutors would have proven so at trial through the use of witnesses, recorded
conversations, trading records and other documents.

"Between 1999 and 2010, numerous portfolio managers and analysts engaged in insider trading in at
least 20 public companies," the assistant U.S. attorney said. He also said the company encouraged its

employees to "aggressively pursue" an edge in information, regardless of "whether that edge was lawfully obtained."

The plea does not stop the government from continuing a criminal investigation that already has led to charges against at least eight former SAC employees. Most have pleaded guilty.

Cohen is not among those criminally charged, although the Securities and Exchange Commission accused him in a civil action in July of failing to prevent insider trading at the company, which he founded in 1992 and which bears his initials. The SEC sought to fine Cohen and bar him from managing investor funds. Cohen has disputed the allegations.

Earlier Friday, a former California technology analyst pleaded guilty to insider trading charges in a cooperation deal with the government, admitting that he told secrets to an SAC Capital portfolio manager and others in 2009 about a blockbuster deal between Microsoft Corp. and Yahoo Inc.

Sandeep Aggarwal, 40, entered the plea to conspiracy and securities fraud charges, telling U.S. Magistrate Judge Ronald L. Ellis that he passed along tips he learned from a former colleague at Microsoft about plans the company had to create a search engine advertising partnership with Yahoo.

The plea settled charges brought against Aggarwal when he was arrested in July in San Jose.

Copyright © 2013, Los Angeles Times

# EXHIBIT  J

Print and Online Coverage

| | Outlet Name | Headline | Reporter | Date | Posted to Twitter |
|---|---|---|---|---|---|
| 1 | The New York Times | Many Paths Remain for a Case Against SAC Capital Advisors** | Peter Lattman and Ben Protess | 7/7/2013 | Y |
| 2 | The Wall Street Journal | Cohen Probe Is Missing Key Elements | Michael Rothfeld and Jenny Strasburg | 7/7/2013 | N |
| 3 | Bloomberg | Ex-SAC Trader Martoma Seeks Dismissal of Elan Charges | Patricia Hurtado | 7/8/2013 | N |
| 4 | The New York Times | Calendar Is Not Biggest Hurdle in SAC Prosecution | Peter J. Henning | 7/8/2013 | N |
| 5 | Bloomberg | Ex-SAC Manager Seeks to Quiz Jury About Publicity | Patricia Hurtado and Christie Smythe | 7/9/2013 | N |
| 6 | Bloomberg | Spitzer's Return: For Better and For Worse | Margaret Carlson and Ramesh Ponnuru | 7/9/2013 | N |
| 7 | Reuters | Media bias hurts SAC exec's right to fair trial -lawyer | Emily Flitter | 7/9/2013 | Y |
| 8 | The Motley Fool | Insiders Are Bullish About These Stocks | Meena Krishnamsetty | 7/9/2013 | N |
| 9 | The New York Times | Lawyers in SAC Case Question Coverage of News Media | Peter Lattman | 7/9/2013 | Y |
| 10 | The Wall Street Journal | SAC Figure: Media May Bias Jurors | Chad Bray | 7/9/2013 | N |
| 11 | Bloomberg | Capital Boost, Bernanke Testimony, Libor Hand-Off: Compliance | Carla Main | 7/10/2013 | N |
| 12 | New York Post | Who, us? Steinberg lawyer blasts media | Kaja Whitehouse | 7/10/2013 | Y |
| 13 | Forbes | The Feds Give King Cohen A Free Pass | Jake Zamansky | 7/11/2013 | N |
| 14 | The Wall Street Journal | SAC Takes a Loss on Sale of Stake in Health Firm | Mike Spector and Jenny Strasburg | 7/11/2013 | Y |
| 15 | Bloomberg | Ex-SAC Manager Steinberg Cites 'Media Storm' in Case | Patricia Hurtado | 7/12/2013 | N |
| 16 | Bloomberg | Steve Cohen Asks Judge to Dismiss Ex-Wife's RICO Lawsuit | Patricia Hurtado | 7/12/2013 | N |
| 17 | Seeking Alpha | High Frequency Insider Trading - And It's Completely Legal | Jake Zamansky | 7/12/2013 | Y |
| 18 | The Wall Street Journal | Judge Leaning Against Questionnaires In Trader's Case | Chad Bray | 7/12/2013 | N |
| 19 | New York Post | Judge: No Steinberg bias seen | Kaja Whitehouse | 7/13/2013 | Y |
| 20 | Bloomberg | Martoma Shouldn't Get E-Mail Tied to Academic, U.S. Says | Patricia Hurtado | 7/15/2013 | Y |
| 21 | Bloomberg | Vinson & Elkins, Ashurst, Paul Hastings: Business of Law | Elizabeth Amon | 7/15/2013 | N |
| 22 | The Wall Street Journal | DOJ: Ex-SAC Trader Shouldn't Access Witness Communications | Chad Bray | 7/15/2013 | N |
| 23 | CNBC | No one is too big to jail, Wall Street cop says | Jeff Cox | 7/17/2013 | N |
| 24 | CNN Money | Wall St. sheriff: No one too big to indict | Maureen Farrell | 7/17/2013 | Y |
| 25 | New York Daily News | SEC charges billionaire hedge-fund manager with failing to prevent insider trading | Phyllis Furman | 7/17/2013 | N |
| 26 | Reuters | Bharara to crack down on firms that repeatedly break laws | N/A | 7/17/2013 | N |
| 27 | Reuters | U.S. prosecutor warns Wall Street about repeat violations | Svea Herbst-Bayliss | 7/17/2013 | N |
| 28 | Seeking Alpha | The Feds Give King Cohen A Free Pass | Jake Zamansky | 7/17/2013 | Y |
| 29 | The New York Times | The Statute of Limitations Is Longer Now, Bharara Warns Wrongdoers | William Alden | 7/17/2013 | N |
| 30 | The Wall Street Journal | Preet Bharara: Charging a Firm for Insider-Trading a 'Rare Use of Power' | James Sterngold | 7/17/2013 | N |
| 31 | Bloomberg | Bharara Says U.S. Has Time to Bring Insider Trading Cases | Patricia Hurtado | 7/18/2013 | N |
| 32 | The Wall Street Journal | Former SAC Trader Still Fighting For Access To Doctor's Files | Jenny Strasburg | 7/18/2013 | N |
| 33 | Associated Press | Business Highlights | N/A | 7/19/2013 | N |
| 34 | Associated Press | News Summary: SEC: Cohen Didn't Stop Inside Trades | N/A | 7/19/2013 | N |
| 35 | Associated Press | SEC Files Charges Against Hedge Fund Founder Cohen | Marcy Gordon | 7/19/2013 | Y |
| 36 | Barron's | SEC Files Charges Against SAC Chief Cohen | Johanna Bennett | 7/19/2013 | N |
| 37 | Bloomberg | Feds Sue SAC's Cohen for Lack of Curiosity | Jonathan Weil | 7/19/2013 | N |
| 38 | Bloomberg | SEC's White Takes on Two Billionaires in One Day to Make Mark | Joshua Gallu | 7/19/2013 | N |
| 39 | CNBC | Bull's-eye! SEC pins charges on SAC Capital's Cohen | John Carney | 7/19/2013 | N |
| 40 | CNBC | SAC Capital's biggest positions | Ben Berkowitz | 7/19/2013 | Y |
| 41 | CNBC | SEC charges SAC Capital's Steven A. Cohen for failing to prevent insider trading by employees | N/A | 7/19/2013 | N |
| 42 | CNN Money | SEC charges hedge-fund mogul Steve Cohen | James O'Toole | 7/19/2013 | Y |
| 43 | Crain's New York Business | Thoughts on Steve Cohen's case | Aaron Elstein | 7/19/2013 | N |
| 44 | Forbes | SEC Charges Steve Cohen For Failing To Stop Insider Trading At SAC Capital | Steve Schaefer | 7/19/2013 | N |
| 45 | Fortune | SEC: Steve Cohen Is A Horrible Boss | Dan Primack | 7/19/2013 | Y |
| 46 | Fox Business | SEC Charges SAC's Cohen With Failing to Prevent Insider Trading | Matt Egan | 7/19/2013 | N |
| 47 | New York Post | SEC finally digs claws into SAC honcho Steve Cohen | Kaja Whitehouse | 7/19/2013 | N |
| 48 | Reuters | SAC says charges against Cohen have 'no merit' | Emily Flitter | 7/19/2013 | N |
| 49 | Reuters | SEC seeking to ban SAC's Cohen from financial industry | Emily Flitter | 7/19/2013 | N |
| 50 | Reuters | TIMELINE - SAC and the long, winding insider trading probe | Katya Wachtel | 7/19/2013 | N |
| 51 | Reuters | U.S. SEC says as red flags waved, SAC's Cohen waved them by | Jonathan Stempel | 7/19/2013 | N |
| 52 | Seeking Alpha | SAC Capital's formerly teflon founder Steven Cohen is charged by the SEC with the administrative… | N/A | 7/19/2013 | N |
| 53 | The Daily Beast/Newsweek | SEC Charges Mean Steven Cohen Could Be Barred From Industry | Daniel Gross | 7/19/2013 | N |
| 54 | The Financial Times | SAC's Cohen charged over insider trading | Dan McCrum and Kara Scannell | 7/19/2013 | N |
| 55 | The New York Times | S.E.C. Charges Are the Latest Test for SAC's Cohen* | Peter Lattman, Ben Protess | 7/19/2013 | N |
| 56 | The New York Times | The Things Traders Say, the SAC Edition | William Alden | 7/19/2013 | Y |
| 57 | The New York Times | Under New Chief, a Feistier S.E.C. Emerges** | Ben Protess and Michael J. De La Merced | 7/19/2013 | Y |
| 58 | The Street | SEC Charges SAC Capital's Billionaire Head Steven A. Cohen | Antoine Gara | 7/19/2013 | N |
| 59 | The Wall Street Journal | SEC Is Seeking to Ban Cohen* | Jean Eaglesham and Jenny Strasburg | 7/19/2013 | N |
| 60 | The Wall Street Journal | SEC Rejects Proposed Settlement With Falcone and Harbinger** | Juliet Chung and Jean Eaglesham | 7/19/2013 | N |
| 61 | The Wall Street Journal | The SEC's Civil Action Against Steven A. Cohen: A Guide | Joe Palazzolo and Chad Bray | 7/19/2013 | N |
| 62 | TIME | U.S. Regulators File Charges Against Hedge Fund Billionaire Steve Cohen | Sam Gustin | 7/19/2013 | Y |
| 63 | Washington Post | SEC charges hedge-fund tycoon Steven Cohen with failure to supervise traders | Dina ElBoghdady | 7/19/2013 | N |
| 64 | Barron's | Danger To Data Security: When Gods Become Demons | Robin Goldwyn Blumenthal | 7/20/2013 | N |
| 65 | Bloomberg | Cohen's SAC Career Faces End as SEC Presses Supervision | Katherine Burton and Joshua Gallu | 7/20/2013 | Y |
| 66 | Bloomberg | SAC's Cohen Traded on Horvath's Dell Inside Tip, SEC Says | Patricia Hurtado | 7/20/2013 | N |
| 67 | Economist | You should have known | T.E. | 7/20/2013 | Y |
| 68 | New York Post | Slamming Steve | Kaja Whitehouse | 7/20/2013 | Y |
| 69 | USA Today | SEC: Cohen failed to prevent insider trading | Kevin McCoy | 7/20/2013 | Y |
| 70 | Bloomberg | Cutthroat Cohen Looks at Demise for Being Soft Supervisor | Saijel Kishan, Katherine Burton and Kelly Bit | 7/21/2013 | N |
| 71 | Reuters | SEC voted unanimously to pursue charges against SAC's Cohen: sources | Sarah N. Lynch | 7/21/2013 | Y |
| 72 | Seeking Alpha | The SEC's Important Case Against Stevie Cohen | Felix Salmon | 7/21/2013 | N |
| 73 | The Financial Times | SEC chooses little-used statute to pursue Steven Cohen | Kara Scannell | 7/21/2013 | N |
| 74 | The New York Times | Case Reveals Cohen's Links to Dubious Actions at SAC** | Peter Lattman | 7/21/2013 | Y |

*Denotes articles which appeared on page A1
**Denotes articles which appeared on page B1

Print and Online Coverage

| # | Outlet Name | Headline | Reporter | Date | Posted to Twitter |
|---|---|---|---|---|---|
| 75 | The Wall Street Journal | The SAC Saga: What Happens Next? | Jenny Strasburg | 7/21/2013 | Y |
| 76 | Bloomberg | SEC Tries Last Ditch Move to Put SAC's Cohen Out of Work | Greg Farrell and Patricia Hurtado | 7/22/2013 | Y |
| 77 | CNBC | The case against the case against insider trading | John Carney | 7/22/2013 | Y |
| 78 | CNBC | Will Steven A. Cohen face more serious charges? | Matthew J. Belvedere | 7/22/2013 | N |
| 79 | New York Business Journal | Cohen civil action a prelude to charges against SAC? (Video) | N/A | 7/22/2013 | N |
| 80 | The New York Times | A Long Slog for SAC's Cohen | Peter J. Henning | 7/22/2013 | Y |
| 81 | The New York Times | A Towering Fine for Naught, as the S.E.C. Tracks Cohen** | Andrew Ross Sorkin | 7/22/2013 | Y |
| 82 | TIME | Busting Steve Cohen: How a Minor Charge Threatens a Major Figure | Charles Gasparino | 7/22/2013 | N |
| 83 | Associated Press | Attorneys For Fund Head Cohen Refute SEC Charges | Marcy Gordon | 7/23/2013 | N |
| 84 | Bloomberg | Elan Investors Get Access to SAC Insider Case Evidence | Patricia Hurtado | 7/23/2013 | N |
| 85 | Bloomberg | Robertson Says Google Built Better Culture Than Apple | Christian Baumgaertel | 7/23/2013 | N |
| 86 | Bloomberg | SAC's Cohen Doesn't Recall Dell E-Mail Cited in SEC Order | Katherine Burton | 7/23/2013 | Y |
| 87 | Bloomberg | SEC Schedules Cohen's Administrative Hearing for August 26 | Joshua Gallu | 7/23/2013 | N |
| 88 | Business Insider | Here's The 46-Page White Paper Steve Cohen Gave To SAC Employees Yesterday Explaining Why He Didn't Do Anything Wrong | Linette Lopez | 7/23/2013 | Y |
| 89 | CNBC | Steve Cohen and the Hamptons pool defense | John Carney | 7/23/2013 | Y |
| 90 | Forbes | SAC And Steve Cohen In The SEC's Crosshairs | Jake Zamansky | 7/23/2013 | N |
| 91 | Fortune | SAC Capital and the allure of the easy win | Ethan Rouen | 7/23/2013 | N |
| 92 | Reuters | Federal prosecutors preparing to charge SAC Capital: WSJ | Sakthi Prasad | 7/23/2013 | N |
| 93 | Reuters | SAC Capital memo refutes allegations against CEO Cohen: WSJ | Vijay Vishwas | 7/23/2013 | N |
| 94 | Reuters | SAC's Cohen was too busy to spot insider info in email -lawyers | Emily Flitter | 7/23/2013 | N |
| 95 | The Financial Times | SAC hits back at regulator allegations | Dan McCrum and Kara Scannell | 7/23/2013 | Y |
| 96 | The Motley Fool | Steve Cohen, SAC Deny SEC Allegations | John Divine | 7/23/2013 | N |
| 97 | The New York Times | Criminal Indictment Is Expected for SAC Capital Advisors** | Ben Protess and Peter Lattman | 7/23/2013 | Y |
| 98 | The Wall Street Journal | Cohen Is Set to Face Off With SEC in August | Jean Eaglesham | 7/23/2013 | N |
| 99 | The Wall Street Journal | SAC to Employees: Cohen Didn't Read Dell Email at Heart of SEC's Case | James Sterngold and Jenny Strasburg | 7/23/2013 | Y |
| 100 | The Wall Street Journal | U.S. Readies SAC Charges* | Jenny Strasburg and Michael Rothfeld | 7/23/2013 | Y |
| 101 | The Wall Street Journal | SAC Responds to SEC: Highlights From Defense White Paper | David Benoit | 7/23/2013 | Y |
| 102 | The Wall Street Journal | Steve Cohen's Overflowing Email Inbox | David Benoit | 7/23/2013 | Y |
| 103 | Washington Post | SEC's charges against hedge fund billionaire Steven Cohen ease agency's burden of proof | Dina ElBoghdady | 7/23/2013 | N |
| 104 | Bloomberg | Cases Against Steven Cohen, SAC Won't Be a Slam Dunk | Jonathan Weil | 7/24/2013 | Y |
| 105 | Bloomberg | CFTC Skips Votes, Bitcoin Ponzi, SAC E-Mail: Compliance | Carla Main | 7/24/2013 | N |
| 106 | Bloomberg | SAC Capital May Be Charged by U.S. This Week, WSJ Says | Peter Blumberg | 7/24/2013 | N |
| 107 | Bloomberg | SAC Said to Face U.S. Prosecution in Insider-Trading Probe | Sheelah Kolhatkar, Katherine Burton and Greg Farrell | 7/24/2013 | N |
| 108 | CNN Money | SAC to face criminal charges – reports | Chris Isidore | 7/24/2013 | N |
| 109 | Forbes | The Government Is Moving To Destroy Legendary Hedge Fund Firm SAC Capital | Nathan Vardi | 7/24/2013 | N |
| 110 | Fortune | Yep, SAC's Steve Cohen probably didn't read his email | Laura Vanderkam | 7/24/2013 | Y |
| 111 | Fox Business | U.S. Puts Finishing Touches on Criminal Charges Against SAC Capital | Matt Egan | 7/24/2013 | Y |
| 112 | Huffington Post | Steve Cohen of SAC Capital Has Earned Insider Trading Charges | Daniel Dicker | 7/24/2013 | N |
| 113 | New York Business Journal | SAC targeted for criminal charges; Cohen unlikely to be charged | N/A | 7/24/2013 | N |
| 114 | New York Post | Report: Criminal charges coming for SAC | Kaja Whitehouse | 7/24/2013 | N |
| 115 | Reuters | DOJ's decision on criminal charges against SAC Capital nears | Matthew Goldstein and Emily Flitter | 7/24/2013 | Y |
| 116 | Reuters | SEC judge in Cohen case no stranger to high-profile cases | Sarah N. Lynch | 7/24/2013 | Y |
| 117 | Seeking Alpha | Federal prosecutors could reportedly file criminal charges against SAC Capital this week over... | N/A | 7/24/2013 | Y |
| 118 | The Financial Times | SAC in the dock | N/A | 7/24/2013 | Y |
| 119 | The Financial Times | US plans criminal charges against SAC Capital | Kara Scannell | 7/24/2013 | Y |
| 120 | The New York Times | For SAC, Indictment May Imperil Its Survival** | Floyd Norris | 7/24/2013 | Y |
| 121 | The New York Times | In Case Against SAC Capital, a Show of Force* | Ben Protess and Peter Lattman | 7/24/2013 | Y |
| 122 | The Wall Street Journal | For SAC, a Shift in Investing Strategy Later Led to Suspicions | James Sterngold and Jenny Strasburg | 7/24/2013 | N |
| 123 | TIME | U.S. Poised to Charge Billionaire Steve Cohen's SAC Capital Hedge Fund | Sam Gustin | 7/24/2013 | Y |
| 124 | Washington Post | Justice Department is readying criminal charges against SAC Capital | Jia Lynn Yang and Sari Horwitz | 7/24/2013 | Y |
| 125 | Associated Press | 10 Things To Know For Friday | N/A | 7/25/2013 | Y |
| 126 | Associated Press | Feds Charge Hedge Fund SAC Capital In NY Case | Larry Neumeister and Tom Hays | 7/25/2013 | N |
| 127 | Associated Press | Feds In NY Bring Criminal Charges Against Hedge Fund SAC Capital, But Not Against Owner | N/A | 7/25/2013 | Y |
| 128 | Associated Press | SAC's History: Dazzling Success, Dubious Actions | Marcy Gordon | 7/25/2013 | N |
| 129 | Barron's | Criminal Charges Filed Against SAC Capital: WSJ | Brendan Conway | 7/25/2013 | N |
| 130 | Bloomberg | Banks Said to Weigh Suspending Dealings With SAC as Charges Loom | Michael J. Moore and Zeke Faux | 7/25/2013 | N |
| 131 | Bloomberg | Citadel Says Lee Terminated Over Internal Transfer of Positions | Christian Baumgaertel | 7/25/2013 | N |
| 132 | Bloomberg | SAC Capital Advisors Indicted by Federal Grand Jury in New York | Patricia Hurtado and David Glovin | 7/25/2013 | Y |
| 133 | Bloomberg | SAC Capital Indicted For Unprecedented Insider Trading Scam | Patricia Hurtado, Christie Smythe and David Glovin | 7/25/2013 | N |
| 134 | Bloomberg | SAC Sued by Elan Investors Over Alleged Illegal Trading | Joe Schneider | 7/25/2013 | N |
| 135 | Business Insider | SAC Capital Responds To Criminal Charges Of Insider Trading Against The Firm | Julia La Roche | 7/25/2013 | N |
| 136 | CNBC | Charges expected today against SAC Capital: Source | N/A | 7/25/2013 | Y |
| 137 | CNBC | Cramer: SAC Capital playing you for a dope? | Lee Brodie | 7/25/2013 | Y |
| 138 | CNBC | Grassley: Bring Cohen before Congress | Bruno J. Navarro | 7/25/2013 | Y |
| 139 | CNBC | Prosecutors seek 'any and all' SAC assets in sweeping complaint | Scott Cohn | 7/25/2013 | Y |
| 140 | CNN Money | SAC Capital hit with criminal charges | James O'Toole | 7/25/2013 | Y |
| 141 | CNN Money | The unknown future of SAC and billionaire Steve Cohen | Maureen Farrell | 7/25/2013 | Y |
| 142 | Crain's New York Business | A primer on SAC's indictment | Aaron Elstein | 7/25/2013 | Y |
| 143 | Economist | Firm charges | S.V.P. | 7/25/2013 | Y |

*Denotes articles which appeared on page A1
**Denotes articles which appeared on page B1

Print and Online Coverage

| | Outlet Name | Headline | Reporter | Date | Posted to Twitter |
|---|---|---|---|---|---|
| 144 | Forbes | Feds Indict SAC Capital Alleging Hedge Fund Firm Encouraged Insider Trading | Nathan Vardi | 7/25/2013 | Y |
| 145 | Forbes | If The Government Can't Get SAC's Cohen, Maybe They'll Get His Money | Daniel Fisher | 7/25/2013 | Y |
| 146 | Fortune | 5 signs Steven Cohen was trading on insider information | Stephen Gandel | 7/25/2013 | Y |
| 147 | Fortune | SAC holdings soar ahead of possible shutdown | Dan Primack | 7/25/2013 | Y |
| 148 | Fox Business | Report: Wall Street Mulls Cutting Ties With Embattled SAC Capital | Matt Egan | 7/25/2013 | N |
| 149 | Fox Business | SAC Indictment: Insider Trading Began At Hiring | Dunstan Prial | 7/25/2013 | N |
| 150 | Fox Business | U.S. Files Criminal Charges Against SAC Capital | Matt Egan | 7/25/2013 | Y |
| 151 | Huffington Post | SAC Capital Indictment Does Not Mean The End Of 'Too Big To Jail' | Mark Gongloff | 7/25/2013 | Y |
| 152 | New York Daily News | Feds charge billionaire Steven A. Cohen's hedge fund SAC Capital with insider trading | Barbara Ross and Bill Hutchinson | 7/25/2013 | N |
| 153 | New York Magazine | It's Doomsday for SAC Capital | Kevin Roose | 7/25/2013 | N |
| 154 | New York Post | Steve Cohen's SAC Capital Advisors hit with criminal charges | Kaja Whitehouse | 7/25/2013 | N |
| 155 | Reuters | SAC Capital seeks protective order on operations after charges | Emily Flitter | 7/25/2013 | Y |
| 156 | Reuters | SAC gets cut by 'edge', a word Cohen hated | Lauren Tara LaCapra, Matthew Goldstein and Emily Flitter | 7/25/2013 | Y |
| 157 | Reuters | SAC indictment describes 'insider trading group' at Citadel: sources | Emily Flitter and Katya Wachtel | 7/25/2013 | Y |
| 158 | Reuters | U.S. charges SAC Capital hedge fund with criminal fraud | N/A | 7/25/2013 | Y |
| 159 | Reuters | U.S. charges SAC Capital with insider trading crimes | Emily Flitter, Svea Herbst-Bayliss and Jonathan Stempel | 7/25/2013 | Y |
| 160 | RTT News | Hedge Fund SAC Capital Charged With Insider Trading | N/A | 7/25/2013 | Y |
| 161 | The Daily Beast/Newsweek | Indictment of SAC Capital Creates Economic Losers and Winners | Filipa Ioannou | 7/25/2013 | N |
| 162 | The Financial Times | Decade-long quest ends at SAC front door | Kara Scannell | 7/25/2013 | Y |
| 163 | The Financial Times | Q&A: SAC faces future as a 'family office' | Dan McCrum | 7/25/2013 | N |
| 164 | The Financial Times | Role of Richard Lee in the SAC probe | Dan McCrum and Kara Scannell | 7/25/2013 | N |
| 165 | The Financial Times | SAC Capital and the allure of the easy win | Gary Silverman | 7/25/2013 | N |
| 166 | The Financial Times | The criminal indictment of SAC is right for Wall Street | John Gapper | 7/25/2013 | N |
| 167 | The Financial Times | The SAC network | Kara Scannell, Ben Freese and Johanna Kassel | 7/25/2013 | Y |
| 168 | The Financial Times | US attorney says SAC 'magnet for cheaters' | Kara Scannell, Dan McCrum and Tom Braithwaite | 7/25/2013 | Y |
| 169 | The Motley Fool | Feds Hit SAC Capital With Criminal, Civil Charges | John Divine | 7/25/2013 | N |
| 170 | The New York Times | A Relentless Prosecutor's Crowning Case** | Julie Creswell | 7/25/2013 | Y |
| 171 | The New York Times | SAC Capital Is Indicted, and Called a Magnet for Cheating* | Peter Lattman and Ben Protess | 7/25/2013 | Y |
| 172 | The New York Times | What's Next in the Case Against SAC | Peter J. Henning | 7/25/2013 | Y |
| 173 | The Street | SAC Capital Indicted on Decade-Long Fraud Conspiracy Charges | Antoine Gara | 7/25/2013 | Y |
| 174 | The Wall Street Journal | Feds Will Seek Forfeiture of Around $10 billion From SAC | Jenny Strasburg, Chad Bray and Mike Spector | 7/25/2013 | N |
| 175 | The Wall Street Journal | Former SAC Trader Is Cooperating in U.S. Case | Michael Rothfeld and Dan Cimilluca | 7/25/2013 | N |
| 176 | The Wall Street Journal | Indictment Turns Focus to SAC's Access to Capital | Jenny Strasburg, Liz Moyer and Matthias Rieker | 7/25/2013 | N |
| 177 | The Wall Street Journal | People at SAC Capital Engaged in 'Rampant Insider Trading,' U.S. Attorney Says | Chad Bray and Jenny Strasburg | 7/25/2013 | N |
| 178 | The Wall Street Journal | Plenty to Blame for High-Pressure Hedge-Fund Culture | Jason Zweig | 7/25/2013 | N |
| 179 | The Wall Street Journal | SAC Hit With Criminal Case* | Jenny Strasburg and James Sterngold | 7/25/2013 | Y |
| 180 | The Wall Street Journal | SAC Staff Are Liable to Head for Exits | Juliet Chung | 7/25/2013 | N |
| 181 | The Wall Street Journal | With SAC Case, U.S. Attorney Bharara Seeks Another Notch | Michael Rothfeld and Chad Bray | 7/25/2013 | N |
| 182 | The Wall Street Journal | Blockbuster Indictment Against SAC Capital is 'The World Series' | Paul Vigna | 7/25/2013 | N |
| 183 | The Wall Street Journal | In SAC Case, the Name Steve A. Cohen Is Conspicuous by Its Absence | James Sterngold | 7/25/2013 | N |
| 184 | The Wall Street Journal | Meet Richard Lee, The Fifth Ex-SAC Employee to Plead Guilty | Michael Rothfeld | 7/25/2013 | Y |
| 185 | The Wall Street Journal | SAC Indictment Argues Insider Trading Was 'the Norm,' Not Exception | Paul Vigna | 7/25/2013 | N |
| 186 | The Wall Street Journal | What SAC's Indictment Means | David Benoit | 7/25/2013 | N |
| 187 | The Wall Street Journal | Why Many SAC Employees Have Stayed With SAC | Juliet Chung | 7/25/2013 | N |
| 188 | The Wall Street Journal | Why Two Investors Are Sticking With SAC Capital | Juliet Chung | 7/25/2013 | Y |
| 189 | TIME | SAC Capital Indicted, in a Blow to Billionaire Steven A. Cohen | Sam Gustin | 7/25/2013 | N |
| 190 | TIME | Steve Cohen's (Allegedly) Corrupt "Information Gathering Machine" | Charles Gasparino | 7/25/2013 | Y |
| 191 | US News & World Report | Feds File Criminal Charges Against SAC Capital Advisors | Allie Bidwell | 7/25/2013 | N |
| 192 | USA Today | Clouds over hedge fund industry grow darker | Adam Shell | 7/25/2013 | Y |
| 193 | USA Today | Hedge fund SAC Capital indicted | Kevin McCoy and Tim Mullaney | 7/25/2013 | Y |
| 194 | USA Today | Hedge fund SAC Capital indicted | Kevin McCoy and Tim Mullaney | 7/25/2013 | Y |
| 195 | USA Today | SAC Capital hired to gain edge, government says | Kevin McCoy | 7/25/2013 | Y |
| 196 | USA Today | Who was named in SAC Capital indictment | Jack Fitzpatrick | 7/25/2013 | N |
| 197 | Wall St. Cheat Sheet | Did SAC Capital Turn a Blind Eye to Insider Trading? | Dan Ritter | 7/25/2013 | N |
| 198 | Washington Post | U.S. files criminal fraud charges against SAC Capital | Jia Lynn Yang | 7/25/2013 | N |
| 199 | Associated Press | 10 Things To Know For Today | N/A | 7/26/2013 | Y |
| 200 | Associated Press | Business Highlights | N/A | 7/26/2013 | N |
| 201 | Associated Press | Charges against hedge fund spark fallout worry | John Christoffersen | 7/26/2013 | N |
| 202 | Associated Press | Hedge fund SAC Capital pleads not guilty to wire and securities fraud | Tom Hays and Larry Neumeister | 7/26/2013 | N |
| 203 | Associated Press | Hedge Funds: From Rock Stars To Fallen Stars? | Christina Rexrode | 7/26/2013 | Y |
| 204 | Bloomberg | Cohen Ignored Warning Lee Had Insider-Trading Reputation | Katherine Burton and Kaijel Kishan | 7/26/2013 | N |
| 205 | Bloomberg | Morgan Stanley to JPMorgan Said to Keep Trading With SAC | Michael J. Moore and Hugh Son | 7/26/2013 | N |
| 206 | Bloomberg | SAC Capital Timeline: Insider Scheme Started in 1999 | Patricia Hurtado | 7/26/2013 | N |
| 207 | Bloomberg | SAC Reassures Clients as Steve Cohen Fights to Stay Open | Saijel Kishan and Katherine Burton | 7/26/2013 | N |
| 208 | Bloomberg | SAC's Cohen Risks Losing Fortune While Keeping Freedom | Patricia Hurtado and David Voreacos | 7/26/2013 | N |
| 209 | Bloomberg | SEC Fraud Probes Said to Suffer If E-Mails Kept Private | Todd Shields and Joshua Gallu | 7/26/2013 | Y |
| 210 | Bloomberg | Sutherland, Sullivan & Cromwell: Business of Law | Elizabeth Amon | 7/26/2013 | N |
| 211 | Bloomberg | Without Cohen, the Case Against SAC Is Lacking | N/A | 7/26/2013 | N |
| 212 | Business Insider | Here's The Real Reason Why Wall Street Is Freaked Out About The Insider Trading Charges Against SAC Capital | Julia La Roche | 7/26/2013 | Y |
| 213 | Business Insider | SAC Capital Pleads 'Not Guilty' To Five Charges Of Criminal Insider Trading | Julia La Roche | 7/26/2013 | Y |

*Denotes articles which appeared on page A1
**Denotes articles which appeared on page B1

Print and Online Coverage

| | Outlet Name | Headline | Reporter | Date | Posted to Twitter |
|---|---|---|---|---|---|
| 214 | Business Insider | The SAC Case Is The Holy Grail For Regulators | Steven Perlsberg | 7/26/2013 | Y |
| 215 | CNN Money | SAC Capital pleads not guilty | Aaron Smith and Chris Isidore | 7/26/2013 | Y |
| 216 | CNN Money | The government wants SAC Capital's billions | Maureen Farrell | 7/26/2013 | Y |
| 217 | Forbes | DOJ'S Case Against SAC Capital Is Built On Three Prongs | Michael Bobelian | 7/26/2013 | N |
| 218 | Forbes | Preet Bharara Determined To Sink SAC; How Boring | Walter Pavlo | 7/26/2013 | N |
| 219 | Fortune | SAC Capital punished for the government's own failure | Katie Benner | 7/26/2013 | N |
| 220 | Fortune | USA v. SAC: A simply unanswerable indictment | Roger Parloff | 7/26/2013 | Y |
| 221 | Fox Business | SAC Capital Pleads Not Guilty to Insider-Trading Charges | Matt Egan | 7/26/2013 | Y |
| 222 | New York Post | Cohen has pros and cons in Conn. | Kaja Whitehouse | 7/26/2013 | Y |
| 223 | New York Post | Back to bare walls: Feds looking to roll SAC for up to $10 billion | Kaja Whitehouse | 7/26/2013 | N |
| 224 | New York Post | SAC indicted by US, charge decade-long insider scam | Kaja Whitehouse | 7/26/2013 | N |
| 225 | Newsday | Spitzer, Bloomberg on opposite sides over Wall Street | Anthony M. Destefano | 7/26/2013 | N |
| 226 | Reuters | A.M. Best says 'assessing' situation at SAC's reinsurer | Svea Herbst-Baylis | 7/26/2013 | N |
| 227 | Reuters | Column: The folly of trying to level the investment playing field | Bethany McLean | 7/26/2013 | N |
| 228 | Reuters | SAC Capital pleads not guilty to insider-trading charges | Bernard Vaughan | 7/26/2013 | N |
| 229 | Reuters | SAC Capital pleads not guilty; reinsurance unit eyed | Bernard Vaughan and Svea Herbst-Bayliss | 7/26/2013 | N |
| 230 | Seeking Alpha | 3 Things I Think I Think | Cullen Roche | 7/26/2013 | N |
| 231 | Seeking Alpha | SAC and Steve Cohen In The SEC's Crosshairs | Jake Zamansky | 7/26/2013 | Y |
| 232 | The Financial Times | Poker whizz with an instinct for trading | Dan McCrum | 7/26/2013 | Y |
| 233 | The Financial Times | Wall Street braces itself for SAC fallout | Dan McCrum, Kara Scannell and Tom Braithwaite | 7/26/2013 | Y |
| 234 | The Motley Fool | What the SAC Capital Smackdown Means for Your Portfolio | Matt Koppenheffer and David Hanson | 7/26/2013 | N |
| 235 | The New York Times | At SAC, Rules Compliance With an 'Edge'* | James B. Stewart | 7/26/2013 | Y |
| 236 | The New York Times | Going After Steven Cohen's Wallet | Peter J. Henning | 7/26/2013 | Y |
| 237 | The New York Times | SAC Capital Is Arraigned on a Raft of Criminal Charges | Ben Protess | 7/26/2013 | Y |
| 238 | The Street | SAC Capital's Next Hurricane | Antoine Gara | 7/26/2013 | N |
| 239 | The Street | SAC Case Almost Quenches My Lust For Wall Street Blood | Dan Freed | 7/26/2013 | Y |
| 240 | The Wall Street Journal | Jenkins: SAC on the Chopping Block: Cui Bono? | Holman W. Jenkins, Jr. | 7/26/2013 | Y |
| 241 | The Wall Street Journal | Key Flip Pushed SAC Case Forward** | Susan Pulliam, Jenny Strasburg and Michael Rothfeld | 7/26/2013 | N |
| 242 | The Wall Street Journal | Will the SAC Case Affect Investor Confidence? | Paul Vigna | 7/26/2013 | N |
| 243 | Washington Post | Insider trading enriches and informs us, and could prevent scandals. Legalize it. | Dylan Matthews | 7/26/2013 | N |
| 244 | Barron's | They Said What? Detroit's Car Makers | Robin Goldwyn Blumenthal | 7/27/2013 | N |
| 245 | Bloomberg | Cohen, SAC Capital Sought 'Edge,' Prosecutors Say | Greg Farrell | 7/27/2013 | N |
| 246 | Bloomberg | Wiretap Evidence Included in SAC Capital Case, U.S. Says | Patricia Hurtado | 7/27/2013 | N |
| 247 | Business Insider | The CEO Of Overstock.com Took Out A Full Page Ad In The Wall Street Journal Mocking Steven Cohen | Linette Lopez | 7/27/2013 | N |
| 248 | Forbes | The Fish(SAC) Stinks From The Head(Steven Cohen) | Robert Lenzner | 7/27/2013 | N |
| 249 | New York Post | Missing Person | Kaja Whitehouse | 7/27/2013 | N |
| 250 | Reuters | Overstock.com CEO mocks SAC Capital indictment in WSJ ad | Susan Kelly | 7/27/2013 | Y |
| 251 | The Motley Fool | The Biggest Insider Trade In History | John Maxfield | 7/27/2013 | N |
| 252 | The New York Times | How to Gauge SAC on the Richter Scale | Gretchen Morgenson | 7/27/2013 | Y |
| 253 | Business Insider | OVERSTOCK.COM CEO: Steve Cohen Is Directly Responsible For Corruption That Has Cost Hundreds Of Thousands Of People Their Jobs | Linette Lopez | 7/28/2013 | N |
| 254 | Crain's New York Business | Feds accuse hedge giant SAC of rampant insider trading | Aaron Elstein and Amanda Fung | 7/28/2013 | Y |
| 255 | Crain's New York Business | SAC Capital's perilous path | Aaron Elstein | 7/28/2013 | Y |
| 256 | New York Magazine | Steve Cohen Partied Through SAC Capital's Criminal Indictment | Caroline Bankoff | 7/28/2013 | N |
| 257 | New York Post | Cohen Is sac(k)ed | Jonathon Trugman | 7/28/2013 | Y |
| 258 | Reuters | Steven Cohen throws a party despite his fund's indictment | Matthew Goldstein | 7/28/2013 | N |
| 259 | The Financial Times | Hedge funds gripped by crisis of performance | Dan McCrum | 7/28/2013 | N |
| 260 | The Wall Street Journal | SAC Operating Plan to Be Negotiated | James Sterngold and Joe Palazzolo | 7/28/2013 | N |
| 261 | The Wall Street Journal | The Troubling SAC Case | N/A | 7/28/2013 | Y |
| 262 | Bloomberg | Bharara Seeks Cohen Civil Case Stay Pending Criminal Outcome | Joshua Gallu and Saijel Kishan | 7/29/2013 | N |
| 263 | Bloomberg | SAC, Goldman, JPMorgan, GMAC, Daimler, Exxon Mobil: Compliance | Ellen Rosen | 7/29/2013 | N |
| 264 | Bloomberg | Weil's View On Finance | Jonathan Weil | 7/29/2013 | Y |
| 265 | CNBC | When parties are bad PR for the rich | Robert Frank | 7/29/2013 | Y |
| 266 | New York Post | In bad company | Kaja Whitehouse | 7/29/2013 | N |
| 267 | The Street | The Sad Truth Behind The SAC Indictment | Robert Barone | 7/29/2013 | Y |
| 268 | The Wall Street Journal | Keeping SAC Alive Is in Banks' Best Interest | Francesco Guerrera | 7/29/2013 | N |
| 269 | The Wall Street Journal | The Unusual Civil Forfeiture Complaint Against SAC | Joe Palazzolo | 7/29/2013 | N |
| 270 | Associated Press | Alleged Tipster Arrested In NY Hedge Fund Case | Tom Hays | 7/30/2013 | N |
| 271 | Bloomberg | Accused SAP Tipster Aggarwal Released on Bond by Judge | Karen Gullo | 7/30/2013 | N |
| 272 | Bloomberg | What Are the Odds That SAC's Cohen Read His E-Mail? | J.B. Heaton and Nicholas G. Polson | 7/30/2013 | N |
| 273 | CNBC | SEC charges analyst with giving SAC inside information | Justin Menza | 7/30/2013 | Y |
| 274 | CNN Money | Analyst charged with tipping SAC trader | James O'Toole | 7/30/2013 | Y |
| 275 | CNN Money | SAC indictment depicts culture of law-breaking | James O'Toole | 7/30/2013 | Y |
| 276 | Fox Business | Tech Analyst Latest To Face Insider Trading Charges Tied To SAC Capital | Steve Schaefer | 7/30/2013 | Y |
| 277 | Fox Business | SAC 'Tipper' Charged With Insider Trading | Dunstan Prial | 7/30/2013 | Y |
| 278 | Market Watch | Another cheater wins on Wall Street; Commentary: CEO of SAC Advisors still has 'edge' vs. the DOJ | David Weidner | 7/30/2013 | N |
| 279 | New York Observer | SAC Faces the Music: Preet Bharara Goes Nuclear on Hedge Fund—Is Cohen Next? | Duff McDonald | 7/30/2013 | N |
| 280 | New York Post | Alleged SAC Capital tipster arrested in NY hedge fund case | Kaja Whitehouse | 7/30/2013 | N |
| 281 | Reuters | Accused tipster to SAC hedge fund arrested in insider-trading probe | Emily Flitter and Dan Levine | 7/30/2013 | N |
| 282 | Reuters | SAC Re on review with negative implications: A.M. Best | Svea Herbst-Bayliss | 7/30/2013 | N |
| 283 | Reuters | UPDATE 1-Accused SAC Capital tipster arrested in California | N/A | 7/30/2013 | N |
| 284 | The Financial Times | Internet analyst charged in SAC case | Kara Scannell and Dan McCrum | 7/30/2013 | Y |

*Denotes articles which appeared on page A1
**Denotes articles which appeared on page B1

Print and Online Coverage

| | Outlet Name | Headline | Reporter | Date | Posted to Twitter |
|---|---|---|---|---|---|
| 285 | The New York Times | Ex-Stock Analyst Charged With Insider Trading in Case Tied to SAC Indictment | Peter Lattman | 7/30/2013 | N |
| 286 | The Street | SAC Capital's Reinsurance Venture Faces New Scrutiny | Antoine Gara | 7/30/2013 | N |
| 287 | The Street | SEC Charges Former Collins Stewart Tech Analyst in SAC Insider Trading Case | Antoine Gara | 7/30/2013 | Y |
| 288 | The Wall Street Journal | U.S. Charges Analyst in SAC Case | Michael Rothfeld and Jenny Strasburg | 7/30/2013 | N |
| 289 | Bloomberg | Goldman's Gary Cohn Says SAC Capital 'Great Counterparty' | Michael J. Moore | 7/31/2013 | N |
| 290 | Bloomberg | SAC Capital Probe Yields New Insider-Tipping Arrest | Patricia Hurtado | 7/31/2013 | N |
| 291 | Bloomberg | SAC Seen Avoiding $14 Billion Death Penalty From U.S. | Greg Farrell and Patricia Hurtado | 7/31/2013 | Y |
| 292 | Bloomberg | To Avoid Public Pillory, Keep Your Misdeeds Boring | Margaret Carlson | 7/31/2013 | Y |
| 293 | Bloomberg | Tourre Trial, MF Global CDS Suit, Insider: Compliance | Carla Main | 7/31/2013 | N |
| 294 | Bloomberg | Weil's Views on Finance, Afternoon Edition | Jonathan Weil | 7/31/2013 | N |
| 295 | Forbes | Insider Trading -- The Training Game -- Sounds A Little Like SAC | Tom Groenfeldt | 7/31/2013 | N |
| 296 | Forbes | THE Book On Insider Trading, 'The Billionaire's Apprentice' | Walter Pavlo | 7/31/2013 | N |
| 297 | New York Business Journal | Another arrest related to SAC Capital | N/A | 7/31/2013 | N |
| 298 | New York Post | SACked: Analyst charged | Kaja Whitehouse | 7/31/2013 | N |
| 299 | Reuters | Goldman Sachs COO says SAC Capital still "important client" -CNBC | N/A | 7/31/2013 | N |
| 300 | Seeking Alpha | GreenHunter: Better Short Selling Opportunity Than Trading Against SAC | Josh Young | 7/31/2013 | N |
| 301 | The Financial Times | Most hedge funds can only dream of SAC-style returns | Sam Jones | 7/31/2013 | N |
| 302 | The Motley Fool | The Insider Trading Crackdown Is Working -- Here's How We Know | Morgan Housel | 7/31/2013 | N |
| 303 | The Motley Fool | Warren Buffett's Not Afraid of This; Why Are So Many Other Companies? | Gerelyn Terzo | 7/31/2013 | N |
| 304 | The Street | SAC Indictment Marks End of an Era | Dana Blankenhorn | 7/31/2013 | Y |
| 305 | Seeking Alpha | The End Of The Hedge Fund Steroid Era | Alex Bentley | 8/1/2013 | Y |
| 306 | The New York Times | Hiring of Fired Trader Offers a Glimpse Into SAC's Practices* | Ben Protess and Peter Lattman | 8/1/2013 | N |
| 307 | USA Today | Ex-Goldman Trader 'Fabulous Fab' Loses Fraud Case | Tim Mullaney | 8/1/2013 | Y |
| 308 | Bloomberg | Alleged SAC Tipper Aggarwal Released on $500,000 Bond | Patricia Hurtado | 8/2/2013 | N |
| 309 | The Wall Street Journal | Case Against SAC Founder May Be Delayed | Jenny Strasburg and Jean Eaglesham | 8/2/2013 | N |
| 310 | Reuters | SAC lawyers support delay in civil case against firm's founder | Casey Sullivan and Emily Flitter | 8/3/2013 | Y |
| 311 | The Motley Fool | Hedge Funds Are More About Playing Games Than About Investing | Travis Hoium | 8/3/2013 | N |
| 312 | The Motley Fool | You're a Bad Investor. Here's How to Get Better. | John Maxfield | 8/3/2013 | N |
| 313 | Bloomberg | Most Read on Bloomberg: Potash, Tourre, the Fed, Banker in Nepal | Audrey Barker | 8/4/2013 | N |
| 314 | Bloomberg | SAC Manager Steinberg Seeks to Question Some Witnesses | Patricia Hurtado | 8/5/2013 | N |
| 315 | Forbes | Insider Trading Is A Right: Don't Shackle The Knowledge-Seekers | Harry Binswanger | 8/5/2013 | N |
| 316 | The New York Times | The Gray Line of 'Confidential' Information | Peter J. Henning | 8/5/2013 | Y |
| 317 | The Wall Street Journal | SAC Case Has Pointers For Federal Managers | Dean Kedenburg | 8/5/2013 | N |
| 318 | The Wall Street Journal | SAC Trader Seeks Access To Some Witnesses in SEC Civil Case | Chad Bray | 8/5/2013 | N |
| 319 | Bloomberg | HSBC, Oppenheimer, US Airways-AMR, EU Banks: Compliance | Ellen Rosen | 8/6/2013 | N |
| 320 | Bloomberg | SAC Insider-Trading Investigation Continues, Bharara Says | Patricia Hurtado | 8/6/2013 | N |
| 321 | CNBC | Wall Street's big SAC Capital problem | N/A | 8/6/2013 | Y |
| 322 | Forbes | Insider Trading? Go Ahead, Guess | Walter Pavlo | 8/6/2013 | N |
| 323 | The New York Times | SAC Prosecutor Hits the Media Trail | Peter Lattman | 8/6/2013 | N |
| 324 | Bloomberg | EEOC, BofA, Ebix, Zimbabwe, BNY Mellon, Munis: Compliance | Ellen Rosen | 8/7/2013 | N |
| 325 | Bloomberg | SAC's Cohen Shouldn't Get Evidence in SEC Case, U.S. Says | Patricia Hurtado | 8/7/2013 | N |
| 326 | Bloomberg | Traders Look for New Jobs as Endgame Looms Over SAC | Saijel Kishan, Katherine Burton and Kelly Bit | 8/7/2013 | N |
| 327 | Forbes | Case Against SAC Capital Opens New Questions | Michael Bobelian | 8/7/2013 | N |
| 328 | New York Post | Business briefs | N/A | 8/7/2013 | N |
| 329 | Seeking Alpha | Cliffs Natural Resources: Poised To Make The Shorts Cover? | N/A | 8/7/2013 | Y |
| 330 | The Wall Street Journal | U.S. Opposes Evidence Request by SAC's Cohen | Jenny Strasburg | 8/7/2013 | N |
| 331 | Associated Press | SEC delaying civil action against Cohen | N/A | 8/8/2013 | N |
| 332 | Reuters | Judge orders hold on administrative proceeding against SAC's Cohen | Emily Flitter | 8/8/2013 | Y |
| 333 | Barron's | Morning Read: Rival Buyout Group For Smithfield? | Brendan Conway | 8/9/2013 | N |
| 334 | Bloomberg | Japan GDP, U.S. Retail Sales, SAC, Cisco: Week Aug. 10-17 | Heather Langan, Greg Miles and Jim McDonald | 8/9/2013 | N |
| 335 | Reuters | SAC, prosecutors strike formal deal to keep firm going | Erin Geiger Smith | 8/9/2013 | Y |
| 336 | The New York Times | Facing Loss of Capital, SAC Is Said to Talk of Layoffs** | Peter Lattman | 8/9/2013 | N |
| 337 | The Wall Street Journal | SAC Business Plan Goes to Judge | Jenny Strasburg | 8/9/2013 | N |
| 338 | The Wall Street Journal | SAC Is Bracing for an Investor Exit** | Jenny Strasburg | 8/9/2013 | N |
| 339 | Bloomberg | SAC Allowed by Federal Judge to Keep Operating | Patricia Hurtado | 8/10/2013 | N |
| 340 | New York Post | Judge OK's SAC's plan | Patricia Hurtado | 8/10/2013 | Y |
| 341 | Seeking Alpha | SAC braces for investor abandonment | N/A | 8/11/2013 | Y |
| 342 | Bloomberg | Railroads, Juniper, Health Law, Harbinger: Compliance | Ellen Rosen and Carla Mann | 8/12/2013 | N |
| 343 | Bloomberg | SAC's Parameter Trading Unit Is Said to Close Amid Probe | Saijel Kishan | 8/12/2013 | N |
| 344 | Bloomberg | U.S. Retail Sales, SAC, Wal-Mart, Cisco: Week Ahead Aug. 12-17 | Heather Langan, Greg Miles and Jim McDonald | 8/12/2013 | N |
| 345 | Reuters | SAC Capital affiliate Parameter Capital closes: sources | Katya Wachtel | 8/12/2013 | N |
| 346 | The New York Times | SAC Capital Closes a Trading Unit as It Starts to Retrench | Ben Protess and Alexandra Stevenson | 8/12/2013 | N |
| 347 | The New York Times | Wall St. Debates Who Should Pay Legal Bills** | Andrew Ross Sorkin | 8/12/2013 | Y |
| 348 | Bloomberg | 'Too-Big' Insurers, Loss Absorbency, SAC: Compliance | Carla Main | 8/13/2013 | N |
| 349 | New York Post | SAC loses Parameter | N/A | 8/13/2013 | N |
| 350 | The New York Times | U.S. Puts a Helpful Face on Its Fraud Case | Peter J. Henning | 8/14/2013 | Y |
| 351 | Bloomberg | SAC Shrinks U.S. Stock Holdings by $2 Billion Amid Probe | Saijel Kishan | 8/15/2013 | Y |
| 352 | Fortune | The gray art of not quite insider trading | Roger Parloff | 8/15/2013 | N |
| 353 | Fortune | What is insider trading? | Roger Parloff | 8/15/2013 | N |
| 354 | Barron's | Morning Read: Dow Heads For Second Straight Weekly Loss | Brendan Conway | 8/16/2013 | N |
| 355 | Bloomberg | Cohen Said to Refuse SAC Client Push to Return Cash Early | Katherine Burton and Saijel Kishan | 8/16/2013 | Y |
| 356 | Bloomberg | Pension Bailout, SAC Stock Sales, Metal: Compliance | Carla Main | 8/16/2013 | N |
| 357 | CNBC | As SAC questions loom, investors head for the door | Kate Kelly | 8/16/2013 | N |
| 358 | Reuters | SAC likely to face fresh redemption requests at Friday deadline | Svea Herbst-Bayliss | 8/16/2013 | Y |
| 359 | The Financial Times | SAC Capital will not spend return of outside investors' cash | Dan McCrum | 8/16/2013 | N |
| 360 | The New York Times | As Investors Jump Ship, SAC Looks to Cut Back** | Alexandra Stevenson and Peter Lattman | 8/16/2013 | Y |

*Denotes articles which appeared on page A1
**Denotes articles which appeared on page B1

Print and Online Coverage

| | Outlet Name | Headline | Reporter | Date | Posted to Twitter |
|---|---|---|---|---|---|
| 361 | The Wall Street Journal | An SAC Loyalist Weighs the Cost** | Juliet Chung and Jenny Strasburg | 8/16/2013 | N |
| 362 | Bloomberg | SAC's Money Market Lesson | Matthew C. Klein | 8/18/2013 | Y |
| 363 | New York Post | Cohen: A dead man walking? | John Aidan Byrne | 8/18/2013 | Y |
| 364 | Associated Press | Hedge Fund Titan Phil Falcone To Settle With SEC | Christina Rexrode | 8/19/2013 | N |
| 365 | Seeking Alpha | How To Protect Yourself From Wall Street Insiders | David Trainer | 8/19/2013 | N |
| 366 | Forbes | Protect Yourself From Wall Street Insiders | David Trainer | 8/20/2013 | N |
| 367 | The Motley Fool | Here's What Billionaire John Paulson Has Been Buying | Selena Maranjian | 8/20/2013 | N |
| 368 | The Wall Street Journal | Falcone Settlement Seen as Model | Chad Bray | 8/20/2013 | N |
| 369 | Associated Press | US: Ex-Fund Manager Got Help From Multiple Doctors | Larry Neumeister | 8/22/2013 | N |
| 370 | Reuters | New Martoma indictment describes second doctor as insider source | Emily Flitter | 8/22/2013 | N |
| 371 | Reuters | Second doctor described in new indictment against SAC's Martoma | N/A | 8/22/2013 | Y |
| 372 | The New York Times | New Claims in U.S. Case Against SAC Ex-Trader | Peter Lattman | 8/22/2013 | N |
| 373 | The Wall Street Journal | U.S. Expands Case Against Former SAC Trader | Chad Bray | 8/22/2013 | N |
| 374 | Associated Press | Business Highlights | N/A | 8/23/2013 | N |
| 375 | Associated Press | Ex-fund manager's NY trial moved to January | N/A | 8/23/2013 | N |
| 376 | Bloomberg | Ex-SAC Manager Martoma Tipped By Second Doctor, U.S. Says | Bob Van Voris | 8/23/2013 | N |
| 377 | New York Post | Ex-SAC guy pumped 20 docs for info: US | N/A | 8/23/2013 | Y |
| 378 | The Financial Times | Prosecutors seek $13.7m from ex-SAC manager Mathew Martoma | Kara Scannell | 8/23/2013 | N |
| 379 | Bloomberg | SEC Proposal, CFTC Rules, BB&T, Monte Paschi: Compliance | Michael Bathon | 8/26/2013 | N |
| 380 | Forbes | SAC Indictment Could Have Silver Lining | Robert W. Wood | 8/26/2013 | N |
| 381 | Seeking Alpha | This Market Is Risky For Retail Investors -- Caution Warranted | Michael Blair | 8/26/2013 | Y |
| 382 | Fox Business | Bharara Holds Court (Late Night) at Sparks | Charlie Gasparino and Julie Verhage | 8/27/2013 | N |
| 383 | Seeking Alpha | Tide Slowly Turning On Chipotle | N/A | 8/28/2013 | Y |
| 384 | The Motley Fool | Here's What This $18 Billion Scandal-Ridden Hedge Fund Has Been Buying | Selena Maranjian | 8/28/2013 | N |
| 385 | Bloomberg | SAC Capital Civil Suit Should Be Delayed, U.S. Asks Judge | Christie Smythe | 8/29/2013 | N |
| 386 | Forbes | Sentences, Prosecutors, Costs, Oh My: A Conversation With A White Collar Bar Legend. | Lawrence Bader | 8/29/2013 | N |
| 387 | Reuters | Money manager Vilar's conviction upheld, new sentence ordered | Jonathan Stempel | 8/30/2013 | N |
| 388 | Seeking Alpha | SAC's Cohen resigned to running family office | N/A | 8/30/2013 | Y |
| 389 | Bloomberg | ImClone's Waksal Back in Biotech With Plans for Spinouts | Meg Tirrell | 9/3/2013 | N |
| 390 | Bloomberg | Most Influential 50 New Names Show Shakeup in Finance | Robert S. Dieterich | 9/3/2013 | N |
| 391 | CNBC | SAC Capital looking at just managing insider capital | Kate Kelly | 9/3/2013 | N |
| 392 | Bloomberg | SAC Forfeiture Delayed as Criminal Trials Near | Patricia Hurtado | 9/4/2013 | N |
| 393 | Bloomberg | SAC Is Said to Raise 2014 Bonuses After Insider Charges | Saijel Kishan | 9/4/2013 | N |
| 394 | New York Post | SAC pays bonuses to keep staff | Kaja Whitehouse | 9/4/2013 | N |
| 395 | Reuters | SAC to offer retention bonuses to some staff for next year | Svea Herbst-Bayliss | 9/4/2013 | Y |
| 396 | Reuters | U.S. judge puts SAC Capital civil lawsuit on hold | Nate Raymond and Svea Herbst-Bayliss | 9/4/2013 | N |
| 397 | Reuters | US judge stays SAC Capital forfeiture action as criminal case proceeds | N/A | 9/4/2013 | N |
| 398 | The Wall Street Journal | Judge Delays Forfeiture Case Against SAC Capital | Chad Bray | 9/4/2013 | N |
| 399 | Bloomberg | Joel Ross Is Said to Be Second Physician in SAC Insider Case | Patricia Hurtado | 9/5/2013 | N |
| 400 | Bloomberg | SAC Case Delay, Fannie Mae Risk, Bank Size: Compliance | Carla Main | 9/5/2013 | N |
| 401 | The New York Times | Prominent Doctor Said to Be Tied to Insider Trading Case at SAC** | Peter Lattman | 9/5/2013 | Y |
| 402 | The Wall Street Journal | New Jersey's Dr. Joel Ross Is Added to SAC Probe Roster | Reed Albergotti and Michael Rothfeld | 9/5/2013 | N |
| 403 | Bloomberg | Second Martoma Tipper Identified as SAC Trial Nears | Patricia Hurtado | 9/6/2013 | Y |
| 404 | New York Post | Sad SAC may fumble on Super Bowl deal | Kaja Whitehouse and Claire Atkinson | 9/10/2013 | N |
| 405 | CNBC | Why SAC Capital's Super Bowl sponsorship will stay | John Carney | 9/11/2013 | N |
| 406 | Bloomberg | Jon Corzine No Problem In How He Ran MF Global (Into Bankruptcy) | Matt Levine | 9/12/2013 | N |
| 407 | CNBC | SAC sees traders bolt as firm's troubles mount | Lawrence Delevingne | 9/13/2013 | Y |
| 408 | Reuters | Some SAC Capital investment staff jumping to rival firm | Svea Herbst-Bayliss | 9/13/2013 | N |
| 409 | Bloomberg | Ex-Level Global Analyst Adondakis's Sentencing Is Delayed | Patricia Hurtado | 9/16/2013 | N |
| 410 | Forbes | America's Richest Hedge Fund Managers | Edwin Durgy | 9/16/2013 | Y |
| 411 | Forbes | Insider Trading Nightmare, The IBM Trade That Went Bad | Walter Pavlo | 9/17/2013 | N |
| 412 | Reuters | Co-founder of defunct hedge fund Diamondback launches new firm | Svea Herbst-Bayliss | 9/17/2013 | N |
| 413 | The New York Times | Wielding Broader Powers, S.E.C. Examines Hedge Funds in London | Anita Raghavan | 9/17/2013 | N |
| 414 | Bloomberg | Ex-SAC Analyst Dennis Uncharged Co-Conspirator, U.S. Says | Patricia Hurtado | 9/18/2013 | N |
| 415 | Reuters | U.S. names alleged co-conspirators in insider case of SAC's Steinberg | Nate Raymond and Jonathan Stempel | 9/18/2013 | Y |
| 416 | The New York Times | Blankfein Discusses Goldman's Support of SAC Capital | Peter Lattman | 9/18/2013 | N |
| 417 | Bloomberg | Ex-Wife Of SAC's Cohen Gets Last Chance To Amend Suit | Bob Van Voris | 9/19/2013 | N |
| 418 | The Street | Jamie Dimon as the Steven Cohen of Banking | Antoine Gara | 9/19/2013 | Y |
| 419 | Bloomberg | JPMorgan to Pay $920 Million, Ex-SAC Analyst: Compliance | Carla Main | 9/20/2013 | N |
| 420 | The Wall Street Journal | Attorney Seeks Delay in Martoma Insider-Trading Case | James Sterngold | 9/22/2013 | N |
| 421 | Barron's | Bloomberg: SAC's Cohen Ready to Settle, Fine as High As $1 Billion Eyed | Brendan Conway | 9/23/2013 | N |
| 422 | Bloomberg | Insider Trading Buddies Nailed By ... Metrocards? | Matt Levine | 9/23/2013 | Y |
| 423 | New York Post | Steve Cohen seeks settlement for SAC | Kaja Whitehouse | 9/23/2013 | N |
| 424 | Reuters | SAC seeks to settle insider trading charges -Bloomberg Businessweek | Emily Flitter | 9/23/2013 | Y |
| 425 | The Wall Street Journal | Open-Government Laws Fuel Hedge-Fund Profits* | Brody Mullins and Christopher Weaver | 9/23/2013 | N |
| 426 | Associated Press | NY judge moves ex-fund manager's inside information trial to January | N/A | 9/24/2013 | N |
| 427 | Bloomberg | Astroturfers Settle, SAC Explores Settling: Compliance | Carla Main | 9/24/2013 | N |
| 428 | Bloomberg | Ex-SAC Manager Martoma Has Home, Assets Frozen in Case | Bob Van Voris | 9/24/2013 | N |
| 429 | Bloomberg | Why are the Feds Protecting SAC Capital's Investors? | Matt Levine | 9/24/2013 | N |
| 430 | CNBC | Prosecutors suggest settling insider trading case against SAC | Kate Kelly | 9/24/2013 | N |
| 431 | New York Post | Feds open to SAC Capital deal | Kaja Whitehouse | 9/24/2013 | N |
| 432 | The New York Times | SAC Is Said to Negotiate Settlement of Charges** | Peter Lattman | 9/24/2013 | Y |
| 433 | The New York Times | Trial Delayed for Former SAC Executive | Peter Lattman | 9/24/2013 | Y |

*Denotes articles which appeared on page A1
**Denotes articles which appeared on page B1

Print and Online Coverage

| | Outlet Name | Headline | Reporter | Date | Posted to Twitter |
|---|---|---|---|---|---|
| 434 | The Wall Street Journal | Prosecutors Pursue Big SAC Settlement* | Michael Rothfeld, Jenny Strasburg and Susan Pulliam | 9/24/2013 | N |
| 435 | The Wall Street Journal | Trial of SAC Capital Former Portfolio Manager Delayed | James Sterngold | 9/24/2013 | N |
| 436 | Bloomberg | JPMorgan Talks, BofA Race Bias, Libor Suit: Compliance | Carla Main | 9/25/2013 | N |
| 437 | Bloomberg | Weil on Finance: Deal time for Feds and SAC Capital? | Jonathan Weil | 9/25/2013 | Y |
| 438 | Seeking Alpha | SAC Faces fine of up to $2B as talks start to settle charges | N/A | 9/25/2013 | Y |
| 439 | New York Post | SAC Capital head might be pleading guilty | Kaja Whitehouse | 9/28/2013 | Y |
| 440 | Bloomberg | Most Read on Bloomberg: Burger Flipper, JPMorgan, SAC, Cinnabon | Audrey Barker | 9/29/2013 | N |
| 441 | Bloomberg | Hedge Fund Manager Wants to Be on TV | Matt Levine | 9/30/2013 | N |
| 442 | Bloomberg | SAC Energy Manager Nick Tiller Is Retiring After 12 Years | Kelly Bit | 9/30/2013 | N |
| 443 | CNBC | Another SAC Capital trader departs | Kate Kelly | 10/1/2013 | Y |
| 444 | Bloomberg | SAC Says Three London Portfolio Managers Left Hedge Fund | Jesse Westbrook and Chris Larson | 10/2/2013 | N |
| 445 | The New York Times | 3 London Portfolio Managers Leave SAC Capital | Chad Bray | 10/2/2013 | Y |
| 446 | The Wall Street Journal | Three SAC Capital Managers in London Leave Firm | Juliet Chung | 10/2/2013 | N |
| 447 | Bloomberg | Cohen Said To Seek Buyer For $500 Million Reinsurer | Katherine Burton | 10/3/2013 | N |
| 448 | CNN Money | Citi fined $30 million for leaking Apple iPhone supply chain data | Philip Elmer-DeWitt | 10/3/2013 | Y |
| 449 | Fortune | Citi fined $30 million for leaking Apple iPhone supply chain data | Philip Elmer-DeWitt | 10/3/2013 | N |
| 450 | New York Post | Citi fined $30M for leaking iPhone info to SAC | N/A | 10/3/2013 | Y |
| 451 | Reuters | Three London-based fund managers leave Cohen's SAC Capital | Svea Herbst-Bayliss | 10/3/2013 | N |
| 452 | The New York Times | SAC's Forceful Ways Shown in Massachusetts Citi Case** | Alexandra Stevenson and Ben Protess | 10/3/2013 | N |
| 453 | The Wall Street Journal | SAC Seeks Buyer for Reinsurer | Leslie Scism, Juliet Chung and Ryan Dezember | 10/3/2013 | N |
| 454 | Reuters | Email, unlikely to aid SAC trader's case, could help defense: sources | Matthew Goldstein and Emily Flitter | 10/4/2013 | Y |
| 455 | The Financial Times | Investors lack desire to re-enter markets that seem rigged | Brooke Masters | 10/4/2013 | N |
| 456 | The New York Times | At the S.E.C., a Question of Home-Court Edge | Gretchen Morgenson | 10/5/2013 | N |
| 457 | Forbes | Prosecutors Spoon Feed Journalists Stories | Walter Pavlo | 10/7/2013 | N |
| 458 | The New York Times | The Netherworld of What Constitutes Insider Trading | Peter J. Henning | 10/7/2013 | Y |
| 459 | CNBC | Cohen's SAC, prosecutors can't reach settlement | Kate Kelly | 10/8/2013 | N |
| 460 | The Financial Times | Prosecutors give SAC settlement ultimatum | Kara Scannell | 10/8/2013 | Y |
| 461 | The New York Times | SAC Is Said to Weigh Plea Deal in Insider Trading Case** | Peter Lattman | 10/8/2013 | Y |
| 462 | Market Watch | SAC Capital headed for insider-trading plea deal, reports say | Sital S. Patel | 10/9/2013 | N |
| 463 | New York Business Journal | SAC Capital, with little leverage, has until November to settle, say feds | N/A | 10/9/2013 | N |
| 464 | Reuters | SEC on the prowl for rule breakers big and small, White says | Sarah N. Lynch | 10/9/2013 | Y |
| 465 | The New York Times | Legal Bills Rising, Cohen Is Said to Plan Art Sales** | Peter Lattman and Carol Vogel | 10/13/2013 | Y |
| 466 | Business Insider | SAC Capital's Steve Cohen Is Trying To Sell Two Of His Awesome Warhol Paintings | Steven Perlberg | 10/14/2013 | Y |
| 467 | Forbes | Hedge Fund Billionaire Steve Cohen Is Selling Two Warhols And A Richter, Is He Short On Cash? | Agustino Fontevecchia | 10/14/2013 | Y |
| 468 | Market Watch | SAC Capital founder Steve Cohen selling art as legal bills pile up: report | Sital S. Patel | 10/14/2013 | Y |
| 469 | The Wall Street Journal | Citigroup Fined Over Early Release of Report on Apple Supplier | Shayndi Raice, Saabira Chaudhuri and Alexandra Scaggs | 10/14/2013 | N |
| 470 | Bloomberg | Billionaire Cohen's Art May Fetch $60 Million at Auction | Katya Kazakina | 10/15/2013 | N |
| 471 | Bloomberg | ECB Oversight, FDIC Bank-Failure Path, Norway: Compliance | Carla Main | 10/15/2013 | N |
| 472 | Bloomberg | Steinberg's Prosecutors Seek to Show Trading by Others | Patricia Hurtado | 10/16/2013 | N |
| 473 | Bloomberg | Convicted Expert Networker Nguyen Gets 2 Years' Probation | Patricia Hurtado | 10/17/2013 | N |
| 474 | Bloomberg | SAC Portfolio Manager Levavasseur Said to Join Millennium | Jesse Westbrook | 10/17/2013 | N |
| 475 | Business Insider | REPORT: SAC Capital Will Pay Over $1 Billion As Insider Trading Penalty | Linette Lopez | 10/17/2013 | Y |
| 476 | CNBC | Facing probe, Steve Cohen's shrinks trading book | Kate Kelly | 10/17/2013 | N |
| 477 | CNBC | SAC Capital nears record insider trading settlement: sources | Kate Kelly and Javier E. David | 10/17/2013 | Y |
| 478 | Forbes | Billion Dollar Settlements Are The New Black On Wall Street | Halah Touryalai | 10/17/2013 | Y |
| 479 | Forbes | Steve Cohen's SAC Capital May Settle Criminal Insider Trading Case For Over $1B: WSJ | Agustino Fontevecchia | 10/17/2013 | Y |
| 480 | Market Watch | Report: SAC could settle insider trading charges | Christina Rexrode | 10/17/2013 | Y |
| 481 | New York Post | SAC's Cohen faces $1.4B fine | Michelle Celarier | 10/17/2013 | N |
| 482 | Reuters | SAC Capital deal with U.S. prosecutors gets closer: source | Matthew Goldstein, Katya Wachtel and Svea Herbst-Bayliss | 10/17/2013 | Y |
| 483 | The Daily Beast/Newsweek | Hedgefund [sic] to Pay Record Settlement | N/A | 10/17/2013 | N |
| 484 | The New York Times | Plea Agreement Could End SAC's Advisory Business** | Ben Protess and Peter Lattman | 10/17/2013 | N |
| 485 | The Wall Street Journal | Prosecutors and SAC Head Toward a Possible Record-Breaking Settlement | Michael Rothfeld and Juliet Chung | 10/17/2013 | N |
| 486 | Fox Business | SEC's White: Hedge Fund Transparency Benefits Investors | Dunstan Prial | 10/18/2013 | N |
| 487 | Bloomberg | SAC Trader Lia Forcina Said to Leave Hedge Fund for BlueCrest | Jesse Westbrook | 10/19/2013 | N |
| 488 | The New York Times | Tentative Deal Would JPMorgan Chase a Record Penalty* | Ben Protess and Jessica Silver-Greenberg | 10/19/2013 | Y |
| 489 | Bloomberg | SAC Defections Accelerate as Cohen Approaches Settlement | Katherine Burton and Jesse Westbrook | 10/21/2013 | Y |
| 490 | Business Insider | Steve Cohen Invited Guy Fieri To His Mansion For Hot Dogs And May Have Paid Him $100,000 To Do So | Julia La Roche | 10/21/2013 | Y |
| 491 | Market Watch | 5 of the biggest corporate fines ever | N/A | 10/21/2013 | N |
| 492 | New York Business Journal | As SAC Capital nears settlement, Wall Street adapts to new enforcement norms | N/A | 10/21/2013 | N |
| 493 | New York Magazine | Report: Hedge-Fund Billionaire Steve Cohen Shelled Out $100,000 to Hang With Guy Fieri | Kevin Roose | 10/21/2013 | Y |
| 494 | New York Post | SAC investors to keep big profits | Michelle Celarier | 10/21/2013 | Y |
| 495 | New York Post | Steve Cohen paid $100K to become Guy Fieri's friend | N/A | 10/21/2013 | Y |
| 496 | New York Post | Why you should start caring about the US dollar | John Crudele | 10/21/2013 | Y |
| 497 | TIME | Billionaire Reportedly Paid Guy Fieri $100,000 to Be His Friend | Melissa Locker | 10/21/2013 | N |
| 498 | TIME | SAC's Settlement Signals the End of the Wild West on Wall Street | Christopher Matthews | 10/21/2013 | N |
| 499 | Barron's | SAC Advisors Plans To Shut London Office, Bloomberg Reports | Johanna Bennett | 10/22/2013 | N |
| 500 | Bloomberg | SAC Plans to Close London Office, Cuts Six U.S. Positions | Jesse Westbrook | 10/22/2013 | Y |
| 501 | Business Insider | REPORT: SAC Capital Is Going To Shut Down Its London Office | Julia La Roche | 10/22/2013 | Y |
| 502 | New York Post | SAC to close London office, cut six US manager jobs | Michelle Celarier | 10/22/2013 | N |

*Denotes articles which appeared on page A1
**Denotes articles which appeared on page B1

Print and Online Coverage

| | Outlet Name | Headline | Reporter | Date | Posted to Twitter |
|---|---|---|---|---|---|
| 503 | The Financial Times | SAC to shut London office as it cuts staff | Stephen Foley and Kara Scannell | 10/22/2013 | Y |
| 504 | The New York Times | Judge Orders Goldman to Pay Ex-Programmer's Legal Bills | Peter Lattman | 10/22/2013 | Y |
| 505 | The New York Times | SAC Capital Retrenches as Insider Trading Inquiry Drains Firm** | Peter Lattman | 10/22/2013 | Y |
| 506 | The Wall Street Journal | SAC to Close London Office | Juliet Chung | 10/22/2013 | Y |
| 507 | Bloomberg | SAC Retreating in London as U.S. Pushes for Tough Terms | Jesse Westbrook and Katherine Burton | 10/23/2013 | Y |
| 508 | Reuters | Cohen's SAC will close London office by year-end | Katya Wachtel | 10/23/2013 | Y |
| 509 | Reuters | U.S. court upholds ex-consultant Jiau's insider trading conviction | Jonathan Stempel | 10/23/2013 | Y |
| 510 | CNBC | Up big, hedge fund Conatus poaches from SAC, others | Lawrence Delevingne | 10/24/2013 | Y |
| 511 | The New York Times | After Muddy Waters Report, NQ Mobile Falls by Half | William Alden | 10/24/2013 | Y |
| 512 | Washington Post | The politics of bad apples | Nolan McCarty, Keith Poole and Howard Rosenthal | 10/24/2013 | Y |
| 513 | Washington Post | Steve Cohen (probably) isn't selling Warhols to pay his legal bills | Katherine Boyle | 10/27/2013 | Y |
| 514 | Bloomberg | SAC's Steinberg Seeks to Preclude Evidence About Galleon | Patricia Hurtado | 10/28/2013 | N |
| 515 | CNBC | SAC, prosecutors are ready to settle: Sources | Kate Kelly | 10/28/2013 | Y |
| 516 | New York Post | SAC plea deal could come this week: report | Michelle Celarier | 10/28/2013 | Y |
| 517 | New York Post | SAC to plead guilty to fraud | Michelle Celarier | 10/29/2013 | Y |
| 518 | Reuters | SAC Capital plea deal may come early next week: WSJ | Emily Flitter | 10/29/2013 | Y |
| 519 | The Wall Street Journal | SAC to Plead Guilty to Securities Fraud | Michael Rothfeld and Jean Eaglesham | 10/29/2013 | Y |
| 520 | Bloomberg | Cohen's Ex-Wife Says Case Against SAC Is Proof She Is Victim | Patricia Hurtado | 10/30/2013 | N |
| 521 | Bloomberg | Levine on Wall Street: Carl Icahn, Bad Winner | Matt Levine | 10/30/2013 | N |
| 522 | Bloomberg | Weil on Finance: Dell's Haunted House | Jonathan Weil | 10/30/2013 | Y |
| 523 | Seeking Alpha | SAC to admit securities fraud, to pay $1.2B | N/A | 10/30/2013 | Y |
| 524 | The New York Times | Under Fire, Hedge-Fund Billionaire to Sell Choice Art | Carol Vogel and Peter Lattman | 10/30/2013 | Y |
| 525 | Bloomberg | Fund Research Costs, Infosys, SAC Ex-Wife: Compliance | Carla Main | 10/31/2013 | N |
| 526 | Bloomberg | Jamie Dimon and Steven Cohen: A Tale of Two Mega-settlements | Sheelah Kolhatkar | 10/31/2013 | N |
| 527 | Forbes | NQ Mobile Rallies 80% As Billionaire Steve Cohen's SAC Capital Gets Burned | Agustino Fontevecchia | 10/31/2013 | Y |
| 528 | Bloomberg | SAC's Cohen to Auction Artworks Valued at $85 Million | Katya Kazakina and Philip Boroff | 11/2/2013 | Y |
| 529 | Economist | A culture of fear | N/A | 11/2/2013 | Y |
| 530 | Business Insider | REPORT: SAC Will Plead Guilty To Insider Trading As Soon As Monday | Rob Wile | 11/3/2013 | Y |
| 531 | The New York Times | SAC Nears an Insider Trading Guilty Plea, but Legal Cases Aren't Shut** | Ben Protess and Peter Lattman | 11/3/2013 | Y |
| 532 | The Wall Street Journal | SAC, U.S. to Unveil Record Insider Pact | Jean Eaglesham and Michael Rothfeld | 11/3/2013 | Y |
| 533 | Associated Press | Hedge Fund Giant SAC Capital To Pay $1.8B Penalty | Larry Neumeister and Marcy Gordon | 11/4/2013 | Y |
| 534 | Associated Press | Key events leading to SAC Capital's $1.8B penalty | N/A | 11/4/2013 | Y |
| 535 | Associated Press | Questions On SAC Capital's Insider Trading Case | Marcy Gordon | 11/4/2013 | N |
| 536 | Associated Press | US Prosecutor: Hedge Fund Giant SAC Capital To Plead Guilty To Fraud In NYC, Pay $1.8 Billion | N/A | 11/4/2013 | Y |
| 537 | Barron's | Funds Roundup: Vanguard Steals Bill Gross' Crown; SAC Capital's Settlement | Brendan Conway | 11/4/2013 | N |
| 538 | Barron's | SAC Capital To Plead Guilty, Pay $1.8B; Bharara Warns Against 'Too Big to Jail' | Brendan Conway | 11/4/2013 | N |
| 539 | Bloomberg | Goldman Sachs to BofA Said to Trade With SAC After Guilty Plea | Hugh Son and Michael J. Moore | 11/4/2013 | N |
| 540 | Bloomberg | SAC Agrees to Plead Guilty to End Insider-Trading Case | Patricia Hurtado | 11/4/2013 | Y |
| 541 | Bloomberg | SAC Capital Settles Its Insider Trading Case, Again | Matt Levine | 11/4/2013 | N |
| 542 | Bloomberg | SAC Capital to Pay $1.8 Billion, the Largest Insider Trading Fine Ever | Sheelah Kolhatkar | 11/4/2013 | N |
| 543 | Bloomberg | Who Will Trade With SAC Capital Now? | Jonathan Weil | 11/4/2013 | Y |
| 544 | Business Insider | SAC Capital Has Pleaded Guilty To Insider Trading, Will Pay $1.8 Billion, And Shut Down To Outside Investors | Linette Lopez | 11/4/2013 | Y |
| 545 | Business Insider | The Government Just Finished Up Its Press Conference On SAC Capital — Here's What We Learned | Linette Lopez | 11/4/2013 | Y |
| 546 | Business Insider | The Rise And Fall Of Steve Cohen | Julia La Roche and Linette Lopez | 11/4/2013 | Y |
| 547 | CNBC | Cohen's earnings likely to surpass fine: Sources | David Faber | 11/4/2013 | N |
| 548 | CNBC | Deal reached, SAC plea to be announced at 1 pm ET: Sources | Kate Kelly | 11/4/2013 | Y |
| 549 | CNN Money | SAC Capital to plead guilty to insider trading charges | James O'Toole and Chris Isidore | 11/4/2013 | Y |
| 550 | Forbes | Feds Earn A Major - Albeit An Incomplete - Victory Through Settlement With SAC Capital | Michael Bobelian | 11/4/2013 | N |
| 551 | Forbes | Preet Bharara Isn't Done With Steve Cohen And SAC Capital | Agustino Fontevecchia | 11/4/2013 | Y |
| 552 | Forbes | SAC Capital Pleads Guilty With $1.8B Fine---And How Could It Impact JP Morgan | Robert W. Wood | 11/4/2013 | N |
| 553 | Forbes | Steve Cohen Will Probably Earn Enough This Year To Cover His Hedge Fund's New $1.2 Billion Settlement | Nathan Vardi | 11/4/2013 | Y |
| 554 | Fox Business | SAC in Landmark Settlement with Justice Department | Dunstan Prial | 11/4/2013 | Y |
| 555 | Investor's Business Daily | Guilty plea seen for SAC Capital | N/A | 11/4/2013 | N |
| 556 | Market Watch | SAC Capital insider-trading press conference | N/A | 11/4/2013 | N |
| 557 | Market Watch | SAC Capital settlement means government to flex its muscle to the maximum degree, lawyers say | Sital S. Patel | 11/4/2013 | Y |
| 558 | Market Watch | SAC says it never promoted insider trading | Steve Goldstein | 11/4/2013 | N |
| 559 | Market Watch | See the agreement setting out SAC Capital's $1.8 billion fine | N/A | 11/4/2013 | Y |
| 560 | New York Business Journal | SAC Capital agrees to plead guilty, pay more than $1B fine (Video) | N/A | 11/4/2013 | N |
| 561 | New York Daily News | SAC Capital Advisors indicted $1.8 billion deal with feds over insider trading charges | Daniel Beeckman | 11/4/2013 | N |
| 562 | New York Post | SAC pleads guilty to insider trading, will pay $1.8B fine | Michelle Celarier and Bruce Golding | 11/4/2013 | Y |
| 563 | New Yorker | HAS STEVEN A. COHEN BOUGHT OFF THE U.S. GOVERNMENT? | John Cassidy | 11/4/2013 | N |
| 564 | Newsday | Steven A. Cohen's SAC Capital Advisors hit with record insider trading penalty | Tom Incantalupo | 11/4/2013 | N |
| 565 | Newsweek | SAC's Guilty Plea Comes With An Escape Hatch | Lynnley Browning | 11/4/2013 | Y |
| 566 | The Daily Beast/Newsweek | SAC Capital Pleads Guilty | N/A | 11/4/2013 | N |
| 567 | The Daily Beast/Newsweek | That'll Be $1.2 Billion, Please | Daniel Gross | 11/4/2013 | N |
| 568 | The Financial Times | SAC Capital prepares for a second life | Stephen Foley | 11/4/2013 | N |

*Denotes articles which appeared on page A1
**Denotes articles which appeared on page B1

Print and Online Coverage

| | Outlet Name | Headline | Reporter | Date | Posted to Twitter |
|---|---|---|---|---|---|
| 569 | The Financial Times | SAC to pay biggest insider fine of $1.8bn | Kara Scannell and Stephen Foley | 11/4/2013 | Y |
| 570 | The New York Times | The Mets' Delicate Dance with a Billionaire | Richard Sandomir | 11/4/2013 | Y |
| 571 | The New York Times | After a Decade, SAC Capital Blinks** | Ben Protess and Peter Lattman | 11/4/2013 | Y |
| 572 | The New York Times | SAC Capital Agrees to Plead Guilty to Insider Trading* | Peter Lattman and Ben Protess | 11/4/2013 | Y |
| 573 | The New York Times | SAC: A Textbook Case of Corporate Prosecution** | James B. Stewart | 11/4/2013 | N |
| 574 | The New York Times | The Impact of the Settlement on SAC Capital and Cohen | Peter J. Henning | 11/4/2013 | N |
| 575 | The Street | SAC Capital Pleads Guilty to Decade-Long Insider Trading Conspiracy | Antoine Gara | 11/4/2013 | Y |
| 576 | The Wall Street Journal | For U.S. and SAC Alike, Battles Won and Lost | John Carreyrou | 11/4/2013 | N |
| 577 | The Wall Street Journal | SAC Agrees to Plead Guilty in Insider-Trading Settlement | Michael Rothfeld | 11/4/2013 | N |
| 578 | The Wall Street Journal | Some Big Banks Intend to Continue Working with SAC Capital | Justin Baer | 11/4/2013 | N |
| 579 | TIME | SAC To Pay $1.8B To Settle Fraud Charges | Noah Rayman | 11/4/2013 | Y |
| 580 | US News & World Report | Justice Hands SAC Capital Largest Insider Trading Penalty | Danielle Kurtzleben | 11/4/2013 | N |
| 581 | USA Today | SAC to pay record $1.8B in insider trading case* | Tim Mullaney | 11/4/2013 | Y |
| 582 | Washington Post | Meet Preet Bharara, who just won the biggest insider trading case ever | Lydia DePillis | 11/4/2013 | N |
| 583 | Washington Post | SAC agrees to plead guilty to insider trading, pay $1.2 billion penalty | Dina ElBoghdady | 11/4/2013 | Y |
| 584 | Associated Press | Business Highlights | N/A | 11/5/2013 | N |
| 585 | Bloomberg | Cohen's Dream of Soros Status Dies as SAC Pleads Guilty | Saijel Kishan and Katherine Burton | 11/5/2013 | Y |
| 586 | Bloomberg | Cohen-SAC Timeline: Firm's Guilty Plea End Criminal Case | Saijel Kishan | 11/5/2013 | N |
| 587 | Bloomberg | Levine on Wall Street: SAC Still Popular at Goldman | Matt Levine | 11/5/2013 | Y |
| 588 | Bloomberg | Meet Uncle Sam, Your Partner in Crime | Barry Ritholtz | 11/5/2013 | Y |
| 589 | Bloomberg | SAC Case Began With Informant's Tips on Cohen, Rajaratnam | David Glovin and Patricia Hurtado | 11/5/2013 | Y |
| 590 | Bloomberg | SAC Changes Statement After Violation Said to Be Found | Patricia Hurtado | 11/5/2013 | N |
| 591 | Bloomberg | Weil on Finance: SAC Capital's Deal | Jonathan Weil | 11/5/2013 | Y |
| 592 | CNBC | SAC to become family office, operating 'much as we do now' | Kate Kelly | 11/5/2013 | N |
| 593 | Fortune | The winners and losers in SAC's $1.8 billion guilty plea | Stephen Gandel | 11/5/2013 | Y |
| 594 | Market Watch | Lloyd Blankfein is an optimist — even if it isn't cool | Christina Rexrode | 11/5/2013 | N |
| 595 | Market Watch | SAC deal feels light, but isn't | David Weidner | 11/5/2013 | N |
| 596 | New York Business Journal | Did SAC nearly blow its plea deal in a press release? (Video) | N/A | 11/5/2013 | N |
| 597 | Reuters | SAC Capital's plea hearing set for Friday | Nate Raymond | 11/5/2013 | N |
| 598 | Reuters | U.S. to put SAC hedge fund out of business over insider trading | Emily Flitter, Katya Wachtel and Matthew Goldstein | 11/5/2013 | Y |
| 599 | Seeking Alpha | SAC to pay $1.2B penalty for insider trading | N/A | 11/5/2013 | Y |
| 600 | The Financial Times | Disappointing start to NY auction season | Elizabeth Panton | 11/5/2013 | Y |
| 601 | The Motley Fool | Stocks Start Week Up On Corporate Drama | Jack Kramer and Nick Martell | 11/5/2013 | N |
| 602 | The New York Times | After SAC Plea, Fellow Funds May Pay | Alexandra Stevenson | 11/5/2013 | Y |
| 603 | The Street | SAC Capital Is Finally Busted | Dana Blankenhorn | 11/5/2013 | N |
| 604 | The Wall Street Journal | For U.S. and SAC Alike, Battles Won and Lost | John Carreyrou | 11/5/2013 | N |
| 605 | The Wall Street Journal | It's Only Money | N/A | 11/5/2013 | N |
| 606 | The Wall Street Journal | SAC Plea Set for Friday | Christopher Matthews | 11/5/2013 | N |
| 607 | Wall St. Cheat Sheet | SAC Capital Admits to Criminal Conduct, Apple Gets New Sapphire Supplier: Morning Buzzers | Jacqueline Sahagian | 11/5/2013 | N |
| 608 | Associated Press | Federal judge won't stand in way of $1.8B SAC deal | Larry Neumeister | 11/6/2013 | N |
| 609 | Bloomberg | Alleged SAC Tipper Aggarwal Has Guilty Plea Hearing | Christie Smythe | 11/6/2013 | N |
| 610 | Bloomberg | Aluminum Bribe Trial, Muni Fine, HSBC-Euribor: Compliance | Carla Main | 11/6/2013 | N |
| 611 | Bloomberg | SAC Capital's Guilty Plea Makes Old Deal Look Silly | Jonathan Weil | 11/6/2013 | Y |
| 612 | Bloomberg | SAC Civil Money-Laundering Settlement Approved by Judge | Bob Van Voris | 11/6/2013 | N |
| 613 | Business Insider | Never-Before-Seen Video Of Steve Cohen Sounding Confused About Insider Trading Laws During A Deposition | Linette Lopez | 11/6/2013 | N |
| 614 | Business Insider | Steve Cohen Couldn't Sell His High-Priced Art Last Night | Steven Perlberg | 11/6/2013 | N |
| 615 | CNBC | Aggarwal agrees to plead guilty to SAC Capital insider trading | Scott Cohn | 11/6/2013 | N |
| 616 | CNBC | SAC Capital to fight civil case against founder | N/A | 11/6/2013 | N |
| 617 | CNBC | Video deposition: Cohen calls insider trading rules 'vague' | N/A | 11/6/2013 | N |
| 618 | Market Watch | No wonder Steve Cohen is confused about insider trading | Sital S. Patel | 11/6/2013 | N |
| 619 | New York Post | Judge approves SAC's $900M civil settlement | Michelle Celarier | 11/6/2013 | N |
| 620 | New York Post | October jobs report may surprise Wall Street | John Crudele | 11/6/2013 | N |
| 621 | New York Post | Wall Street settlements don't mean much | Charles Gasparino | 11/6/2013 | N |
| 622 | Reuters | Federal judge will approve SAC's forfeiture deal with prosecutors-hearing | N/A | 11/6/2013 | Y |
| 623 | Reuters | UPDATE 1-SAC Capital settlement clears U.S. court hurdle | Nate Raymond | 11/6/2013 | N |
| 624 | The New York Times | SAC Capital Cuts a Deal | Teresa Tritch | 11/6/2013 | N |
| 625 | The New York Times | SAC's $1.2 Billion Settlement Clears One Judicial Hurdle and Awaits Another | Peter Lattman | 11/6/2013 | Y |
| 626 | The Wall Street Journal | Civil Portion of SAC Deal Gets Judge's OK | Christopher Matthews | 11/6/2013 | N |
| 627 | The Wall Street Journal | Steve Cohen in His Own Words (in 2011) | Juliet Chung | 11/6/2013 | N |
| 628 | Bloomberg | Elan and Wyeth Investors Seek to Block SAC Plea Deal | Bob Van Voris and Christie Smythe | 11/7/2013 | N |
| 629 | Bloomberg | Giacometti, Picasso Help Sotheby's Tally $290 Million | Katya Kazakina | 11/7/2013 | N |
| 630 | Bloomberg | Holder's Credit Grab at JPMorgan | Jonathan Weil | 11/7/2013 | N |
| 631 | Bloomberg | Levine on Wall Street: More Money, Less Work | Matt Levine | 11/7/2013 | N |
| 632 | Bloomberg | Steven A. Cohen's Baseball Dream Strikes Out in Hedge-Fund Plea | Scott Soshnick | 11/7/2013 | Y |
| 633 | CNBC | SAC's plea agreement hangs over manager's trial | Scott Cohn | 11/7/2013 | N |
| 634 | New York Business Journal | First part of SAC settlement gets judicial approval | N/A | 11/7/2013 | N |
| 635 | New York Post | Critics hating on SAC deal won't leave judge alone | Michelle Celarier | 11/7/2013 | N |
| 636 | Reuters | Objections to SAC Capital guilty plea: Alison Frankel | Alison Frankel | 11/7/2013 | N |
| 637 | The Wall Street Journal | Sometimes, Rubber Stamping Settlements is a Waste of Ink | Joe Palazzolo | 11/7/2013 | N |
| 638 | Associated Press | SAC Capital pleads guilty in NY in $1.8B deal | Larry Neumeister | 11/8/2013 | N |
| 639 | Bloomberg | Weil on Finance: Lance Armstrong Film | Jonathan Weil | 11/8/2013 | N |
| 640 | New York Post | Ex-SAC manager seeks to hide hedge fund ties | Michelle Celarier | 11/8/2013 | Y |
| 641 | Economist | SAC Capital No Winners | N/A | 11/9/2013 | N |

*Denotes articles which appeared on page A1
**Denotes articles which appeared on page B1

# EXHIBIT  K

**Broadcast Coverage**

|    | Station Name | Show Name | Date |
|----|--------------|-----------|------|
| 1  | Bloomberg | Inside Track | 7/8/2013 |
| 2  | Bloomberg | Surveillance Midday | 7/8/2013 |
| 3  | Bloomberg | Bloomberg Bottom Line | 7/8/2013 |
| 4  | CBS | CBS This Morning | 7/8/2013 |
| 5  | CNBC | Power Lunch | 7/8/2013 |
| 6  | Fox Business News | Varney & Co | 7/8/2013 |
| 7  | Fox Business News | Fox Business News | 7/8/2013 |
| 8  | Fox News | Your World | 7/8/2013 |
| 9  | NY1 | Road to City Hall | 7/8/2013 |
| 10 | NY1 | News All Evening | 7/8/2013 |
| 11 | CNBC | Mad Money | 7/9/2013 |
| 12 | CNBC | General Programming | 7/9/2013 |
| 13 | Fox Business News | Countdown to Closing Bell | 7/9/2013 |
| 14 | NPR | The Leonard Lopate Show | 7/12/2013 |
| 15 | Fox Business News | Tom Sullivan | 7/13/2013 |
| 16 | CNBC | Power Lunch | 7/16/2013 |
| 17 | CNBC | Power Lunch | 7/17/2013 |
| 18 | CNBC | Power Lunch | 7/17/2013 |
| 19 | CNBC | The Kudlow Report | 7/17/2013 |
| 20 | Fox Business News | Fox Business News | 7/17/2013 |
| 21 | Bloomberg | Bloomberg Bottom Line | 7/18/2013 |
| 22 | Bloomberg | Bloomberg Bottom Line | 7/19/2013 |
| 23 | Bloomberg | Street Smart | 7/19/2013 |
| 24 | Bloomberg | Taking Stock | 7/19/2013 |
| 25 | Bloomberg | Bloomberg Rewind | 7/19/2013 |
| 26 | CNBC | Street Signs | 7/19/2013 |
| 27 | CNBC | Closing Bell | 7/19/2013 |
| 28 | CNBC | Fast Money | 7/19/2013 |
| 29 | CNBC | The Kudlow Report | 7/19/2013 |
| 30 | Fox Business News | Fox Business News | 7/19/2013 |
| 31 | Fox Business News | Bulls & Bears | 7/19/2013 |
| 32 | Fox Business News | Money-Melissa Francis | 7/19/2013 |
| 33 | Fox Business News | Cavuto Business Report | 7/19/2013 |
| 34 | Fox Business News | The Willis Report | 7/19/2013 |
| 35 | Fox Business News | Money-Melissa Francis | 7/19/2013 |
| 36 | NPR | All Things Considered | 7/19/2013 |
| 37 | NPR | Marketplace | 7/19/2013 |
| 38 | WNYC-AM-NPR | The World | 7/19/2013 |
| 39 | Bloomberg | Bloomberg News | 7/20/2013 |
| 40 | Bloomberg | Bloomberg Live | 7/21/2013 |
| 41 | Fox Business News | Willis Report | 7/21/2013 |
| 42 | Bloomberg | Inside Track | 7/22/2013 |
| 43 | Bloomberg | In the Loop | 7/22/2013 |

**Broadcast Coverage**

|     | Station Name       | Show Name                 | Date      |
|-----|--------------------|---------------------------|-----------|
| 44  | Bloomberg          | InBusiness                | 7/22/2013 |
| 45  | Bloomberg          | Surveillance Midday       | 7/22/2013 |
| 46  | Bloomberg          | Street Smart              | 7/22/2013 |
| 47  | Bloomberg          | Bloomberg Rewind          | 7/22/2013 |
| 48  | CNBC               | Squawk Box                | 7/22/2013 |
| 49  | CNBC               | Squawk on the Street      | 7/22/2013 |
| 50  | CNBC               | Closing Bell              | 7/22/2013 |
| 51  | CNBC               | The Kudlow Report         | 7/22/2013 |
| 52  | Fox Business News  | Fox Business News         | 7/22/2013 |
| 53  | Fox Business News  | Countdown to Closing Bell | 7/22/2013 |
| 54  | SYN                | First Business            | 7/22/2013 |
| 55  | ABC News Now       | Opening Bell              | 7/23/2013 |
| 56  | Bloomberg          | Bloomberg Bottom Line     | 7/23/2013 |
| 57  | CNBC               | Worldwide Exchange        | 7/23/2013 |
| 58  | CNBC               | Squawk Box                | 7/23/2013 |
| 59  | CNBC               | Squawk on the Street      | 7/23/2013 |
| 60  | Fox Business News  | Fox Business News         | 7/23/2013 |
| 61  | Fox Business News  | Money-Melissa Francis     | 7/23/2013 |
| 62  | NPR                | All Things Considered     | 7/23/2013 |
| 63  | WNYC-AM-NPR        | The World                 | 7/23/2013 |
| 64  | Bloomberg          | InBusiness                | 7/24/2013 |
| 65  | Bloomberg          | Bloomberg Bottom Line     | 7/24/2013 |
| 66  | CNBC               | Worldwide Exchange        | 7/24/2013 |
| 67  | CNBC               | Squawk Box                | 7/24/2013 |
| 68  | CNBC               | Squawk on the Street      | 7/24/2013 |
| 69  | CNBC               | Street Signs              | 7/24/2013 |
| 70  | CNBC               | Closing Bell              | 7/24/2013 |
| 71  | CNBC               | The Kudlow Report         | 7/24/2013 |
| 72  | Fox Business News  | Imus in the Morning       | 7/24/2013 |
| 73  | Fox Business News  | Varney & Co               | 7/24/2013 |
| 74  | Fox Business News  | Money-Melissa Francis     | 7/24/2013 |
| 75  | ABC News Now       | News & Weather            | 7/25/2013 |
| 76  | ABC News Now       | What's the Buzz           | 7/25/2013 |
| 77  | Bloomberg          | Late Programming          | 7/25/2013 |
| 78  | Bloomberg          | Inside Track              | 7/25/2013 |
| 79  | Bloomberg          | In the Loop               | 7/25/2013 |
| 80  | Bloomberg          | InBusiness                | 7/25/2013 |
| 81  | Bloomberg          | Fast Forward              | 7/25/2013 |
| 82  | Bloomberg          | Bloomberg Bottom Line     | 7/25/2013 |
| 83  | Bloomberg          | Street Smart              | 7/25/2013 |
| 84  | Bloomberg          | Taking Stock              | 7/25/2013 |
| 85  | Bloomberg          | Bloomberg Rewind          | 7/25/2013 |
| 86  | CBS                | CBS Evening News          | 7/25/2013 |

**Broadcast Coverage**

|     | Station Name | Show Name | Date |
|-----|--------------|-----------|------|
| 87  | CBS | CBS Evening News West Coast | 7/25/2013 |
| 88  | CNBC | Worldwide Exchange | 7/25/2013 |
| 89  | CNBC | Squawk on the Street | 7/25/2013 |
| 90  | CNBC | The Call | 7/25/2013 |
| 91  | CNBC | Power Lunch | 7/25/2013 |
| 92  | CNBC | Street Signs | 7/25/2013 |
| 93  | CNBC | Closing Bell | 7/25/2013 |
| 94  | CNBC | Fast Money | 7/25/2013 |
| 95  | CNBC | The Kudlow Report | 7/25/2013 |
| 96  | CNN | CNN Newsroom | 7/25/2013 |
| 97  | Fox Business News | Varney & Co | 7/25/2013 |
| 98  | Fox Business News | Fox Business News | 7/25/2013 |
| 99  | Fox Business News | Countdown to Closing Bell | 7/25/2013 |
| 100 | Fox Business News | After the Bell | 7/25/2013 |
| 101 | Fox Business News | Money-Melissa Francis | 7/25/2013 |
| 102 | Fox Business News | Cavuto Business Report | 7/25/2013 |
| 103 | Fox Business News | Lou Dobb's Tonight | 7/25/2013 |
| 104 | Fox Business News | Stossel Report | 7/25/2013 |
| 105 | FOX Radio | The Tom Sullivan Show | 7/25/2013 |
| 106 | FOX Radio | Brian Kilmeade & Friends | 7/25/2013 |
| 107 | NBCNY | New York Nightly News | 7/25/2013 |
| 108 | NY1 | News All Evening | 7/25/2013 |
| 109 | SYN | First Business | 7/25/2013 |
| 110 | WNBC-NBC | News 4 at Noon | 7/25/2013 |
| 111 | WNBC-NBC | News 4 NY at 6 | 7/25/2013 |
| 112 | WOR-AM | John Gambling Show | 7/25/2013 |
| 113 | Bloomberg | Overnight Programming | 7/26/2013 |
| 114 | Bloomberg | Financial Programming | 7/26/2013 |
| 115 | Bloomberg | The Pulse | 7/26/2013 |
| 116 | Bloomberg | Inside Track | 7/26/2013 |
| 117 | Bloomberg | In the Loop | 7/26/2013 |
| 118 | Bloomberg | InBusiness | 7/26/2013 |
| 119 | CBS | Up To The Minute | 7/26/2013 |
| 120 | CBS | CBS This Morning | 7/26/2013 |
| 121 | CNBC | Worldwide Exchange | 7/26/2013 |
| 122 | CNBC | Squawk Box | 7/26/2013 |
| 123 | CNBC | Squawk on the Street | 7/26/2013 |
| 124 | CNBC | The Call | 7/26/2013 |
| 125 | CNBC | Power Lunch | 7/26/2013 |
| 126 | CNBC | Closing Bell | 7/26/2013 |
| 127 | CNBC | The Kudlow Report | 7/26/2013 |
| 128 | CNN International | World Business Today | 7/26/2013 |
| 129 | CNN International | Quest Means Business | 7/26/2013 |

**Broadcast Coverage**

|     | Station Name | Show Name | Date |
|-----|--------------|-----------|------|
| 130 | Fox Business News | Imus in the Morning | 7/26/2013 |
| 131 | Fox Business News | Varney & Co | 7/26/2013 |
| 132 | Fox Business News | Fox Business News | 7/26/2013 |
| 133 | Fox Business News | Bulls & Bears | 7/26/2013 |
| 134 | Fox Business News | After the Bell | 7/26/2013 |
| 135 | Fox Business News | Cavuto Business Report | 7/26/2013 |
| 136 | Fox Business News | The Willis Report | 7/26/2013 |
| 137 | NBC | Early Today | 7/26/2013 |
| 138 | NPR | On Point | 7/26/2013 |
| 139 | NY1 | News All Morning | 7/26/2013 |
| 140 | SYN | First Business | 7/26/2013 |
| 141 | WCBS-CBS | CBS 2 News This Morning | 7/26/2013 |
| 142 | WNBC-NBC | Today in New York | 7/26/2013 |
| 143 | WNYC-AM-NPR | All Things Considered | 7/26/2013 |
| 144 | WNYC-FM-NPR | Morning Edition | 7/26/2013 |
| 145 | WOR-AM | Health Talk | 7/26/2013 |
| 146 | Fox Business News | Cavuto | 7/27/2013 |
| 147 | SYN | Wall St. Journal Report | 7/27/2013 |
| 148 | CNBC | Wall St. Journal Report | 7/28/2013 |
| 149 | CNN | In The Money | 7/28/2013 |
| 150 | NPR | Morning Edition | 7/28/2013 |
| 151 | AUD | The Dan Patrick Show | 7/29/2013 |
| 152 | CNBC | The Call | 7/29/2013 |
| 153 | CNBC | Power Lunch | 7/29/2013 |
| 154 | CNBC | Street Signs | 7/29/2013 |
| 155 | CNBC | Closing Bell | 7/29/2013 |
| 156 | CNBC | The Kudlow Report | 7/29/2013 |
| 157 | CNN | Out Front | 7/29/2013 |
| 158 | CNN | Anderson Cooper 360 | 7/29/2013 |
| 159 | Fox Business News | Fox Business News | 7/29/2013 |
| 160 | Fox Business News | Countdown to Closing Bell | 7/29/2013 |
| 161 | NPR | On Point | 7/29/2013 |
| 162 | SYN | First Business | 7/29/2013 |
| 163 | CNBC | The Call | 7/30/2013 |
| 164 | CNBC | Closing Bell | 7/30/2013 |
| 165 | CNN | Overnight Programming | 7/30/2013 |
| 166 | Fox Business News | Countdown to Closing Bell | 7/30/2013 |
| 167 | MSNBC | ALL In | 7/30/2013 |
| 168 | MSNBC | General Programming | 7/30/2013 |
| 169 | PBS | Charlie Rose | 7/30/2013 |
| 170 | CNBC | Worldwide Exchange | 7/31/2013 |
| 171 | CNBC | Power Lunch | 7/31/2013 |
| 172 | Fox Business News | Fox Business News | 7/31/2013 |

**Broadcast Coverage**

|  | Station Name | Show Name | Date |
|---|---|---|---|
| 173 | Fox Business News | Fox Business News | 8/1/2013 |
| 174 | Fox Business News | Countdown to Closing Bell | 8/1/2013 |
| 175 | Fox Business News | Money-Melissa Francis | 8/1/2013 |
| 176 | CNBC | Power Lunch | 8/2/2013 |
| 177 | CNBC | The Kudlow Report | 8/5/2013 |
| 178 | Bloomberg | Bloomberg Bottom Line | 8/7/2013 |
| 179 | NPR | Morning Edition | 8/7/2013 |
| 180 | CNBC | Squawk Box | 8/9/2013 |
| 181 | CNBC | Power Lunch | 8/9/2013 |
| 182 | CNBC | Closing Bell | 8/9/2013 |
| 183 | CNBC | Fast Money | 8/9/2013 |
| 184 | Fox Business News | Fox Business News | 8/9/2013 |
| 185 | SYN | First Business | 8/9/2013 |
| 186 | Bloomberg | Bloomberg Bottom Line | 8/12/2013 |
| 187 | CNBC | Power Lunch | 8/12/2013 |
| 188 | Fox Business News | Fox Business News | 8/12/2013 |
| 189 | Fox Business News | Money-Melissa Francis | 8/14/2013 |
| 190 | Bloomberg | Taking Stock | 8/15/2013 |
| 191 | Bloomberg | Inside Track | 8/16/2013 |
| 192 | Fox Business News | After the Bell | 8/16/2013 |
| 193 | Bloomberg | InBusiness | 8/19/2013 |
| 194 | CNBC | Closing Bell | 8/19/2013 |
| 195 | Fox Business News | Money-Melissa Francis | 8/19/2013 |
| 196 | Bloomberg | Inside Track | 8/20/2013 |
| 197 | CNBC | Closing Bell | 8/22/2013 |
| 198 | CNBC | Squawk Box | 8/23/2013 |
| 199 | Fox Business News | Best of IMUS | 8/23/2013 |
| 200 | Fox Business News | Imus in the Morning | 8/23/2013 |
| 201 | Fox Business News | Fox Business News | 8/26/2013 |
| 202 | Fox Business News | Countdown to Closing Bell | 8/26/2013 |
| 203 | Bloomberg | Bloomberg Bottom Line | 8/30/2013 |
| 204 | Fox Business News | Bulls & Bears | 8/30/2013 |
| 205 | Fox Business News | Money-Melissa Francis | 9/2/2013 |
| 206 | CNBC | Power Lunch | 9/3/2013 |
| 207 | Bloomberg | Bloomberg Bottom Line | 9/4/2013 |
| 208 | CNBC | Power Lunch | 9/4/2013 |
| 209 | Fox Business News | FBN Markets Now Hour 3 | 9/4/2013 |
| 210 | Bloomberg | In the Loop | 9/5/2013 |
| 211 | Bloomberg | Bloomberg Bottom Line | 9/6/2013 |
| 212 | Fox Business News | Best of IMUS | 9/6/2013 |
| 213 | Fox Business News | Imus in the Morning | 9/6/2013 |
| 214 | WOR-AM | John Gambling Show | 9/10/2013 |
| 215 | CNBC | Squawk Box | 9/18/2013 |

**Broadcast Coverage**

| | Station Name | Show Name | Date |
|---|---|---|---|
| 216 | Bloomberg | Bloomberg Bottom Line | 9/19/2013 |
| 217 | Bloomberg | InBusiness | 9/24/2013 |
| 218 | CNBC | Closing Bell | 9/24/2013 |
| 219 | CNBC | Fast Money | 9/24/2013 |
| 220 | CNBC | The Kudlow Report | 9/24/2013 |
| 221 | Fox Business News | FBN Markets Now Hour 4 | 9/24/2013 |
| 222 | Fox Business News | Countdown to Closing Bell | 9/24/2013 |
| 223 | WTIC-FOX | News at 6AM | 9/24/2013 |
| 224 | Fox Business News | Imus in the Morning | 9/25/2013 |
| 225 | Fox Business News | FBN Markets Now Hour 4 | 9/25/2013 |
| 226 | Fox Business News | Countdown to Closing Bell | 9/25/2013 |
| 227 | Fox Business News | After the Bell | 9/25/2013 |
| 228 | WTIC-FOX | News at 6AM | 10/9/2013 |
| 229 | ABC News Now | Opening Bell | 10/18/2013 |
| 230 | Bloomberg | Inside Track | 10/18/2013 |
| 231 | Bloomberg | InBusiness | 10/18/2013 |
| 232 | Bloomberg | Bloomberg Bottom Line | 10/18/2013 |
| 233 | Bloomberg | Street Smart | 10/18/2013 |
| 234 | Bloomberg | InBusiness | 10/18/2013 |
| 235 | Bloomberg | Taking Stock | 10/18/2013 |
| 236 | CNBC | Power Lunch | 10/18/2013 |
| 237 | Fox Business News | Money-Melissa Francis | 10/18/2013 |
| 238 | Fox Business News | FBN Markets Now Hour 3 | 10/18/2013 |
| 239 | MSNBC | Way too Early | 10/18/2013 |
| 240 | MSNBC | The Cycle | 10/18/2013 |
| 241 | SYN | First Business | 10/18/2013 |
| 242 | CNBC | Power Lunch | 10/28/2013 |
| 243 | Fox Business News | Money-Melissa Francis | 10/29/2013 |
| 244 | Fox Business News | Lou Dobb's Tonight | 10/29/2013 |
| 245 | Al Jazeera America | News | 10/30/2013 |
| 246 | CBS | CBS This Morning | 10/30/2013 |
| 247 | CNBC | Squawk Box | 10/30/2013 |
| 248 | Fox Business News | Imus in the Morning | 10/30/2013 |
| 249 | Bloomberg | Taking Stock | 11/1/2013 |
| 250 | Al Jazeera America | News | 11/4/2013 |
| 251 | Al Jazeera America | News & Inside Story | 11/4/2013 |
| 252 | Al Jazeera America | News | 11/4/2013 |
| 253 | Al Jazeera America | Consider This | 11/4/2013 |
| 254 | Bloomberg | Inside Track | 11/4/2013 |
| 255 | Bloomberg | In the Loop | 11/4/2013 |
| 256 | Bloomberg | InBusiness | 11/4/2013 |
| 257 | Bloomberg | Fast Forward | 11/4/2013 |
| 258 | Bloomberg | Bloomberg Bottom Line | 11/4/2013 |

**Broadcast Coverage**

| | Station Name | Show Name | Date |
|---|---|---|---|
| 259 | Bloomberg | Street Smart | 11/4/2013 |
| 260 | Bloomberg | Taking Stock | 11/4/2013 |
| 261 | Bloomberg | Bloomberg Rewind | 11/4/2013 |
| 262 | CBS | CBS Evening News | 11/4/2013 |
| 263 | CNBC | Worldwide Exchange | 11/4/2013 |
| 264 | CNBC | Squawk Box | 11/4/2013 |
| 265 | CNBC | Squawk on the Street | 11/4/2013 |
| 266 | CNBC | The Call | 11/4/2013 |
| 267 | CNBC | Power Lunch | 11/4/2013 |
| 268 | CNBC | Street Signs | 11/4/2013 |
| 269 | CNBC | Closing Bell | 11/4/2013 |
| 270 | CNBC | The Kudlow Report | 11/4/2013 |
| 271 | Fox Business News | Imus in the Morning | 11/4/2013 |
| 272 | Fox Business News | Varney & Co | 11/4/2013 |
| 273 | Fox Business News | FBN Markets Now Hour 2 | 11/4/2013 |
| 274 | Fox Business News | FBN Markets Now Hour 3 | 11/4/2013 |
| 275 | Fox Business News | FBN Markets Now Hour 4 | 11/4/2013 |
| 276 | Fox Business News | Countdown to Closing Bell | 11/4/2013 |
| 277 | Fox Business News | After the Bell | 11/4/2013 |
| 278 | Fox Business News | Money-Melissa Francis | 11/4/2013 |
| 279 | Fox Business News | Cavuto | 11/4/2013 |
| 280 | HLN-CNN | Headline News | 11/4/2013 |
| 281 | NBCNY | New York Nightly News | 11/4/2013 |
| 282 | NPR | BBC World Service | 11/4/2013 |
| 283 | NPR | All Things Considered | 11/4/2013 |
| 284 | NY1 | News All Morning | 11/4/2013 |
| 285 | NY1 | News All Evening | 11/4/2013 |
| 286 | NY1 | News at Eleven | 11/4/2013 |
| 287 | PBS | Nightly Business Report | 11/4/2013 |
| 288 | WNBC-NBC | News 4 New York at 5 | 11/4/2013 |
| 289 | Al Jazeera America | News & Real Money with Ali Velshi | 11/5/2013 |
| 290 | Al Jazeera America | America Tonight | 11/5/2013 |
| 291 | Bloomberg | Inside Track | 11/5/2013 |
| 292 | Bloomberg | In the Loop | 11/5/2013 |
| 293 | Bloomberg | InBusiness | 11/5/2013 |
| 294 | Bloomberg | Surveillance Midday | 11/5/2013 |
| 295 | Bloomberg | Bloomberg Bottom Line | 11/5/2013 |
| 296 | CNBC | Worldwide Exchange | 11/5/2013 |
| 297 | CNBC | Closing Bell | 11/5/2013 |
| 298 | FIOS1 | Afternoon Edition | 11/5/2013 |
| 299 | Fox Business News | Imus in the Morning | 11/5/2013 |
| 300 | Fox Business News | FBN Markets Now Hour 4 | 11/5/2013 |
| 301 | Fox Business News | FBN Markets Now Hour 5 | 11/5/2013 |

**Broadcast Coverage**

|     | Station Name | Show Name | Date |
|-----|--------------|-----------|------|
| 302 | Fox Business News | After the Bell | 11/5/2013 |
| 303 | PBS | Nightly Business Report | 11/5/2013 |
| 304 | Bloomberg | Bloomberg Bottom Line | 11/6/2013 |
| 305 | CNBC | The Call | 11/6/2013 |
| 306 | Fox Business News | Imus in the Morning | 11/8/2013 |
| 307 | NY1 | News All Morning | 11/8/2013 |

# EXHIBIT  L

# KRAMER LEVIN NAFTALIS & FRANKEL LLP

BARRY H. BERKE
PARTNER
PHONE 212-715-7560
FAX 212-715-7660
BBERKE@KRAMERLEVIN.COM

October 22, 2013

**VIA EMAIL AND FEDERAL EXPRESS**

AUSA Antonia Apps
AUSA Harry Chernoff
United States Attorney's Office
Southern District of New York
1 St. Andrew's Plaza
New York, New York 10007

      Re:    *United States v. Michael Steinberg*, No. S4 12 Cr. 121 (RJS)

Dear Antonia and Harry:

    We write as part of our continuing efforts to protect Michael Steinberg's right to a fair trial. Recent press reports indicate that the U.S. Attorney's Office (the "Office") has been pressing SAC Capital to plead guilty in advance of the approaching commencement of Mr. Steinberg's November 18 trial or else face more severe penalties. *See, e.g.*, Ben Protess & Peter Lattman, *SAC Capital Reaches Tentative Insider Trading Deal*, N.Y. Times, Oct. 17, 2013; Kara Scannell, *Prosecutors Give SAC Settlement Ultimatum*, Fin. Times, Oct. 8, 2013. We are deeply concerned that the publicity and media frenzy surrounding any such plea shortly before Mr. Steinberg's trial will severely and perhaps irremediably prejudice his right to a fair trial. *See Irvin v. Dowd*, 366 U.S. 717, 722 (1961) (a "basic requirement of due process" is that a jury's "verdict must be based upon the evidence developed at the trial" and not influenced by adverse pretrial publicity). In particular, we are concerned that the pretrial publicity from any SAC guilty plea will be greatly exacerbated if the Office issues a press release and makes extrajudicial statements in a press conference and through social media that are in any way comparable to (or more inflammatory than) what occurred at the time of the indictment of SAC. *See Bridges v. California*, 314 U.S. 252, 271 (1941) ("Legal trials are not like elections, to be won through the use of the meeting-hall, the radio, and the newspaper.").

    Accordingly, we request and urge the Office not to issue any press release, hold any press conference or make any public statements (including by way of social media such as Twitter) if in fact there is a plea by SAC in the remaining few weeks before Mr. Steinberg's trial, other than a public statement announcing the fact of any guilty plea and sentence. We also request additional prophylactic measures to protect Mr. Steinberg's fair trial rights, as we explain below.

KRAMER LEVIN NAFTALIS & FRANKEL LLP

AUSA Antonia Apps
AUSA Harry Chernoff
October 22, 2013
Page 2

Pretrial Publicity to Date

As we described in detail in our Motion for Remedial Measures to Address Pretrial Publicity (Doc. 287, July 9, 2013), prejudicial stories about Mr. Steinberg, Mr. Cohen and SAC have saturated media outlets for well over a year now. Among other things, the media has painted a villainous picture of SAC and its culture (e.g., "a nest of illegal insider trading," a "shark tank," "cutthroat," "ruthless," and "stained" by insider trading) and directly links Mr. Steinberg to these allegations of pervasive illegality and wrongdoing. Id. at 4-5.

As you know, a few weeks after our motion was filed, SAC was indicted and the SEC instituted administrative proceedings against Mr. Cohen. As a result, the media frenzy surrounding everything SAC-related continued, and grew in intensity. Of particular concern to us were extrajudicial comments made by the Office that tarred SAC with a broad brush and strongly implied that all of its employees, or at least all those who have been charged by the government, were in fact guilty of insider trading. Taking just a handful of the most troubling statements: "S.A.C. trafficked in inside information on a scale without any known precedent in the history of hedge funds"; "[S.A.C. is] a firm with zero tolerance for low returns but seemingly tremendous tolerance for questionable conduct"; "S.A.C. became, over time, a veritable magnet for market cheaters"; "when so many people from a single hedge fund have engaged in insider trading, it is not a coincidence"; "S.A.C. seeded itself with corrupt traders, empowered to engage in criminal acts by a culture that looked the other way despite red flags all around"; and, implying that S.A.C. was comparable to a "den[] of corruption." Preet Bharara, U.S. Attorney, Prepared Remarks about U.S. v. S.A.C. Capital Advisors LP, et al. (July 25, 2013), available at http://www.justice.gov/usao/nys/pressconference/sac/remarks.pdf. A number of these comments were republished in the U.S. Attorney's Press Release from the same day as well as on the SDNYnews Twitter feed.

In addition, as part of the U.S. Attorney's press conference announcing the SAC indictment, a large poster board labeled "Insider Trading at SAC: Convicted or Charged Employees" was presented. Press Conference Visuals, available at http://www.justice.gov/usao/nys/pressconference/sac/visual.pdf. This chart specifically and prominently shows Michael Steinberg as having been indicted among six other SAC employees who have pleaded guilty and one other who also has been indicted (Mathew Martoma). While an asterisk appears next to Mr. Steinberg's name (and Mr. Martoma's), it is only in tiny print at the bottom that the government's chart half-heartedly discloses: "Charges are pending as to these defendants who are presumed innocent." Id.

Needless to say this press conference and the Office's inflammatory and sweeping condemnation of everything SAC-related were widely picked up and echoed in the massive press coverage that followed, including scores of news stories in print, online, and on television and radio news. The U.S. Attorney's press conference, like virtually all of the other publicity

2

**KRAMER LEVIN NAFTALIS & FRANKEL** LLP

AUSA Antonia Apps
AUSA Harry Chernoff
October 22, 2013
Page 3

surrounding the announcement of the SAC indictment, is memorialized and remains accessible
on the Internet.

<u>Applicable Rules and Regulations</u>

In light of the extrajudicial statements surrounding the indictment of SAC, we are
extremely concerned about additional and potentially even more inflammatory and individual
guilt-assuming statements from the government if SAC pleads guilty in the coming weeks.  More
to the point, we strongly believe any similar extrajudicial statements in connection with a plea by
SAC this close to Mr. Steinberg's trial would implicate the applicable Local Rule, contravene the
Department of Justice's own policies, and, most importantly, severely interfere with Mr.
Steinberg's right to a fair trial.

Local Criminal Rule 23.1(a) for the Southern District of New York states:

> It is the duty of the lawyer or law firm . . . not to release or
> authorize the release of non-public information or opinion which a
> reasonable person would expect to be disseminated by means of
> public communication, in connection with pending or imminent
> criminal litigation with which they are associated, if there is a
> substantial likelihood that such dissemination will interfere with a
> fair trial or otherwise prejudice the due administration of justice.

Sub-section (d) of that same Local Rule provides in pertinent part:

> Statements concerning the following subject matters presumptively
> involve a substantial likelihood that their public dissemination will
> interfere with a fair trial or otherwise prejudice the due
> administration of justice within the meaning of this rule:
> . . . .

> (6) Information the lawyer or law firm knows is likely to be
> inadmissible at trial and would if disclosed create a substantial
> likelihood of prejudicing an impartial trial; and

> (7) Any opinion as to the accused's guilt or innocence or as to the
> merits of the case or the evidence in the case.

If SAC pleads guilty in the next few weeks, and the government repeats anything close to
the types of extrajudicial statements made at the time of SAC's indictment, we believe Local
Rule 23.1 would be violated and Mr. Steinberg's fair trial right compromised.  Any such guilty
plea by SAC would not be admissible at Mr. Steinberg's trial.  More importantly, neither would

**K R A M E R   L E V I N   N A F T A L I S   &   F R A N K E L** LLP

AUSA Antonia Apps
AUSA Harry Chernoff
October 22, 2013
Page 4

any statements along the lines of the statements made by the Office at the time of SAC's indictment (such as that SAC as an institution "trafficked in inside information," was a "magnet for market cheaters," "seeded itself with corrupt traders," or was a "den of corruption"). Because these kinds of inflammatory statements are so sweeping and all-inclusive in their implications, if repeated they also would impermissibly convey that all portfolio managers and analysts at SAC, or at least all those charged with crimes – including Mr. Steinberg – are in fact guilty.

As you know, the C.F.R. and the U.S. Attorneys' Manual both include similar prohibitions. The federal regulations governing the Department of Justice specifically state:

> At no time shall personnel of the Department of Justice furnish any statement or information for the purpose of influencing the outcome of a defendant's trial, nor shall personnel of the Department furnish any statement or information, which could reasonably be expected to be disseminated by means of public communication, if such a statement or information may reasonably be expected to influence the outcome of a pending or future trial.

28 C.F.R. § 50.2(b)(2); *see also* U.S.A.M. § 1-7.500 ("At no time shall any component or personnel of the Department of Justice furnish any statement or information that he or she knows or reasonably should know will have a substantial likelihood of materially prejudicing an adjudicative proceeding.").

Anticipating precisely the circumstances that we are concerned about here, the regulations further state:

> Because of the particular danger of prejudice resulting from statements in the period approaching and during trial, they ought strenuously to be avoided during that period. Any such statement or release shall be made only on the infrequent occasion when circumstances absolutely demand a disclosure of information and shall include only information which is clearly not prejudicial.

28 C.F.R. § 50.2(b)(5). Continuing:

> The release of certain types of information generally tends to create dangers of prejudice without serving a significant law enforcement function. Therefore, personnel of the Department should refrain from making available the following . . . (vi) Any opinion as to the accused's guilt. . . .

*Id.* § 50.2(b)(6); *see also* U.S.A.M. § 1-7.550(F).

4

**KRAMER LEVIN NAFTALIS & FRANKEL** LLP

AUSA Antonia Apps
AUSA Harry Chernoff
October 22, 2013
Page 5

<div align="center">*         *         *</div>

For all of these reasons, we strongly believe a guilty plea in the case against SAC at any point leading up the imminent trial of Mr. Steinberg should not be accompanied by a press release or press conference, and certainly should not include the kinds of inflammatory, sweeping and individual guilt-assuming quotations, statements and demonstrative aids that the Office publicized when the SAC indictment was first announced. Accordingly, we request that the government not issue any press release, hold any press conference or make any extrajudicial statements (including by way of social media such as Twitter) if SAC enters a guilty plea in the remaining few weeks before Mr. Steinberg's trial, other than a public statement announcing the fact of any guilty plea and sentence. We further request that any such public statements about any SAC plea refrain from mentioning Mr. Steinberg, whether explicitly or implicitly. Finally, whether or not there is a plea by SAC in the next few weeks, to protect Mr. Steinberg's right to a fair trial we request that the Office take down the internet links to its press release, press conference, and any other public comments concerning the SAC indictment or Mr. Steinberg.

Mr. Steinberg reserves all of his rights and remedies on these issues in the event any actions or statements of the Office in any way interfere with or undermine his right to a fair trial with an impartial jury.

We appreciate your attention to this matter, and would be happy to further discuss our concerns with you.

<div align="right">Very truly yours,</div>

Barry H. Berke
Steven S. Sparling
Eric A. Tirschwell



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 28, 2013

Barry H. Berke, Esq.
Steven S. Sparling, Esq.
Eric A. Tirschwell, Esq.
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036

     Re:    <u>United States v. Michael Steinberg, S4 12 Cr. 121 (RJS)</u>

Dear Counsel:

    We write in response to your October 22, 2013 letter regarding a potential disposition of the Government's case against SAC Capital and its possible impact on the upcoming trial of Michael Steinberg. In particular, your letter seeks to restrict the Government's ability to make public statements concerning any disposition of the case against SAC Capital. Please be advised that the Government is committed to ensuring that Mr. Steinberg receives a fair trial and understands fully its obligations under Local Criminal Rule 23.1 of the Southern District of New York and the other rules relating to public statements concerning pending criminal matters.

    At the same time, we disagree with your characterization of the prior public statements of this Office concerning the SAC Capital matter as well as the premise of your letter. The public does not forfeit its right to be appropriately informed of the status of a case prosecuted by the Office because there may be a connection to another pending case. Important law enforcement interests, including encouraging respect for the law and deterrence of unlawful conduct, are served by ensuring that the public is informed about significant developments in the prosecution of our cases. Please be assured that the Office will continue to protect Mr. Steinberg's right to a fair trial by an impartial jury while at the same time discharging its law enforcement duties.

                  Very truly yours,

                  PREET BHARARA
                  United States Attorney

By: _____
         Antonia M. Apps
         Harry A. Chernoff
         Assistant United States Attorneys
         (212) 637-2198/2481

6

**EXHIBIT  M**

Manhattan U.S. Attorney Announces Guilty Plea Agreement With SAC Capital Management Companies

Home » News

PRESS RELEASES

Follow @SDNYNews                                                                          🖶 Printer Friendly

# Manhattan U.S. Attorney Announces Guilty Plea Agreement With SAC Capital Management Companies

**FOR IMMEDIATE RELEASE**
Monday, November 4, 2013

### *SAC Management Companies Agree to Plead Guilty to All Counts in Criminal Indictment, Pay $1.8 Billion, and Terminate SAC Capital's Investment Advisory Business*

Preet Bharara, the United States Attorney for the Southern District of New York, and George Venizelos, the Assistant Director-in-Charge of the New York Office of the Federal Bureau of Investigation ("FBI"), announced today an agreement (the "Agreement") to resolve insider trading charges against four companies – S.A.C. CAPITAL ADVISORS, L.P. ("SAC Capital LP"); S.A.C. CAPITAL ADVISORS, LLC ("SAC Capital LLC"), CR INTRINSIC INVESTORS, LLC ("CR Intrinsic"); and SIGMA CAPITAL MANAGEMENT, LLC ("Sigma Capital"), collectively (the "SAC Companies") – that are responsible for the management of a group of affiliated hedge funds, collectively (the "SAC Hedge Fund" or "SAC").

Under the Agreement, which is subject to Court approval, the SAC Companies will plead guilty to each count in which they are charged of an indictment (the "Indictment") unsealed in July of this year charging the SAC Companies with securities fraud and wire fraud in connection with a large-scale insider trading scheme. The Agreement imposes a $1.8 billion financial penalty on the SAC Companies – the largest insider trading penalty in history – split between a $900 million fine in the criminal case (the "Criminal Case"), and a $900 million forfeiture judgment in a civil money laundering and forfeiture action (the "Forfeiture Action") filed by the Government simultaneously with the criminal charges. It also provides that the SAC Companies and their affiliates will no longer accept outside investor funds and will shut down operations as an investment adviser.

The Agreement between the Government and the SAC Companies to plead guilty to all of the charges in the Indictment in which they are charged and resolve the Forfeiture Action is subject to judicial review and approval. The Government submitted the Agreement this morning to U.S. District Judge Laura T. Swain, who is presiding over the Criminal Case, captioned United States v. S.A.C. Capital Advisors, L.P., et al., 13 Cr 541 (LTS), and U.S. District Judge Richard J. Sullivan, who is presiding over the Forfeiture Action, captioned United States v. S.A.C. Capital Advisors, L.P., et al., 13 Civ. 5182 (RJS). The Agreement has no force unless and until it is approved by the district judges.

Manhattan U.S. Attorney Preet Bharara said: "As I said four years ago, at the time of our first major insider trading arrests, greed sometimes is not good. And there are at least 75 convicted insider trading defendants who, today, would likely agree. But individual guilt is not the whole of our mission. Sometimes, blameworthy institutions need to be held accountable too. No institution should rest easy in the belief that it is too big to jail. That is a moral hazard that a just society can ill afford. Today, SAC Capital, one of the world's largest and most powerful hedge funds, agreed to plead guilty, shut down its outside investment business, and pay the largest fine in history for insider trading offenses. That is the just and appropriate price for the pervasive and unprecedented institutional misconduct that occurred here."

FBI Assistant Director-in-Charge George Venizelos said: "What SAC Capital's plea demonstrates is that cheating and breaking the law were not only permitted but allowed to persist. The result is $1.8 billion in fines and forfeiture, the largest penalty in an insider trading case ever, and termination of their investment advisory business. The problem of insider trading is real. For companies that willfully turn a blind eye, be on

notice: how your employees make money is just as important as how much they make. The FBI's investigation into insider trading on Wall Street, on Main Street, in hedge funds, at expert networking firms, and anywhere else, continues."

As alleged in the Indictment, from 1999 through at least 2010, numerous employees of the SAC Companies obtained and traded on material, non-public information that they were not permitted to have ("Inside Information"), or recommended trades based on such information to SAC Portfolio Managers ("SAC PMs") or the SAC Owner. Specifically, the Indictment charges the SAC Companies with insider trading offenses committed by numerous employees, occurring over the span of more than a decade, and involving the securities of more than 20 publicly-traded companies across multiple sectors of the economy. As charged in the Indictment, the systematic insider trading engaged in by SAC PMs and Research Analysts was the predictable and foreseeable result of multiple institutional failures. The failures alleged included hiring practices heavily focused on recruiting employees with networks of public company insiders, the failure of SAC management to question employees about trades that appeared to be based on Inside Information, and ineffective compliance measures that failed to prevent or detect such trading, particularly prior to late 2009.

The Complaint in the Forfeiture Action alleges that the SAC Companies engaged in money laundering by commingling the illegal profits from insider trading with other assets, using the profits to promote additional insider trading, and transferring the profits with the assistance of financial institutions.

The Agreement announced today has two component parts: first, a plea agreement to resolve the Criminal Case, and second, a stipulation and proposed order to resolve the civil money laundering and forfeiture claims in the Forfeiture Action. Both documents have been submitted to the district judges for review. If approved, the Agreement would provide for the following:

- The SAC Companies will plead guilty to all counts of the Indictment in which they are charged, which include a securities fraud and wire fraud count for each of the SAC companies.

- The SAC Companies will pay a $1.8 billion financial penalty, consisting of a $900 million fine in the Criminal Case and a $900 million judgment in the Forfeiture Action. Because the SAC Companies have already agreed to pay $616 million to the U.S. Securities & Exchange Commission to resolve related civil insider trading charges, that amount will be credited against today's penalty, and therefore, the additional payment required under this Agreement will be approximately $1.2 billion. The SAC Companies have further agreed that neither they nor any other person or entity paying any portion of the $1.8 billion financial penalty shall claim any tax deduction or credit for any money paid in resolving the Criminal Case and the Forfeiture Action.

- The SAC Companies will no longer accept third party investor funds and will terminate operations as an investment adviser.

- The SAC Companies will each be sentenced to five-year terms of probation -- the maximum allowed by law -- with a provision to end probation earlier if the SAC Companies cease operating entirely. The terms of probation will require, among other conditions, that the SAC Companies employ appropriate compliance measures to identify and prevent insider trading. Additionally, the insider trading compliance measures of the SAC Companies and any related entities trading securities will be reviewed by an independent compliance expert who will direct the SAC Companies to correct identified deficiencies.

The Agreement would resolve the criminal charges against the SAC Companies but does not provide any individual with immunity from prosecution. Under the terms of the Agreement, the Government is not prevented from charging any individual with insider trading offenses and seeking the maximum prison term authorized by law for such offenses.

<div align="center">*          *          *</div>

This case was brought in coordination with President Barack Obama's Financial Fraud Enforcement Task Force, on which Mr. Bharara serves as a Co-Chair of the Securities and Commodities Fraud Working Group. The task force was established to wage an aggressive, coordinated and proactive effort to investigate and prosecute financial crimes. With more than 20 federal agencies, 94 U.S. attorneys' offices and state and local partners, it is the broadest coalition of law enforcement, investigatory and regulatory agencies ever assembled to combat fraud. Since its formation, the task force has made great strides in facilitating increased investigation and prosecution of financial crimes; enhancing coordination and cooperation among federal, state and local authorities; addressing discrimination in the lending and financial markets and conducting outreach to the public, victims, financial institutions and other organizations. Over the past three fiscal years, the Justice

Manhattan U.S. Attorney Announces Guilty Plea Agreement With SAC Capital Management Companies

Department has filed nearly 10,000 financial fraud cases against nearly 15,000 defendants including more than 2,900 mortgage fraud defendants. For more information on the task force, please visit www.StopFraud.gov.

This case is being handled by the Office's Securities and Commodities Fraud Task Force. Assistant U.S. Attorneys Arlo Devlin-Brown, Antonia M. Apps and John T. Zach are in charge of the prosecution, and Assistant U.S. Attorneys Sharon Cohen Levin, Chief of the Asset Forfeiture Unit, Micah Smith and Christine Magdo are responsible for the forfeiture aspects of the case.

The Agreement relates only to the guilt of the SAC Companies and resolves pending charges against only the SAC Companies – it does not include any admissions pertaining to individual defendants. All criminal defendants are presumed innocent unless and until proven guilty.

13-331

Return to Top

<u>United States v. S.A.C. Capital Advisors LP, et al.</u>
Prepared Remarks for U.S. Attorney Preet Bharara
November 4, 2013

Good afternoon.  My name is Preet Bharara, and I am the United States Attorney for the Southern District of New York.

This past July, we filed a criminal indictment against four SAC Capital-related companies for engaging in insider trading that was substantial, pervasive and on a scale without known precedent in the history of hedge funds.  Three months later, we are here to announce a resolution that is matching in its magnitude.  All of the charged SAC companies have agreed to plead guilty; all have agreed to wind down and close their outside investment business; and all have agreed, collectively, to pay total fines and penalties in the record amount of $1.8 billion.

Today's agreements, if approved, would resolve the two cases brought by the Government against SAC in July – the criminal indictment against the SAC companies, and a separate civil forfeiture and money laundering action.  Both agreements were sent this morning to the two district court judges presiding over those cases for their review and approval.

The plea agreement announced today, moreover, is solely between this Office and the SAC companies, and involves no individuals.  It does not include pleas of guilt by any individuals, nor does it provide any criminal protection or immunity for any individuals going forward.
Let me also stress that individual defendants who have been charged and are awaiting trial are presumed to be innocent, and the plea agreement announced today does not affect that presumption in any way.

Before I discuss the agreement in more detail, let me introduce our partners in this investigation and prosecution.

I am joined by our partner in this and so many other cases, the FBI, led by George Venizelos, the Assistant Direct-in-Charge of the New York Field Office and April Brooks, the Special Agent-in-Charge of the Criminal Division.  I want to thank both George and April and their dedicated teams – FBI Special Agents: Matthew Callahan, B.J. Kang, David Makol, James Hinkle, and Matthew Thoreson – for their incredibly hard work and assistance.

I also want to thank the many staff attorneys at the Enforcement Division of the SEC with whom we've worked closely on so many aspects of this investigation.

I especially want to acknowledge the career prosecutors from my office.  They are Arlo Devlin-Brown, Antonia Apps, and John Zach, the AUSAs handling the prosecution, and their chiefs

1

Marc Berger and Anjan Sahni; also, Christine Magdo and Micah Smith for their work on the forfeiture aspects of the case, as well as Asset Forfeiture Chief Sharon Cohen Levin.

So let me now take a moment to talk about the particulars of today's agreement with the SAC companies.

Let me first make clear that what we are announcing today is that the Government and the defendants have reached an agreement with one another.  It is now for the Courts to independently consider the agreements, and the agreements between the parties have no effect unless and until the Courts grant approval.

The main features of the agreements are straightforward.

First, the indictment charges each of the four SAC companies with both wire fraud and securities fraud in connection with the insider trading scheme.  And each of the four SAC companies will plead guilty to wire fraud and securities fraud – put another way each defendant will plead guilty to every count with which it was charged.

Second, the agreement provides that the SAC companies will face a total financial penalty for the charged insider trading of $1.8 billion.  The SAC companies would, under the agreement pay a fine of $900 million in the criminal case and, in the civil forfeiture and money laundering action, forfeit an additional $900 million to the United States treasury – bringing the total amount to $1.8 billion.

Now prior to today's resolution the SAC companies had agreed to pay money to resolve civil insider trading charges brought by the Securities and Exchange Commission targeting some of the same conduct we've alleged in our Indictment.  We are permitting a credit of this amount that SAC has already promised to pay the SEC – $616 million – and so after applying that credit to the $1.8 billion we are requiring today, the SAC. companies will be paying an additional approximately $1.2 billion in criminal fines and forfeiture to resolve these actions.

Third, the SAC companies and affiliates will end their investment advisory businesses and will agree to no longer take third-party investments.  What does that mean?  It means, the SAC companies and their affiliates will no longer be able to manage outside money – from any investors.  In essence it means the end of the SAC Hedge Fund in the way it has operated since its inception.

Fourth, the SAC companies will be sentenced, again if the agreements are approved by the Court, to the maximum term of probation- five years.  And as the SAC companies start their terms of probation, their insider trading compliance policies will be given a hard look by an

2

5

independent expert who will identify any remaining problems and then advise the Government on whether SAC is fixing them. What that ensures is that even as the SAC companies wind down their investment advisory business, there will be extra safeguards in place to prevent future incidents of insider trading.

There is another key point worth noting about this financial penalty. Its burden will not fall on third-party investors. The SAC companies have made clear that no outside investor money will be used to pay this $1.8 billion penalty. The settlement terms, moreover, provide for an orderly wind-down and payment schedule of this record penalty to minimize any market disruption.

I should also stress that neither SAC nor any person paying any portion of the $1.8 billion penalty will be permitted to claim any tax deduction or tax benefit in connection with this payment.

So that's what's in the agreement. Often, as is the case here, in addition to describing what is in the agreement it is just as important to note what is not in the agreement. Here, there is no immunity from criminal prosecution for any person. In fact, as I said, this agreement does not have any binding effect on any individuals at all – either charged or uncharged. And so while the agreement today may end the Government's prosecution of the SAC companies, with respect to individuals – either at this hedge fund or the countless other financial institutions that buy and sell securities – we will continue to pursue insider trading investigations and follow the facts, wherever they lead. And the investigation remains ongoing.

As I said four years ago, at the time of our first major insider trading arrests, greed sometimes is not good. And there are at least 75 convicted insider trading defendants who, today, would likely agree. But individual guilt is not the whole of our mission. Sometimes, blameworthy institutions need to be held accountable too. No institution should rest easy in the belief that it is too big to jail. That is a moral hazard that a just society can ill afford.

Law enforcement should not shy away from holding institutions responsible when it is justified and necessary for both deterrence and accountability – whether the misbehaving corporation is a hedge fund or a commercial bank or a manufacturer of a popular product – because sometimes institutional punishment is essential to serve justice and deter misconduct.

Today, one of the world's largest and most powerful hedge funds agreed to plead guilty, shut down its outside investment business, and pay the largest fine in history for insider trading offenses. That is the just and appropriate price for the pervasive and unprecedented institutional misconduct that occurred here.



**SDNYnews** @SDNYnews                                      4 Nov
It was on a scale w/o known precedent in the history of hedge
funds. 3 mos later, we announce a resolution that is matching in its
magnitude
Expand



**SDNYnews** @SDNYnews                                      4 Nov
In July, we filed a crim indictmt against 4 SAC Capital-related cos
for engaging in insider trading that was substantial & pervasive #SAC
Expand



**SDNYnews** @SDNYnews                                      4 Nov
US Atty Bharara starting press conference on plea agreement w/
SAC management companies #live
Expand



**SDNYnews** @SDNYnews                                      4 Nov
To read the relevant indictment & civil money laundering &
forfeiture complaint, click here: go.usa.gov/WDJH
Expand



**SDNYnews** @SDNYnews                                      4 Nov
SAC mgmt companies agree to plead guilty to all counts in crim
indict, pay $1.8 billion, & terminate SAC Capital's investment advisory
bus
Expand



**SDNYnews** @SDNYnews                                      4 Nov
Manhattan US Atty Bharara to announce guilty plea agreement
w/ SAC Capital mgt companies @ 1 pm press conference w/
@NewYorkFBI
Expand



**SDNYnews** @SDNYnews                                        4 Nov
Blameworthy institutions need to be held accountable. No
institution should rest easy in the belief that it's too big to jail.
Expand



**SDNYnews** @SDNYnews                                        4 Nov
Read the full press release here: go.usa.gov/WWdT
Expand



**SDNYnews** @SDNYnews                                        4 Nov
We'll continue to pursue insider trading investigations and follow
the facts, wherever they lead; & the investigation remains ongoing
#SDNY
Expand

FBI — Manhattan U.S. Attorney Announces Guilty Plea Agreement with SAC Capital Management Companies



A-Z INDEX • SITE MAP

Search Site    SEARCH

**CONTACT US | ABOUT US | MOST WANTED | NEWS**    **STATS & SERVICES | SCAMS & SAFETY | JOBS | FUN & GAMES**

*New York Field Office*

Select Language    Get FBI Updates

Home · New York · Press Releases · 2013 · Manhattan U.S. Attorney Announces Guilty Plea Agreement with SAC Capital Management Companies

Twitter (5)   Facebook (14)   Share

## Manhattan U.S. Attorney Announces Guilty Plea Agreement with SAC Capital Management Companies

*SAC Management Companies Agree to Plead Guilty to All Counts in Criminal Indictment, Pay $1.8 Million, and Terminate SAC Capital's Investment Advisory Business*

**U.S. Attorney's Office**
November 04, 2013

**Southern District of New York**
(212) 637-2600
**FBI Public Information Office**
(212) 384-2100

Preet Bharara, the United States Attorney for the Southern District of New York, and George Venizelos, the Assistant Director in Charge of the New York Office of the Federal Bureau of Investigation (FBI), announced today an agreement (the "agreement") to resolve insider trading charges against four companies—SAC Capital Advisors LP (SAC Capital LP), SAC Capital Advisors LLC (SAC Capital LLC), CR Intrinsic Investors LLC (CR Intrinsic), and Sigma Capital Management LLC (Sigma Capital), collectively the "SAC companies"—that are responsible for the management of a group of affiliated hedge funds, collectively (the "SAC hedge fund" or "SAC").

Under the agreement, which is subject to court approval, the SAC companies will plead guilty to each count in which they are charged of an indictment unsealed in July of this year charging the SAC companies with securities fraud and wire fraud in connection with a large-scale insider trading scheme. The agreement imposes a $1.8 billion financial penalty on the SAC companies—the largest insider trading penalty in history—split between a $900 million fine in the criminal case (the criminal case) and a $900 million forfeiture judgment in a civil money laundering and forfeiture action (the forfeiture action) filed by the government simultaneously with the criminal charges. It also provides that the SAC companies and their affiliates will no longer accept outside investor funds and will shut down operations as an investment adviser.

The agreement between the government and the SAC companies to plead guilty to all the charges in the indictment in which they are charged and resolve the forfeiture action is subject to judicial review and approval. The government submitted the agreement this morning to U.S. District Judge Laura T. Swain, who is presiding over the Criminal Case, captioned *United States v. S.A.C. Capital Advisors, L.P., et al.*, 13 Cr 541 (LTS), and U.S. District Judge Richard J. Sullivan, who is presiding over the forfeiture action, captioned *United States v. S.A.C. Capital Advisors, L.P., et al.*, 13 Civ. 5182 (RJS). The agreement has no force unless and until it is approved by the district judges.

Manhattan U.S. Attorney Preet Bharara said, "As I said four years ago, at the time of our first major insider trading arrests, greed sometimes is not good. And there are at least 75 convicted insider trading defendants who, today, would likely agree. But individual guilt is not the whole of our mission. Sometimes, blameworthy institutions need to be held accountable too. No institution should rest easy in the belief that it is too big to jail. That is a moral hazard that a just society can ill afford. Today, SAC Capital, one of the world's largest and most powerful hedge funds, agreed to plead guilty, shut down its outside investment business, and pay the largest fine in history for insider trading offenses. That is the just and appropriate price for the pervasive and unprecedented institutional misconduct that occurred here."

FBI Assistant Director in Charge George Venizelos said, "What SAC Capital's plea demonstrates is that cheating and breaking the law were not only permitted but allowed to persist. The result is $1.8 billion in fines and forfeiture, the largest penalty in an insider trading case ever, and termination of their investment advisory business. The problem of insider trading is real. For companies that willfully turn a blind eye, be on notice: how your employees make money is just as important as how much they make. The FBI's investigation into insider trading on Wall Street, on Main Street, in hedge funds, at expert networking firms, and anywhere else, continues."

**New York Field Office Links**

New York Field Office Home

Contact Us
- Overview
- Territory/Jurisdiction

News and Outreach
- Press Room | Stories
- In Your Community

About Us
- Our People & Capabilities
- What We Investigate
- Our Partnerships
- New York History

Wanted by the FBI - New York

FBI Jobs

FBI — Manhattan U.S. Attorney Announces Guilty Plea Agreement with SAC Capital Management Companies

As alleged in the indictment, from 1999 through at least 2010, numerous employees of the SAC companies obtained and traded on material, non-public information that they were not permitted to have ("inside information"), or recommended trades based on such information to SAC portfolio managers ("SAC PMs") or the SAC owner. Specifically, the indictment charges the SAC companies with insider trading offenses committed by numerous employees, occurring over the span of more than a decade and involving the securities of more than 20 publicly traded companies across multiple sectors of the economy. As charged in the indictment, the systematic insider trading engaged in by SAC PMs and research analysts was the predictable and foreseeable result of multiple institutional failures. The failures alleged included hiring practices heavily focused on recruiting employees with networks of public company insiders, the failure of SAC management to question employees about trades that appeared to be based on Inside Information, and ineffective compliance measures that failed to prevent or detect such trading, particularly prior to late 2009.

The complaint in the forfeiture action alleges that the SAC companies engaged in money laundering by commingling the illegal profits from insider trading with other assets, using the profits to promote additional insider trading, and transferring the profits with the assistance of financial institutions.

The agreement announced today has two component parts: first, a plea agreement to resolve the criminal case, and second, a stipulation and proposed order to resolve the civil money laundering and forfeiture claims in the forfeiture action. Both documents have been submitted to the district judges for review. If approved, the agreement would provide for the following:

- The SAC companies will plead guilty to all counts of the Indictment in which they are charged, which include a securities fraud and wire fraud count for each of the SAC companies.
- The SAC companies will pay a $1.8 billion financial penalty, consisting of a $900 million fine in the criminal case and a $900 million judgment in the forfeiture action. Because the SAC companies have already agreed to pay $616 million to the U.S. Securities & Exchange Commission to resolve related civil insider trading charges, that amount will be credited against today's penalty, and, therefore, the additional payment required under this agreement will be approximately $1.2 billion. The SAC companies have further agreed that neither they nor any other person or entity paying any portion of the $1.8 billion financial penalty shall claim any tax deduction or credit for any money paid in resolving the criminal case and the forfeiture action.
- The SAC companies will no longer accept third party investor funds and will terminate operations as an investment adviser.
- The SAC companies will each be sentenced to five-year terms of probation—the maximum allowed by law—with a provision to end probation earlier if the SAC Companies cease operating entirely. The terms of probation will require, among other conditions, that the SAC Companies employ appropriate compliance measures to identify and prevent insider trading. Additionally, the insider trading compliance measures of the SAC companies and any related entities trading securities will be reviewed by an independent compliance expert who will direct the SAC companies to correct identified deficiencies.

The agreement would resolve the criminal charges against the SAC companies but does not provide any individual with immunity from prosecution. Under the terms of the agreement, the government is not prevented from charging any individual with insider trading offenses and seeking the maximum prison term authorized by law for such offenses.

This case was brought in coordination with President Barack Obama's Financial Fraud Enforcement Task Force, on which Mr. Bharara serves as a co-chair of the Securities and Commodities Fraud Working Group. The task force was established to wage an aggressive, coordinated, and proactive effort to investigate and prosecute financial crimes. With more than 20 federal agencies, 94 U.S. attorneys' offices, and state and local partners, it is the broadest coalition of law enforcement, investigatory, and regulatory agencies ever assembled to combat fraud. Since its formation, the task force has made great strides in facilitating increased investigation and prosecution of financial crimes; enhancing coordination and cooperation among federal, state, and local authorities; addressing discrimination in the lending and financial markets; and conducting outreach to the public, victims, financial institutions, and other organizations. Over the past three fiscal years, the Justice Department has filed nearly 10,000 financial fraud cases against nearly 15,000 defendants including more than 2,900 mortgage fraud defendants. For more information on the task force, please visit www.StopFraud.gov.

This case is being handled by the Office's Securities and Commodities Fraud Task Force. Assistant U.S. Attorneys Arlo Devlin-Brown, Antonia M. Apps, and John T. Zach are in charge of the prosecution, and Assistant U.S. Attorneys Sharon Cohen Levin, Chief of the Asset Forfeiture Unit, Micah Smith, and Christine Magdo are responsible for the forfeiture aspects of the case.

The agreement relates only to the guilt of the SAC companies and resolves pending charges against only the SAC companies—it does not include any admissions pertaining to individual defendants. All criminal defendants are presumed innocent unless and until proven guilty.

*- Related remarks by FBI New York SAC April Brooks*

---

*Follow the FBI's New York Office on Twitter. Sign up for our e-mail alerts to receive the latest information from the FBI's New York Office on breaking news, arrests, and fugitives.*

10

FBI --- Remarks as Prepared for Delivery by FBI Special Agent in Charge April Brooks at Press Conference Concerning SAC Capital



**New York Field Office**

Home • New York • Press Releases • 2013 • Remarks as Prepared for Delivery by FBI Special Agent in Charge April Brooks at Press Conference Concerning SAC Capital...

Twitter (7)   Facebook (5)   Share

### Remarks as Prepared for Delivery by FBI Special Agent in Charge April Brooks at Press Conference Concerning SAC Capital

| FBI New York | FBI Public Information Office |
| --- | --- |
| November 04, 2013 | (212) 384-2100 |

*The following remarks were prepared for delivery by FBI New York Special Agent in Charge April Brooks at a November 4, 2013 press conference concerning SAC Capital's plea deal in connection with an insider trading investigation.*

In 2006, with new information about rife and unbridled insider trading at hedge funds, the FBI went to work. After examining trading anomalies, poring over documents, conducting surveillances, and making the first approach to a key target, that individual began cooperating with the government.

What started with a key cooperator led to thousands of hours of relentless investigative work by a team of FBI agents uncovering an extensive network trafficking in inside information throughout the hedge fund industry that has been chronicled by many of you. The result, in part, brought today's plea and is the latest step in the largest insider trading investigation in history.

None of this would have been possible without dedicated prosecutors willing to bring charges here in the Southern District led by U.S. Attorney Preet Bharara and Deputy U.S. Attorney Richard Zabel. I would like to recognize Assistant U.S. Attorneys Arlo Devlin-Brown, Antonia Apps, John Zach, and their chiefs, Marc Berger and Anjan Sahni.

I would also like to recognize the team from my office: FBI Special Agents Matthew Callahan, James Hinkle, Matthew Thoresen, B.J. Kang, and David Makol.

I also want to emphasize that today's announcement has no effect on any individual awaiting trial. Those defendants are presumed innocent until proven otherwise.

What SAC Capital's plea demonstrates is that cheating and breaking the law were not only permitted but allowed to persist.

SAC focused on hiring the best talent, talent who was equipped with extensive networks to circumvent traditional lines of communication. Talent who would be prepared to get confidential information to fuel their ilict trades.

SAC didn't just break the law, their illegal activity resulted in "insider trading that was substantial, pervasive, and on a scale without known precedent" according the July indictment. It was nothing short of institutional failure.

In today's agreement, SAC Capital will plead guilty to all five counts in the indictment. The result is $1.8 billion in fines and forfeiture, the largest penalty in an insider trading case ever. Most importantly, SAC Capital will terminate operations as an investment advisor and will be required to have real, genuine compliance overseen by an independent expert. In layman's terms, SAC will no longer be able to invest anyone's money but their own.

As today's plea illustrates, SAC institutionalized their practices by cultivating a culture of corporate corruption. To those on the street who venerate Michael Douglas' character Gordan Ghekko understand this: principles are just as important as your profit. The problem of insider trading is real and for companies that willfully turn a blind eye—be on notice—how your employees make money is just as important as how much they make.

Today is not the end. The FBI's investigation into insider trading on Wall Street, on Main Street, in hedge funds, at expert networking firms, and anywhere else continues. We will relentlessly pursue this anticompetitive criminal behavior until every portfolio manager, every trading desk, and every hedge fund owner stops trading on insider information.

*- Related U.S Attorney's Office-Southern District of New York press release*

**New York Field Office Links**

New York Home

**Contact Us**
- Overview
- Territory/Jurisdiction

**News and Outreach**
- Press Room | Stories
- In Your Community

**About Us**
- Our People & Capabilities
- What We Investigate
- Our Partnerships
- New York History

Wanted by the FBI - New York

FBI Jobs

11

FBI — Remarks as Prepared for Delivery by FBI Special Agent in Charge April Brooks at Press Conference Concerning SAC Capital

*Follow the FBI's New York Office on Twitter. Sign up for our e-mail alerts to receive the latest information from the FBI's New York Office on breaking news, arrests, and fugitives.*

Twitter (7)   Facebook (5)   Share

Contact Us | About Us | Most Wanted | News | Stats & Services | Scams & Safety | Jobs | Fun & Games | Mobile | Español
Resources for: Law Enforcement | Intel Partners | Researchers/Students | Communities | Parents | Victims | Businesses
Follow Us On: Facebook | You Tube | Twitter | iTunes | All Sites

Accessibility | eRulemaking | Freedom of Information Act | Legal Notices | Legal Policies and Disclaimers | Links | Privacy Policy | USA.gov | White House
FBI.gov is an official site of the U.S. government, U.S. Department of Justice

12

Home » News

**PRESS RELEASES**

Follow @SDNYNews      🖶 Printer Friendly

# SAC Capital Management Companies Plead Guilty To Insider Trading Charges In Manhattan Federal Court

**FOR IMMEDIATE RELEASE**
Friday, November 8, 2013

*SAC Management Companies Plead Guilty to All Counts in Criminal Indictment, Agree to Pay $1.184 Billion, and Terminate SAC Capital's Investment Advisory Business*

Preet Bharara, the United States Attorney for the Southern District of New York, announced today that S.A.C. CAPITAL ADVISORS, L.P. ("SAC Capital LP"), S.A.C. CAPITAL ADVISORS, LLC ("SAC Capital LLC"), CR INTRINSIC INVESTORS, LLC ("CR Intrinsic"), and SIGMA CAPITAL MANAGEMENT, LLC ("Sigma Capital"), collectively (the "SAC Companies") that are responsible for the management of a group of affiliated hedge funds, collectively (the "SAC Hedge Fund" or "SAC"), pled guilty to each count in which they are charged in an indictment (the "Indictment") unsealed in July of this year. The Indictment charges the SAC Companies with securities fraud and wire fraud in connection with a large-scale insider trading scheme. The SAC Companies pled guilty today before U.S. District Judge Laura T. Swain, pursuant to a plea agreement. Sentencing is scheduled for March 14, 2014, before Judge Swain, who reserved on the decision of whether to accept the pleas.

Manhattan U.S. Attorney Preet Bharara said: "Subject to the Court's acceptance, today four SAC Capital companies pled guilty to serious federal crimes that undermined the integrity of our securities markets. Financial institutions should know that they are not automatically immune from prosecution, and we will hold companies, as well as individuals, accountable wherever appropriate."

As alleged in the Indictment, from 1999 through at least 2010, numerous employees of the SAC Companies obtained and traded on material, non-public information that they were not permitted to have ("Inside Information"), or recommended trades based on such information to SAC Portfolio Managers ("SAC PMs") or the SAC Owner. Specifically, the Indictment charges the SAC Companies with insider trading offenses committed by numerous employees, occurring over the span of more than a decade, and involving the securities of more than 20 publicly-traded companies across multiple sectors of the economy. As charged in the Indictment, the systematic insider trading engaged in by SAC PMs and Research Analysts was the predictable and foreseeable result of multiple institutional failures. The failures alleged included hiring practices heavily focused on recruiting employees with networks of public company insiders, the failure of SAC management to question employees about trades that appeared to be based on Inside Information, and ineffective compliance measures that failed to prevent or detect such trading, particularly prior to late 2009.

13

The plea agreement in this case was one of two component parts of an overall Agreement (the "Agreement") reached by the parties and announced earlier this week. The Agreement imposes an additional $1.184 billion financial penalty on the SAC Companies, on top of the $616 million the SAC Companies have already agreed to pay to the U.S. Securities & Exchange Commission ("SEC"). The financial penalty – the largest insider trading penalty in history – is split between a fine in the criminal case (the "Criminal Case"), and a forfeiture judgment in a civil money laundering and forfeiture action (the "Forfeiture Action") filed by the Government simultaneously with the criminal charges. It also provides that the SAC Companies and their affiliates will no longer accept outside investor funds and will shut down operations as an investment adviser.

<div align="center">*       *       *</div>

The Agreement between the Government and the SAC Companies to plead guilty to all of the charges in the Indictment in which they are charged and resolve the Forfeiture Action was submitted to the Courts subject to judicial review and approval. Judge Swain received the pleas in the Criminal Case, United States v. S.A.C. Capital Advisors, L.P., et al., 13 Cr 541 (LTS), earlier today. U.S. District Judge Richard J. Sullivan, who is presiding over the Forfeiture Action, captioned United States v. S.A.C. Capital Advisors, L.P., et al., 13 Civ. 5182 (RJS), approved on Wednesday, November 6, 2013, the stipulation and proposed order to resolve the civil money laundering and forfeiture claims in the Forfeiture Action.

The remaining terms of the Agreement provide for the following:

- The total financial penalty is $1.8 billion, consisting of a $900 million fine in the Criminal Case and a $900 million judgment in the Forfeiture Action. Because the SAC Companies have already agreed to pay $616 million to the SEC to resolve related civil insider trading charges, that amount will be credited against the $900 million judgment in the Forfeiture Action, and therefore, the additional payment required under this Agreement will be approximately $1.184 billion. The SAC Companies have further agreed that neither they nor any other person or entity paying any portion of the financial penalty shall claim any tax deduction or credit for any money paid in resolving the Criminal Case and the Forfeiture Action.

- The SAC Companies will no longer accept third party investor funds and will terminate operations as an investment adviser.

- The SAC Companies will each be sentenced to a five-year term of probation – the maximum allowed by law – with a provision to end probation earlier if the SAC Companies cease operating entirely. The terms of probation will require, among other conditions, that the SAC Companies employ appropriate compliance measures to identify and prevent insider trading. Additionally, the insider trading compliance measures of the SAC Companies and any related entities trading securities will be reviewed by an independent compliance expert who will direct the SAC Companies to correct identified deficiencies.

The Agreement resolves the criminal charges against the SAC Companies but does not provide any individual with immunity from prosecution. Under the terms of the Agreement, the Government is not prevented from charging any individual with insider trading offenses and seeking the maximum prison term authorized by law for such offenses.

This case was brought in coordination with President Barack Obama's Financial Fraud Enforcement Task Force, on which Mr. Bharara serves as a Co-Chair of the Securities and Commodities Fraud Working Group. The task force was established to wage an aggressive, coordinated and proactive effort to investigate and prosecute financial crimes. With more than 20 federal agencies, 94 U.S. attorneys' offices and state and local partners, it is the broadest coalition of law enforcement, investigatory and regulatory agencies ever assembled to combat fraud. Since its formation, the task force has made great strides in facilitating increased investigation and prosecution of financial crimes; enhancing coordination and

14

cooperation among federal, state and local authorities; addressing discrimination in the lending and financial markets and conducting outreach to the public, victims, financial institutions and other organizations. Over the past three fiscal years, the Justice Department has filed nearly 10,000 financial fraud cases against nearly 15,000 defendants including more than 2,900 mortgage fraud defendants. For more information on the task force, please visit www.StopFraud.gov.

This case is being handled by the Office's Securities and Commodities Fraud Task Force. Assistant U.S. Attorneys Arlo Devlin-Brown, Antonia M. Apps and John T. Zach are in charge of the prosecution, and Assistant U.S. Attorneys Sharon Cohen Levin, Chief of the Asset Forfeiture Unit, Micah Smith and Christine Magdo are responsible for the forfeiture aspects of the case.

The pleas announced today relate only to the pending charges against the SAC Companies and relate only to the guilt of the SAC Companies. The pleas do not include any admissions pertaining to individual defendants. All criminal defendants are presumed innocent unless and until proven guilty.

13-342

Return to Top

15

# EXHIBIT  N



**SAC Capital Settlement Press Conference**
**CNBC National**
**November 4th, 2013**

**Host:** Now to New York—we're going to go to New York. Our breaking news: the news conference concerning SAC is about to begin momentarily. There will be two speakers. At this point, US Attorney Preet Bharara will be there. Also, the woman who headed up the investigation for the FBI will also be speaking, and so let's go to that news conference—a landmark settlement in this insider trading case with SAC Capital.

**Preet Bharara, US Attorney:** Good afternoon, everyone. My name is Preet Bharara and I am the US Attorney for the Southern district of New York. This past July, we filed a criminal indictment against four SAC Capital-related companies for engaging in insider trading that was substantial, pervasive, and on a scale without precedent in the history of hedge funds. Three months later, we are here to announce a resolution that is matching in its magnitude. All of the charged SAC companies have agreed to plead guilty. All have agreed to wind down and close their outside investment businesses, and all have agreed, collectively, to pay total fines and penalties in the record amount of $1.8 billion. Today's agreements, if approved, would resolve the two cases brought by the government against SAC in July—both the criminal indictment against the SAC companies and a separate civil forfeiture and money laundering action as well. Both agreements were sent this morning to the two district court judges presiding over those cases for their review and their approval. The plea agreement announced today, moreover, is solely between this office and the SAC companies. It involves no individuals. It does not include pleas of guilt by any individuals, nor does it provide any criminal protection or immunity for any individuals going forward. Let me also stress that individual defendants who have been charged and are awaiting trial are presumed to be innocent and the plea agreement announced today does not affect that presumption in any way. Now, before I discuss the agreement in more detail, let me introduce our partners in this investigation and in this prosecution. I am joined, as I am so often in cases of this magnitude and importance, by the FBI, led by George Venizelos here in New York. Today, the FBI is represented by April Brooks, the special agent in charge of the criminal division. I want to thank George and April for their dedication and for the dedication of their teams of FBI agents, notably supervisors Doug Leff, Dave Shavs, and Kathy Diskin, and also, special agents Matthew Callahan, BJ Kang, David Makel, James Hinkle, and Matthew Thoreson for their, really, incredibly hard work and assistance. We wouldn't be here but for all of their dedication and hard work. I also wanted to thank the many staff attorneys at the Securities & Exchange Commission, at the enforcement division with whom we've worked so closely on so many aspects of this investigation and coordinated nicely with them as we always do. I especially want to thank and acknowledge the dedicated career prosecutors to my right who have made today possible. They are Arlo Devlin-Brown, Antonia Apps, and John Zach. The [inaudible] is handling the prosecution on the criminal side, and their chiefs, Mark Berger and Anton Sani. Also, Kristine Magdo and Micah Smith for their work on the forfeiture aspects of the case as well as their chief of asset forfeiture, Sharon Cohen Levin.

360mediawatch

So, let me take just a couple of minutes to go through and talk about the particulars of today's agreement with SAC Capital companies. Let me first make clear that we are—what we are announcing today is that the government and the defendants have reached an agreement with one another. It is now for the courts to independently consider those agreements, and the agreements between the parties have no effect unless and until the courts grant approval. The main features of the agreements are fairly straightforward and are summarized in a chart to my right. If you'd take a look—as you know from the indictment that was filed on July 25th, there were five counts [inaudible] The total penalties are $1.8 billion. They are divided as follows according to [inaudible] described in the papers that were sent to the court today—$900 million fines in connection with the criminal case. Nine hundred—I'll go back to the podium.

A $900 million fine with respect to the criminal case, a $900 million resolution with respect to the civil case, which means it's a total of $1.8 billion. As you may appreciate, the Securities & Exchange Commission reached an agreement with respect to SAC Capital and those companies to the tune of $616 million based on conduct that is overlapping with some of the conduct that we allege in our civil money laundering complaint. And so, if you subtract that out according to the agreement we have, they get a credit for that, and so the total additional payment, beyond what has already been agreed to with SEC, is $1.184 billion. Other key terms of the agreement are that the entities agree to wind down, in an orderly fashion, their investment advisory business, in a way and in a time table to be approved by the SEC. They have agreed to accept the maximum term of probation after pleading guilty of five years and have agreed to retain, with our consent and approval, a compliance consultant; so, that that person can make sure that everything is going as it should go at the entities during the period of their wind down.

There's another key point worth noting about the financial penalty. Its burden will not fall on third party investors. The SAC companies have made clear that no outside investor money will be used to pay the $1.8 billion penalty. The settlement terms, moreover, provide for an orderly wind down and payment schedule of this record penalty to minimize any market disruption. I should also stress that neither SAC nor any person paying any portion of the $1.8 billion penalty will be permitted to claim any tax deduction or tax benefit in connection with this payment. So, that's what's in the agreement. Often, as is the case here, in addition to describing what is in the agreement, it's just as important to note what is not in the agreement. Here, there is no immunity from criminal prosecution for any person, as I mentioned. In fact, as I said, this agreement does not have any binding effect on any individuals at all, either charged or uncharged. And so, while the agreement today may end the government's prosecution of the SAC Capital companies, with respect to individuals, either at this hedge fund or the countless other financial institutions that buy and sell securities, we will continue to pursue insider trading investigations and follow the facts wherever they lead. And the investigation, in this case, on the criminal side, remains ongoing.

Now, as I said, just about four years ago, at the time of our first major insider trading arrests, greed, sometimes, is not good. And there are at least 75 convicted insider trading defendants who, today, would likely agree. But individual guilt is not the whole of our mission. Sometimes, blameworthy institutions need to be held accountable, too. No institution should rest easy in the belief that it is too big to jail. That is a moral hazard that a just society can ill afford. Law

2

# 360 mediawatch

enforcement should not shy away from holding institutions responsible when it is justified and necessary for both deterrence and accountability, whether the misbehaving corporation is a hedge fund or a commercial bank, or a manufacturer of a popular product, because sometimes, institutional punishment is essential to serve justice and to deter misconduct.

Today, one of the world's largest and most powerful hedge funds agreed to plead guilty, to shut down its outside investment business, and pay the largest fine in history for insider trading offenses. That is the just and appropriate price, in our view, for the pervasive and unprecedented institutional misconduct that occurred here. Now, let me call to the podium April Brooks, our partner from the FBI.

**April Brooks, FBI:** Good afternoon. In 2006, with new information about rife and unbridled insider trading at hedge funds, the FBI went to work. After examining trading anomalies, poring over documents, conducting surveillances, and making the first approach to a key target, that individual began cooperating with the government. What started with a key cooperator led to thousands of hours of relentless investigative work by a team of FBI agents uncovering an extensive network, trafficking, and insider information, throughout the hedge fund industry—a network that has been chronicled by many of you. The result, in part, brought today's plea, and is the latest step in the largest insider trading investigation in history. None of this would've been possible without dedicated prosecutors, willing to bring charges here in the Southern district. Led by US Attorney Preet Bharara and Deputy US Attorney Richard Zapel, I would like to recognize Assistant United States Attorneys Arlo Devlin-Brown, Antonio Epps, John Zach, and their chiefs, Marc Berger and Anjan Sani. I would also like to recognize the team from my office—FBI special agents Matthew Callahan, James Hinkle, Matthew Thorson, BJ Kang, and David Makel. I also want to emphasize today's announcement has no effect on any individual awaiting trial. Those defendants are presumed innocent until proven otherwise.

What SAC Capital's plea demonstrates is that cheating and breaking the law were not only permitted, but allowed to persist. SAC focused on hiring the best talent—talent who was equipped with extensive networks to circumvent traditional lines of communication; talent who would be prepared to get confidential information to fuel their illicit trades. SAC didn't just break the law; their illegal activity resulted in insider trading that was substantial, pervasive, and on a scale without known precedent, according to the July indictment. It was nothing short of institutional failure. In today's agreement, SAC Capital will plead guilty to all five counts in the indictment. The result is $1.8 billion in fines and forfeiture, the largest penalty in an insider trading investigation ever. Most importantly, SAC Capital will terminate operations as an investment advisor and will be required to have real, genuine compliance overseen by an independent expert. In laymen's terms, SAC will no longer be able to invest anyone's money but their own.

As today's plea illustrates, SAC institutionalized their practices by cultivating a culture of corporate corruption. To those on the street who venerate Michael Douglas's character Gordon Gecko, understand this: principles are just as important as your profit. The problem of insider trading is real and for companies that willfully turned a blind eye, beyond notice. How your employees make their money is just as important as how much they make.

3



Today is not the end—the FBI's investigation into insider trading on Wall Street, on Main Street, in hedge funds, in expert networking firms, and anywhere else, continues. We will relentlessly pursue this anti-competitive criminal behavior until every portfolio manager, every trading desk, every hedge fund owner, stops trading on insider information. Thank you.

**Preet Bharara:** Thank you, April. Happy to take your questions.

**Reporter #1:** [inaudible]

**Preet Bharara:** Today's announcement is with respect to the companies that were charged by this office on July 25th, and the resolution is limited to those companies. And as I've said before, and I'll repeat again, there is no immunity or protection for any individuals from criminal prosecution or investigation. Yeah.

**Reporter #2:** What does the five-year probation [inaudible] actually mean in practice?

**Preet Bharara:** Well, it means, as it always means, in any kind of criminal case, if someone misbehaves, there's additional penalties that can be brought to bear. And I'll just refer you to the plea agreement itself, which lays that out.

**Reporter #3:** So, the hedge funds had to come in and plead not guilty for judge [inaudible] in the criminal case; do they have to go now in with the general council and plead guilty?

**Preet Bharara:** The agreement is for them to plead guilty, and that's done by an appropriate corporate representative at a time that the judge, if the judge approves the agreement, would set at some point in the future. But yes—

**Reporter #3:** [inaudible] the judge has to accept it, and [inaudible]

**Preet Bharara:** I mean, that can all happen in one preceding; I'll leave that to the court. And you should direct your inquiries to the court about how that judge would like to handle the resolution here.

**Reporter #4:** Why is there no cooperation in [inaudible] ?

**Preet Bharara:** You know, sometimes plea agreements are cooperation agreements, and sometimes they're straight pleas, and this one is a straight plea.

**Reporter #5:** I have two questions. One is, what would happen to the money that you're collecting? Where is it going to go? [inaudible] And secondly, would the compliance requirements in the settlement apply after they return any outside money [inaudible]

**Preet Bharara:** I don't remember the answer to the last question; I'll refer you to the document. Where does the money go? It goes to the United States Treasury, and then depending on what

4



other proceedings happen and what claims are made, will be distributed thereafter. But it all goes to the same place.

**Reporter #5:** There's no designated place? [inaudible]

**Preet Bharara:** Yeah, I mean, it is used in the same way that all money that's forfeited in all criminal penalties. It's in that same fund.

**Reporter #6:** Whose money is it? I guess I'm having a difficult time looking at a corporation as a defendant; I know that this does happen. [inaudible] If you could just explain to us how—it looks as though the companies are almost destroyed, but then they're on probation for five years. [inaudible]

**Preet Bharara:** Okay, you're asking multiple questions.

**Reporter #6:** Yes

**Preet Bharara:** What I made clear in the remarks and what the companies had made clear is that obviously, there's money that exists in accounts and corporations and sometimes they're bound up in securities and sometimes they're held in part in cash, and the companies have made clear that wherever it is coming from, it is not coming from the holdings held by outside investors in those funds. And you can draw your conclusion as to what that means then.

**Reporter #7:** [inaudible] Would he still be subject to those requirements as well?

**Preet Bharara:** Well, the first thing is, these are proposed agreements between us and the SAC entities. They still have to be approved by the court, and so nothing is triggered until there's an approval by the court. At that point, if you'll take a look at the plea agreement, you'll see it's set forth there. I forget what page it's at. I think within ten days of sentencing, there's supposed to be a discussion about who the consultant should be, and that person has not been selected yet. I forgot what the second part of your question—oh! Again, there is no resolution here with respect to any individual, like I made clear. So, if an individual decides that he or she who had been associated with SAC Capital, decides he or she wants to open up a new hedge fund, that person would have to go through, obviously, the approval process with the SEC. And as you may be aware, the SEC—Securities & Exchange Commission—has a pending administrative action for failure to supervise against the principle of SAC Capital, and so, that person would have to get the approval of the SEC to do something different outside of the ambit of the SAC Capital companies.

**Reporter #8:** After five years, does this mean [inaudible] that after five years [inaudible]

**Preet Bharara:** These entities will cease to exist at that point, and our agreement says nothing about any individual being able to manage outside money. Our agreement is with respect to these companies. And as I said, the SEC, who's the primary regulator on issues of this consequence,



has a pending action against the principle of SAC Capital, and that case has not yet been resolved.

**Reporter #9:**  How would you describe the victims in this case?

**Preet Bharara:**  I mean, as I've said many times, and as other people have talked about this case, there are all sorts of victims in this case. Some of the victims include everyone who believes that the markets should be fair and that the same rules apply to everyone. Other victims include, potentially, companies who had individuals there who are stealing their information about what kind of money they were making and selling it to people in advance of when it was becoming public. I'll tell you who another set of victims are in the broad sense, and some of the people who are most vindicated by the result today— if it's approved by the two district court judges—and that's people who are honest in the business and who are honest in hedge funds and there are many, many more of them than there are dishonest people. And those people are the ones who are really vindicated because when you take the people who are, and the institutions that are not playing by the rules, you know, off the playing field, then those people who are doing it the right way and the honest way with integrity and care about compliance and care about making sure they're doing things by the rules, then their activity is vindicated in that regard. Yeah.

**Reporter #10:**  [inaudible]

**Preet Bharara:**  You take everything into account, there's no—there's some art and some science to it. Given the amount of insider trading activity that we have alleged with respect to those entities over the course of a long period of time—if you go back and read the indictment, it talks about a long period of time. It talks about a lot of different securities; it talks about a lot of different people; it talks about a lot of sectors. And if you take a look at the amount of money that the companies have made, this seemed to us to be a fair but steep and equitable resolution so that, you know, it's tough in the sense that it's several orders of magnitude larger than the identified, avoided losses and gains made by the companies over the time that we allege in the indictment. It also represents something like 20 to 25% of the remaining funds in the hedge fund as a whole. If you take a look at the sentencing guidelines that are applicable to this case, which are not binding, but they're discretionary—but they mean something. I believe, as you see set forth in the plea agreement, that the sentencing guidelines range to something in the order of—on the criminal side—800 something million dollars. So, we have sought a penalty on the criminal side in excess of what the maximum you might calculate in the sentencing guidelines is. And to take all those things together in order to send a message of deterrence, in order to make sure there's a proper exacting of a penalty, and given the magnitude of the activity and insider trading conduct, this seemed to us to be, as, again, we said in our letter, steep but fair. Yeah.

**Reporter #11:**  So, taking into account that this is very significant and that you're still investigating, [inaudible] you say to people who say that, you know, not charging a person [inaudible]

6

360 media**watch**

**Preet Bharara:** What has happened today is a very substantial and important thing. It is a rare thing for any entity to be held to account as an entity, and that has been historically true for a number of years now. It's then even more rare for that entity to plead guilty to everything that it has been charged with. And not only rare, but unprecedented to have a criminal fine and penalty of the magnitude that we have described it. As I've said, a number of people have been charged and convicted, and the investigation remains ongoing, and you know, we are not shy in retiring people—these folks aren't, and these aren't either. And we're not unaggressive. And we bring cases where we have proof beyond a reasonable doubt that we can convince a jury unanimously of someone's criminal guilt, and when we get to that point with respect to anyone, whether it's at the top or at the bottom or in the middle, we bring the case at that time. Last question. Someone who hasn't—yeah.

**Reporter #12:** Well, just for the sake of clarity—are we talking about—you're talking about winding down the investment advisory business and then also five years probation. Are you talking about putting an end to the SAC Capital companies, or are you talking about making [inaudible] five years and [inaudible] starting it back up?

**Preet Bharara:** Those companies are winding down and are ending on a schedule that will be figured out by the SEC and subject to the SEC's approval.

**Reporter #12:** So what is this probation?

**Preet Bharara:** You know, you have an insurance policy with respect to how long the wind down takes. My expectation is you don't need the whole five years necessarily, but it's there. Final question.

**Reporter #13:** [inaudible] is rampant on Wall Street. To what extent is that still true today?

**Preet Bharara:** Anecdotally, the suggestion is that it's less than it used to be. You know, we have seen from cases we've had, including in wire taps, of people who had not yet been charged when we were conducting some of the arrests that we were conducting, you can tell from their conversations that they, you know, were a little bit more hesitant to engage in that activity. If you look at the nature of the legal business and the nature of the compliance business at a lot of places, they will tell you, anecdotally, that a lot of hedge funds have come in, and a lot of other institutional traders have come in to try to figure out ways to figure out red flags better and have tried to figure out ways to deal with expert networking firms better, have tried to figure out ways to make sure that their hiring practices are better. So, overall, it seems to me, from anecdotal evidence and also from common sense, that when you see, you know, 75 people and counting who are criminally convicted and who had every privilege and, you know, every bit of education and every opportunity and money to spare, being convicted and being separated from their liberty in most instances, that has a deterrent effect on other folks. It's impossible to quantify completely, but our sense is when you talk to people in the industry, that it's less than it used to be.



Okay, thanks very much, guys.

* * * * * *